Case No. 24-2965

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

AMERICAN SOCIETY FOR TESTING AND MATERIALS, D/B/A ASTM INTERNATIONAL

*Plaintiff-Appellant*

v.

UPCODES, INC., GARRETT REYNOLDS, AND SCOTT REYNOLDS

*Defendants-Appellees*

---

Appeal from the United States District Court
for the Eastern District of Pennsylvania
Honorable Anita B. Brody, No. 2:24-cv-01895

---

## JOINT APPENDIX
### (VOLUME 2 OF 10, PAGES JA55 TO JA347)

---

Stanley J. Panikowski
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101
Tel: (619) 699-2700
stanley.panikowski@us.dlapiper.com

Gabrielle C. Velkes
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 335-4500
gabrielle.velkes@us.dlapiper.com

J. Kevin Fee
Jane W. Wise
DLA PIPER LLP (US)
500 8th Street NW
Washington, DC 20004
Tel: (202) 799-4000
kevin.fee@us.dlapiper.com
jane.wise@us.dlapiper.com

*Counsel for Appellant*

*(For Continuation of Appearances See Inside Cover)*

JANUARY 21, 2025

Joseph C. Gratz
MORRISON & FOERSTER
425 Market Street
San Francisco, California 94105
(415) 268-7000
jgratz@mofo.com

Aditya V. Kamdar
MORRISON & FOERSTER
2100 L Street NW, Suite 900
Washington, DC 20037
(202) 887-1500
akamdar@mofo.com

Bonnie M. Hoffman
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, Pennsylvania 19103
(215) 568-6200
bhoffman@hangley.com

Jason A. Levine
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
1415 Route 70 East, Suite 405
Cherry Hill, New Jersey 08034
(856) 616-2100
jlevine@hangley.com

*Counsel for Appellees*

TABLE OF CONTENTS FOR JOINT APPENDIX
American Society for Testing & Materials v. UPCODES Inc, et al Case Number: 24-2965

Publicly Available Documents

| | Description | Page Number |
|---|---|---|
| | **VOLUME I** | |
| 1. | Docket Entry 104 October 2, 2024 Memorandum Denying Preliminary Injunction | JA1 |
| 2. | Docket Entry 105 Order that Plaintiff's Revised Motion for Preliminary Injunction (ECF No. 59) is denied. | JA51 |
| 3. | (b) Docket Entry 108 Notice of Appeal | JA52 |
| | **VOLUME II** | |
| 4. | Docket Sheet from E.D. Pa. Civil Action No.: 2:24-cv-01895-AB | JA55 |
| 5. | Docket Entry 1 Complaint Filed May 3, 2024 | JA75 |
| 6. | Docket Entry 1-1 Exhibit A ASTM's Copyrighted Works | JA107 |
| 7. | Docket Entry 1-2 Exhibit B United States Patent and Trademark Office Reg. No. 2,679,320 Trademark Service Mark Principal Register "ASTM" January 28, 2003 | JA109 |
| 8. | Docket Entry 1-3 Exhibit C List of Altered Works | JA113 |
| 9. | Docket Entry 6 Plaintiff's Motion for Preliminary Injunction Filed May 3, 2024 | JA127 |
| 10. | Docket Entry 6-1 Proposed Preliminary Injunction Order | JA130 |
| 11. | Docket Entry 7 Plaintiff's Memorandum of Law in Support Its Motion for Preliminary Injunction Filed May 3, 2024 | JA133 |
| 12. | Docket Entry 47 Defendants Upcodes, Inc., Garrett Reynolds, and Scott Reynolds' Legal Arguments in Response to Motion for Preliminary Injunction | JA174 |
| 13. | Docket Entry 49 Transcript of Conference held June 5, 2024 | JA190 |
| 14. | Docket Entry 53 Defendants' Answer to Complaint Filed June 18, 2024 | JA235 |
| 15. | Docket Entry 59 Plaintiff's Revised Motion for Preliminary Injunction Filed July 15, 2024 | JA261 |

Publicly Available Documents

16.   Docket Entry 59-1 Text of Proposed Order for Preliminary Injunction    JA265

17.   Docket Entry 60-1 Appendix A: ASTM's Copyrighted Works    JA268

18.   Docket Entry 60-2 Declaration of Thomas B. O'Brien, Jr.    JA269

19.   Docket Entry 60-3 O'Brien Declaration Exhibit 1 informational pamphlet titled "Why should I join ASTM    JA283

20.   Docket Entry 60-4 O'Brien Declaration Exhibit 2 registration certificate numbered TX 8-068-653 obtained from the Copyright Office for ASTM A36/A36M-14 Standard Specification for Carbon Structural Steel    JA285

21.   Docket Entry 60-5 O'Brien Declaration Exhibit 3 registration certification numbered TX 7-550-513 obtained from the Copyright Office the 2012 Annual Book of ASTM Standards – Steel—Piping, Tubing, Fittings    JA288

22.   Docket Entry 60-6 O'Brien Declaration Exhibit 4 registration certificate numbered TX 8-690-736 obtained from the Copyright Office for ASTM A722/A722M-18 Standard Specification for High-Strength Steel Bars for Prestressed Concrete    JA292

23.   Docket Entry 60-7 O'Brien Declaration Exhibit 5 registration certificate numbered TX 8-217-668 obtained from the Copyright Office for ASTM A653/A653M-17 Standard Specification for Steel Sheet, Zinc-Coated (Galvanized) or Zinc-Iron Alloy-Coated (Galvannealed) by the Hot-Dip Process    JA294

24.   Docket Entry 60-8 O'Brien Declaration Exhibit 6 registration certificate numbered TX 8-217-259 obtained from the Copyright Office for ASTM A706/A706M-16 Standard Specification for Deformed and Plain Low-Alloy Steel Bars for Concrete Reinforcement    JA297

25.   Docket Entry 60-9 O'Brien Declaration Exhibit 7 registration certificate numbered TX 7-886-878 obtained from the Copyright Office for ASTM A875/A875M - 13 Standard Specification for Steel Sheet, Zinc-5 % Aluminum Alloy-Coated by the Hot-Dip Process    JA300

26.   Docket Entry 60-10 O'Brien Declaration Exhibit 8 the registration certificate numbered TX 8-422-153 obtained from the Copyright Office for ASTM A924/A924M-17a Standard    JA303

Publicly Available Documents
Specification for General Requirements for Steel Sheet, Metallic-Coated by the Hot-Dip Process

27. Docket Entry 60-11 O'Brien Declaration Exhibit 9 registration certificate numbered TX 8-062-199 obtained from the Copyright Office for ASTM B209-14 Standard Specification for Aluminum and Aluminum-Alloy Sheet and Plate — JA306

28. Docket Entry 60-12 O'Brien Declaration Exhibit 10 registration certificate numbered TX 8-142-387 obtained from the Copyright Office for ASTM A615/A615M-15a Standard Specification for Deformed and Plain Carbon-Stell Bars for Concrete Reinforcement — JA309

29. Docket Entry 60-13 O'Brien Declaration Exhibit 11 registration certificate numbered TX 7-935-900 obtained from the Copyright Office for A690/A690M-13a Standard Specification for High-Strength Low-Alloy Nickel, Copper, Phosphorus Steel H-Piles and Sheet Piling with Atmospheric Corrosion Resistance for Use in Marine Environments — JA312

30. Docket Entry 60-14 O'Brien Declaration Exhibit 12 informational pamphlet titled "Let ASTM Compass® Be Your Guide" — JA315

31. Docket Entry 60-15 O'Brien Declaration Exhibit 13 Certificate of Registration and the Section 15 declaration — JA317

32. Docket Entry 60-16 Declaration of Jane W. Wise dated July 15, 2024 — JA330

33. Docket Entry 60-27 - Wise Declaration Exhibit 24 a screenshot from the iccsafe.org website of Chapter 18, Section 18.3.2.3 of 2018 International Building Code. — JA346

**VOLUME III**

34. Docket Entry 60-28 - Wise Declaration Exhibit 25 an article titled "Building-code compliance startup UpCodes gets $3.36M in pre-Series A funding" authored by Catherine Shue and published by TechCrunch.com on March 15, 2021 — JA348

35. Docket Entry 60-29 - Wise Declaration Exhibit 26 a screenshot taken on May 1, 2024 of the "About" webpage on the up.codes website. — JA367

Publicly Available Documents

36.  Docket Entry 60-30 - Wise Declaration Exhibit 27 a screenshot taken on May 1, 2024 of the X, formerly known as Twitter, profile for UpCodes. — JA371

37.  Docket Entry 60-31 - Wise Declaration Exhibit 28 f a screenshot taken on May 1, 2024 of the homepage of up.codes website. — JA377

38.  Docket Entry 60-32 - Wise Declaration Exhibit 29 a screenshot taken on October 26, 2023 of the "Adoptions by Publisher" webpage on the up.codes website with "ASTM" selected in the "Publisher" filter. — JA382

39.  Docket Entry 60-33 - Wise Declaration Exhibit 30 a screenshot taken on April 19, 2024 of the "Adoptions by Publisher" webpage on the up.codes website with "ASTM" selected in the "Publisher" filter. — JA386

40.  Docket Entry 60-34 - Wise Declaration Exhibit 31 a screenshot taken on May 3, 2024 of the "Carbon Structural Steel Code, 2014 (ASTM A36/A36M, 2014)" webpage on the up.codes website. — JA388

41.  Docket Entry 60-35 - Wise Declaration Exhibit 32 a screenshot taken on May 3, 2024 of the "Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) (ASTM A252, 2010 (R2018)" webpage on the up.codes website. — JA393

42.  Docket Entry 60-36 - Wise Declaration Exhibit 33 a screenshot taken on May 3, 2024 of the "Deformed and Plain Carbon-steel Bars for Concrete Reinforcement Code, 2015ae1 (ASTM A615/A615M, 2015ae1)" webpage on the up.codes website — JA396

43.  Docket Entry 60-37 - Wise Declaration Exhibit 34 a screenshot taken on May 3, 2024 of the "Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 (ASTM A653/A653M, 2017)" webpage on the up.codes website. — JA398

44.  Docket Entry 60-38 - Wise Declaration Exhibit 35 a screenshot taken on May 3, 2024 of the "High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) (ASTM A690/A690M, 2013A 2018)" webpage on the up.codes website. — JA402

45.  Docket Entry 60-39 - Wise Declaration Exhibit 36 a screenshot taken on May 3, 2024 of the "Low-Alloy Steel Deformed and — JA406

Publicly Available Documents
Plain Bars for Concrete Reinforcement Code, 2016 (ASTM
A706/A706M, 2016)" webpage on the up.codes website.

46.  Docket Entry 60-40 - Wise Declaration Exhibit 37 a screenshot      JA410
     taken on May 3, 2024 of the "High-strength Steel Bars for
     Prestressed Concrete Code, 2018 (ASTM A722/A722M, 2018)"
     webpage on the up.codes website.

47.  Docket Entry 60-41 - Wise Declaration Exhibit 38 a screenshot      JA413
     taken on May 3, 2024 of the "Steel Sheet, Zinc-5 Percent,
     Aluminum Alloy-Coated by the Hot-Dip Process Code, 2013
     (ASTM A875/A875M, 2013)" webpage on the up.codes website.

48.  Docket Entry 60-42 - Wise Declaration Exhibit 39 a screenshot      JA417
     taken on May 3, 2024 of the "Steel Sheet, Metallic-Coated by the
     Hot-dip Process Code, 2017A (ASTM A924/A924M, 2017A)"
     webpage on the up.codes website.

49.  Docket Entry 60-43 - Wise Declaration Exhibit 40 a screenshot      JA421
     taken on May 3, 2024 of the "Aluminum and Aluminum-Alloy
     Steel and Plate Code, 2014 (ASTM B209, 2014)" webpage on
     the up.codes website.

50.  Docket Entry 60-44 - Wise Declaration Exhibit 41 an export of      JA426
     "Pennsylvania Carbon Structural Steel Code, 2014" from the
     up.codes website performed on April 18, 2024.

51.  Docket Entry 60-45 - Wise Declaration Exhibit 42 an export        JA449
     performed of "California Welded and Seamless Steel Pipe Piles
     Code, 2010 (R2018)" from the up.codes website on April 18,
     2024.

52.  Docket Entry 60-46 - Wise Declaration Exhibit 43 an export of      JA505
     "Colorado Deformed and Plain Carbon-steel Bars for Concrete
     Reinforcement Code 2015ae1" from the up.codes website
     performed on April 18, 2024 and May 3, 2024.

53.  Docket Entry 60-47 - Wise Declaration Exhibit 44 an export of      JA554
     "California Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron
     Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017"
     from the up.codes website performed on April, 18, 2024 and May
     3, 2024.

54.  Docket Entry 60-48 - Wise Declaration Exhibit 45 an export of      JA600
     "California High-strength Low-alloy Piling with Atmospheric
     Corrosion Resistance for Use in Marine Environments Code,

Publicly Available Documents
2013 (2018)" from the up.codes website performed on May 3,
2024.

55.     Docket Entry 60-49 - Wise Declaration Exhibit 46 an export of          JA617
        "California Low-Alloy Steel Deformed and Plain Bars for
        Concrete Reinforcement Code 2016" from the up.codes website
        performed on April 18, 2024.

**VOLUME IV**

56.     Docket Entry 60-50 - Wise Declaration Exhibit 47 an export of          JA665
        "California High-strength Steel Bars for Prestressed Concrete
        Code 2018" from the up.codes website performed on April 18,
        2024.

57.     Docket Entry 60-51 - Wise Declaration Exhibit 48 an export of          JA706
        "California Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated
        by the Hot-Dip Process Code 2013" from the up.codes website
        performed on April 19, 2024.

58.     Docket Entry 60-52 - Wise Declaration Exhibit 49 an export of          JA738
        "California Steel Sheet, Metallic-Coated by the Hot-dip Process
        Code 2017A" from the up.codes website performed on April 23,
        2024.

59.     Docket Entry 60-53 - Wise Declaration Exhibit 50 an export of          JA791
        "Pennsylvania Aluminum and Aluminum Alloy Steel and Plate
        Code 2014" from the up.codes website performed on April 23,
        2024.

60.     Docket Entry 60-54 - Wise Declaration Exhibit 51 a screenshot          JA883
        taken on April 23, 2024 of the "Adoptions by Publisher"
        webpage on the up.codes website with "ASTM" selected in the
        "Publisher" filter.

61.     Docket Entry 60-55 - Wise Declaration Exhibit 52 a screenshot          JA885
        taken on May 1, 2024 of the "Adoptions by Publisher" webpage
        on the up.codes website with "ASTM" selected in the
        "Publisher" filter.

62.     Docket Entry 60-56 - Wise Declaration Exhibit 53 excerpts from         JA887
        UpCodes co-founder Garrett Reynolds' deposition, dated May
        17, 2018, Dkt. No. 100-12 in *International Code Council, Inc. v.
        UpCodes, Inc.,* No. 1:17-cv-6261 (S.D.N.Y.).

TABLE OF CONTENTS FOR JOINT APPENDIX
American Society for Testing & Materials v. UPCODES Inc, et al Case Number: 24-2965

Publicly Available Documents

63.      Docket Entry 60-57 - Wise Declaration Exhibit 54 an article          JA894
         titled "How Companies Can get the Most Out of a Freemium
         Business Model" authored by Xian Gu, P.K. Kannan, & Liye Ma,
         and published by the Harvard Business Review on March 20,
         2019.

64.      Docket Entry 60-58 - Wise Declaration Exhibit 55 a screenshot        JA900
         taken on May 1, 2024 of the "Navigating the codes" webpage on
         the up.codes website.

65.      Docket Entry 60-59 - Wise Declaration Exhibit 56 a screenshot        JA908
         taken on May 1, 2024 of Chapter 1 of the "Pennsylvania Carbon
         Structural Steel Code, 2014" posted on the up.codes website.

66.      Docket Entry 60-60 - Wise Declaration Exhibit 57 a screenshot        JA910
         taken on May 1, 2024 of the "Pricing" webpage on the up.codes
         website.

67.      Docket Entry 60-61 - Wise Declaration Exhibit 58 f a screenshot      JA916
         taken on May 1, 2024 of Chapter 4 of the "Pennsylvania Carbon
         Structural Steel Code, 2014" posted on the up.codes website.

68.      Docket Entry 60-62 - Exhibit 59 a screenshot taken on May 1,         JA918
         2024 of the "Create Account" webpage on the up.codes website.

69.      Docket Entry 60-63 - Exhibit 60 excerpts of from UpCodes co-         JA921
         founder Garrett Reynolds' Declaration in Support of Plaintiff's
         Motion for Summary Judgment and Permanent Injunctive Relief,
         dated June 18, 2019, Dkt. No. 92-33 in *International Code
         Council, Inc. v. UpCodes, Inc.,* No. 1:17-cv-6261 (S.D.N.Y.).

70.      Docket Entry 60-64 - Exhibit 61 the April 11, 2023 Order             JA925
         Granting in Part and Denying in Part Defendants' Motions for
         Attorney's Fees, Dkt. No. 201 in *Lynwood Investments CY, Ltd.
         v. Maxim Konovalov, et. al.,* Case No. 3:20-cv-3778.

71.      Docket Entry 60-65 - Exhibit 62 a screenshot taken on July 15,       JA953
         2024 of the "Overview" section of the 2018 International
         Building Code webpage on the iccsafe.org website.

72.      Docket Entry 60-66 - Exhibit 63 excerpts of the rough transcript     JA957
         of the July 12, 2024 30(b)(6) Deposition of ASTM's corporate
         designee, Thomas O'Brien, Jr.

TABLE OF CONTENTS FOR JOINT APPENDIX
American Society for Testing & Materials v. UPCODES Inc, et al Case Number: 24-2965

Publicly Available Documents

**VOLUME V**

73.    Docket Entry 60-67 - Exhibit 64 Plaintiff's Exhibit 20 from the July 11, 2024 deposition of UpCodes' 30(b)(6) designee, Garrett Reynolds.     JA971

74.    Docket Entry 60-70 - Exhibit 67 Plaintiff's Exhibit 21 from the July 11, 2024 deposition of UpCodes' 30(b)(6) designee, Garrett Reynolds. Plaintiff's Exhibit 21 is a document produced by UpCodes during the course of discovery with the bates label ASTM_UPCODES00079109-133.     JA1036

75.    Docket Entry 60-72 - Exhibit 69 Exhibit 9 to the Rule 30(b)(6) deposition of ASTM. This document shows a subscription for a collection of ASTM standards that ASTM offers called "ASTM Standards in Building Codes Online.     JA1062

76.    Docket Entry 60-73 - Exhibit 70 a screenshot taken on April 11, 2024 of the "Alabama Carbon Structural Steel Code, 2014" posted on the up.codes website.     JA1065

77.    Docket Entry 60-74 - Exhibit 71 Plaintiff's Exhibit 19 from the July 11, 2024 deposition of UpCodes' 30(b)(6) designee, Garrett Reynolds.     JA1067

78.    Docket Entry 60-75 - Exhibit 72 a chart purporting to identify all of the "[j]urisdictions adopting the ASTM A875/A875M, 2013" standard     JA1069

79.    Docket Entry 60-76 - Exhibit 73 California Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013.     JA1071

80.    Docket Entry 60-77 - Exhibit 74 a chart purporting to identify all of the "[j]urisdictions adopting the ASTM A924/A924M, 2017A" standard     JA1073

81.    Docket Entry 60-78 - Exhibit 75 California Steel Sheet, Metallic-Coated by the Hot-Dip Process Code 2017A.     JA1075

82.    Docket Entry 60-79 - Exhibit 76 Exhibit 3 to the Rule 30(b)(6) deposition of ASTM. This document was produced by ASTM during the course of discovery as bates label ASTM0000611-722 and is a copy of the April 2023 "Form and Style for ASTM Standards     JA1077

Publicly Available Documents

83.     Docket Entry 60-80 - Exhibit 77 screenshot taken on July 15,        JA1190
        2024 of product description for the 2018 International Building
        Code on the iccsafe.org website.

84.     Docket Entry 60-81 - Exhibit 78 the Brief of the United States as    JA1194
        Amicus Curiae, *Practice Mgmt. Info. Corp. v. Am. Med. Ass'n,*
        522 U.S. 933 (1997).

85.     Docket Entry 60-82 - Exhibit 79 the Brief of the United States as    JA1220
        Amicus Curiae, *Southern Building Code Congress International,*
        *Inc. v. Veeck,* 539 U.S. 969 (2003).

86.     Docket Entry 60-83 - Exhibit 80 the Brief of the United States as    JA1247
        Amicus Curiae, *Google LLC v. Oracle America, Inc.,* 135 S. Ct.
        2887 (2015).

## VOLUME VI

87.     Docket Entry 64 Defendants' Amended Answer to Complaint            JA1277
        Filed July 23, 2024

88.     Docket Entry 66-3 Gratz Declaration Exhibit 2 screenshots taken     JA1298
        on July 25, 2024 of portions of Chapter 35 ("Referenced
        Standards") of the 2018 International Building Code, showing the
        "User note" and the ASTM Works in Suit

89.     Docket Entry 66-4 Gratz Declaration Exhibit 3 excerpts of Title 4   JA1303
        ("The Philadelphia Building Construction and Occupancy
        Code"), Subcodes "A" and "B," of the Philadelphia Code

90.     Docket Entry 66-5 Gratz Declaration Exhibit 4 Exhibit 3 to the      JA1342
        deposition of Thomas A. O'Brien, taken in the instant action on
        July 12, 2024. It is a document produced by ASTM in the instant
        action, bearing Bates numbers ASTM0000611 – ASTM0000722
        and titled, "Form and Style for ASTM Standards April 2023."

91.     Docket Entry 66-6 Gratz Declaration Exhibit 5 Exhibit 10 to the     JA1455
        deposition of Thomas A. O'Brien, taken in the instant action on
        July 12, 2024. It is a printout from the ASTM website of an
        article dated June 1, 2005, titled "ASTM standards in Building
        Codes, 42nd Edition, is available from ASTM International,

92.     Docket Entry 66-7 Gratz Declaration Exhibit 6 ASTM                  JA1458
        International's Standards Catalog 2024

TABLE OF CONTENTS FOR JOINT APPENDIX
American Society for Testing & Materials v. UPCODES Inc, et al Case Number: 24-2965

Publicly Available Documents

93.     Docket Entry 66-8 Gratz Declaration Exhibit 7 screenshots of          JA1519
        pricing webpages of the Works in Suit from the ASTM website
        produced by ASTM in the instant action, bearing Bates numbers
        ASTM0002288 – ASTM0002317 and ASTM0002322 –
        ASTM0002323


**VOLUME VII**

94.     Docket Entry 66-9 Gratz Declaration Exhibit 8 screenshots of          JA1552
        pricing webpages of the Works in Suit from the Accuris website
        produced by ASTM in the instant action, bearing Bates numbers
        ASTM0002318 – ASTM0002321 and ASTM0002324 –
        ASTM0002373.

95.     Docket Entry 66-10 Gratz Declaration Exhibit 9 a screenshot of        JA1607
        the ASTM membership pricing webpage produced by ASTM in
        the instant action, bearing Bates numbers ASTM0002322 –
        ASTM0002323.

96.     Docket Entry 66-11 Gratz Declaration Exhibit 10 Exhibit 14 to        JA1610
        the deposition of Thomas A. O'Brien, taken in the instant action
        on July 12, 2024. It is ASTM's 2023 Annual Report.

97.     Docket Entry 66-13 Gratz Declaration Exhibit 12 the Reading          JA1632
        Room page from ASTM's website that provides free access to
        ASTM standards referenced in the Code of Federal Regulations,

98.     Docket Entry 66-14 Declaration of Garrett Reynolds in Support        JA1665
        of Defendants' Opposition to Plaintiff's Motion for Preliminary
        Injunction

99.     Docket Entry 66-15 Reynolds Declaration Exhibit A a July 25,         JA1677
        2024 screenshot of the page listing model codes and standards
        available on UpCodes on the Adoptions by Publisher page.

100.    Docket Entry 66-16 - Reynolds Declaration Exhibit B a July 25,       JA1683
        2024 screenshot of a filter for "ASTM" on the Adoptions by
        Publisher page

101.    Docket Entry 66-17 - Reynolds Declaration Exhibit C a July 25,       JA1685
        2024 screenshot of a list of jurisdictions that have adopted the
        "ASTM A36/A36M, 2014," standard into law, with or without
        amendments

Publicly Available Documents

102.  Docket Entry 73-1 Declaration of Thomas B. O'Brien, Jr. dated     JA1688
      August 12, 2024

103.  Docket Entry 73-4 O'Brien Reply Declaration Exhibit 83            JA1692
      document that was produced by ASTM bearing the Bates
      Numbers ASTM0002094-145. This document shows the
      standards included in ASTM's offering "ASTM Standards in
      Building Codes Online

104.  Docket Entry 73-6 Declaration of Jane W. Wise dated August 12,    JA1744
      2024

105.  Docket Entry 73-18 Wise Reply Declaration Exhibit 96 a            JA1749
      spreadsheet produced natively by UpCodes during the course of
      discovery associated with the bates label ASTM0002091-092
      depicting a screenshot of a webpage on the ASTM website titled
      "ASTM Standards in Building Codes Online"

**VOLUME VIII**

106.  Docket Entry 73-19 Wise Reply Declaration Exhibit 97 the          JA1752
      Response Brief filed by Public.Resource.Org in *Georgia v. v.*
      *Public.Resource.Org,* 590 U.S. 255 (2020).

107.  Docket Entry 73-20 Wise Reply Declaration Exhibit 98 Appellee     JA1828
      Canadian Standards Association Petitioner for Rehearing En
      Banc, *Canadian Standards Ass'n v. P.S. Knight Co.,* Case No.
      23-50081 (5th Cir. July 30, 2024).

108.  Docket Entry 73-21 Wise Reply Declaration Exhibit 99 an           JA1874
      excerpt from Dkt. 198-48 in *American Society for Testing And*
      *Materials v. Public.Resource.Org, Inc.,* Case No. 1:13-cv-01215
      (D.D.C. Oct. 7, 2019).

109.  Docket Entry 73-23 Wise Reply Declaration Exhibit 101 the         JA1876
      Brief of Amici Curiae American Society for Testing and
      Materials et. al. in support of neither party in *Georgia v.*
      *Public.Resource.Org, Inc.,* No. 18-1150, Dkt. 25 (Aug. 30,
      2019).

110.  Docket Entry 73-24 Wise Reply Declaration Exhibit 102 the         JA1922
      Brief of Amici Curiae International Code Council, Inc. and the

Publicly Available Documents
American Gas Association in support of petitioners in *Georgia v. Public.Resource.Org, Inc.,* No. 18-1150, Dkt. 28 (Aug. 30. 2019).

111.  Docket Entry 85 Defendants' Notice of Supplemental Authority in Support of Their Opposition to Plaintiff's Motion for Preliminary Injunction Filed August 22, 2024     JA1956

112.  Docket Entry 85-1 Denial of Petition for Rehearing En Banc in Canadian Standards Ass'n v. P.S. Knight Co., Ltd., No. 23-50081 (5th Cir. Aug. 14, 2024)     JA1961

113.  Docket Entry 86 Plaintiff American Society for Testing and Materials' Notice of Supplemental Authority in Support of Plaintiff's Motion for Preliminary Injunction Filed August 24, 2024     JA1962

114.  Docket Entry 86-1 Exhibit A Notice of Filing Order re Denying Defendants' Motion for Summary Judgment and Granting Plaintiff's Motion for Summary Adjudication     JA1967

115.  Docket Entry 94 Defendant's Preliminary Injunction Hearing Slides August 26, 2024     JA1974

116.  Docket Entry 96 Transcript of Motion Hearing Before the Honorable Anita S. Brody United States Senior District Court Judge dated 8/26/2024     JA1980

TABLE OF CONTENTS FOR JOINT APPENDIX
American Society for Testing & Materials v. UPCODES Inc, et al Case Number: 24-2965

Sealed Documents

## VOLUME IX

1. Docket Entry 60 Plaintiff's Revised Memorandum of Law in Support of Its Motion for Preliminary Injunction Filed July 15, 2024 (UNDER SEAL) — JA2068

2. Docket Entry 60-17 – Wise Declaration Exhibit 14 ASTM's Copyrighted Work "ASTM A36/A36M-14 Standard Specification for Carbon Structural Steel (UNDER SEAL) — JA2115

3. Docket Entry 60-18 - Wise Declaration Exhibit 15 ASTM's Copyrighted Work "ASTM A252-10 (Reapproved 2018) Standard Specification for Welded and Seamless Steel Pipe Piles (UNDER SEAL) — JA2119

4. Docket Entry 60-19 - Wise Declaration Exhibit 16 ASTM's Copyrighted Work "ASTM A722/A722M-18 Standard Specification for High-Strength Steel Bars for Prestressed Concrete (UNDER SEAL) — JA2127

5. Docket Entry 60-20 - Wise Declaration Exhibit 17 ASTM's Copyrighted Work "ASTM A653/A653M-17 Standard Specification for Steel Sheet, Zinc-Coated (Galvanized) or Zinc-Iron Alloy-Coated (Galvannealed) by the Hot-Dip Process (UNDER SEAL) — JA2133

6. Docket Entry 60-21 - Wise Declaration Exhibit 18 ASTM's Copyrighted Work "ASTM A706/A706M-16 Standard Specification for Deformed and Plain Low-Alloy Steel Bars for Concrete Reinforcement (UNDER SEAL) — JA2147

7. Docket Entry 60-22 - Wise Declaration Exhibit 19 ASTM's Copyrighted Work "ASTM A875/A875M – 13 Standard Specification for Steel Sheet, Zinc-5 % Aluminum Alloy-Coated by the Hot-Dip Process (UNDER SEAL) — JA2155

8. Docket Entry 60-23 - Wise Declaration Exhibit 20 ASTM's Copyrighted Work "ASTM A924/A924M-17a Standard Specification for General Requirements for Steel Sheet, Metallic-Coated by the Hot-Dip Process" (UNDER SEAL) — JA2163

9. Docket Entry 60-24 - Wise Declaration Exhibit 21 ASTM's Copyrighted Work "ASTM B209-14 Standard Specification for Aluminum and Aluminum-Alloy Sheet and Plate (UNDER SEAL) — JA2177

10. Docket Entry 60-25 - Wise Declaration Exhibit 22 ASTM's Copyrighted Work "ASTM A615/A615M-15a Standard Specification for Deformed and Plain Carbon-Steel Bars for Concrete Reinforcement (UNDER SEAL) — JA2204

11. Docket Entry 60-26 - Wise Declaration Exhibit 23 ASTM's Copyrighted Work "A690/A690M-13a Standard Specification for High-Strength Low-Alloy Nickel, Copper, Phosphorus Steel H-Piles and Sheet Piling with Atmospheric Corrosion Resistance for Use in Marine Environments (UNDER SEAL) — JA2213

Sealed Documents

12. Docket Entry 60-68 - Exhibit 65 the transcript of the July 11, 2024 deposition of UpCodes' 30(b)(6) designee, Garrett Reynolds (UNDER SEAL)    JA2217

13. Docket Entry 60-69 - Exhibit 66 Plaintiff's Exhibit 14 from the July 11, 2024 deposition of UpCodes' 30(b)(6) designee, Garrett Reynolds. Plaintiff's Exhibit 14 is a document produced by UpCodes during the course of discovery with the bates label ASTM_UPCODES00000847-850. (UNDER SEAL)    JA2265

14. Docket Entry 60-71 Exhibit 68 and Plaintiff's Deposition Exhibit 24 from the July 11, 2024 deposition of UpCodes' 30(b)(6) designee, Garrett Reynolds. Plaintiff's Exhibit 24 is a document titled Total Liabilities and Equity produced by UpCodes during the course of discovery with the bates label ASTM_UPCODES00079134. (UNDER SEAL)    JA2270

15. Docket Entry 66 Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Preliminary Injunction Filed July 29, 2024 (UNDER SEAL)    JA2272

16. Docket Entry 66-1 Declaration of Joseph C. Gratz in Support of Defendants' Opposition to Plaintiff's Motion For Preliminary Injunction (UNDER SEAL)    JA2315

17. Docket Entry 66-2 Gratz Declaration Exhibit 1 Deposition Transcript of Thomas A. O'Brien dated July 12, 2024HA    JA2322

18. Docket Entry 66-12 Gratz Declaration Exhibit 11 Exhibit 16 to the deposition of Thomas A. O'Brien, taken in the instant action on July 12, 2024. It is a printout of a spreadsheet produced by ASTM in the instant action, bearing Bates number ASTM0001256 (UNDER SEAL)    JA2355

**VOLUME X**

19. Docket Entry 73 Plaintiff's Reply in Support of Its Motion for Preliminary Injunction- August 12, 2024 (UNDER SEAL)    JA2356

20. Docket Entry 73-2 O'Brien Reply Declaration Exhibit 81 [EXCERPT] ASTM users who are associated to any account which has made a purchase providing access to any ASTM standard in the last 18 months. It does not include accounts or users who have purchased only physical formats of ASTM standard content. (UNDER SEAL)    JA2400

21. Docket Entry 73-3 O'Brien Reply Declaration Exhibit 82 Exhibit 17 to the Rule 30(b)(6) deposition of ASTM and which was produced by ASTM as a native spreadsheet associated with Bates Number ASTM0002093. This document shows the subscription revenue for a bundle of standards that ASTM offers called "ASTM Standards in Building Codes Online. (UNDER SEAL)    JA2411

22. Docket Entry 73-4 O'Brien Reply Declaration Exhibit 84 - Exhibit 18 to the Rule 30(b)(6) deposition of ASTM and which was produced by ASTM in this matter    JA2413

TABLE OF CONTENTS FOR JOINT APPENDIX
American Society for Testing & Materials v. UPCODES Inc, et al Case Number: 24-2965

Sealed Documents

bearing Bates Number ASTM0001256. This document shows the subscription revenue for ASTM's Compass Service. (UNDER SEAL)

23. Docket Entry 73-7 Wise Reply Declaration Exhibit 85 an email with an attachment produced by UpCodes during the course of discovery with the bates label ASTM_UPCODES00079181-188. (UNDER SEAL)     JA2415

24. Docket Entry 73-8 Wise Reply Declaration Exhibit 86 an email produced by UpCodes during the course of discovery with the bates label ASTM_UPCODES00079163-169 (UNDER SEAL)     JA2424

25. Docket Entry 73-9 Wise Reply Declaration Exhibit 87 an email with an attachment produced by UpCodes during the course of discovery with the bates label ASTM_UPCODES00079170-173. **CORRECTED VERSION** (UNDER SEAL)     JA2432

26. Docket Entry 73-10 Wise Reply Declaration Exhibit 88 an email produced by UpCodes during the course of discovery with the bates label ASTM_UPCODES00079177.  (UNDER SEAL)     JA2438

27. Docket Entry 73-11 Wise Reply Declaration Exhibit 89 an email produced by UpCodes during the course of discovery with the bates label ASTM_UPCODES00079179. (UNDER SEAL)     JA2440

28. Docket Entry 73-12 Wise Reply Declaration Exhibit 90 excerpts of the transcript of the July 12, 2024 30(b)(6) Deposition of ASTM's Rule 30(b)(6) designee, Thomas O'Brien, Jr. (UNDER SEAL)     JA2442

29. Docket Entry 73-13 Wise Reply Declaration Exhibit 91 excerpts of the transcript of the July 11, 2024 deposition of UpCodes' Rule 30(b)(6) designee, Garrett Reynolds. (UNDER SEAL)     JA2456

30. Docket Entry 73-14 Wise Reply Declaration Exhibit 92 a spreadsheet produced natively by UpCodes during the course of discovery associated with the bates label ASTM_UPCODES00079135 and produced in response to this Court's Order (Dkt. 52). (UNDER SEAL)     JA2473

31. Docket Entry 73-15 Wise Reply Declaration Exhibit 93 Plaintiff's Exhibit 17 from the July 11, 2024 deposition of UpCodes' 30(b)(6) designee, Garrett Reynolds. (UNDER SEAL)     JA2477

32. Docket Entry 73-16 Wise Reply Declaration Exhibit 94 a spreadsheet produced natively by UpCodes during the course of discovery associated with the bates label ASTM_UPCODES00079193. (UNDER SEAL)     JA2479

33. Docket Entry 73-17 Wise Reply Declaration Exhibit 95 a spreadsheet produced natively by UpCodes during the course of discovery associated with the bates label ASTM_UPCODES00079194. (UNDER SEAL)     JA2481

TABLE OF CONTENTS FOR JOINT APPENDIX
American Society for Testing & Materials v. UPCODES Inc, et al Case Number: 24-2965

Sealed Documents

34. Docket Entry 73-22 Wise Reply Declaration Exhibit 100 a spreadsheet produced ASTM_UPCODES00079134. (UNDER SEAL)     JA2483

35. Docket Entry 88 Order Re Denying Defendants' Motion for Summary Judgment and Granting Plaintiff's Motion for Summary Adjudication (UNDER SEAL)     JA2485

36. Docket Entry 92 ASTM Preliminary Injunction Hearing Slides     JA2527

# 2:24cv1895, American Society For Testing And Materials V. Upcodes, Inc. Et Al

US District Court Docket

United States District Court, Pennsylvania Eastern

(Philadelphia)

**This case was retrieved on 01/17/2025**

## Header

**Case Number:** 2:24cv1895
**Date Filed:** 05/03/2024
**Assigned To:** District Judge ANITA B. BRODY
**Nature of Suit:** Copyrights (820)
**Cause:** Trademark Infringement
**Lead Docket:** None
**Other Docket:** Third Circuit, 24-02965
**Jurisdiction:** Federal Question

**Class Code:** Open
**Statute:** 15:44
**Jury Demand:** Both
**Demand Amount:** $0
**NOS Description:** Copyrights

## Participants

### Litigants

American Society for Testing and Materials
doing business as | ASTM INTERNATIONAL |
**Plaintiff**

### Attorneys

GABRIELLE VELKES
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
DLA PIPER LLP
1251 Avenue Of The Americas
New York, NY  10020
USA
212-335-4812 Email:Gabrielle.Velkes@us.Dlapiper.Com

Jane W. Wise
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
DLA PIPER LLP (US)
500 Eighth Street, Nw
Washington, DC  20004
USA
202-799-4149 Email:Jane.Wise@us.Dlapiper.Com

JENNA N. ROWAN
ATTORNEY TO BE NOTICED
DLA PIPER LLP (US)
500 Eighth Street, N.W.
Washington, DC  20004
USA
202-799-4373 Email:Jenna.Rowan@us.Dlapiper.Com

J. Kevin Fee
ATTORNEY TO BE NOTICED
DLA Piper LLP (US)
500 Eighth Street, Nw

| Litigants | Attorneys |
|---|---|
| | Washington, DC  20004<br>USA<br>202-799-4441 Fax: 202-799-5441<br>Email:Kevin.Fee@us.Dlapiper.Com |
| Upcodes, Inc.<br>**Defendant** | ADITYA V. KAMDAR<br>ATTORNEY TO BE NOTICED<br>Morrison & Foerster LLP<br>2100 L Street Nw Suite 900<br>Washington, DC  20037<br>USA<br>202-887-1500 Fax: 202-887-0763<br>Email:Akamdar@mofo.Com |
| | Allyson R. Bennett |
| | [Terminated: 09/19/2024]<br>Morrison & Foerster LLP<br>707 Wilshire Boulevard Suite 6000<br>Los Angeles, CA  90017-3543<br>USA<br>213-892-5200 Fax: 213-892-5454<br>Email:Abennett@mofo.Com |
| | BONNIE M. HOFFMAN<br>ATTORNEY TO BE NOTICED<br>HANGLEY ARONCHICK SEGAL & PUDLIN<br>One Logan Square 27th Floor<br>Philadelphia, PA  19103<br>USA<br>215-496-7062 Email:Bhoffman@hangley.Com |
| | HANNAH JIAM<br>ATTORNEY TO BE NOTICED<br>MORRISON FOERSTER LLP<br>425 Market St.<br>San Francisco, CA  94105-2482<br>USA<br>415-268-6086 Email:Hjiam@mofo.Com |
| | JASON A. LEVINE<br>ATTORNEY TO BE NOTICED<br>HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER<br>One Logan Square 27th Fl<br>Philadelphia, PA  19103<br>USA<br>215-496-7038 Email:Jlevine@hangley.Com |
| | Joseph C. Gratz<br>ATTORNEY TO BE NOTICED<br>Morrison & Foerster LLP<br>425 Market Street<br>San Francisco, CA  94105<br>USA<br>415-268-7000 Fax: 415-268-7522 Email:Jgratz@mofo.Com |
| | MARK D. MARCISZEWSKI<br>ATTORNEY TO BE NOTICED<br>MORRISON FOERSTER LLP |

2:24cv1895, American Society For Testing And Materials V. Upcodes, Inc. Et Al

## Litigants                          ## Attorneys

707 Wilshire Blvd. Suite 6000
Los Angeles, CA  90017-3543
USA
213-892-5648 Email:Mmarciszewski@mofo.Com

THOMAS NELSON BROWN
ATTORNEY TO BE NOTICED
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
One Logan Square 27th Fl
Philadelphia, PA  19103
USA
215-568-6200 Email:Tnb@hangley.Com

UMEET K. SAJJAN
ATTORNEY TO BE NOTICED
MORRISON FOERSTER LLP
425 Market St.
San Francisco, CA  94105
USA
415-268-7000 Email:Usajjan@mofo.Com

Garrett Reynolds
**Defendant**

ADITYA V. KAMDAR
ATTORNEY TO BE NOTICED
Morrison & Foerster LLP
2100 L Street Nw Suite 900
Washington, DC  20037
USA
202-887-1500 Fax: 202-887-0763
Email:Akamdar@mofo.Com

Allyson R. Bennett

[Terminated: 09/19/2024]
Morrison & Foerster LLP
707 Wilshire Boulevard Suite 6000
Los Angeles, CA  90017-3543
USA
213-892-5200 Fax: 213-892-5454
Email:Abennett@mofo.Com

BONNIE M. HOFFMAN
ATTORNEY TO BE NOTICED
HANGLEY ARONCHICK SEGAL & PUDLIN
One Logan Square 27th Floor
Philadelphia, PA  19103
USA
215-496-7062 Email:Bhoffman@hangley.Com

HANNAH JIAM
ATTORNEY TO BE NOTICED
MORRISON FOERSTER LLP
425 Market St.
San Francisco, CA  94105-2482
USA
415-268-6086 Email:Hjiam@mofo.Com

JASON A. LEVINE
ATTORNEY TO BE NOTICED
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER

2:24cv1895, American Society For Testing And Materials V. Upcodes, Inc. Et Al

| Litigants | Attorneys |
|---|---|
| | One Logan Square 27th Fl<br>Philadelphia, PA  19103<br>USA<br>215-496-7038 Email:Jlevine@hangley.Com<br><br>Joseph C. Gratz<br>ATTORNEY TO BE NOTICED<br>Morrison & Foerster LLP<br>425 Market Street<br>San Francisco, CA  94105<br>USA<br>415-268-7000 Fax: 415-268-7522 Email:Jgratz@mofo.Com<br><br>MARK D. MARCISZEWSKI<br>ATTORNEY TO BE NOTICED<br>MORRISON FOERSTER LLP<br>707 Wilshire Blvd. Suite 6000<br>Los Angeles, CA  90017-3543<br>USA<br>213-892-5648 Email:Mmarciszewski@mofo.Com<br><br>THOMAS NELSON BROWN<br>ATTORNEY TO BE NOTICED<br>HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER<br>One Logan Square 27th Fl<br>Philadelphia, PA  19103<br>USA<br>215-568-6200 Email:Tnb@hangley.Com<br><br>UMEET K. SAJJAN<br>ATTORNEY TO BE NOTICED<br>MORRISON FOERSTER LLP<br>425 Market St.<br>San Francisco, CA  94105<br>USA<br>415-268-7000 Email:Usajjan@mofo.Com |
| Scott Reynolds<br>**Defendant** | ADITYA V. KAMDAR<br>ATTORNEY TO BE NOTICED<br>Morrison & Foerster LLP<br>2100 L Street Nw Suite 900<br>Washington, DC  20037<br>USA<br>202-887-1500 Fax: 202-887-0763<br>Email:Akamdar@mofo.Com<br><br>Allyson R. Bennett<br><br>[Terminated: 09/19/2024]<br>Morrison & Foerster LLP<br>707 Wilshire Boulevard Suite 6000<br>Los Angeles, CA  90017-3543<br>USA<br>213-892-5200 Fax: 213-892-5454<br>Email:Abennett@mofo.Com<br><br>BONNIE M. HOFFMAN<br>ATTORNEY TO BE NOTICED<br>HANGLEY ARONCHICK SEGAL & PUDLIN |

## Litigants

## Attorneys

One Logan Square 27th Floor
Philadelphia, PA  19103
USA
215-496-7062 Email:Bhoffman@hangley.Com

HANNAH JIAM
ATTORNEY TO BE NOTICED
MORRISON FOERSTER LLP
425 Market St.
San Francisco, CA  94105-2482
USA
415-268-6086 Email:Hjiam@mofo.Com

JASON A. LEVINE
ATTORNEY TO BE NOTICED
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
One Logan Square 27th Fl
Philadelphia, PA  19103
USA
215-496-7038 Email:Jlevine@hangley.Com

Joseph C. Gratz
ATTORNEY TO BE NOTICED
Morrison & Foerster LLP
425 Market Street
San Francisco, CA  94105
USA
415-268-7000 Fax: 415-268-7522 Email:Jgratz@mofo.Com

MARK D. MARCISZEWSKI
ATTORNEY TO BE NOTICED
MORRISON FOERSTER LLP
707 Wilshire Blvd. Suite 6000
Los Angeles, CA  90017-3543
USA
213-892-5648 Email:Mmarciszewski@mofo.Com

THOMAS NELSON BROWN
ATTORNEY TO BE NOTICED
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
One Logan Square 27th Fl
Philadelphia, PA  19103
USA
215-568-6200 Email:Tnb@hangley.Com

UMEET K. SAJJAN
ATTORNEY TO BE NOTICED
MORRISON FOERSTER LLP
425 Market St.
San Francisco, CA  94105
USA
415-268-7000 Email:Usajjan@mofo.Com

Public Knowledge
**Movant**

SAMUEL W. SILVER
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Welsh & Recker, P.C.
306 Walnut St
Philadelphia, PA  19106
USA
267-764-5492 Fax: 985-617-1021

| Litigants | Attorneys |
|---|---|
| | Email:Ssilver@welshrecker.Com |
| iFixit, Inc.<br>**Movant** | SAMUEL W. SILVER<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Welsh & Recker, P.C.<br>306 Walnut St<br>Philadelphia, PA  19106<br>USA<br>267-764-5492 Fax: 985-617-1021<br>Email:Ssilver@welshrecker.Com |
| Electronic Frontier Foundation<br>**Movant** | SAMUEL W. SILVER<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Welsh & Recker, P.C.<br>306 Walnut St<br>Philadelphia, PA  19106<br>USA<br>267-764-5492 Fax: 985-617-1021<br>Email:Ssilver@welshrecker.Com |
| Garrett Reynolds<br>**Counter Claimant** | ADITYA V. KAMDAR<br>ATTORNEY TO BE NOTICED<br>Morrison & Foerster LLP<br>2100 L Street Nw Suite 900<br>Washington, DC  20037<br>USA<br>202-887-1500 Fax: 202-887-0763<br>Email:Akamdar@mofo.Com<br><br>Allyson R. Bennett<br><br>[Terminated: 09/19/2024]<br>Morrison & Foerster LLP<br>707 Wilshire Boulevard Suite 6000<br>Los Angeles, CA  90017-3543<br>USA<br>213-892-5200 Fax: 213-892-5454<br>Email:Abennett@mofo.Com<br><br>BONNIE M. HOFFMAN<br>ATTORNEY TO BE NOTICED<br>HANGLEY ARONCHICK SEGAL & PUDLIN<br>One Logan Square 27th Floor<br>Philadelphia, PA  19103<br>USA<br>215-496-7062 Email:Bhoffman@hangley.Com<br><br>HANNAH JIAM<br>ATTORNEY TO BE NOTICED<br>MORRISON FOERSTER LLP<br>425 Market St.<br>San Francisco, CA  94105-2482<br>USA<br>415-268-6086 Email:Hjiam@mofo.Com<br><br>JASON A. LEVINE<br>ATTORNEY TO BE NOTICED<br>HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER<br>One Logan Square 27th Fl<br>Philadelphia, PA  19103<br>USA |

| Litigants | Attorneys |
|---|---|
| | 215-496-7038 Email:Jlevine@hangley.Com |

Joseph C. Gratz
ATTORNEY TO BE NOTICED
Morrison & Foerster LLP
425 Market Street
San Francisco, CA  94105
USA
415-268-7000 Fax: 415-268-7522 Email:Jgratz@mofo.Com

MARK D. MARCISZEWSKI
ATTORNEY TO BE NOTICED
MORRISON FOERSTER LLP
707 Wilshire Blvd. Suite 6000
Los Angeles, CA  90017-3543
USA
213-892-5648 Email:Mmarciszewski@mofo.Com

THOMAS NELSON BROWN
ATTORNEY TO BE NOTICED
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
One Logan Square 27th Fl
Philadelphia, PA  19103
USA
215-568-6200 Email:Tnb@hangley.Com

UMEET K. SAJJAN
ATTORNEY TO BE NOTICED
MORRISON FOERSTER LLP
425 Market St.
San Francisco, CA  94105
USA
415-268-7000 Email:Usajjan@mofo.Com

**Upcodes, Inc.**
**Counter Claimant**

ADITYA V. KAMDAR
ATTORNEY TO BE NOTICED
Morrison & Foerster LLP
2100 L Street Nw Suite 900
Washington, DC  20037
USA
202-887-1500 Fax: 202-887-0763
Email:Akamdar@mofo.Com

Allyson R. Bennett

[Terminated: 09/19/2024]
Morrison & Foerster LLP
707 Wilshire Boulevard Suite 6000
Los Angeles, CA  90017-3543
USA
213-892-5200 Fax: 213-892-5454
Email:Abennett@mofo.Com

BONNIE M. HOFFMAN
ATTORNEY TO BE NOTICED
HANGLEY ARONCHICK SEGAL & PUDLIN
One Logan Square 27th Floor
Philadelphia, PA  19103
USA

| Litigants | Attorneys |
|---|---|
| | 215-496-7062 Email:Bhoffman@hangley.Com |

HANNAH JIAM
ATTORNEY TO BE NOTICED
MORRISON FOERSTER LLP
425 Market St.
San Francisco, CA  94105-2482
USA
415-268-6086 Email:Hjiam@mofo.Com

JASON A. LEVINE
ATTORNEY TO BE NOTICED
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
One Logan Square 27th Fl
Philadelphia, PA  19103
USA
215-496-7038 Email:Jlevine@hangley.Com

Joseph C. Gratz
ATTORNEY TO BE NOTICED
Morrison & Foerster LLP
425 Market Street
San Francisco, CA  94105
USA
415-268-7000 Fax: 415-268-7522 Email:Jgratz@mofo.Com

MARK D. MARCISZEWSKI
ATTORNEY TO BE NOTICED
MORRISON FOERSTER LLP
707 Wilshire Blvd. Suite 6000
Los Angeles, CA  90017-3543
USA
213-892-5648 Email:Mmarciszewski@mofo.Com

THOMAS NELSON BROWN
ATTORNEY TO BE NOTICED
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
One Logan Square 27th Fl
Philadelphia, PA  19103
USA
215-568-6200 Email:Tnb@hangley.Com

UMEET K. SAJJAN
ATTORNEY TO BE NOTICED
MORRISON FOERSTER LLP
425 Market St.
San Francisco, CA  94105
USA
415-268-7000 Email:Usajjan@mofo.Com

Scott Reynolds
**Counter Claimant**

ADITYA V. KAMDAR
ATTORNEY TO BE NOTICED
Morrison & Foerster LLP
2100 L Street Nw Suite 900
Washington, DC  20037
USA
202-887-1500 Fax: 202-887-0763
Email:Akamdar@mofo.Com

| Litigants | Attorneys |
|---|---|

| Litigants | Attorneys |
|---|---|
| | Allyson R. Bennett<br><br>[Terminated: 09/19/2024]<br>Morrison & Foerster LLP<br>707 Wilshire Boulevard Suite 6000<br>Los Angeles, CA  90017-3543<br>USA<br>213-892-5200 Fax: 213-892-5454<br>Email:Abennett@mofo.Com<br><br>BONNIE M. HOFFMAN<br>ATTORNEY TO BE NOTICED<br>HANGLEY ARONCHICK SEGAL & PUDLIN<br>One Logan Square 27th Floor<br>Philadelphia, PA  19103<br>USA<br>215-496-7062 Email:Bhoffman@hangley.Com<br><br>HANNAH JIAM<br>ATTORNEY TO BE NOTICED<br>MORRISON FOERSTER LLP<br>425 Market St.<br>San Francisco, CA  94105-2482<br>USA<br>415-268-6086 Email:Hjiam@mofo.Com<br><br>JASON A. LEVINE<br>ATTORNEY TO BE NOTICED<br>HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER<br>One Logan Square 27th Fl<br>Philadelphia, PA  19103<br>USA<br>215-496-7038 Email:Jlevine@hangley.Com<br><br>Joseph C. Gratz<br>ATTORNEY TO BE NOTICED<br>Morrison & Foerster LLP<br>425 Market Street<br>San Francisco, CA  94105<br>USA<br>415-268-7000 Fax: 415-268-7522 Email:Jgratz@mofo.Com<br><br>MARK D. MARCISZEWSKI<br>ATTORNEY TO BE NOTICED<br>MORRISON FOERSTER LLP<br>707 Wilshire Blvd. Suite 6000<br>Los Angeles, CA  90017-3543<br>USA<br>213-892-5648 Email:Mmarciszewski@mofo.Com<br><br>THOMAS NELSON BROWN<br>ATTORNEY TO BE NOTICED<br>HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER<br>One Logan Square 27th Fl<br>Philadelphia, PA  19103<br>USA<br>215-568-6200 Email:Tnb@hangley.Com |

| Litigants | Attorneys |
|---|---|
| | UMEET K. SAJJAN<br>ATTORNEY TO BE NOTICED<br>MORRISON FOERSTER LLP<br>425 Market St.<br>San Francisco, CA 94105<br>USA<br>415-268-7000 Email:Usajjan@mofo.Com |
| American Society for Testing and Materials<br>**Counter Defendant** | GABRIELLE VELKES<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>DLA PIPER LLP<br>1251 Avenue Of The Americas<br>New York, NY 10020<br>USA<br>212-335-4812 Email:Gabrielle.Velkes@us.Dlapiper.Com |
| | Jane W. Wise<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>DLA PIPER LLP (US)<br>500 Eighth Street, Nw<br>Washington, DC 20004<br>USA<br>202-799-4149 Email:Jane.Wise@us.Dlapiper.Com |
| | JENNA N. ROWAN<br>ATTORNEY TO BE NOTICED<br>DLA PIPER LLP (US)<br>500 Eighth Street, N.W.<br>Washington, DC 20004<br>USA<br>202-799-4373 Email:Jenna.Rowan@us.Dlapiper.Com |
| | J. Kevin Fee<br>ATTORNEY TO BE NOTICED<br>DLA Piper LLP (US)<br>500 Eighth Street, Nw<br>Washington, DC 20004<br>USA<br>202-799-4441 Fax: 202-799-5441<br>Email:Kevin.Fee@us.Dlapiper.Com |

# Proceedings

| # | Date | Proceeding Text | Source |
|---|---|---|---|
| 1 | 05/03/2024 | COMPLAINT against GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC. ( Filing fee $ 405 receipt number APAEDC-17443651.), filed by AMERICAN SOCIETY FOR TESTING AND MATERIALS. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Civil Cover Sheet, # 5 Designation Form)(FEE, J.) (Entered: 05/03/2024) | |
| 2 | 05/03/2024 | Report Of The Filing or Determination Of An Action Regarding a Patent or Trademark by AMERICAN SOCIETY FOR TESTING AND MATERIALS. (FEE, J.) (Entered: 05/03/2024) | |
| 3 | 05/03/2024 | Report Of The Filing Or Determination Of An Action or Appeal Regarding A Copyright by AMERICAN SOCIETY FOR TESTING AND MATERIALS. (FEE, J.) (Entered: 05/03/2024) | |
| 4 | 05/03/2024 | Disclosure Statement Form pursuant to FRCP 7.1 by AMERICAN SOCIETY FOR TESTING AND MATERIALS.(FEE, J.) (Entered: | |

2:24cv1895, American Society For Testing And Materials V. Upcodes, Inc. Et Al

| # | Date | Proceeding Text | Source |
|---|---|---|---|
| | | 05/03/2024) | |
| 5 | 05/03/2024 | Summons Issued as to GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC.. Forwarded To: E-MAILED TO PLAINTIFF'S COUNSEL on 5/3/24 (JL) (Entered: 05/03/2024) | |
| 6 | 05/03/2024 | MOTION for Preliminary Injunction filed by AMERICAN SOCIETY FOR TESTING AND MATERIALS.Preliminary Injunction. (Attachments: # 1 Text of Proposed Order)(FEE, J.) (Entered: 05/03/2024) | |
| 7 | 05/03/2024 | Memorandum of Law re: 6 MOTION for Preliminary Injunction filed by AMERICAN SOCIETY FOR TESTING AND MATERIALS. Memorandum of Law. (Attachments: # 1 Declaration Thomas O'Brien, Jr., # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Declaration Jane W. Wise, # 16 Exhibit 14, # 17 Exhibit 15, # 18 Exhibit 16, # 19 Exhibit 17, # 20 Exhibit 18, # 21 Exhibit 19, # 22 Exhibit 20, # 23 Exhibit 21, # 24 Exhibit 22, # 25 Exhibit 23, # 26 Exhibit 24, # 27 Exhibit 25, # 28 Exhibit 26, # 29 Exhibit 27, # 30 Exhibit 28, # 31 Exhibit 29, # 32 Exhibit 30, # 33 Exhibit 31, # 34 Exhibit 32, # 35 Exhibit 33, # 36 Exhibit 34, # 37 Exhibit 35, # 38 Exhibit 36, # 39 Exhibit 37, # 40 Exhibit 38, # 41 Exhibit 39, # 42 Exhibit 40, # 43 Exhibit 41, # 44 Exhibit 42, # 45 Exhibit 43, # 46 Exhibit 44, # 47 Exhibit 45, # 48 Exhibit 46, # 49 Exhibit 47, # 50 Exhibit 48, # 51 Exhibit 49, # 52 Exhibit 50, # 53 Exhibit 51, # 54 Exhibit 52, # 55 Exhibit 53, # 56 Exhibit 54, # 57 Exhibit 55, # 58 Exhibit 56, # 59 Exhibit 57, # 60 Exhibit 58, # 61 Exhibit 59, # 62 Exhibit 60, # 63 Exhibit 61)(FEE, J.) Modified on 5/6/2024 (tjd). (Entered: 05/03/2024) | |
| 8 | 05/06/2024 | MOTION for Leave to File Exhibits Under Seal filed by AMERICAN SOCIETY FOR TESTING AND MATERIALS.. (Attachments: # 1 Text of Proposed Order)(FEE, J.) (Entered: 05/06/2024) | |
| 9 | 05/06/2024 | EXHIBITS 14-23 Filed Under Seal re: 7 Memorandum of Law in Support of 6 Motion for Preliminary Injunction by AMERICAN SOCIETY FOR TESTING AND MATERIALS. **(FILED UNDER SEAL)** (tjd) (Additional attachment(s) added on 5/6/2024: # 1 Ex 15, # 2 Ex 16, # 3 Ex 17, # 4 Ex 18, # 5 Ex 19, # 6 Ex 20, # 7 Ex 21, # 8 Ex 22, # 9 Ex 23) (tjd). (Entered: 05/06/2024) | |
| 10 | 05/06/2024 | Copy of Form to Register of Copyrights. ( (1) Exhibit) (fdc). (Entered: 05/06/2024) | |
| | 05/07/2024 | Doc. 10 mailed to Copyright Office (er) (Entered: 05/07/2024) | |
| 11 | 05/08/2024 | ORDER granting 8 MOTION FOR LEAVE TO FILE. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 5/8/24.5/8/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 05/08/2024) | |
| 12 | 05/13/2024 | AFFIDAVIT of Service by Selena Cabrera re: served Complaint upon CSC Agent by Personal on May 7, 2024 (FEE, J.) (Entered: 05/13/2024) | |
| 13 | 05/13/2024 | CERTIFICATE OF SERVICE by AMERICAN SOCIETY FOR TESTING AND MATERIALS re 6 MOTION for Preliminary Injunction , 7 MOTION for Preliminary Injunction Memorandum of Law, 8 MOTION for Leave to File Exhibits Under Seal (FEE, J.) (Entered: 05/13/2024) | |
| 14 | 05/16/2024 | APPLICATION for Admission Pro Hac Vice of Gabrielle Velkes by AMERICAN SOCIETY FOR TESTING AND MATERIALS. ( Filing fee $ 75 receipt number APAEDC-17473908.). (FEE, J.) (Entered: 05/16/2024) | |
| 15 | 05/17/2024 | ORDER THAT THE APPLICATION OF GABRIELLE VELKES, ESQ. TO PRACTICE IN THIS COURT PURSUANT TO LRCP 83.5.2(B) IS GRANTED. SIGNED BY DISTRICT JUDGE ANITA | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | B. BRODY ON 5/17/24. 5/17/24 ENTERED & E-MAILED. MAILED UNREPS. (fdc) (Entered: 05/17/2024) | |
| 16 | 05/17/2024 | APPLICATION for Admission Pro Hac Vice of Jane W. Wise by AMERICAN SOCIETY FOR TESTING AND MATERIALS. ( Filing fee $ 75 receipt number APAEDC-17475962.). (FEE, J.) (Entered: 05/17/2024) | |
| 17 | 05/17/2024 | ORDER THAT THE APPLICATION OF JANE WISE, ESQ. TO PRACTICE IN THIS COURT PURSUANT TO LRCP 83.5.2(B) IS GRANTED. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 5/17/24. 5/17/24 ENTERED & E-MAILED. MAILED UNREPS. (fdc) (Entered: 05/17/2024) | |
| 18 | 05/20/2024 | NOTICE of Appearance by BONNIE M. HOFFMAN on behalf of GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC. with Certificate of Service(HOFFMAN, BONNIE) Modified on 5/21/2024 (tjd). (Entered: 05/20/2024) | |
| 19 | 05/20/2024 | NOTICE of Appearance by THOMAS NELSON BROWN on behalf of GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC. with Certificate of Service(BROWN, THOMAS) Modified on 5/21/2024 (tjd). (Entered: 05/20/2024) | |
| 20 | 05/20/2024 | MOTION for Discovery Motion for a Conference to Set Discovery and Briefing Schedule on Preliminary Injunction filed by GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC. Certificate of Service. (Attachments: # 1 Text of Proposed Order, # 2 Certificate of Service)(HOFFMAN, BONNIE) Modified on 5/21/2024 (tjd). (Entered: 05/20/2024) | |
| 21 | 05/21/2024 | MOTION to Expedite Unopposed Motion to Expedite and for extension and shortening of time filed by GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC..Certificate of Uncontested Status, Certificate of Service. (Attachments: # 1 Text of Proposed Order, # 2 Supplement Certificate of Uncontested Status for Unopposed Motion to Expedite and Extend Time, # 3 Certificate of Service)(BROWN, THOMAS) (Entered: 05/21/2024) | |
| 22 | 05/21/2024 | MOTION for Pro Hac Vice for Allyson R. Bennett ( Filing fee $ 75 receipt number APAEDC-17482133.) filed by GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC..Certificate of Service.(BROWN, THOMAS) (Entered: 05/21/2024) | |
| 23 | 05/21/2024 | ORDER THAT DEFENDANTS' 21 MOTION TO EXPEDITE CONSIDERATION OF DEFENDANTS' MOTION FOR EXPEDITED DISCOVERY IS GRANTED. PLAINTIFF MUST RESPOND TO DEFENDANTS' MOTION FOR EXPEDITED DISCOVERY 20 ON OR BEFORE 5/23/24. DEFENDANTS MUST RESPOND TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION 6 ON OR BEFORE 5/31/24. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 5/21/24.5/21/24 ENTERED & E-MAILED.(fdc) (Entered: 05/21/2024) | |
| | 05/21/2024 | Set/Reset Deadlines as to 6 MOTION for Preliminary Injunction . RESPONSES DUE BY 5/31/2024. (fdc) (Entered: 05/21/2024) | |
| | 05/21/2024 | Set/Reset Deadlines as to 20 MOTION for Discovery Motion for a Conference to Set Discovery and Briefing Schedule on Preliminary Injunction. RESPONSES DUE BY 5/23/2024. (fdc) (Entered: 05/21/2024) | |
| 24 | 05/23/2024 | ORDER THAT DEFENDANTS' 22 MOTION FOR THE PRO HAC VICE ADMISSION OF ALLYSON R. BENNETT, ESQ. IS GRANTED. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 5/23/24.5/23/24 ENTERED & E-MAILED.(fdc) (Entered: 05/23/2024) | |
| 25 | 05/23/2024 | RESPONSE in Opposition re 20 MOTION for Discovery Motion for a Conference to Set Discovery and Briefing Schedule on Preliminary Injunction  filed by AMERICAN SOCIETY FOR | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | TESTING AND MATERIALS. (FEE, J.) (Entered: 05/23/2024) | |
| 26 | 05/24/2024 | MOTION for Extension of Time to File Answer re 1 Complaint (Attorney), Unopposed Motion to Extend the Deadline for Defendants to Answer the Complaint (ECF #1) filed by GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC..Certificate of Uncontested Status, Certificate of Service. (Attachments: # 1 Text of Proposed Order, # 2 Supplement Certificate of Uncontested Status for Unopposed Motion to Extend the Deadline for Defendants to Answer the Complaint (ECF #1), # 3 Certificate of Service)(BROWN, THOMAS) (Entered: 05/24/2024) | |
| 27 | 05/24/2024 | REPLY to Response to Motion re 20 MOTION for Discovery Motion for a Conference to Set Discovery and Briefing Schedule on Preliminary Injunction  filed by GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC.. (BENNETT, ALLYSON ) (Entered: 05/24/2024) | |
| 28 | 05/28/2024 | NOTICE of Hearing: RULE 16 TELEPHONE CONFERENCE SET FOR 7/22/2024 10:30 AM BEFORE DISTRICT JUDGE ANITA B. BRODY.(jwl) (Entered: 05/28/2024) | |
| 29 | 05/28/2024 | ORDER granting 26 MOTION FOR EXTENSION OF TIME TO ANSWER RE 26 MOTION for Extension of Time to File Answer re 1 Complaint (Attorney), Unopposed Motion to Extend the Deadline for Defendants to Answer the Complaint (ECF #1) GARRETT REYNOLDS answer due 6/18/2024; SCOTT REYNOLDS answer due 6/18/2024; UPCODES, INC. answer due 6/18/2024. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 5/28/24.5/28/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 05/28/2024) | |
| 30 | 05/29/2024 | MOTION for Pro Hac Vice Joseph C. Gratz ( Filing fee $ 75 receipt number APAEDC-17497938.) filed by GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC..Certificate of Service.(BROWN, THOMAS) (Entered: 05/29/2024) | |
| 31 | 05/29/2024 | ORDER THAT DEFENDANTS' 30 MOTION FOR THE PRO HAC VICE ADMISSION OF JOSEPH C. GRATZ, ESQ. IS GRANTED. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 5/29/24.5/29/24 ENTERED & E-MAILED.(fdc) (Entered: 05/29/2024) | |
| 32 | 05/29/2024 | Letter dated 05/29/2024 by GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC.. (HOFFMAN, BONNIE) (Entered: 05/29/2024) | |
| 33 | 05/29/2024 | Letter dated May 29, 2024 by AMERICAN SOCIETY FOR TESTING AND MATERIALS. (FEE, J.) (Entered: 05/29/2024) | |
| 34 | 05/30/2024 | NOTICE of Hearing: IN-PERSON CONFERENCE SET FOR 6/5/2024 12:30 PM IN Judge's Chambers BEFORE DISTRICT JUDGE ANITA B. BRODY.(jwl) (Entered: 05/30/2024) | |
| 35 | 05/30/2024 | ORDER STAYING CASE. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 5/30/24. 5/30/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 05/30/2024) | |
| 36 | 05/30/2024 | MOTION for Pro Hac Vice Hannah Jiam ( Filing fee $ 75 receipt number APAEDC-17502881.) filed by GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC..Certificate of Service.(BROWN, THOMAS) (Entered: 05/30/2024) | |
| 37 | 05/30/2024 | MOTION for Pro Hac Vice Mark D. Marciszewski ( Filing fee $ 75 receipt number APAEDC-17502916.) filed by GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC..Certificate of Service.(BROWN, THOMAS) (Entered: 05/30/2024) | |
| 38 | 05/30/2024 | ORDER THAT DEFENDANTS' 36 MOTION FOR THE PRO HAC VICE ADMISSION OF HANNAH JIAM, ESQ. IS GRANTED. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 5/30/24.5/30/24 ENTERED & E-MAILED.(fdc) (Entered: 05/30/2024) | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| 39 | 05/30/2024 | ORDER THAT DEFENDANTS' 37 MOTION FOR THE PRO HAC VICE ADMISSION OF MARK D. MARCISZEWSKI, ESQ. IS GRANTED. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 5/30/24.5/30/24 ENTERED & E-MAILED.(fdc) (Entered: 05/30/2024) | |
| 40 | 06/04/2024 | NOTICE of Appearance by JASON A. LEVINE on behalf of GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC. with Certificate of Service(LEVINE, JASON) (Entered: 06/04/2024) | |
| 41 | 06/05/2024 | Minute Entry for proceedings held on 6/5/2024 before DISTRICT JUDGE ANITA B. BRODY IN PERSON Conference Court Reporter: ESR. (JL) Modified on 6/7/2024 (tjd). (Entered: 06/05/2024) | |
| 42 | 06/07/2024 | Letter dated June 7, 2024 by AMERICAN SOCIETY FOR TESTING AND MATERIALS. (Attachments: # 1 Text of Proposed Order Schedule For Preliminary Injunction)(FEE, J.) (Entered: 06/07/2024) | |
| 43 | 06/07/2024 | Disclosure Statement Form pursuant to FRCP 7.1 with Certificate of Service by UPCODES, INC..(BENNETT, ALLYSON ) (Entered: 06/07/2024) | |
| 44 | 06/10/2024 | ORDER resolving as moot 20 MOTION FOR DISCOVERY. A hearing on ASTMs Revised Motion for a Preliminary Injunction will takeplace on August 26, 2024. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 6/10/24.6/10/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 06/10/2024) | |
| 45 | 06/10/2024 | NOTICE of Hearing on Motion 6 MOTION for Preliminary Injunction : MOTION HEARING SET FOR 8/26/2024 10:30 AM IN Courtroom 7B BEFORE DISTRICT JUDGE ANITA B. BRODY.(jwl) (Entered: 06/10/2024) | |
| 46 | 06/11/2024 | NOTICE re: Cancellation of Hearing - Rule 16, scheduled for 7/22/24(jwl) (Entered: 06/11/2024) | |
| 47 | 06/12/2024 | RESPONSE to Motion re 6 MOTION for Preliminary Injunction filed by GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC.. (GRATZ, JOSEPH) (Entered: 06/12/2024) | |
| 48 | 06/12/2024 | NOTICE by GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC. re 47 Response to Motion - Index of Appendices to Defendants' Legal Arguments in Response to Motion for Preliminary Injunction (Attachments: # 1 Appendix 1, # 2 Appendix 2, # 3 Appendix 3, # 4 Appendix 4, # 5 Appendix 5, # 6 Appendix 6, # 7 Appendix 7, # 8 Appendix 8, # 9 Appendix 9, # 10 Appendix 10)(GRATZ, JOSEPH) (Entered: 06/12/2024) | |
| 49 | 06/13/2024 | TRANSCRIPT of Conference (held in Chambers) held on 6/5/24, before Judge Brody. Court Reporter/Transcriber: Liberty Transcripts. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 7/5/2024. Redacted Transcript Deadline set for 7/15/2024. Release of Transcript Restriction set for 9/11/2024. (fdc) (Entered: 06/13/2024) | |
| 50 | 06/13/2024 | Notice of Filing of Official Transcript with Certificate of Service re 49 Transcript - PDF, 6/13/24 Entered & E-mailed. (fdc) (Entered: 06/13/2024) | |
| 51 | 06/17/2024 | Letter by GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC.. (Attachments: # 1 Declaration of Reynolds)(BENNETT, ALLYSON ) (Entered: 06/17/2024) | |
| 52 | 06/17/2024 | Letter dated June 17, 2024 by AMERICAN SOCIETY FOR TESTING AND MATERIALS. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(FEE, J.) (Entered: 06/17/2024) | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| 53 | 06/18/2024 | ANSWER to Complaint , COUNTERCLAIM against AMERICAN SOCIETY FOR TESTING AND MATERIALS by GARRETT REYNOLDS, UPCODES, INC., SCOTT REYNOLDS.(BROWN, THOMAS) (Entered: 06/18/2024) | |
| 54 | 06/21/2024 | ORDER THAT PLAINTIFFS LETTER MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO REQUEST FOR PRODUCTION NO. 1 52 IS GRANTED. DEFENDANTS ARE ORDERED TO PRODUCE DOCUMENTS RESPONSIVE TO PLAINTIFFS REQUEST FOR PRODUCTION NO. 1, TO THE EXTENT REASONABLY AND TECHNOLOGICALLY FEASIBLE, ON A ROLLING BASIS TO BE COMPLETED ON OR BEFORE JULY 19, 2024. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 6/20/24. 6/21/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 06/21/2024) | |
| 55 | 07/03/2024 | Stipulated Protective Order  filed by GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC. Certificate of Service.(BENNETT, ALLYSON ) Modified on 7/8/2024 (tjd). (Entered: 07/03/2024) | |
| 56 | 07/09/2024 | MOTION for Pro Hac Vice Aditya Kamdar ( Filing fee $ 75 receipt number APAEDC-17587874.) filed by GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC..Certificate of Service.(BROWN, THOMAS) (Entered: 07/09/2024) | |
| 57 | 07/09/2024 | MOTION to Dismiss Defendants' Counterclaims filed by AMERICAN SOCIETY FOR TESTING AND MATERIALS.Memorandum, Certificate of Service, Proposed Order. (Attachments: # 1 Memorandum, # 2 Text of Proposed Order)(FEE, J.) (Entered: 07/09/2024) | |
| 58 | 07/10/2024 | ORDER THAT DEFENDANTS' 56 MOTION FOR THE PRO HAC VICE ADMISSION OF ADITYA KAMDAR, ESQ. IS GRANTED. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 7/10/24.7/10/24 ENTERED & E-MAILED.(fdc) (Entered: 07/10/2024) | |
| 59 | 07/15/2024 | MOTION for Preliminary Injunction Revised filed by AMERICAN SOCIETY FOR TESTING AND MATERIALS.. (Attachments: # 1 Text of Proposed Order)(FEE, J.) (Entered: 07/15/2024) | |
| 60 | 07/15/2024 | Memorandum re 59 MOTION for Preliminary Injunction Revised filed by AMERICAN SOCIETY FOR TESTING AND MATERIALS. (Attachments: # 1 Appendix A, # 2 Declaration of Thomas B. O'Brien, Jr., # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10, # 13 Exhibit 11, # 14 Exhibit 12, # 15 Exhibit 13, # 16 Declaration of Jane W. Wise, # 17 Exhibit 14, # 18 Exhibit 15, # 19 Exhibit 16, # 20 Exhibit 17, # 21 Exhibit 18, # 22 Exhibit 19, # 23 Exhibit 20, # 24 Exhibit 21, # 25 Exhibit 22, # 26 Exhibit 23, # 27 Exhibit 24, # 28 Exhibit 25, # 29 Exhibit 26, # 30 Exhibit 27, # 31 Exhibit 28, # 32 Exhibit 29, # 33 Exhibit 30, # 34 Exhibit 31, # 35 Exhibit 32, # 36 Exhibit 33, # 37 Exhibit 34, # 38 Exhibit 35, # 39 Exhibit 36, # 40 Exhibit 37, # 41 Exhibit 38, # 42 Exhibit 39, # 43 Exhibit 40, # 44 Exhibit 41, # 45 Exhibit 42, # 46 Exhibit 43, # 47 Exhibit 44, # 48 Exhibit 45, # 49 Exhibit 46, # 50 Exhibit 47, # 51 Exhibit 48, # 52 Exhibit 49, # 53 Exhibit 50, # 54 Exhibit 51, # 55 Exhibit 52, # 56 Exhibit 53, # 57 Exhibit 54, # 58 Exhibit 55, # 59 Exhibit 56, # 60 Exhibit 57, # 61 Exhibit 58, # 62 Exhibit 59, # 63 Exhibit 60, # 64 Exhibit 61, # 65 Exhibit 62, # 66 Exhibit 63, # 67 Exhibit 64, # 68 Exhibit 65, # 69 Exhibit 66, # 70 Exhibit 67, # 71 Exhibit 68, # 72 Exhibit 69, # 73 Exhibit 70, # 74 Exhibit 71, # 75 Exhibit 72, # 76 Exhibit 73, # 77 Exhibit 74, # 78 Exhibit 75, # 79 Exhibit 76, # 80 Exhibit 77, # 81 Exhibit 78, # 82 Exhibit 79, # 83 Exhibit 80)(FEE, J.) (Entered: 07/15/2024) | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| 61 | 07/15/2024 | MOTION to Seal Revised Motion for Preliminary Injunction filed by AMERICAN SOCIETY FOR TESTING AND MATERIALS.. (Attachments: # 1 Text of Proposed Order)(FEE, J.) (Entered: 07/15/2024) | |
| 62 | 07/15/2024 | Revised Memorandum of Law in Support Filed Under Seal re 59 MOTION for Preliminary Injunction Revised filed by AMERICAN SOCIETY FOR TESTING AND MATERIALS. Exhibits 14-23, 65-66, 68. **(FILED UNDER SEAL)** (tjd) (Additional attachment(s) added on 7/16/2024: # 1 Ex 14, # 2 Ex 15, # 3 Ex 16, # 4 Ex 17, # 5 Ex 18, # 6 Ex 19, # 7 Ex 20, # 8 Ex 21, # 9 Ex 22, # 10 Ex 23, # 11 Ex 65, # 12 Ex 66, # 13 Ex 68) (tjd). (Entered: 07/16/2024) | |
| 63 | 07/17/2024 | ORDER THAT PLAINTIFF'S 61 MOTION FOR LEAVE TO FILE EXHIBITS UNDER SEAL IS GRANTED. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 7/16/24.7/17/24 ENTERED & E-MAILED.(fdc) (Entered: 07/17/2024) | |
| 64 | 07/23/2024 | AMENDED DOCUMENT by GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC.. Amendment to 53 Answer to Complaint, Counterclaim Defendants' Amended Answer To Complaint. (GRATZ, JOSEPH) (Entered: 07/23/2024) | |
| 65 | 07/23/2024 | RESPONSE in Opposition re 57 MOTION to Dismiss Defendants' Counterclaims Defendants Upcodes, Inc., Garrett Reynolds, And Scott Reynolds' Opposition To Plaintiff's Motion To Dismiss Defendants' Counterclaims filed by GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC.. (Attachments: # 1 Text of Proposed Order)(GRATZ, JOSEPH) (Entered: 07/23/2024) | |
| 66 | 07/29/2024 | RESPONSE in Opposition re 59 MOTION for Preliminary Injunction Revised  filed by GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC.. (Attachments: # 1 Declaration of Joseph C. Gratz in Support of Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction, # 2 Exhibit 1 to the Declaration of Joseph C. Gratz, # 3 Exhibit 2 to the Declaration of Joseph C. Gratz, # 4 Exhibit 3 to the Declaration of Joseph C. Gratz, # 5 Exhibit 4 to the Declaration of Joseph C. Gratz, # 6 Exhibit 5 to the Declaration of Joseph C. Gratz, # 7 Exhibit 6 to the Declaration of Joseph C. Gratz, # 8 Exhibit 7 to the Declaration of Joseph C. Gratz, # 9 Exhibit 8 to the Declaration of Joseph C. Gratz, # 10 Exhibit 9 to the Declaration of Joseph C. Gratz, # 11 Exhibit 10 to the Declaration of Joseph C. Gratz, # 12 Exhibit 11 to the Declaration of Joseph C. Gratz, # 13 Exhibit 12 to the Declaration of Joseph C. Gratz, # 14 Declaration of Garrett Reynolds in Support of Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction, # 15 Exhibit A to the Declaration of Garrett Reynolds, # 16 Exhibit B to the Declaration of Garrett Reynolds, # 17 Exhibit C to the Declaration of Garrett Reynolds, # 18 Text of Proposed Order [Proposed] Order)(GRATZ, JOSEPH) (Entered: 07/29/2024) | |
| 67 | 07/29/2024 | MOTION to Seal Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Preliminary Injunction, Declaration of Joseph C. Gratz, and Exhibits 1 and 11 to Joseph C. Gratz's Declaration filed by GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC... (Attachments: # 1 Text of Proposed Order [Proposed] Order)(GRATZ, JOSEPH) (Entered: 07/29/2024) | |
| 68 | 07/29/2024 | Memorandum of Points and Authorities in Opposition Filed Under Seal re 59 MOTION for Preliminary Injunction Revised filed by GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC. Declaration, Exhibit 1, 11. **(FILED UNDER SEAL)** (tjd) (Additional attachment(s) added on 7/30/2024: # 1 Declaration, # 2 Ex 1, # 3 Ex 11) (tjd). (Entered: 07/30/2024) | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| 69 | 07/31/2024 | MOTION for Pro Hac Vice of Umeet K. Sajjan ( Filing fee $ 75 receipt number APAEDC-17638574.) filed by GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC..Certificate of Service.(HOFFMAN, BONNIE) (Entered: 07/31/2024) | |
| 70 | 07/31/2024 | ORDER THAT DEFENDANTS' 69 MOTION FOR THE PRO HAC VICE ADMISSION OF UMEET K. SAJJAN, ESQ. IS GRANTED. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 7/31/24.7/31/24 ENTERED & E-MAILED.(fdc) (Entered: 07/31/2024) | |
| 71 | 08/02/2024 | MOTION to File Amicus Brief in Support of Defendants' Opposition to Motion for Preliminary Injunction filed by Public Knowledge, iFixit, Inc., ELECTRONIC FRONTIER FOUNDATION.Certificate of Service. (Attachments: # 1 Brief, # 2 Text of Proposed Order)(SILVER, SAMUEL) (Entered: 08/02/2024) | |
| 72 | 08/07/2024 | ORDER THAT PLAINTIFF MUST RESPOND TO AMICI CURIAE ELECTRONIC FRONTIER FOUNDATION, IFIXIT, INC., AND PUBLIC KNOWLEDGE'S MOTION FOR LEAVE TO FILE AN AMICUS BRIEF 71 ON OR BEFORE 8/13/24. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 8/7/24. 8/7/24 ENTERED & E-MAILED.(fdc) (Entered: 08/07/2024) | |
| 73 | 08/12/2024 | REPLY to Response to Motion re 59 MOTION for Preliminary Injunction Revised  filed by AMERICAN SOCIETY FOR TESTING AND MATERIALS. (Attachments: # 1 Declaration of Thomas B. O'Brien, Jr., # 2 Exhibit 81, # 3 Exhibit 82, # 4 Exhibit 83, # 5 Exhibit 84, # 6 Declaration of Jane W. Wise, # 7 Exhibit 85, # 8 Exhibit 86, # 9 Exhibit 87, # 10 Exhibit 88, # 11 Exhibit 89, # 12 Exhibit 90, # 13 Exhibit 91, # 14 Exhibit 92, # 15 Exhibit 93, # 16 Exhibit 94, # 17 Exhibit 95, # 18 Exhibit 96, # 19 Exhibit 97, # 20 Exhibit 98, # 21 Exhibit 99, # 22 Exhibit 100, # 23 Exhibit 101, # 24 Exhibit 102)(FEE, J.) (Entered: 08/12/2024) | |
| 74 | 08/12/2024 | MOTION to Seal Reply In Support of Motion For Preliminary Injunction filed by AMERICAN SOCIETY FOR TESTING AND MATERIALS.. (Attachments: # 1 Text of Proposed Order)(FEE, J.) (Entered: 08/12/2024) | |
| 76 | 08/12/2024 | Reply Memorandum of Law in Support re 59 MOTION for Preliminary Injunction Revised filed by AMERICAN SOCIETY FOR TESTING AND MATERIALS. *FILED UNDER SEAL* (lisad, ) (Additional attachment(s) added on 8/13/2024: # 1 Ex. 81 (Sealed), # 2 Ex. 82 (SEALED), # 3 Ex. 84 - (SEALED), # 4 Ex. 85 (SEALED), # 5 Ex. 86 (SELAED), # 6 Ex. 87 (SEALED), # 7 Ex. 88 (SEALED), # 8 Ex. 89 (SEALED), # 9 Ex. 90 (SEALED), # 10 Ex. 91 (SEALED), # 11 Ex. 92 (SEALED), # 12 Ex. 93 (SEALED), # 13 Ex. 94 (SEALED), # 14 Ex. 95 (SEALED), # 15 Ex. 100 (SEALED() (lisad, ). (Entered: 08/13/2024) | |
| 75 | 08/13/2024 | ORDER THAT PLAINTIFF'S 74 MOTION FOR LEAVE TO FILE UNDER SEAL IS GRANTED. It is further ORDERED that the Clerk shall place the following documentsUNDER SEAL: ASTMs Reply Brief, Exhibits 81-82 and 84 to the OBrien Decl.and Exhibits 85-95 and 100 to the Wise Decl.Defendants must file redacted versions of the provisionally sealed materialsand sealed versions identifying the information to be maintained under seal byAugust 20, 2024.SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 8/13/24.8/13/24 ENTERED & E-MAILED.(fdc) (Entered: 08/13/2024) | |
| 77 | 08/13/2024 | RESPONSE in Opposition re 71 MOTION to File Amicus Brief in Support of Defendants' Opposition to Motion for Preliminary Injunction  filed by AMERICAN SOCIETY FOR TESTING AND MATERIALS. (Attachments: # 1 Text of Proposed Order, # 2 | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | Declaration of Jane W. Wise, # 3 Exhibit A)(FEE, J.) (Entered: 08/13/2024) | |
| 78 | 08/14/2024 | ORDER granting 71 MOTION TO FILE AMICUS BRIEF. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 8/14/24.8/14/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 08/14/2024) | |
| 79 | 08/15/2024 | MOTION for Pro Hac Vice Admissions for Jenna Rowan ( Filing fee $ 75 receipt number APAEDC-17677421.) filed by AMERICAN SOCIETY FOR TESTING AND MATERIALS.. (Attachments: # 1 Text of Proposed Order)(FEE, J.) (Entered: 08/15/2024) | |
| 80 | 08/16/2024 | ORDER THAT AMERICAN SOCIETY FOR TESTING AND MATERIALS'S 79 MOTION FOR THE PRO HAC VICE ADMISSION OF JENNA ROWAN, ESQ. IS GRANTED. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 8/16/24.8/16/24 ENTERED & E-MAILED.(fdc) (Entered: 08/16/2024) | |
| 81 | 08/20/2024 | Letter dated August 20, 2024 by AMERICAN SOCIETY FOR TESTING AND MATERIALS. (Attachments: # 1 Exhibit Dkt. 60 - Redacted, # 2 Exhibit Dkt 60-68 - Redacted, # 3 Exhibit Dkt. 66 - Redacted, # 4 Exhibit Dkt 66-1 - Redacted, # 5 Exhibit Dkt. 66-2 - Redacted, # 6 Exhibit Dkt. 73 - Redacted, # 7 Exhibit Dkt 73-7 - Redacted, # 8 Exhibit Dkt 73-8 - Redacted, # 9 Exhibit Dkt. 73-9 - Redacted, # 10 Exhibit Dkt. 73-10 - Redacted, # 11 Exhibit Dkt. 73-11 - Redacted, # 12 Exhibit Dkt 73-12 - Redacted, # 13 Exhibit Dkt 73-12 - Redacted)(FEE, J.) (Entered: 08/20/2024) | |
| 82 | 08/21/2024 | Memorandum of Law in Support Filed Under Seal re 59 MOTION for Preliminary Injunction Revised filed by AMERICAN SOCIETY FOR TESTING AND MATERIALS. Exhibit 65. **(FILED UNDER SEAL)** (tjd) (Additional attachment(s) added on 8/21/2024: # 1 Ex 65) (tjd). (Entered: 08/21/2024) | |
| 83 | 08/21/2024 | Memorandum in Opposition Filed Under Seal re 59 MOTION for Preliminary Injunction Revised filed by GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC. Declaration, Exhibit 1. **(FILED UNDER SEAL)** (tjd) (Additional attachment(s) added on 8/21/2024: # 1 Declaration, # 2 Ex 1) (tjd). (Entered: 08/21/2024) | |
| 84 | 08/21/2024 | Reply Memorandum Filed Under Seal re 59 MOTION for Preliminary Injunction Revised filed by AMERICAN SOCIETY FOR TESTING AND MATERIALS. Exhibits 85-91. (tjd) (Additional attachment(s) added on 8/21/2024: # 1 eX 85, # 2 Ex 86, # 3 Ex 87, # 4 Ex 88, # 5 Ex 89, # 6 Ex 90, # 7 Ex 91) (tjd). (Entered: 08/21/2024) | |
| 85 | 08/22/2024 | NOTICE by GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC. re 66 Response in Opposition to Motion,,,,, Supplemental Authority in Support of Their Opposiiton to Plaintiff's Motion for Preliminary Injunction (Attachments: # 1 Exhibit A - Canadian Standards Assoc v P.S. Knight Company)(GRATZ, JOSEPH) (Entered: 08/22/2024) | |
| 86 | 08/24/2024 | NOTICE by AMERICAN SOCIETY FOR TESTING AND MATERIALS re 6 MOTION for Preliminary Injunction  Concerning Supplemental Authority (Attachments: # 1 Exhibit A)(FEE, J.) (Entered: 08/24/2024) | |
| 87 | 08/25/2024 | MOTION to Seal Central District of Californias Sealed Order in National Fire Protection Association, Inc. (NFPA) v. UpCodes, Inc., et al., No. 2:21-CV-05262-SPG-E, Dkt. 218 (C.D. Cal.) filed by AMERICAN SOCIETY FOR TESTING AND MATERIALS.. (Attachments: # 1 Text of Proposed Order)(FEE, J.) (Entered: 08/25/2024) | |
| 88 | 08/25/2024 | Copy of Order from Central District of California Filed Under Seal by AMERICAN SOCIETY FOR TESTING AND MATERIALS. **(FILED UNDER SEAL)** (tjd) (tjd). (Entered: 08/26/2024) | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| 89 | 08/26/2024 | ORDER granting 87 MOTION TO SEAL. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 8/26/24.8/26/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 08/26/2024) | |
| 90 | 08/26/2024 | Minute Entry for proceedings held before DISTRICT JUDGE ANITA B. BRODY Pretrial Conference held on 8/26/2024. (sg) (Entered: 08/26/2024) | |
| 91 | 08/27/2024 | MOTION to Seal Document filed by AMERICAN SOCIETY FOR TESTING AND MATERIALS.. (Attachments: # 1 Text of Proposed Order)(FEE, J.) (Entered: 08/27/2024) | |
| 92 | 08/27/2024 | EXHIBIT Re: Presentation Filed Under Seal by AMERICAN SOCIETY FOR TESTING AND MATERIALS. **(FILED UNDER SEAL)** (tjd) (tjd). (Entered: 08/28/2024) | |
| 93 | 08/27/2024 | CORRECTED EXHIBIT Filed Under Seal by AMERICAN SOCIETY FOR TESTING AND MATERIALS. **(FILED UNDER SEAL)** (tjd) (tjd). (Entered: 08/28/2024) | |
| 94 | 08/28/2024 | EXHIBIT to Defendants' Preliminary Injunction Hearing Slides by GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC... (GRATZ, JOSEPH) (Entered: 08/28/2024) | |
| 95 | 08/28/2024 | ORDER granting 91 MOTION TO SEAL DOCUMENT 91 MOTION to Seal Document . SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 8/28/24.8/28/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 08/28/2024) | |
| 96 | 09/04/2024 | TRANSCRIPT of Motion Hearing held on 8/26/24, before Judge Brody. Court Reporter/Transcriber: Liberty Transcripts. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 9/25/2024. Redacted Transcript Deadline set for 10/7/2024. Release of Transcript Restriction set for 12/3/2024. (fdc) (Entered: 09/04/2024) | |
| 97 | 09/04/2024 | Notice of Filing of Official Transcript with Certificate of Service re 96 Transcript - PDF, 9/4/24 Entered & E-mailed. (fdc) (Entered: 09/04/2024) | |
| 98 | 09/04/2024 | NOTICE by AMERICAN SOCIETY FOR TESTING AND MATERIALS re 59 MOTION for Preliminary Injunction Revised Supplemental Authority In Support Plaintiff's Motion for Preliminary Injunction (Attachments: # 1 Exhibit A)(FEE, J.) (Entered: 09/04/2024) | |
| 99 | 09/05/2024 | ORDER denying as moot 57 MOTION TO DISMISS. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 9/5/24.9/5/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 09/05/2024) | |
| 100 | 09/13/2024 | NOTICE of Intent to Request Redaction by THOMAS NELSON BROWN re 96 Transcript - PDF,. (BROWN, THOMAS) (Entered: 09/13/2024) | |
| 101 | 09/18/2024 | Motion by GARRETT REYNOLDS, SCOTT REYNOLDS, UPCODES, INC. FOR WITHDRAWAL OF APPEARANCE ALLYSON R. BENNETT ON BEHALF OF DEFENDANTS UPCODES, INC., GARRETT REYNOLDS, AND SCOTT REYNOLDS (Attachments: # 1 Text of Proposed Order)(GRATZ, JOSEPH) Modified on 9/19/2024 (tjd). (Entered: 09/18/2024) | |
| 102 | 09/19/2024 | ORDER THAT DefendantsUpCodes, Inc., Garrett Reynolds, and Scott Reynolds Motion for Withdrawal ofAppearance of Allyson R. Bennett on their behalf is GRANTED. Allyson R. Bennett shall be removed ascounsel for Defendants UpCodes, Inc., Garrett Reynolds, and Scott Reynolds inthe above-captioned matter. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 9/19/24. 9/19/24 ENTERED & E-MAILED.(fdc) (Entered: 09/19/2024) | |
| 103 | 09/25/2024 | MOTION to Redact 96 Transcript - PDF, filed by GARRETT | |

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | REYNOLDS, SCOTT REYNOLDS, UPCODES, INC..Certificate of Service. (Attachments: # 1 Text of Proposed Order)(BROWN, THOMAS) (Entered: 09/25/2024) | |
| 104 | 10/02/2024 | MEMORANDUM RE: PRELIMINARY INJUNCTION MOTION. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 10/2/24. 10/2/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 10/02/2024) | |
| 105 | 10/02/2024 | ORDER denying 59 Motion for Preliminary Injunction. SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 10/2/24. 10/2/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 10/02/2024) | |
| 106 | 10/04/2024 | ORDER finding as moot 6 MOTION FOR PRELIMINARY INJUNCTION; granting 103 Motion to Redact Transcript 96 . SIGNED BY DISTRICT JUDGE ANITA B. BRODY ON 10/4/24.10/4/24 ENTERED AND COPIES E-MAILED.(jwl) (Entered: 10/04/2024) | |
| 107 | 10/04/2024 | Redaction re 96 Transcript - PDF,. (fdc) (Entered: 10/07/2024) | |
| 108 | 10/21/2024 | NOTICE OF APPEAL as to 105 Order (Memorandum and/or Opinion) by AMERICAN SOCIETY FOR TESTING AND MATERIALS. Filing fee $ 605, receipt number APAEDC-17823122. (FEE, J.) (Entered: 10/21/2024) | |
| 109 | 10/22/2024 | NOTICE of Docketing Record on Appeal from USCA re 108 Notice of Appeal (Credit Card Payment) filed by AMERICAN SOCIETY FOR TESTING AND MATERIALS. USCA Case Number 24-2965 (er) (Entered: 10/22/2024) | |

Copyright © LexisNexis CourtLink, Inc. All Rights Reserved.

*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

**End of Document**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a ASTM INTERNATIONAL, | Civil Action No.: |
| Plaintiff, | **JURY TRIAL REQUESTED** |
| v. | |
| UPCODES, INC.; GARRETT REYNOLDS; and SCOTT REYNOLDS, | |
| Defendants. | |

**COMPLAINT**

American Society for Testing and Materials d/b/a ASTM International, by and through its undersigned counsel, brings this action against UpCodes, Inc. ("UpCodes"), Garrett Reynolds and Scott Reynolds (collectively, "Defendants"), and alleges as follows.

**INTRODUCTION**

1.      Plaintiff American Society for Testing and Materials d/b/a ASTM International ("ASTM") is a not-for profit standards developing organization dedicated to its public service mission: positively impacting public health and safety, consumer confidence, and overall quality of life.  ASTM is a globally recognized leader in the development and delivery of voluntary consensus standards.  To date, ASTM has created almost 13,000 high quality international standards driven by the expertise of its over 30,000 members spanning over 155 countries who represent industry, governments, academia, trade groups, consumers, amongst others.

2.      Defendants Garrett Reynolds and Scott Reynolds are the founders of UpCodes, a venture-capital backed start-up whose business model is to profit off the exploitation of copyrighted works of numerous non-profit standards development organizations ("SDO").

JA75

UpCodes utilizes a "freemium" model wherein consumers are offered free access to unlicensed and unauthorized copies and derivatives of ASTM's copyrighted works and then upsold "premium" services, including notation and multi-user collaboration tools, based on those same works. By making copies of ASTM's standards available for free, Defendants are undermining the market for the sale and licensing of those ASTM standards.

3.    ASTM brings this lawsuit to prevent Defendants from continuing their unauthorized exploitation of ASTM's copyright works.

## PARTIES

4.    Plaintiff ASTM is a not-for-profit corporation organized under the laws of the State of Pennsylvania, with its principal place of business at 100 Barr Harbor Drive, West Conshohocken, PA, 19428.

5.    Upon information and belief, Defendant UpCodes, Inc. ("UpCodes") is a corporation organized and existing under the laws of Delaware and with its principal place of business at 1606 Headway Circle #9083, Austin, TX 78754.

6.    UpCodes operates and controls the content of the website up.codes (the "UpCodes Website").

7.    Upon information and belief, Garrett Reynolds is an individual with an address of 616 W Monroe Street, Austin, TX 78704 and is co-founder and Secretary of Defendant UpCodes, Inc.

8.    Upon information and belief, Scott Reynolds is an individual with an address of 238 Perry Street, Mill Valley, CA 94941 and is the co-founder, Chief Executive Officer and Chief Financial Officer of Defendant UpCodes, Inc.

-2-

**JURISDICTION AND VENUE**

9.      This is an action for infringement of federally registered copyrights in violation of 17 U.S.C. § 501 and for alteration or removal of copyright management information in violation of 17 U.S.C. § 1202.

10.     This also is an action for infringement of a federally registered trademark arising under the trademark and anti-dilution laws of the United States, 15 U.S.C. § 1051, et seq., and under statutory and common law unfair competition.

11.     This court has subject matter jurisdiction over these claims under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under federal trademark and federal copyright law.  This Court has supplemental jurisdiction over the remaining claim pursuant to 28 U.S.C. § 1367.

12.     Venue is proper in this court pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because a substantial part of the events giving rise to the claims occurred in this District.

**ASTM'S STANDARDS**

13.     For more than 100 years, ASTM has provided a global forum for the development and publication of voluntary consensus standards for materials, products, systems, and services that are utilized by ninety industry sectors in the United States and in most geographic regions of the world.  ASTM is the developer and publisher of over 13,000 voluntary consensus standards in a wide range of fields, including consumer products, iron and steel products, iron and steel products, rubber, paints, plastics, textiles, medical services and devices, electronics, construction, aviation, energy, water, petroleum products, and many more.

14.     Over 30,000 members representing over 155 countries, including manufacturers, retailers, consumers, representatives from government agencies, academics, and researchers serve on ATSM's nearly 150 Technical Committees.  Each Technical Committee is further divided into more focused technical areas called subcommittees.

-3-

15.     ASTM standards development activities are governed by a detailed set of written procedures that are accredited by the American National Standards Institute ("ANSI") as satisfying the essential requirements of a voluntary consensus standards development process.  The process through which ASTM develops its standards includes multiple levels of review, and numerous opportunities for public review and comment.  All ASTM standards are reviewed on a 5-year schedule and reapproved, revised or withdrawn in revision cycles that typically take 8-12 months to complete.  Each revision cycle proceeds according to a published schedule that includes final dates for all major events in the process, including opportunities for input and comment, Technical Committee meetings, appeals, and final publication of the standard.

16.     ASTM's goal is to conduct a process open to all parties with safeguards to avoid domination by proprietary interests.  The voting membership of each ASTM Technical Committee is constituted to include a balance of relevant interests.  For example, producers or sellers of materials, products, systems or services covered within the scope of a given committee or subcommittee cannot exceed more than 50 percent of the voting membership of that committee or subcommittee.  All standards actions, including new standards as well as revisions, withdrawals and reapprovals of existing standards, must be approved by at least 66.7 percent of the voting subcommittee members and 90 percent of the voting main committee members, with not less than 60 percent of the voting members returning ballots.

17.     ASTM strives to enable broad stakeholder representation in the process and does everything possible to minimize barriers to entry.  Individual participating ASTM members pay $115 annually for membership, with grants the member full participation in the development process and free access to relevant standards.  ASTM often waives the membership fee for interested consumers or participants from developing countries.

-4-

JA78

18.     ASTM's standards are original works of authorship.  The content of the ASTM's standards are original to ASTM and includes a high degree of creativity.

19.     ASTM owns the copyrights and/or the relevant exclusive rights in the ASTM standards under the United States copyright laws, and each ASTM standard bears a copyright notice indicating that ASTM owns the copyright in the work.  ASTM has obtained Certificates of Copyright Registration from the Registrar of Copyrights for each of the ASTM Standards listed in Exhibit A hereto (collectively "ASTM's Copyrighted Works").  Exhibit A lists the ASTM standards that Defendants have infringed by the acts complained of herein and identifies by number the Certificates of Registration issued to ASTM for each of the relevant standards.

20.     ASTM also owns the exclusive trademark rights in the following registered trademark that refers to ASTM (the "ASTM Mark"):

   a.  "ASTM" Registration No. 2,679,320 for use in connection with standards books in a variety of fields, promoting public awareness, educational services, and providing a website featuring information in the field of standardization and methods for testing various materials, products, systems, and services in Classes 16, 35, 41, and 42 as set forth in detail in the registration attached as Exhibit B.

21.     ASTM also owns common law rights in the ASTM Mark.

22.     Through ASTM's exclusive, continuous and widespread use of the ASTM Mark, the ASTM Mark has acquired a substantial amount of goodwill, and consumers have come to rely on the ASTM Mark to identify ASTM's high-quality goods and services. ASTM has spent significant funds and resources marketing and promoting its goods and services in connection with

-5-

the ASTM Mark, and considers them to be important, valuable assets. ASTM vigorously and continuously enforces its ASTM Mark against infringers and counterfeiters.

23.     Each year ASTM incurs substantial costs for its standards development infrastructure and delivery platforms, including resources for collaboration, Technical Committee meetings, balloting, editorial, production, distribution, promotion and protection of ASTM standards. ASTM also incurs significant costs related to achieving and maintaining accreditation by ANSI and for engaging in policy-related activities within the global standards community.

24.     To recover some portion of these substantial costs of development, ASTM sells copies of the ASTM standards through its online stores to persons and companies who use the standards in their professional work, including professions in the fields of architecture, engineering, and construction. ASTM also offers enhanced services through its offer of standards-related products and services. For example, ASTM Compass is an online subscription platform that provides access to the most up-to-date standards and research, along with productivity tools for sharing, version comparison, and annotation.

25.     Sales of ASTM's standards account for approximately 70% of ASTM's total revenue. ASTM also generates a significant portion of revenue through the licensing of ASTM's standards. ASTM makes it works easily available for licensing through the Copyright Clearance Center where users can purchase permission to reproduce ASTM copyrighted material. The revenues from these sales and licensing allow ASTM to continue to develop its standards and ensuring that standards are up-to-date.

26.     ASTM provides a valuable public service by developing the ASTM standards and publishing the ASTM standards. ASTM standards support industries and governments worldwide

-6-

to improve product quality, enhance health and safety, strengthen market access and trade, and build consumer confidence.

27.     ASTM's standards offer substantial advantages to building professionals, engineers, states and local governments, and the public by providing a relatively consistent set of standards throughout the United States.

28.     On occasion, federal, state, and local legislatures and other governmental authorities incorporate some or all of SDO-developed standards by reference into statutes or regulations instead of creating their own standards, allowing them to develop standards quickly and with limited costs, particularly in light of the fact that the governmental authorities typically do not have the expertise to develop comparable standards on their own.

29.     Individual jurisdictions do not have the expertise or financial ability to develop high-quality standards, to keep such standards up to date with developments in technology and in the marketplace, or to comply with the demanding requirements for creating voluntary consensus standards.   Governments can incorporate certain provisions of SDO-developed standards by reference instead of creating their own standards, which allows them to develop a comprehensive regulatory scheme quickly and with limited costs.

30.     Some jurisdictions may choose to reference a privately authored standard to set a minimum compliance requirement.  In some cases, the standard incorporated by a jurisdiction may itself reference another standard, *i.e.,* a "third-party reference."   For example, the 2018 Pennsylvania Uniform Construction Code references the 2018 International Building Code, a copyrighted work published by International Code Council, Inc. ("ICC"), an SDO.  The 2018 International Building Code in turn references certain ASTM standards, including ASTM's Copyrighted Works.  *See* International Building Code 1810.3.2.3.

-7-

> **1810.3.2.3 Steel.**
>
> Structural steel H-piles and structural steel sheet piling shall conform to the material requirements in ASTM A6. Steel pipe piles shall conform to the material requirements in ASTM A252. Fully welded steel piles shall be fabricated from plates that conform to the material requirements in ASTM A36, ASTM A283, ASTM A572, ASTM A588 or ASTM A690.

31. The ASTM standards referenced in this section are "third-party references" to the Pennsylvania Uniform Construction Code. Importantly, ASTM has no control or ability to prevent third parties (including, in this example, the Commonwealth of Pennsylvania and ICC) from referring to its standards.

32. ASTM has not voluntarily transferred or licensed any of its rights in ASTM's Copyrighted Works to any governmental agencies whose regulations incorporate ASTM's standards. Nor has ASTM been compensated by the any governmental authority for any of ASTM's Copyrighted Works.

33. ASTM has not lobbied or otherwise sought to influence any governmental authority or SDOs to incorporate or reference ASTM's standards. Notwithstanding, certain jurisdictions and SDOs have incorporated or referenced numerous ASTM standards.

## DEFENDANTS AND THEIR INFRINGING ACTIVITIES

34. Garrett Reynolds and Scott Reynolds founded UpCodes in 2016.

35. Together, Garrett Reynolds and Scott Reynolds built a business model predicated on the unauthorized use of copyrighted works of SDOs. Upon information and belief, they are directly and personally involved in all aspects of UpCodes' business, including decisions concerning what content to reproduce, distribute and/or display on the website up.codes (the "UpCodes Website").

36. Defendant UpCodes has developed an internet-based platform that allows customers to view and print a variety of standards, including substantial portions of ASTM's

Copyrighted Works.   UpCodes displays and distributes significant amounts of ASTM's Copyrighted Works through the UpCodes Website and mobile web platform.

37.     The UpCodes Website and mobile web platform contain a significant amount of content from ASTM's Copyrighted Works or substantially similar versions thereof (collectively referred to herein as "Infringing Materials").

38.     Defendants' website reproduces and displays substantial portions of ASTM's Copyrighted Works, including portions, or entire standards, that impose no binding legal obligations and are instead non-mandatory or informational materials.   Upon information and belief, none of these standards have been incorporated by reference by any governmental authority in the United States.

39.     Defendants purport to "bring together the worlds of architecture, engineering, and construction (AEC) with technology."   *See* "Our Story," Up.Codes, https://up.codes/about. UpCodes holds itself out as offering a platform for "AEC" professionals including architects, general contractors, inspectors, engineers, academics, subcontractors, and more.   UpCodes targets the exact same consumers as ASTM – *both* have an intended audience of professionals who use the standards in their business. [1]

**UpCodes** ✔
@upcodes

UpCodes is your all-in-one compliance and building product research platform for #AEC professionals.

◎ Austin, TX   ⬀ up.codes   🗓 Joined December 2016

40.     Upon information and belief, Defendants create their copies of ASTM's Copyrighted Works by purchasing hardcopies or obtaining digital copies of the ASTM's

---

[1] The below screenshot was taken from https://twitter.com/upcodes on May 3, 2024.

JA83

Copyrighted Works for the purpose of posting them on the UpCodes Website and mobile web platform.

41.     Upon information and belief, both Scott and Garrett Reynolds personally and directly participate in the decision to post ASTM's Copyrighted Works on the UpCodes website and/or scanning and/or posting ASTM standards to the UpCodes Website and mobile web platform.

42.     Upon information and belief, Scott and Garrett Reynolds know and approve of ASTM's Copyrighted Works being posted to the UpCodes Website and mobile applications and approved of the ASTM's Copyrighted Works being posted before the filing of this lawsuit.

43.     Defendants UpCodes, Garrett Reynolds, and Scott Reynolds each know that ASTM claims copyright in its standards and were aware of ASTM's claim to copyright ownership in its standards before the filing of this lawsuit.

44.     Defendants UpCodes, Garrett Reynolds, and Scott Reynolds are aware that ASTM considers the unauthorized re-republication of its standards to be copyright infringement, including because ASTM and seven other SDOs filed an Amici Curiae brief in support of National Fire Protection Association, Inc.'s Opposition to Defendants UpCodes, Inc., Scott Reynolds, and Garrett Reynolds's Motion for Summary Judgment in a litigation currently pending in the United States District Court for the Central District of California.  *National Fire Protection Assoc., Inc. v. UpCodes, Inc., Scott Reynolds, and Garrett Reynolds,* Case No. 2:21-cv-05262, Dkt. No. 154 (June 20, 2023).

45.     Upon information and belief, Defendants' process for creating their unauthorized copies of the ASTM standards introduces errors into the standards.

-10-

46.    UpCodes identifies ASTM's Copyright Works by displaying the title and/or well-known abbreviated names for ASTM's publications, as shown below.[2]



47.    To date, UpCodes has reproduced and displayed ten of ASTM's Copyrighted Works.   Upon information and belief, UpCodes intends to reproduce and display at least nine additional copyrighted works, as indicated by the inclusion of additional titles for ASTM standards on the UpCodes website.[3]   Prior to their reproduction and display on the UpCodes Websites, ASTM's Copyrighted Works similarly appeared in the grayed-out form as the nine additional ASTM standards currently listed but not yet available on the UpCodes Website, as shown below.[4]

---

[2] The screenshot below was taken from https://up.codes/codes/general on May 3, 2024.
[3] To the extent that UpCodes adds additional ASTM copyrighted standards to its website, this Complaint shall incorporate such future added works as if listed herein.  Each of the ASTM standards that are grayed-out on UpCodes Website refers to a copyrighted work for which ASTM owns a registered copyright and believes that Defendants intend to copy and reproduce in whole or in significant part on the UpCodes Website.
[4] The screenshot below was taken from https://up.codes/codes/general on May 3, 2024.

-11-



48.     To the best of ASTM's knowledge, none of ASTM's Copyrighted Works that UpCodes has posted as standalone "codes," were incorporated by reference by any governmental authority in the U.S.  Upon information and belief, Defendants have posted ASTM's Copyright Works because they are third-party references.  For example, while Defendants posted ASTM's Copyrighted Work ASTM A36 as the "Pennsylvania Carbon Structural Steel Code, 2014," no such code exists within the Pennsylvania Code.  Rather, as explained *supra*, Pennsylvania's Uniform Construction Code references the 2018 *International Building Code* which in turn references ASTM's Copyrighted Work.[5]  Defendants describe the "Pennsylvania Carbon Structural Steel Code" as "based on ASTM A36/A36M, 2014" when, in fact, Defendants have wholesale copied and reproduced ASTM's copyrighted work ASTM A36/A36M, as shown below.

---

[5] The screenshot below was taken from https://up.codes/viewer/pennsylvania/astm-a36-a36m-2014 on May 3, 2024.

# Pennsylvania Carbon Structural Steel Code, 2014

**Adoption Info**                                                          See More

Effective dates                    February 14, 2022 - Present

Adopts without amendments          ASTM A36/A36M, 2014

**Overview**

ASTM A36/A36M is a publication for carbon structural steel, outlining the requirements for shapes, plates, and bars of structural quality for use in riveted, bolted, or welded construction of bridges, buildings, and general structural purposes.

The Pennsylvania Carbon Structural Steel Code, 2014 is based on the ASTM A36/A36M, 2014.

49.     The Infringing Materials contain non-mandatory supplemental and explanatory material, as illustrated below[6]:



# Supplementary Requirements

These requirements shall not apply unless specified in the order.

Standardized supplementary requirements for use at the option of the purchaser are listed in Specification A6/A6M. Those that are considered suitable for use with this specification are listed by title:

---

[6]    The below screenshots were taken from https://up.codes/viewer/pennsylvania/astm-a36-a36m-2014/chapter/4/general-requirements-for-delivery#4.2  and  https://up.codes/viewer/pennsylvania/astm-a36-a36m-2014/chapter/Supplementary%20Requirements_/supplementary-requirements#Supplementary%20Requirements_ on May 3, 2024.

-13-



**4.2**

Coils are excluded from qualification to this specification until they are processed into a finished structural product. Structural products produced from coil means structural products that have been cut to individual lengths from a coil. The processor directly controls, or is responsible for, the operations involved in the processing of a coil into a finished structural product. Such operations include decoiling, leveling or straightening, hot-forming or cold-forming (if applicable), cutting to length, testing, inspection, conditioning, heat treatment (if applicable), packaging, marking, loading for shipment, and certification.

NOTE 1-For structural products produced from coil and furnished without heat treatment or with stress relieving only, two test results are to be reported for each qualifying coil. Additional requirements regarding structural products produced from coil are described in Specification A6/A6M.

50.     As explained above, UpCodes utilizes a "freemium" business model that seeks to attract users by offering a "free" service, where a significant amount of ASTM's Copyrighted Works can be viewed, copied, and further distributed by members of the public at no cost.  After users engage in the "free" service, they are introduced to UpCodes' "premium" offerings.  In addition to the same unauthorized distribution and display off ASTM's Copyrighted Works, the premium subscription includes unauthorized derivative works and "premium" features such as searchable standards, bookmarking, and multi-user collaboration features.  For example, to view the content of the ASTM Copyrighted Works displayed on UpCodes website, users must create an UpCodes login and provide UpCodes with contact information.  By creating a login, users must also agree to UpCodes' Terms of Service and Privacy Policy, as shown below.[7]

---

[7]     https://up.codes/viewer/pennsylvania/astm-a36-a36m-2014/chapter/3/appurtenant-materials#3     and
https://up.codes/sign-up?ft=true&next=%2Fviewer%2Fpennsylvania%2Fastm-a36-a36m-2014%2Fchapter%2F3%2Fappurtenant-materials%233 on May 3, 2024.





51. Users, whether free or premium, can print sections or subsections of the Infringing Materials from the UpCodes Website and mobile web platform, but only after they create an account and agree to UpCodes' terms of service.

52. Defendants have no control over the purpose for which UpCodes users access, print, or use ASTM's Copyrighted Works. For example, UpCodes users can access the Infringing Materials to avoid purchasing or licensing the works for commercial use, to resell the works to others, or to creating derivative works.

53. Defendants' conduct threatens the market for ASTM's products and services and forces ASTM to compete unfairly. The standards development process is resource intensive, and ASTM must bear the burden of this cost. Yet UpCodes offers ASTM's Copyrighted Works for free to the very same AEC professionals that ASTM targets and threatens ASTM's ability to recoup its investment in the creation of its high-quality standards. Defendants offer for free services that ASTM shields behind a paywall – the ability to copy and print – luring potential ASTM customers to use UpCodes' services as a market substitute. UpCodes then offers premium services built on ASTM's Copyrighted Works that compete directly with ASTM's product offerings.

54. Defendants conduct also threatens ASTM's licensing market by allowing any individual to copy ASTM's Copyrighted Works for free and without limitation on further distribution. ASTM's licensees, who have legitimately sought and received permission from ASTM to distribute ASTM standards, will be forced to compete with parties who have had to incur no cost to copy and distribute ASTM's Copyrighted Works by using the UpCodes Website. Future potential licensees may opt to use the UpCodes Website, which freely makes ASTM's Copyrighted Works available, rather than pay for licensing rights from ASTM.

-16-

55.    Defendants offer a market substitute for both physical and electronic copies of ASTM's Copyrighted Works as well as ASTM's products which generate the necessary revenue for ASTM to continue to develop its high-quality standards using a resource-intensive voluntary consensus process.  Without the ability to recoup the costs of standards development, ASTM will no longer be able to revise and update its standards and promote vital safety standards remain compliant.

## DEFENDANTS' REMOVAL OF ASTM'S COPYRIGHT NOTICES

56.    Each of ASTM's Copyrighted Works bear a copyright notice in favor of ASTM.

57.    Although the ASTM's Copyrighted Works each display a copyright notice, Defendants removed copyright management information, including ASTM's copyright notices that contain ASTM's name, address and other identifying information, information related to obtaining certain permissions or individual reprints, as well as copyright notices, from ASTM's Copyrighted Works displayed on the UpCodes Website and mobile web platform such that the Infringing Materials no longer indicate that ASTM is the copyright owner.  ASTM's Copyrighted Works for which the copyright notice and other copyright management information has been removed or otherwise altered (collectively, the "Altered Works") are listed in Exhibit C.

58.    UpCodes profits on the reproduction, display, and distribution of Infringing Materials to the public through the UpCodes Website and mobile web platform.  Upon information and belief, as the co-founders and officers of Defendant UpCodes, at least Defendants Garrett Reynolds and Scott Reynolds knew about, substantially participated in, and authorized UpCodes' copyright infringement and removal of ASTM's copyright notices.

59.    Upon information and belief, both Scott and Garrett Reynolds personally and directly participated in the decision to remove and/or the removal of ASTM's copyright management information from the UpCodes Website and mobile web platform.

-17-

**DEFENDANTS' INFRINGEMENT OF ASTM'S TRADEMARKS**

60.     After Defendants acquired genuine versions of ASTM's Copyrighted Works, Defendants then created new documents and placed the ASTM Mark on them even though ASTM neither authorized nor quality controlled the documents created by Defendants.  By doing so, Defendants used in commerce a reproduction or copy of ASTM's registered trademark in connection with the sale, offer for sale, distribution, or advertising of goods or services.

61.     Defendants unauthorized use of ASTM's Mark is likely to lead consumers to believe mistakenly that ASTM is the source of the electronic documents that Defendants on the UpCodes Website, that the documents meet ASTM's quality control standards, and/or that ASTM has endorsed, approved, or are otherwise affiliated with Defendants and/or the documents they created.

62.     Defendants have implied and/or suggested to the public that ASTM sponsors or endorses UpCodes' posting of standards by including the ASTM Mark on the documents that Defendants created as illustrated by the below example.[8]

> **High-strength Steel Bars for Prestressed Concrete Code, 2018 (ASTM A722/A722M, 2018)**
>
> The High-strength Steel Bars for Prestressed Concrete Code, 2018 (ASTM A722/A722M, 2018) is a code produced by the American Society for Testing and Materials (ASTM). This document provides the foundation for many state and city codes. The ASTM A722/A722M, 2018 combined with local jurisdiction amendments form the state codes. Adopting jurisdictions include Alabama, Alaska, Arkansas, California, Los Angeles County, Los Angeles City, San Diego, San José, San Francisco, Colorado, Denver, Connecticut, Florida, Illinois, DuPage County, Louisiana, Maryland, Montana, Nevada, Las Vegas, New Jersey, New Mexico, North Dakota, Ohio, Oregon, Portland, South Carolina, South Dakota, Sioux Falls, Texas, Austin, Dallas, Fort Worth, Houston, San Antonio, Utah, Virginia, Washington, and Wyoming.

---

[8] The screenshot below was taken from https://up.codes/code/astm-a722-a722m-standard-specification-for-high-strength-steel-bars-for-prestressed-concrete-2018 on May 3, 2024.

63.     As described above, Defendants identify ASTM as the publisher of the documents made available on the UpCodes Website even though ASTM is not the publisher of (or otherwise the source of) those electronic copies.  In fact, the electronic copies made available on the UpCodes Website differ substantially from the products ASTM approved or authorized.  ASTM did not publish or approve the publication of the inferior versions of the ASTM standards that Defendants have made available on the UpCodes Website.[9]



64.     Defendants' actions have damaged and will continue to damage ASTM, consumers, and the public in general.

65.     Defendants continued unauthorized use of ASTM's trademark is depriving ASTM of the ability to control the use of its trademark, which has caused and will continue to cause irreparable harm to ASTM, including the loss of control over its brand identity, goodwill, and reputation.

66.     Any mistakes that UpCodes made in its conversion of ASTM's Copyrighted Works into UpCodes Website content is also likely to harm consumers and/or the public in general, which would in turn harm ASTM's reputation.

---

[9] https://up.codes/codes/pennsylvania on May 3, 2024.

**COUNT I**
**(AGAINST ALL DEFENDANTS)**
**DIRECT COPYRIGHT INFRINGMENT**

67.     ASTM realleges and incorporates herein by reference the foregoing Paragraphs of the Complaint as if fully set forth herein.

68.     ASTM owns registered copyrights for ASTM's Copyrighted Works, which are listed in Exhibit A.

69.     The Infringing Materials contain content that is wholly copyrightable subject matter under the laws of the United States.

70.     Upon information and belief, Defendants had access to each of ASTM's Copyrighted Works.

71.     Notwithstanding ASTM's copyright ownership, Defendants copied and created derivative works based upon ASTM's Copyrighted Works and displayed and distributed copies of the Infringing Materials through the UpCodes Website and mobile web platform without ASTM's consent.

72.     The Infringing Materials are identical, or substantially similar, to ASTM's Copyrighted Works.

73.     By copying and creating derivative works based on ASTM's Copyrighted Works and displaying and distributing the Infringing Materials through the UpCodes Website and mobile web platform, Defendants have infringed ASTM's copyrights in ASTM's Copyrighted Works. Specifically, Defendants have violated the exclusive right of ASTM to reproduce, distribute, display, and make derivative works of its copyrighted works under 17 U.S.C. § 106. The infringement of each of ASTM's Copyrighted Works constitutes a separate act of copyright infringement.

74.     Defendants' copyright infringement has been knowing, willful, and/or intentional.

-20-

75.     Defendants Garrett Reynolds and Scott Reynolds are the moving, active, conscious force behind UpCodes' copyright infringement and are subject to personal liability for UpCodes' copyright infringement.

76.     Defendants' copyright infringement has caused and will continue to cause monetary damage to ASTM.  Defendants' copyright infringement is likely to adversely impact the market for ASTM's Copyrighted Works by diverting prospective purchasers of ASTM's Copyrighted Works and by affecting the demand for licensed use of ASTM's Copyrighted Works.

77.     Defendants' copyright infringement has caused and will continue to cause irreparable harm to ASTM for which there is no adequate remedy at law.  ASTM is entitled to, and seeks, injunctive relief as a result thereof pursuant to 17 U.S.C. § 502.

**COUNT II**
**(AGAINST ALL DEFENDANTS)**
**VICARIOUS AND/OR CONTRIBUTORY COPYRIGHT INFRINGMENT**

78.     ASTM realleges and incorporates herein by reference the foregoing Paragraphs of the Complaint as if fully set forth herein.

79.     Notwithstanding ASTM's copyright ownership, Defendants copied and created derivative works based upon ASTM's Copyrighted Works and displayed and distributed copies of the Infringing Materials through the UpCodes Website and mobile web platform without ASTM's consent.

80.     Upon information and belief, Defendants had either actual or constructive knowledge that third parties use the UpCodes Website to make unauthorized copies of ASTM's Copyrighted Works and either induced, caused or materially contributed to such infringing conduct.

-21-

81.     Upon information and belief, Defendants participated in, authorized and/or assisted with, and resultantly profited from the unauthorized reproduction and/or creation of derivative works based on ASTM's Copyrighted Works.

82.     Upon information and belief, Defendants are vicariously liable for the direct infringement alleged herein because Defendants have the right and ability to supervise the infringing conduct and have a direct financial interest in the infringing conduct.

83.     Defendants Garrett Reynolds and Scott Reynolds are the moving, active, conscious force behind UpCodes' vicarious and/or contributory copyright infringement and are subject to personal liability for UpCodes' copyright infringement.

84.     By their actions, as alleged above, Defendants' acts of contributory and/or vicarious infringement violate the exclusive right of ASTM to reproduce, distribute, display, and make derivative works of its copyrighted works under 17 U.S.C. § 106.

85.     Defendants acts of contributory and/or vicarious infringement are willful, in disregard of and with indifference to ASTM's rights.

86.     Defendants, and their acts of contributory and/or vicarious infringement, has caused and will continue to cause monetary damage to ASTM.  Defendants' copyright infringement is likely to adversely impact the market for ASTM's Copyrighted Works by diverting prospective purchasers of ASTM's Copyrighted Works to the UpCodes Website and by affecting the demand for licensed use of ASTM's Copyrighted Works.

87.     Defendants, and their acts of contributory and/or vicarious infringement, has caused and will continue to cause irreparable harm to ASTM for which there is no adequate remedy at law.  ASTM is entitled to, and seeks, injunctive relief as a result thereof pursuant to 17 U.S.C. § 502.

-22-

**COUNT III**
**(AGAINST ALL DEFENDANTS)**
**ALTERATION OR REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION**
**UNDER 17 U.S.C. § 1202**

88.     ASTM realleges and incorporates herein by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

89.     Each of ASTM's Copyrighted Works bears copyright notices identifying ASTM as the owner of the Copyrighted Works.

90.     The inclusion of a copyright notice, including the identity of ASTM, constitutes "copyright management information" as defined in 17 U.S.C. § 1202(c).

91.     Defendants, without the authority of ASTM, intentionally removed and/or altered and have caused and induced others to remove and/or alter such copyright management information for the Altered Works and have thereafter distributed the Altered Works, having reasonable grounds to know that such acts with induce, enable, facilitate or conceal an infringement of copyright in violation of 17 U.S.C. § 1202(b)(1) and (3).

92.     Defendants' removal or alteration of copyright management information from the Altered Works and their subsequent distribution of the Altered Works was, and is, willful and intentional, and was, and is, executed with full knowledge of ASTM's rights under copyright law, and in disregard of ASTM's rights.

93.     Defendants' violation of 17 U.S.C. § 1202(b)(1) and (3) have caused, and unless restrained by this Court, will continue to cause, irreparable injury to ASTM not fully compensable in monetary damages.  Pursuant to 17 U.S.C. § 1203(b)(1), ASTM is entitled to an injunction enjoining Defendants from such further violations.

JA97

## COUNT IV
## (AGAINST ALL DEFENDANTS)
## INFRINGEMENT OF REGISTRATED TRADEMARKS UNDER 15 U.S.C. § 1114

94. ASTM realleges and incorporates herein by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

95. ASTM's Mark is on the Principal Register of the United States Patent and Trademark Office.

96. ASTM owns all rights, title and interest in the U.S. trademark registration for ASTM's Mark.

97. The ASTM Mark is incontestable and constitute conclusive evidence of the validity of the trademark, ASTM's ownership of the mark, and ASTM's exclusive right to use the mark in commerce.

98. In creating electronic copies of ASTM's Copyrighted Works, Defendants has used in commerce an identical and/or substantially indistinguishable copy of ASTM's Mark in connection with the sale, offering for sale, distribution, and/or advertising of identical and/or highly related goods and services without ASTM's authorization or consent.

99. Defendants' use in commerce of trademarks that are confusingly similar or identical to the ASTM Mark is likely to cause confusion, to cause mistake and/or deceive consumers as to the source, sponsorship, or origin of the electronic files that Defendants have posted on the UpCodes Website in violation of Section 32 of the Lanham Act, 15 U.S.C. §§ 1114.

100. Defendants Garrett Reynolds and Scott Reynolds are the moving, active, conscious force behind UpCodes' trademark infringement and are subject to personal liability for UpCodes' trademark infringement.

101. Defendants' conduct is intended to exploit the goodwill and reputation associated with ASTM's Mark.

-24-

102.    As a direct and proximate result of Defendants' wrongful acts, ASTM has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation and goodwill that money cannot compensate for.  Unless enjoined, Defendants will continue to use ASTM's Mark and/or confusing similar marks and will continue to cause irreparable damage to ASTM, ASTM's Mark, and to the business and goodwill represented thereby, for which ASTM has no adequate remedy at law.

103.    Defendants' trademark infringement has been and continues to be intentional, willful and in bad faith.

## COUNT V
## (AGAINST ALL DEFENDANTS)
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## UNDER 15 U.S.C. § 1125(A)(1)

104.    ASTM realleges and incorporates herein by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

105.    ASTM's Mark is on the Principal Register of the United States Patent and Trademark Office.

106.    ASTM owns all rights, title and interest in the U.S. trademark registrations for ASTM's Mark.

107.    ASTM's Mark is distinctive and/or has acquired secondary meaning.

108.    ASTM has used its mark in commerce continuously and extensively in the United States for many years.  As a result, the public associates each of ASTM's Mark with ASTM and ASTM has built up valuable goodwill in its trademark.

109.    Defendants have used and continue to use ASTM's Mark on electronic copies of and/or inferior versions of ASTM's Copyrighted Works, without license or authorization for ASTM.

-25-

110. Defendants' use of ASTM's Mark is likely to cause confusion, to cause mistake and/or to deceive consumers as to the affiliation, connection, or association of UpCodes with ASTM and/or as to the origin, sponsorship, or approval of the electronic copies posted on the UpCodes Website.

111. Defendants Garrett Reynolds and Scott Reynolds are the moving, active, conscious force behind UpCodes' unfair competition and false designation of origin and are subject to personal liability for UpCodes' unfair competition and false designation of origin.

112. As a direct and proximate result of Defendants' wrongful acts, ASTM has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate for. Unless enjoined, Defendants will continue to use ASTM's Mark and/or confusingly similar marks and will cause irreparable damage to ASTM, ASTM's Mark, and to the business and goodwill represented thereby for which ASTM has not adequate remedy at law.

113. Defendants' acts have been and continue to be intentional, willful, and in bad faith.

114. ASTM has no adequate remedy at law and is entitled to, and does, seek injunctive relief as a result of Defendants' infringing acts.

### COUNT VI
### (AGAINST ALL DEFENDANTS)
### TRADEMARK INFRINGEMENT UNDER PENNSYLVANIA COMMON LAW

115. ASTM realleges and incorporates herein by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

116. ASTM owns all rights, title, and interest in and to ASTM's Mark.

JA100

117.     ASTM's Mark is distinctive and ASTM has built up valuable goodwill in its trademark.  Through its prior and continuous use of its mark in commerce, ASTM has been identified in the public mind as the source of the products to which ASTM's Mark is applied.

118.     Through its prior and continuous use of its marks in commerce, ASTM enjoys exclusive common law rights in ASTM's Mark.

119.     Defendants' use of ASTM's Mark is without any permission, license or other authorization from ASTM.

120.     Defendants' use of ASTM's Mark infringes ASTM's rights therein and is likely to cause confusion, to cause mistake and/or to deceive consumers as to the source, sponsorship and origin of the electronic copies posted on the UpCodes Website in violation of ASTM's common law trademark rights.

121.     Defendants' infringing acts have been and continue to be intentional, willful, and in bad faith.

122.     ASTM has been and is likely to be damaged by Defendants' infringing and unlawful acts.

123.     Defendants' acts have caused and, unless enjoined by this Court, are likely to continue to cause ASTM to suffer irreparable harm to its business, reputation, and goodwill.

124.     ASTM has no adequate remedy at law and is entitled to, and does, seek injunctive relief as a result of Defendants' acts.

### COUNT VII
### (AGAINST ALL DEFENDANTS)
### DILUTION OF TRADEMARKS UNDER 54 PA. CONS. STAT. § 1124

125.     ASTM realleges and incorporates herein by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

-27-

126.    ASTM owns all rights, title, and interest in and to ASTM's Mark.

127.    ASTM's Mark is distinctive and famous in the Commonwealth of Pennsylvania.

128.    ASTM's Mark is closely associated with the high-quality goods and services provided by ASTM.

129.    Defendants' unauthorized use of marks that are substantially identical and confusingly similar to ASTM's Mark have and will continue to cause dilution of the distinctive ASTM Mark and irreparable damage to the business, reputation, and goodwill of ASTM in violation of Pa. Cons. Stat. § 1124.

130.    Defendants' use of ASTM's Mark in commerce commenced after ASTM's ASTM Mark became famous.

131.    Defendants' unlawful acts have been willful, intentional, and made in bad faith.

132.    ASTM has been and is likely damaged by Defendants' dilutive and unlawful acts.

133.    Defendants' unlawful act have caused and, unless enjoined by this Court, are likely to continue to cause ASTM to suffer irreparable harm.

## JURY DEMAND

ASTM hereby demands that all issues so triable be determined by a jury.

## PRAYER FOR RELIEF

WHEREFORE, ASTM prays for judgment against Defendants as follows:

1)    That Defendants UpCodes, Inc., Garrett Reynolds, and Scott Reynolds and their officers, agents, servants, employees, and attorneys, and all those in active concert with or in participation with them, be preliminarily and permanently enjoined from:

    a.    Further unauthorized reproduction of all or any non-*de minimis* portion of ASTM's Copyrighted Works and any other standards or materials published by ASTM, preparation of derivative works based on ASTM's Copyrighted Works

-28-

or on any standards or materials published by ASTM, and distribution or display of copies of the Infringing Materials or any standards or materials published by ASTM by any means or method;

b. Further alteration or removal of ASTM's copyright management information and all further distribution of the Altered Works.

c. Selling, offering for sale, distributing, or advertising any electronic or hard copies of standards under ASTM's Mark, or any marks substantially indistinguishable therefrom, which are likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that any standards that Defendants caused to enter the stream of commerce of any of UpCodes' commercial activities are sponsored or licensed or approved by ASTM, or are connected or affiliated in some with ASTM or ASTM's Mark;

d. Implying ASTM's approval, endorsement, or sponsorship of, or affiliation or connection with, Defendants' products, services, or commercial activities, passing off Defendants' copies of standards as that of ASTM, or engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with ASTM and from otherwise interfering with or injuring ASTM's Mark or the goodwill associated therewith; or

e. Representing or implying that Defendant UpCodes is in any way sponsored by, currently affiliated with, or licensed by ASTM.

2) That the Defendants be directed to file with the Court and serve upon ASTM, within 30 days after entry of final judgment, a report in writing and under oath setting forth in detail the

manner and form by which Defendants have complied with the provisions set forth in Paragraph 1 of this Prayer for Relief.

3) That ASTM be awarded its actual damages and any profits earned by Defendants from the sale of the Infringing Materials or derivative works based on ASTM's Copyrighted Works or, at ASTM's election, statutory damages of up to $150,000 per work infringed.

4) That ASTM be awarded its actual damages and any profits earned by Defendants from the alteration or removal of copyright management information from ASTM's Copyrighted Works or, at ASTM's election, statutory damages of up to $25,000 for each violation.

5) That ASTM be awarded compensatory and actual damages in an amount as yet undetermined caused by the foregoing infringement of ASTM's Mark;

6) That Defendants account to ASTM for any and all profits earned as a result of Defendants' acts in violation of ASTM's Mark, including disgorgement of any and all wrongfully obtained profits;

7) That ASTM be awarded three times the amount of compensatory damages and increased profits for Defendants' infringement of ASTM's Mark pursuant to 15 U.S.C. § 1117;

8) That ASTM be awarded statutory damages pursuant to 15 U.S.C. § 1117(c);

9) That ASTM be awarded punitive and exemplary damages;

10) That the Court declare that Defendants UpCodes, Inc., Garrett Reynolds, and Scott Reynolds have willfully (A) violated ASTM's copyrighted works (B) infringed ASTM's Mark in violation of 15 U.S.C. § 1114, (C) used false designations of origin in violation of 15 U.S.C. § 1125(a), and (D) violated ASTM's common law rights in ASTM's Mark.

11) That the Court declare that Defendants are jointly and severally liable for all damages assessed against any Defendant.

-30-

12) That ASTM be awarded pre-judgment and post-judgment interest on all damages awarded by the Court.

13) That ASTM be entitled to recover its reasonable attorneys' fees and costs of suit.

14) That ASTM be awarded any and all such other and further relief as this Court shall deem just and proper.

Respectfully submitted,

Dated: May 3, 2024

By: */s/ J. Kevin Fee*
**DLA PIPER LLP (US)**
J. Kevin Fee (PA Bar No. 81715)
Jane W. Wise (*pro hac vice* motion forthcoming)
500 Eighth Street, NW
Washington, DC 20004
kevin.fee@dlapiper.com
jane.wise@dlapiper.com

Gabrielle C. Velkes (*pro hac vice* motion forthcoming)
1251 Avenue of the Americas, 27th Fl.
New York, NY 10020
gabrielle.velkes@us.dlapiper.com

*Attorneys for Plaintiff American Society for Testing and Materials d/b/a ASTM International*

-31-

# EXHIBIT A

**ASTM'S COPYRIGHTED WORKS**

| Title | Edition | Registration No. |
|---|---|---|
| ASTM A36/A36M-14 Standard Specification for Carbon Structural Steel. | 2014 | TX 8-068-653 |
| ASTM A252-10 (Reapproved 2018) Standard Specification for Welded and Seamless Steel Pipe Piles.[1] | 2010 | TX 7-550-513 |
| ASTM A722/A722M-18 Standard Specification for High-Strength Steel Bars for Prestressed Concrete. | 2018 | TX 8-690-736 |
| ASTM A653/A653M-17 Standard Specification for Steel Sheet, Zinc-Coated (Galvanized) or Zinc-Iron Alloy-Coated (Galvannealed) by the Hot-Dip Process.[2] | 2017 | TX 8-217-668 |
| ASTM A706/A706M-16 Standard Specification for Deformed and Plain Low-Alloy Steel Bars for Concrete Reinforcement. | 2016 | TX 8-217-259 |
| ASTM A875/A875M - 13 Standard Specification for Steel Sheet, Zinc-5 % Aluminum Alloy-Coated by the Hot-Dip Process. | 2013 | TX 7-886-878 |
| ASTM A924/A924M-17a Standard Specification for General Requirements for Steel Sheet, Metallic-Coated by the Hot-Dip Process. | 2017 | TX 8-422-153 |
| ASTM B209-14 Standard Specification for Aluminum and Aluminum-Alloy Sheet and Plate. | 2014 | TX 8-062-199 |
| ASTM A615/A615M-15a Standard Specification for Deformed and Plain Carbon-Stell Bars for Concrete Reinforcement. | 2015 | TX 8-142-387 |
| A690/A690M-13a Standard Specification for High-Strength Low-Alloy Nickel, Copper, Phosphorus Steel H-Piles and Sheet Piling with Atmospheric Corrosion Resistance for Use in Marine Environments. | 2013 | TX 7-935-900 |

[1] Copyright registration covers 2012 Annual Book of ASTM Standards-- Steel--Piping, Tubing, Fittings, in which ASTM A252 is published.
[2] Copyright registration covers ASTM A653/A653M-15e1.

# EXHIBIT B

Int. Cls.: 16, 35, 41 and 42

Prior U.S. Cls.: 2, 5, 22, 23, 29, 37, 38, 50, 100, 101, 102 and 107

Reg. No. 2,679,320

**United States Patent and Trademark Office**    Registered Jan. 28, 2003

## TRADEMARK
## SERVICE MARK
### PRINCIPAL REGISTER

## ASTM

AMERICAN SOCIETY FOR TESTING AND MATERIALS (PENNSYLVANIA CORPORATION)
100 BARR HARBOR DRIVE
WEST CONSHOHOCKEN, PA 19428

FOR: BOOKS FEATURING INFORMATION ON STANDARDIZATION OF SPECIFICATIONS AND THE METHODS OF TESTING FOR CEMENT AND CONCRETE MATERIALS, CEMENT, CHEMICAL-RESISTANT NONMETALLIC MATERIALS, LIME, CONCRETE AND CONCRETE AGGREGATES, MORTARS AND GROUTS FOR UNIT MASONRY, CONCRETE PIPE, MANUFACTURED MASONRY UNITS, FIBER-REINFORCED CEMENT PRODUCTS, PRECAST CONCRETE PRODUCTS; CERAMICS MATERIALS, REFRACTORIES, GLASS AND GLASS PRODUCTS, CERAMIC WHITEWARES AND RELATED PRODUCTS, ADVANCED CERAMICS, COMPOSITE MATERIALS; CHEMICALS, ENGINE COOLANTS, AROMATIC HYDROCARBONS AND RELATED CHEMICALS, HALOGENATED ORGANIC SOLVENTS AND FIRE EXTINGUISHING AGENTS, INDUSTRIAL AND SPECIALTY CHEMICALS; CONSTRUCTION MATERIALS INCLUDING BUT NOT LIMITED TO ENGINEERING, VITRIFIED CLAY PIPE, GYPSUM AND RELATED BUILDING MATERIALS AND SYSTEMS, THERMAL INSULATION, DIMENSION STONE, BUILDING SEALS AND SEALANTS, ROAD AND PAVING MATERIALS, WOOD, ROOFING, WATERPROOFING, BITUMINOUS MATERIALS, SOIL AND ROCK, GEOSYNTHETICS, VEHICLE-PAVEMENT SYSTEMS, RESILIENT FLOOR COVERINGS, PLASTIC PIPING SYSTEMS; ELECTRONICS AND ELECTRICAL INSULATION, ELECTRICAL AND ELECTRONIC INSULATING MATERIALS, ELECTRICAL INSULATING LIQUIDS AND GASES, ELECTRONICS; END USE PRODUCTS, SOAPS AND OTHER DETERGENTS, POLISHES, LEATHER, SPORTS EQUIPMENT, VACUUM CLEANERS, FENCES, AMUSEMENT RIDES AND DEVICES, FOOD SERVICE EQUIPMENT; ENERGY - NUCLEAR FUEL CYCLE, SOLAR, GEOTHERMAL, AND OTHER ALTERNATIVE ENERGY SOURCES; ENVIRONMENT, WASTE MANAGEMENT, PESTICIDES, HAZARDOUS SUBSTANCES; GENERAL PRODUCTS - ADHESIVES, ACTIVATED CARBON; HEALTH CARE, MEDICAL AND SURGICAL MATERIALS AND DEVICES, ANESTHETIC AND RESPIRATORY EQUIPMENT; METAL PRODUCTS, STEEL, STAINLESS STEEL AND RELATED ALLOYS, IRON CASTINGS, METALLIC-COATED IRON AND STEEL PRODUCTS, MAGNETIC PROPERTIES, ELECTRICAL CONDUCTORS, NONFERROUS METALS AND ALLOYS, COPPER AND COPPER ALLOYS, LIGHT METALS AND ALLOYS, METAL POWDERS AND METAL POWDER PRODUCTS, REACTIVE AND REFRACTORY METALS AND ALLOYS, FASTENERS; PAINTS AND COATINGS, METALLIC AND INORGANIC COATINGS, PAINT AND RELATED COATINGS, MATERIALS AND APPLICATIONS, PROTECTIVE COATING AND LINING WORK FOR POWER GENERATION FACILITIES; PAPER AND PACKAGING, PAPER AND PAPER PRODUCTS, PACKAGING, FLEXIBLE BARRIER MATERIALS; PETROLEUM PRODUCTS, LUBRICANTS, AND FOSSIL FUELS - PETROLEUM PRODUCTS AND LUBRICANTS, GASEOUS FUELS, COAL AND COKE, CATALYSTS; PLASTICS, PLASTIC PIPING SYSTEMS; RUBBER, CARBON BLACK, GASKETS, TIRES; SAFETY, ELECTRICAL PROTECTIVE EQUIPMENT FOR WORKERS, PROTECTIVE CLOTHING, IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FIRST USE 3-15-1962; IN COMMERCE 3-15-1962.

FOR: PROMOTING PUBLIC AWARENESS OF THE NEED FOR STANDARDS FOR RELIABLE MATERIALS, PRODUCTS, SYSTEMS AND SERVICES TO IMPROVE PUBLIC HEALTH AND SAFETY

AND THE OVERALL QUALITY OF LIFE, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 3-15-1962; IN COMMERCE 3-15-1962.

FOR: EDUCATIONAL SERVICES, NAMELY, CONDUCTING SYMPOSIA AND COMMITTEE MEETINGS IN THE FIELD OF STANDARDIZATION OF SPECIFICATIONS AND METHODS OF TESTING FOR CEMENT AND CONCRETE MATERIALS, CEMENT, CHEMICAL-RESISTANT NONMETALLIC MATERIALS, LIME, CONCRETE AND CONCRETE AGGREGATES, MORTARS AND GROUTS FOR UNIT MASONRY, CONCRETE PIPE, MANUFACTURED MASONRY UNITS, FIBER-REINFORCED CEMENT PRODUCTS, PRECAST CONCRETE PRODUCTS; CERAMICS MATERIALS - REFRACTORIES, GLASS AND GLASS PRODUCTS, CERAMIC WHITEWARES AND RELATED PRODUCTS, ADVANCED CERAMICS, COMPOSITE MATERIALS; CHEMICALS, ENGINE COOLANTS, AROMATIC HYDROCARBONS AND RELATED CHEMICALS, HALOGENATED ORGANIC SOLVENTS AND FIRE EXTINGUISHING AGENTS, INDUSTRIAL AND SPECIALTY CHEMICALS; CONSTRUCTION MATERIALS INCLUDING BUT NOT LIMITED TO ENGINEERING, VITRIFIED CLAY PIPE, GYPSUM AND RELATED BUILDING MATERIALS AND SYSTEMS, THERMAL INSULATION, DIMENSION STONE, BUILDING SEALS AND SEALANTS, ROAD AND PAVING MATERIALS, WOOD, ROOFING, WATERPROOFING, BITUMINOUS MATERIALS, SOIL AND ROCK, GEOSYNTHETICS, VEHICLE-PAVEMENT SYSTEMS, RESILIENT FLOOR COVERINGS, PLASTIC PIPING SYSTEMS; ELECTRONICS AND ELECTRICAL INSULATION, ELECTRICAL AND ELECTRONIC INSULATING MATERIALS, ELECTRICAL INSULATING LIQUIDS AND GASES, ELECTRONICS; END USE PRODUCTS, SOAPS AND OTHER DETERGENTS, POLISHES, LEATHER, SPORTS EQUIPMENT, VACUUM CLEANERS, FENCES, AMUSEMENT RIDES AND DEVICES, FOOD SERVICE EQUIPMENT; ENERGY, NUCLEAR FUEL CYCLE, SOLAR, GEOTHERMAL, AND OTHER ALTERNATIVE ENERGY SOURCES; ENVIRONMENT, WASTE MANAGEMENT, PESTICIDES, HAZARDOUS SUBSTANCES; GENERAL PRODUCTS - ADHESIVES, ACTIVATED CARBON; HEALTH CARE, MEDICAL AND SURGICAL MATERIALS AND DEVICES, ANESTHETIC AND RESPIRATORY EQUIPMENT; METAL PRODUCTS, STEEL, STAINLESS STEEL AND RELATED ALLOYS, IRON CASTINGS, METALLIC-COATED IRON AND STEEL PRODUCTS, MAGNETIC PROPERTIES, ELECTRICAL CONDUCTORS, NONFERROUS METALS AND ALLOYS, COPPER AND COPPER ALLOYS, LIGHT METALS AND ALLOYS, METAL POWDERS AND METAL POWDER PRODUCTS, REACTIVE AND REFRACTORY METALS AND ALLOYS, FASTENERS; PAINTS AND COATINGS - METALLIC AND INORGANIC COATINGS, PAINT AND RELATED COATINGS, MATERIALS AND APPLICATIONS, PROTECTIVE COATING AND LINING WORK FOR POWER GENERATION FACILITIES; PAPER AND PACKAGING, PAPER AND PAPER PRODUCTS, PACKAGING, FLEXIBLE BARRIER MATERIALS; PETROLEUM PRODUCTS, LUBRICANTS, AND FOSSIL FUELS, PETROLEUM PRODUCTS AND LUBRICANTS, GASEOUS FUELS, COAL AND COKE, CATALYSTS; PLASTICS, PLASTIC PIPING SYSTEMS; RUBBER, CARBON BLACK, GASKETS, TIRES; SAFETY, ELECTRICAL PROTECTIVE EQUIPMENT FOR WORKERS, PROTECTIVE CLOTHING, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 3-15-1962; IN COMMERCE 3-15-1962.

FOR: PROVIDING A WEBSITE ON GLOBAL COMPUTER NETWORKS FEATURING INFORMATION IN THE FIELD OF SPECIFICATIONS AND METHODS OF TESTING FOR CEMENT AND CONCRETE MATERIALS, CEMENT, CHEMICAL-RESISTANT NONMETALLIC MATERIALS, LIME, CONCRETE AND CONCRETE AGGREGATES, MORTARS AND GROUTS FOR UNIT MASONRY, CONCRETE PIPE, MANUFACTURED MASONRY UNITS, FIBER-REINFORCED CEMENT PRODUCTS, PRECAST CONCRETE PRODUCTS; CERAMICS MATERIALS, REFRACTORIES, GLASS AND GLASS PRODUCTS, CERAMIC WHITEWARES AND RELATED PRODUCTS, ADVANCED CERAMICS, COMPOSITE MATERIALS; CHEMICALS - ENGINE COOLANTS, AROMATIC HYDROCARBONS AND RELATED CHEMICALS, HALOGENATED ORGANIC SOLVENTS AND FIRE EXTINGUISHING AGENTS, INDUSTRIAL AND SPECIALTY CHEMICALS; CONSTRUCTION MATERIALS INCLUDING BUT NOT LIMITED TO ENGINEERING - VITRIFIED CLAY PIPE, GYPSUM AND RELATED BUILDING MATERIALS AND SYSTEMS, THERMAL INSULATION, DIMENSION STONE, BUILDING SEALS AND SEALANTS, ROAD AND PAVING MATERIALS, WOOD, ROOFING, WATERPROOFING, BITUMINOUS MATERIALS, SOIL AND ROCK, GEOSYNTHETICS, VEHICLE-PAVEMENT SYSTEMS, RESILIENT FLOOR COVERINGS, PLASTIC PIPING SYSTEMS; ELECTRONICS AND ELECTRICAL INSULATION, ELECTRICAL AND ELECTRONIC INSULATING MATERIALS, ELECTRICAL INSULATING LIQUIDS AND GASES, ELECTRONICS; END USE PRODUCTS, SOAPS AND OTHER DETERGENTS, POLISHES, LEATHER, SPORTS EQUIPMENT, VACUUM CLEANERS, FENCES, AMUSEMENT RIDES AND DEVICES, FOOD SERVICE EQUIPMENT; ENERGY, NUCLEAR FUEL CYCLE, SOLAR, GEOTHERMAL, AND OTHER ALTERNATIVE ENERGY SOURCES; ENVIRONMENT, WASTE MANAGEMENT, PESTICIDES, HAZARDOUS SUBSTANCES; GENERAL PRODUCTS - ADHESIVES, ACTIVATED CARBON; HEALTH CARE, MEDICAL AND SURGICAL MATERIALS AND DEVICES, ANESTHETIC AND RESPIRATORY EQUIPMENT; METAL PRODUCTS, STEEL, STAINLESS STEEL AND RELATED ALLOYS, IRON CASTINGS, METALLIC-COATED IRON AND STEEL PRODUCTS, MAGNETIC PROPERTIES, ELECTRICAL CONDUCTORS, NONFERROUS METALS AND ALLOYS, COPPER AND COPPER ALLOYS, LIGHT METALS AND ALLOYS, METAL POWDERS AND METAL POWDER PRODUCTS, REACTIVE AND REFRACTORY METALS AND ALLOYS, FASTENERS;

PAINTS AND COATINGS, METALLIC AND INORGANIC COATINGS, PAINT AND RELATED COATINGS, MATERIALS AND APPLICATIONS, PROTECTIVE COATING AND LINING WORK FOR POWER GENERATION FACILITIES; PAPER AND PACKAGING, PAPER AND PAPER PRODUCTS, PACKAGING, FLEXIBLE BARRIER MATERIALS; PETROLEUM PRODUCTS, LUBRICANTS, AND FOSSIL FUELS, PETROLEUM PRODUCTS AND LUBRICANTS, GASEOUS FUELS, COAL AND COKE, CATALYSTS; PLASTICS, PLASTIC PIPING SYSTEMS; RUBBER, CARBON BLACK, GASKETS, TIRES; SAFETY, ELECTRICAL PROTECTIVE EQUIPMENT FOR WORKERS, PROTECTIVE CLOTHING, IN CLASS 42 (U.S. CLS. 100 AND 101).

FIRST USE 3-15-1962; IN COMMERCE 3-15-1962.

OWNER OF U.S. REG. NOS. 901,227 AND 993,094.

SER. NO. 75-638,698, FILED 2-11-1999.

LESLIE RICHARDS, EXAMINING ATTORNEY

# EXHIBIT C

**"Altered Works"**

| Title[1] |
| --- |
| Alabama High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Alaska High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Arkansas High-strength Steel Bars for Prestressed Concrete Code 2018 |
| California High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Los Angeles County High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Los Angeles City High-strength Steel Bars for Prestressed Concrete Code 2018 |
| San Diego High-strength Steel Bars for Prestressed Concrete Code 2018 |
| San José High-strength Steel Bars for Prestressed Concrete Code 2018 |
| San Francisco High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Colorado High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Denver High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Connecticut High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Florida High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Illinois High-strength Steel Bars for Prestressed Concrete Code 2018 |
| DuPage County High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Louisiana High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Maryland High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Montana High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Las Vegas High-strength Steel Bars for Prestressed Concrete Code 2018 |
| New Jersey High-strength Steel Bars for Prestressed Concrete Code 2018 |
| New Mexico High-strength Steel Bars for Prestressed Concrete Code 2018 |
| North Dakota High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Ohio High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Oregon High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Portland High-strength Steel Bars for Prestressed Concrete Code 2018 |
| South Carolina High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Sioux Falls High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Texas High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Austin High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Dallas High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Fort Worth High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Houston High-strength Steel Bars for Prestressed Concrete Code 2018 |

[1] Title of Altered Work as it appears on the UpCodes Website.

1

| Title[1] |
| --- |
| San Antonio High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Utah High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Virginia High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Washington High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Wyoming High-strength Steel Bars for Prestressed Concrete Code 2018 |
| Alabama Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Alaska Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Phoenix Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Arkansas Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| California Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Los Angeles County Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Los Angeles City Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| San Diego Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| San José Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| San Francisco Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Colorado Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Denver Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Connecticut Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Georgia Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Idaho Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Illinois Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Chicago Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| DuPage County Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| South Holland Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Kansas Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Wichita-Sedgwick Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Louisiana Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Maryland Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Baltimore Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Minnesota Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Mississippi Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Missouri Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Kansas City Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Montana Aluminum and Aluminum Alloy Steel and Plate Code 2014 |

2

| Title[1] |
| --- |
| Nebraska Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Omaha Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Nevada Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Clark County Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Las Vegas Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| New Hampshire Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| New Jersey Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| New Mexico Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| New York State Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| North Dakota Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Ohio Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Oklahoma Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Oregon Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Portland Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Pennsylvania Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Philadelphia Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Puerto Rico Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Rhode Island Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| South Carolina Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Sioux Falls Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Knoxville Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Nashville and Davidson County Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Austin Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Dallas Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Fort Worth Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Houston Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| San Antonio Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Utah Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Virginia Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Washington Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Seattle Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| West Virginia Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Wyoming Aluminum and Aluminum Alloy Steel and Plate Code 2014 |
| Alabama Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |

3

| **Title[1]** |
|---|
| Alaska Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| Arkansas Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| California Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| Los Angeles County Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| Los Angeles City Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| San Diego Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| San José Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| San Francisco Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 201 |
| Colorado Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| Denver Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| Connecticut Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| Florida Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| Illinois Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| DuPage County Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| Louisiana Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| Maryland Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| Montana Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| Las Vegas Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| New Jersey Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| New Mexico Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| North Dakota Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| Ohio Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |

4

| **Title[1]** |
| --- |
| Oregon Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| Portland Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| South Carolina Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| Sioux Falls Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| Austin Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| Dallas Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| Fort Worth Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| Houston Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| San Antonio Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| Utah Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| Virginia Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| Washington Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| Wyoming Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 |
| Alabama Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| Alaska Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| Arkansas Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| California Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| Los Angeles County Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| Los Angeles City Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| San Diego Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| San José Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| San Francisco Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |

5

| **Title[1]** |
| --- |
| Colorado Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| Denver Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| Connecticut Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| Florida Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| Illinois Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| DuPage County Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| Louisiana Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| Maryland Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| Montana Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| Las Vegas Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| New Jersey Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| New Mexico Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| North Dakota Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| Ohio Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| Oregon Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| Portland Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| South Carolina Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| Sioux Falls Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| Texas Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| Austin Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| Dallas Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| Fort Worth Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |

6

| Title[1] |
|---|
| Houston Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| San Antonio Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| Utah Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| Virginia Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| Washington Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| Wyoming Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013 |
| Alabama Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| Alaska Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| Arkansas Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| California Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| Los Angeles County Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| Los Angeles City Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| San Diego Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| San José Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| San Francisco Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| Colorado Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| Denver Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| Connecticut Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| Florida Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| Illinois Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| DuPage County Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| Louisiana Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| Maryland Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| Montana Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| Las Vegas Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| New Jersey Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| New Mexico Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| North Dakota Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| Oregon Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| Portland Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| South Carolina Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |

7

| Title[1] |
|---|
| Sioux Falls Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| Texas Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| Austin Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| Dallas Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| Fort Worth Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| Houston Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| San Antonio Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| Utah Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| Virginia Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| Washington Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| Wyoming Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A |
| Alabama Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Alaska Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Arkansas Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| California Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Los Angeles County Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Los Angeles City Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| San Diego Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| San José Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| San Francisco Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Colorado Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Denver Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Connecticut Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Florida Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Illinois Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| DuPage County Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Louisiana Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Maryland Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Montana Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Las Vegas Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| New Jersey Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| New Mexico Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| North Dakota Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Ohio Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |

| **Title[1]** |
| --- |
| Oregon Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Portland Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| South Carolina Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Sioux Falls Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Texas Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Austin Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Dallas Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Fort Worth Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Houston Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| San Antonio Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Utah Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Virginia Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Washington Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Wyoming Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) |
| Alabama Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| Alaska Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| Arkansas Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| California Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| Los Angeles County Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| Los Angeles City Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| San Diego Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| San José Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| San Francisco Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| Colorado Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| Denver Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| Connecticut Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| Florida Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| Illinois Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| DuPage County Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| Louisiana Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| Maryland Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |

9

| Title[1] |
|---|
| Montana Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| Las Vegas Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| New Jersey Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| New Mexico Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| North Dakota Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| Ohio Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| Oregon Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| Portland Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| South Carolina Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| Sioux Falls Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| Austin Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| Dallas Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| Fort Worth Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| Houston Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| San Antonio Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| Utah Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| Virginia Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| Washington Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| Wyoming Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016 |
| Alabama Carbon Structural Steel Code, 2014 |
| Alaska Carbon Structural Steel Code, 2014 |
| Phoenix Carbon Structural Steel Code, 2014 |
| Arkansas Carbon Structural Steel Code, 2014 |
| California Carbon Structural Steel Code, 2014 |
| Los Angeles County Carbon Structural Steel Code, 2014 |
| Los Angeles City Carbon Structural Steel Code, 2014 |
| San Diego Carbon Structural Steel Code, 2014 |
| San José Carbon Structural Steel Code, 2014 |
| San Francisco Carbon Structural Steel Code, 2014 |
| Colorado Carbon Structural Steel Code, 2014 |
| Denver Carbon Structural Steel Code, 2014 |

10

| **Title[1]** |
| --- |
| Connecticut Carbon Structural Steel Code, 2014 |
| Florida Carbon Structural Steel Code, 2014 |
| Georgia Carbon Structural Steel Code, 2014 |
| Hawaii Carbon Structural Steel Code, 2014 |
| Idaho Carbon Structural Steel Code, 2014 |
| Illinois Carbon Structural Steel Code, 2014 |
| Chicago Carbon Structural Steel Code, 2014 |
| DuPage County Carbon Structural Steel Code, 2014 |
| South Holland Carbon Structural Steel Code, 2014 |
| Kansas Carbon Structural Steel Code, 2014 |
| Wichita-Sedgwick Carbon Structural Steel Code, 2014 |
| Louisiana Carbon Structural Steel Code, 2014 |
| Maryland Carbon Structural Steel Code, 2014 |
| Baltimore Carbon Structural Steel Code, 2014 |
| Minnesota Carbon Structural Steel Code, 2014 |
| Mississippi Carbon Structural Steel Code, 2014 |
| Missouri Carbon Structural Steel Code, 2014 |
| Kansas City Carbon Structural Steel Code, 2014 |
| Montana Carbon Structural Steel Code, 2014 |
| Nebraska Carbon Structural Steel Code, 2014 |
| Omaha Carbon Structural Steel Code, 2014 |
| Nevada Carbon Structural Steel Code, 2014 |
| Clark County Carbon Structural Steel Code, 2014 |
| Las Vegas Carbon Structural Steel Code, 2014 |
| New Hampshire Carbon Structural Steel Code, 2014 |
| New Jersey Carbon Structural Steel Code, 2014 |
| New Mexico Carbon Structural Steel Code, 2014 |
| New York State Carbon Structural Steel Code, 2014 |
| North Dakota Carbon Structural Steel Code, 2014 |
| Ohio Carbon Structural Steel Code, 2014 |
| Oklahoma Carbon Structural Steel Code, 2014 |
| Oregon Carbon Structural Steel Code, 2014 |
| Portland Carbon Structural Steel Code, 2014 |
| Pennsylvania Carbon Structural Steel Code, 2014 |

11

| **Title[1]** |
| --- |
| Philadelphia Carbon Structural Steel Code, 2014 |
| Puerto Rico Carbon Structural Steel Code, 2014 |
| Rhode Island Carbon Structural Steel Code, 2014 |
| South Carolina Carbon Structural Steel Code, 2014 |
| Sioux Falls Carbon Structural Steel Code, 2014 |
| Knoxville Carbon Structural Steel Code, 2014 |
| Nashville and Davidson County Carbon Structural Steel Code, 2014 |
| Texas Carbon Structural Steel Code, 2014 |
| Austin Carbon Structural Steel Code, 2014 |
| Dallas Carbon Structural Steel Code, 2014 |
| Fort Worth Carbon Structural Steel Code, 2014 |
| Houston Carbon Structural Steel Code, 2014 |
| San Antonio Carbon Structural Steel Code, 2014 |
| Utah Carbon Structural Steel Code, 2014 |
| Virginia Carbon Structural Steel Code, 2014 |
| Washington Carbon Structural Steel Code, 2014 |
| Seattle Carbon Structural Steel Code, 2014 |
| West Virginia Carbon Structural Steel Code, 2014 |
| Wyoming Carbon Structural Steel Code, 2014 |
| Alabama Deformed and Plain Carbon-steel Bars for Concrete Reinforcement Code 2015ae1 |
| Colorado Deformed and Plain Carbon-steel Bars for Concrete Reinforcement Code 2015ae1 |
| Illinois Deformed and Plain Carbon-steel Bars for Concrete Reinforcement Code 2015ae1 |
| Wyoming Deformed and Plain Carbon-steel Bars for Concrete Reinforcement Code 2015ae1 |
| Alabama High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Alaska High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Arkansas High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| California High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Los Angeles County High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Los Angeles City High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| San Diego High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |

12

| **Title[1]** |
|---|
| San José High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| San Francisco High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Colorado High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Denver High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Connecticut High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Florida High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Illinois High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| DuPage County High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Louisiana High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Maryland High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Montana High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Las Vegas High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| New Jersey High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| New Mexico High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| North Dakota High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Ohio High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Oregon High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Portland High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| South Carolina High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Sioux Falls High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Texas High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Austin High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |

13

| **Title[1]** |
|---|
| Dallas High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Fort Worth High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Houston High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| San Antonio High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Utah High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Virginia High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Virginia High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Washington High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |
| Wyoming High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) |

14

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a ASTM INTERNATIONAL,<br><br>     Plaintiff,<br><br>  v.<br><br>UPCODES, INC.; GARRETT REYNOLDS; and SCOTT REYNOLDS,<br><br>     Defendants. | Civil Action No.:  2:24-cv-01895 |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, Plaintiff American Society for Testing and Materials d/b/a ASTM International ("ASTM" or "Plaintiff"), by and through its undersigned counsel, moves the Court for an order against Defendants UpCodes, Inc., Garrett Reynolds, and Scott Reynolds ("Defendants") requiring the following relief:

1. That Defendants UpCodes, Inc., Garrett Reynolds, and Scott Reynolds and their officers, agents, servants, employees, and attorneys, and all those in active concert with or in participation with them, be preliminarily enjoined from:

   a. Further unauthorized reproduction of all or any non-*de minimis* portion of ASTM's Copyrighted Works[1] and any other standards or materials published by ASTM, preparation of derivative works based on ASTM's Copyrighted Works or on any standards or materials published by ASTM, and distribution

---

[1] "ASTM's Copyrighted Works," "Altered Works," "Infringing Materials," and "ASTM's Mark" should be understood as defined in the Complaint (Dkt. No. 1).

1

or display of copies of the Infringing Materials or any standards or materials published by ASTM by any means or method;

b. Further alteration or removal of ASTM's copyright management information and all further distribution, importation, or public performance of the Altered Works;

c. Selling, offering for sale, distributing, or advertising any electronic or hard copies of standards under ASTM's Mark, or any marks substantially indistinguishable therefrom, which are likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that any standards that Defendants caused to enter the stream of commerce or any of UpCodes' commercial activities are sponsored or licensed or approved by ASTM, or are connected or affiliated in some with ASTM or ASTM's Mark;

d. Implying ASTM's approval, endorsement, or sponsorship of, or affiliation or connection with, Defendants' products, services, or commercial activities, passing off Defendants' copies of standards as that of ASTM, or engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with ASTM and from otherwise interfering with or injuring ASTM's Mark or the goodwill associated therewith; or

e. Representing or implying that Defendant UpCodes is in any way sponsored by, currently affiliated with, or licensed by ASTM.

2. That the Defendants be directed to file with the Court and serve upon ASTM, within 30 days after entry of this order, a report in writing and under oath setting forth in detail

2

the manner and form by which Defendants have complied with the provisions set forth in Paragraph 1 of this order.

As set forth in greater detail in the accompanying Memorandum of Law and supporting documents, ASTM seeks injunctive relief from the Court to prevent ASTM from incurring irreparable harm that would occur if Defendants are allowed to continue its infringement of ASTM's copyrighted works and ASTM's registered trademark.  Accordingly, to prevent this harm from occurring, ASTM moves this Court for the above-described preliminary injunction.

Dated: May 3, 2024

Respectfully submitted,

By: */s/ J. Kevin Fee*
**DLA PIPER LLP (US)**
J. Kevin Fee (PA Bar No. 81715)
Jane W. Wise (*pro hac vice* motion forthcoming)
500 Eighth Street, NW
Washington, DC 20004
kevin.fee@dlapiper.com
jane.wise@dlapiper.com

Gabrielle C. Velkes (*pro hac vice* motion forthcoming)
1251 Avenue of the Americas, 27th Fl.
New York, NY 10020
gabrielle.velkes@us.dlapiper.com

*Attorneys for Plaintiff American Society for Testing and Materials d/b/a ASTM International*

3

JA129

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a ASTM INTERNATIONAL,<br><br>                    Plaintiff,<br><br>   v.<br><br>UPCODES, INC.; GARRETT REYNOLDS; and SCOTT REYNOLDS,<br><br>                    Defendants. | Civil Action No.:  2:24-cv-01895 |

## [PROPOSED] PRELIMINARY INJUNCTION ORDER

Upon consideration of Plaintiff's American Society for Testing and Materials d/b/a ASTM International ("ASTM") Motion for a Preliminary Injunction against Defendants UpCodes, Inc., Garrett Reynolds, and Scott Reynolds, the Court finds that Plaintiff has carried their burden to establish entitlement to preliminary injunctive relief, and accordingly it is hereby **ORDERED** that the motion is **GRANTED,** as follows:

1. That Defendants UpCodes, Inc., Garrett Reynolds, and Scott Reynolds and their officers, agents, servants, employees, and attorneys, and all those in active concert with or in participation with them, be preliminarily enjoined from:

   a. Further unauthorized reproduction of all or any non-*de minimis* portion of ASTM's Copyrighted Works and any other standards or materials published by ASTM, preparation of derivative works based on ASTM's Copyrighted Works[1] or on any standards or materials published by ASTM, and distribution or display

---

[1] "ASTM's Copyrighted Works," "Altered Works," "Infringing Materials," and "ASTM's Mark" should be understood as defined in the Complaint (Dkt. No. 1).

1

of copies of the Infringing Materials or any standards or materials published by ASTM by any means or method;

b.  Further alteration or removal of ASTM's copyright management information and all further distribution, importation, or public performance of the Altered Works;

c.  Selling, offering for sale, distributing, or advertising any electronic or hard copies of standards under ASTM's Mark, or any marks substantially indistinguishable therefrom, which are likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that any standards that Defendants caused to enter the stream of commerce or any of UpCodes' commercial activities are sponsored or licensed or approved by ASTM, or are connected or affiliated in some with ASTM or ASTM's Mark;

d.  Implying ASTM's approval, endorsement, or sponsorship of, or affiliation or connection with, Defendants' products, services, or commercial activities, passing off Defendants' copies of standards as that of ASTM, or engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with ASTM and from otherwise interfering with or injuring ASTM's Mark or the goodwill associated therewith; or

e.  Representing or implying that Defendant UpCodes is in any way sponsored by, currently affiliated with, or licensed by ASTM.

2.  That the Defendants be directed to file with the Court and serve upon ASTM, within 30 days after entry of this order, a report in writing and under oath setting forth in detail

2

the manner and form by which Defendants have complied with the provisions set forth

in Paragraph 1 of this order.

**SO ORDERED** this _____ of _____, 2024

_____
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a ASTM INTERNATIONAL, | |
| Plaintiff, | Civil Action No.: 2:24-cv-01895 |
| v. | **JURY TRIAL REQUESTED** |
| UPCODES, INC.; GARRETT REYNOLDS; and SCOTT REYNOLDS, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
ITS MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL BACKGROUND.............................................................................2

    a.     ASTM and its Copyrighted Standards .....................................................2

        1.     ASTM's History and Process for the Development of Standards ..............2

        2.     ASTM Funds Its Standards Development by Selling and Licensing ASTM's Standards.............................................................................6

        3.     ASTM's Longstanding Trademark Has Acquired Significant Goodwill ....7

        4.     The Public Benefits from ASTM's Standards and the SDO Ecosystem. ....7

    b.     Defendants' Infringement of ASTM's Copyrighted Works and Mark....................9

        1.     Defendants' Exploitation of ASTM's Copyrighted Standards ....................9

        2.     Defendants' Removal and/or Alteration of ASTM's Copyright Management Information...............................................................11

        3.     Defendants Infringing Use of ASTM's Mark ...........................................11

III.    ARGUMENT......................................................................................................12

    a.     ASTM is likely to succeed on the merits of its claims. ..........................13

        1.     ASTM is likely to succeed on the merits of its copyright claim................13

            i.     ASTM owns valid copyrights in the works. ..................................14

                a.     Defendants cannot rebut the presumption that ASTM owns valid copyrights in ASTM Copyrighted Works.................14

            ii.     Defendants violate numerous of ASTM's exclusive rights. ..........16

            iii.    Defendants' anticipated affirmative defenses are meritless...........17

                a.     Defendants cannot show their affirmative defense of fair use is likely to succeed.......................................................18

                b.     Defendants cannot show their affirmative defense of merger is likely to succeed.................................................23

        2.     ASTM is likely to succeed on its trademark claims. .................................24

    b.     ASTM will suffer irreparable harm absent a PRELIMINARY injunction............26

        1.     ASTM will suffer irreparable harm unless Defendants are preliminarily enjoined from infringing ASTM's Copyrighted Works. ..........................26

        2.     Defendants cannot rebut the presumption that ASTM will suffer irreparable harm unless Defendants are enjoined from infringing the ASTM Mark....................................................................................30

        3.     ASTM will suffer irreparable harm by virtue of Defendants' repeated intellectual property infringement and inability to satisfy a judgment. .....31

    c.     The balance of hardships decisively favors ASTM. ...............................32

    d.     A preliminary injunction is in the public interest. .................................33

IV.     CONCLUSION..................................................................................................33

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*22nd Century Techs., Inc. v. iLabs, Inc.*,
2023 WL 3409063 (3d Cir. May 12, 2023) ...............................................................28

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
237 F.3d 198 (3d Cir. 2000).............................................................................24, 25

*Am. Soc'y for Testing & Materials et al. v. Public.Resource.Org, Inc.*,
896 F.3d 437 (D.C. Cir. 2018) ...............................................................14, 19, 21, 22

*Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*,
597 F. Supp. 3d 213 (D.D.C. 2022) ......................................................................20

*Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*,
42 F.3d 1421 (3d Cir. 1994)...............................................................................33

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
598 U.S. 508 (2023)....................................................................................18, 19

*Apple Comput., Inc. v. Franklin Comput. Corp.*,
714 F.2d 1240 (3d Cir. 1983)............................................................................26, 33

*Authors Guild, Inc. v. Google Inc.*,
954 F. Supp. 2d 282 (S.D.N.Y. 2013), *aff'd*, 804 F.3d 202 (2d Cir. 2015) ...........................16

*Bell Helicopter Textron Inc. v. Airbus Helicopters*,
78 F. Supp. 3d 253 (D.D.C. 2015) ........................................................................27

*BGSD, Inc. v. SpazeUp, LLC*,
2024 WL 1619279 (E.D. Pa. Apr. 15, 2024) .............................................................26

*Bieg v. Hovnanian Enters., Inc.*,
157 F. Supp. 2d 475 (E.D. Pa. 2001) .....................................................................14

*Bldg. Officials & Code Adm. v. Code Tech., Inc.*,
628 F.2d 730 (1st Cir. 1980).............................................................................15

*Breaking the Chain Found. v. Capitol Educ. Support, Inc.*,
589 F. Supp. 2d 25 (D.D.C. 2008) ........................................................................31

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994)................................................................................19, 20, 22, 23

JA135

*Capitol Records, LLC v. ReDigi Inc.*,
   910 F.3d 649 (2d Cir. 2018)............................................................................................23

*CCC Info. Servs. v. MacLean Hunter Mkt. Reports, Inc.*,
   44 F.3d 61 (2d Cir. 1994)..........................................................................................15, 33

*Coventry First, LLC v. Ingrassia*,
   2005 WL 1625042 (E.D. Pa. July 11, 2005 ...................................................................28

*Darius Int'l, Inc. v. Young*,
   2006 WL 1071655 (E.D. Pa. Apr. 20, 2006) ..................................................................25

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting Inc.*,
   307 F.3d 197 (3d Cir. 2002).............................................................................................13

*Eli Lilly and Co. v. Premo Pharm. Lab'ys, Inc.*,
   630 F.2d 120 (3d Cir. 1980).............................................................................................32

*F.A. Davis Co. v. Wolters Kluwer Health, Inc.*,
   413 F. Supp. 2d 507 (E.D. Pa. 2005) ..............................................................................23

*Facility Guidelines Inst., Inc. v. UpCodes, Inc.*,
   677 F. Supp. 3d 955 (E.D. Mo. 2023)..............................................................................14

*Facility Guidelines Institute, Inc. v. UpCodes, Inc.*,
   Case No. 4:22-cv-1308 (E.D. Mo.).....................................................................................9

*FMC Corp. v. Control Sols., Inc.*,
   369 F. Supp. 2d 539 (E.D. Pa. 2005) .................................................................13, 17, 21

*Fox News Network, LLC v. TVEyes, Inc.*,
   883 F.3d 169 (2d Cir. 2018).............................................................................................19

*Fox Television Stations, Inc. v. BarryDriller Content Sys., PLC*,
   915 F. Supp. 2d 1138 (C.D. Cal. 2012) ..........................................................................28

*Georgia v. Public.Resource.Org, Inc.*,
   590 U.S. 255 (2020)..........................................................................................................15

*Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.*,
   864 F. Supp. 2d 316 (E.D. Pa. 2012) ..............................................................................32

*Greater Phila. Chamber of Com. v. City of Phila.*,
   949 F.3d 116 (3d Cir. 2020).............................................................................................17

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*,
   774 F.3d 192 (3d Cir. 2014)........................................................................................29, 31

iii

*Harper & Row Publishers, Inc. v. Nation Enters.*,
    471 U.S. 539 (1985)................................................................................20, 21

*Healthcare Advocs., Inc. v. Harding, Earley, Follmer & Frailey*,
    497 F. Supp. 2d 627 (E.D. Pa. 2007) ......................................................17

*Int'l Code Council, Inc. v. UpCodes, Inc.*,
    Case No. 1:17-cv-6261, 2020 WL 2750636 (S.D.N.Y. May 27, 2020) .......................... passim

*Interpace Corp. v. Lapp, Inc.*,
    721 F.2d 460 (3d Cir.1983)......................................................................25

*Kos Pharms., Inc. v. Andrx Corp.*,
    369 F.3d 700 (3d Cir. 2004)...................................................12, 13, 25, 30

*Laidlaw, Inc. v. Student Transp. of Am.*,
    20 F. Supp. 2d 727 (D.N.J. 1998) ...........................................................28

*Maduka v. Tropical Naturals, Ltd.*,
    409 F. Supp. 3d 337 (E.D. Pa. 2019) ......................................................14

*Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*,
    312 F.3d 94 (2d Cir. 2002)......................................................................28

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,
    888 F. Supp. 2d 691 (D. Md. 2012)........................................................29

*MGM Studios, Inc. v. Grokster, Ltd.*,
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) ..............................................28, 29

*Murphy v. Millennium Radio Grp. LLC*,
    650 F.3d 295 (3d Cir. 2011)...............................................................19, 21

*Nat'l Fire Prot. Ass'n, Inc. v. UpCodes, Inc.*,
    Case No. 2:21-cv-05262, 2021 WL 4913276 (C.D. Cal. Aug. 9, 2021) .......................9, 14, 17

*Novartis Corp. v. Teva Pharms. USA, Inc.*,
    2007 WL 1695689 (D.N.J. June 11, 2007) ..............................................32

*Practice Mgmt. Info. Corp. v. Am. Medical Ass'n*,
    121 F.3d 516 (9th Cir. 1997) ..............................................................15, 24

*Pyrotechnics Mgmt. v. XFX Pyrotechnics LLC*,
    38 F.4th 331 (3d Cir. 2022) .....................................................................13

*Reilly v. City of Harrisburg*,
    858 F.3d 173 (3d Cir. 2017)................................................................12, 13

iv

*Richardson v. Cascade Skating Rink*,
    2022 WL 833319 (D.N.J. Mar. 21, 2022)................................................................25

*Rigby v. Jennings*,
    630 F. Supp. 3d 602 (D. Del. 2022)......................................................................26

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010)...............................................................................28, 29

*Silvertop Assocs., Inc. v. Kangaroo Mfg., Inc.*,
    319 F. Supp. 3d 754 (D.N.J. 2018) .......................................................................26

*Silvertop Assocs. v. Kangaroo Mfg., Inc*,
    931 F.3d 215 (3d Cir. 2019)............................................................................23, 24

*Soc'y of the Holy Transfiguration Monastery, Inc. v. Gregory*,
    689 F.3d 29 (1st Cir. 2012).................................................................................23

*Symbol Techs., Inc. v. Janam Techs. LLC*,
    729 F. Supp. 2d 646 (D. Del. 2010).....................................................................32

*TD Bank N.A. v. Hill*,
    2015 WL 4523570 (D.N.J. July 27, 2015)............................................................19

*TechnoMarine SA v. Giftports, Inc.*,
    758 F.3d 493 (2d Cir. 2014)................................................................................31

*Theia Techs. LLC v. Theia Grp., Inc*,
    2021 WL 291313 (E.D. Pa. Jan. 28, 2021)......................................................24, 33

*Veeck v. S. Bldg. Code Cong. Int'l Inc.*,
    293 F.3d 791 (5th Cir. 2002) (*en banc*) ...........................................................14, 16

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*,
    192 F. Supp. 2d 321 (D.N.J. 2002) ......................................................................17

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*,
    342 F.3d 191 (3d Cir. 2003)................................................................................18

*Warner Bros. Ent. Inc. v. WTV Sys., Inc.*,
    824 F. Supp. 2d 1003 (C.D. Cal. 2011) ................................................................27

*Warren Publ'g Co. v. Spurlock*,
    645 F. Supp. 2d 402 (E.D. Pa. 2009) ...................................................................20

*Worldwide Church of God v. Phila. Church of God, Inc.*,
    227 F.3d 1110 (9th Cir. 2000) .........................................................................19, 21

v

**Statutes**

15 U.S.C. § 1116(a) ........................................................................................................30

17 U.S.C. § 101..............................................................................................................16

17 U.S.C. § 106..............................................................................................................16

17 U.S.C. § 107.........................................................................................................20, 22

17 U.S.C. § 410(c) .........................................................................................................14

**Other Authorities**

Xian Gu, P.K. Kannan, & Liye Ma, *How Companies Can Get the Most Out of a Freemium Business Model,* HARVARD BUSINESS REVIEW (Mar. 20, 2019) ...........................10

JA139

## I.    INTRODUCTION

UpCodes, Inc. ("UpCodes") and its founders, Garrett Reynolds and Scott Reynolds (collectively with UpCodes, "Defendants"), built a for-profit enterprise off of the mass commercial exploitation of copyrighted works created for the betterment of the public by non-profit standards development organizations ("SDO").  Although UpCodes attempts to disguise its actions as an educational enterprise, the reality is that Defendants seek to line their pockets and those of their venture capitalist investors by providing access to unauthorized copies of copyrighted works.

American Society for Testing and Materials d/b/a ASTM International ("ASTM"), a not-for-profit organization with a mission to improve the lives of millions through the development of voluntary consensus standards, is the latest victim of Defendants' scheme.  ASTM dedicates significant resources and time to the creation of its high-quality standards which are used to improve product quality, enhance health and safety, and build consumer confidence.  Defendants seek unfairly to capitalize on ASTM's investment in developing copyrighted works, without any compensation or permission, to create a competitive substitute for ASTM's works and rob ASTM of its primary sources of revenue—the sale and licensing of its copyrighted works.  Defendants' infringement jeopardizes ASTM's ability to continue creating vital safety standards and threatens to eradicate the entire SDO ecosystem, both of which offer invaluable public benefits by developing a uniform set of standards with subject matter experts.

Defendants never sought permission from ASTM to post its copyrighted works on their website, up.codes (the "UpCodes Website"), and knew ASTM would object to the unauthorized copying and distribution of them.  Making matters worse, Defendants promote their inferior copies of ASTM's copyrighted works as "ASTM publications" in order to deceive and confuse their users into believing that ASTM is affiliated with Defendants or, at a minimum, approves of and licenses Defendants' activities.  It does not.  Defendants' blatant violation of ASTM's valuable intellectual

property rights must be enjoined to avoid immediate and irreparable injury to ASTM and unavoidable consumer confusion resulting from Defendants' use of an identical trademark. Defendants' actions upend the status quo and cause irreversible harm to ASTM. The requested injunction is necessary to preserve that status quo.

## II.   FACTUAL BACKGROUND

### A.  ASTM AND ITS COPYRIGHTED STANDARDS

#### 1.  *ASTM's History and Process for the Development of Standards*

Standards are publications that contain product specifications, installation methods, methods for manufacturing or testing materials, recommended practices to promote safety or efficiency, or other guidelines or best practices that are developed by private organizations, "standards development organizations" or "SDOs," who have technical expertise in the relevant areas. May 3, 2024 Declaration of Thomas O'Brien, Jr. ("O'Brien Decl.") ¶ 5.

ASTM is a not-for-profit organization founded in 1898 to develop standards to support the then novel railroad industry in the United States. O'Brien Decl. ¶ 6. ASTM is now a globally recognized leader in the development of voluntary consensus standards and one of the world's largest international SDOs. *Id.* ¶ 7. ASTM is committed to serving global societal needs by positively impacting public health and safety, consumer confidence, and overall quality of life through the development of voluntary consensus standards. *Id.* ¶ 8. To date, ASTM has developed almost 13,000 ASTM standards setting forth specifications and methods of testing for a variety of materials, products, systems, and services that bolster safety and performance across industries. *Id.* ¶ 9. ASTM standards are used in a wide range of fields, including construction, consumer products, iron and steel products, rubber, paints, plastics, textiles, medical services and devices, electronics, construction, energy, water, petroleum products, and more. *Id.* ¶ 10.

More than 30,000 ASTM members from over 155 countries create and update ASTM's standards. *Id.* ¶ 11. ASTM is able to create high quality standards due to the deep expertise and diversity of its members who collectively represent industry, governments, academia, trade groups, enterprises of all sizes, consumers, and others. *Id.* ¶ 12. To ensure broad stakeholder representation in the standards development process, ASTM minimizes the barriers to membership to the extent possible. *Id.* ¶ 13. Individual ASTM memberships are $115 annually and grant the member full participation in the development process and free access to relevant standards. *Id.* ¶¶ 14-15, Ex. 1. ASTM often waives the membership fee for interested consumers or participants from developing countries. *Id.* ¶ 11.

ASTM's standard development process is accredited by the American National Standards Institute ("ANSI"), a not-for-profit organization that coordinates the development of voluntary consensus standards development in the United States and accredits SDOs, like ASTM, whose procedures meet ANSI's requirements for openness, consensus, and due process. *Id.* ¶ 16. ASTM's standards development activities are governed by an ANSI-accredited detailed set of written procedures to ensure compliance with the essential requirements of the voluntary consensus standard development process. *Id.* ¶ 17-19.

ASTM's standards development process begins with an individual who identifies an area of interest ripe for standardization. *Id.* ¶ 20. The individual then issues a formal request to form a new task group or subcommittee to the appropriate ASTM Technical Committee. *Id.* If a Technical Committee does not exist, a formal request is issued to establish a new committee. *Id.* Once the subcommittee approves the creation of a new standard, a task group is formed to develop a first draft. *Id.* The standard is drafted through an iterative and collaborative process by members of the task group. *Id.* ¶ 21. The draft is edited by an ASTM staff member, who adds certain

language and components required by the ASTM form and style guide. *Id.* Once complete, the draft standard is sent to the Chair of the subcommittee who approves sending the initial draft to ASTM for formal balloting. *Id.* The draft standard is then voted on by first the entire subcommittee, then the main committee, and then open for comment by the complete Society and the public. *Id.* ¶ 22. At least 66.7% of the voting subcommittee members and 90% of the voting main committee members must approve all standard actions, with not less than 60% of voting members returning ballots. *Id.* During each level of balloting, members (and the public at the Society level) can vote affirmative, negative or abstain. *Id.* Negative votes must have a written explanation and are addressed to evaluate their persuasiveness. *Id.* ASTM has a voting process for determining whether a negative comment is persuasive or is not persuasive. *Id.* Persuasive negative comments cause the ballot to fail. *Id.* Finally, the Committee on Standards reviews the handling of objections (negatives) to the draft to ensure all procedures were followed. *Id.*

Once a standard has successfully passed through the three levels of peer review provided by ASTM (subcommittee, main committee, and Society), it is assigned a fixed designation and receives an official approval date. *Id.* ¶ 23. It is only then that the document is considered an ASTM standard. ASTM has developed its almost 13,000 standards using this rigorous and consensus-based approach. *Id.* All ASTM standards are reviewed on a five-year schedule and either reapproved, revised or withdrawn in revision cycles typically lasting between eight and twelve months. *Id.* ¶ 24.

ASTM's standards, including the works at issue in this case ("ASTM's Copyrighted Works"), are original works of authorship with content that requires a high degree of creativity to

prepare technical information in a concise and understandable standard.[1]  *Id*. ¶ 25.  For decades,

ASTM has obtained Certificates of Copyright Registration from the Register of Copyrights for its

standards.  *Id.* ¶¶ 27-39, Exs. 2-11.  Information regarding the registrations for each of "ASTM's

Copyrighted Works," or the works alleged to be infringed by Defendants, are set forth below.

**ASTM's Copyrighted Works**

| Title | Edition | Registration No. |
|---|---|---|
| ASTM A36/A36M-14 Standard Specification for Carbon Structural Steel. | 2014 | TX 8-068-653 |
| ASTM A252-10 (Reapproved 2018) Standard Specification for Welded and Seamless Steel Pipe Piles.[2] | 2010 | TX 7-550-513 |
| ASTM A722/A722M-18 Standard Specification for High-Strength Steel Bars for Prestressed Concrete. | 2018 | TX 8-690-736 |
| ASTM A653/A653M-17 Standard Specification for Steel Sheet, Zinc-Coated (Galvanized) or Zinc-Iron Alloy-Coated (Galvannealed) by the Hot-Dip Process.[3] | 2017 | TX 8-217-668 |
| ASTM A706/A706M-16 Standard Specification for Deformed and Plain Low-Alloy Steel Bars for Concrete Reinforcement. | 2016 | TX 8-217-259 |
| ASTM A875/A875M – 13 Standard Specification for Steel Sheet, Zinc-5 % Aluminum Alloy-Coated by the Hot-Dip Process. | 2013 | TX 7-886-878 |
| ASTM A924/A924M-17a Standard Specification for General Requirements for Steel Sheet, Metallic-Coated by the Hot-Dip Process. | 2017 | TX 8-422-153 |
| ASTM B209-14 Standard Specification for Aluminum and Aluminum-Alloy Sheet and Plate. | 2014 | TX 8-062-199 |
| ASTM A615/A615M-15a Standard Specification for Deformed and Plain Carbon-Steel Bars for Concrete Reinforcement. | 2015 | TX 8-142-387 |
| A690/A690M-13a Standard Specification for High-Strength Low-Alloy Nickel, Copper, Phosphorus Steel H-Piles and Sheet Piling with Atmospheric Corrosion Resistance for Use in Marine Environments. | 2013 | TX 7-935-900 |

---

[1] Copies of ASTM's Copyrighted Works are attached to the May 3, 2024 Declaration of Jane W. Wise ("Wise Decl.").  Wise Decl. ¶¶ 2-11, Exs. 14-23.
[2] Copyright registration covers 2012 Annual Book of ASTM Standards-- Steel--Piping, Tubing, Fittings, in which ASTM A252 is published.
[3] Copyright registration covers ASTM A653/A653M-15e1.

5

### 2. *ASTM Funds Its Standards Development by Selling and Licensing ASTM's Standards.*

To create high-quality standards using an ANSI-accredited voluntary consensus process, ASTM incurs substantial costs to maintain its standards development infrastructure and delivery platforms, including the resources necessary for collaboration, Technical Committee meetings, balloting, editorial, production, distribution, promotion, and protection of the ASTM standards as well as maintaining and achieving its ANSI accreditation. O'Brien Decl. ¶ 41. In addition to the value of the time and expertise of ASTM's members who participate in the standards development process, ASTM must expend substantial resources on administrative, technical, and other necessary support such as salary and benefits for administrative and expert staff, office space, meeting facilities, outreach and education efforts, information technology, among other things. *Id.* ¶ 42.

To fund the costs incurred for the development of ASTM standards, ASTM uses revenue derived from the sales or licensing of its copyrighted standards to persons and companies who use the standards in their professional work. *Id.* ¶ 43. Sales and licensing of ASTM's standards account for about 70% of ASTM's total revenue. *Id.* ¶ 44. ASTM also generates revenue through its offer of standards-related products and services. *Id.* ¶ 44. For example, ASTM Compass, is a subscription platform that provides access to ASTM standards along with productivity tools for sharing, version comparison, and annotation. *Id.* ¶¶ 45-46, Ex. 12.

The revenue ASTM generates through licensing and sales of its copyrighted works allows ASTM to continue to fund the infrastructure supporting the development of its high-quality standards. *Id.* ¶¶ 43, 47.

6

### 3.   *ASTM's Longstanding Trademark Has Acquired Significant Goodwill*

ASTM uses the ASTM trademark (the "ASTM Mark") in connection with its sale and distribution of ASTM's standards (including the sale of hardcopy and electronic publications, providing a website, promotional services, and educational services featuring information in the field of specifications and methods of testing for a variety of materials and products).  O'Brien Decl. ¶ 48, Ex. 13.  ASTM owns the exclusive trademark rights to the ASTM Mark which is registered on the Principal Register as Registration No. 2,679,320 in connection with goods and services in Classes 16, 35, 41, and 42.  *Id.* ¶ 48, Ex. 13.

Through its exclusive, continuous, and widespread use, ASTM's Mark has acquired a substantial amount of goodwill, and consumers have come to rely on ASTM's Mark to identify ASTM's high-quality goods and services.  *Id.* ¶ 49.

### 4.   *The Public Benefits from ASTM's Standards and the SDO Ecosystem.*

ASTM's standards provide significant benefits to the public.  ASTM's standards positively impact public health, safety and overall quality of life.  *See* O'Brien Decl. ¶ 8.  Many of ASTM's standards are used by professionals and specialists – including manufacturers, installers, trades people, engineers, architects, and technical experts.  *Id.* ¶ 50.

Some federal, state, and local jurisdictions incorporate by reference ("IBR") privately authored standards.  *Id.* ¶ 51.  Government entities, who often lack the resources or the technical knowledge to develop standards themselves, will reference a standard developed by SDOs to the benefit of the public and at little to no cost to the taxpayer.  *Id.*  This process allows industries to advance with a uniform standard across multiple jurisdictions, rather than requiring each locality to develop and test their own rules for a particular field.  *Id.*  In the absence of standards, the process would be doubly inefficient, duplicating efforts on the front end, and requiring industries to meet multiple jurisdictions' requirements on the back end.  *Id.*  And, while SDOs solicit broad

7

input from leading experts and participants with a wide variety of interests, an individual jurisdiction would be unlikely to attract the same intensity or diversity of views, worsening the resulting standards it crafted. *Id.* The development and use of privately developed standards allows the government to be nimbler in addressing industry needs and emerging technologies.

In some instances, a jurisdiction may incorporate by reference the work of another SDO which in turn references an ASTM standard, *i.e.,* a "third-party reference" or "TPR." O'Brien Decl. ¶ 52. For example, the 2018 Pennsylvania Uniform Construction Code incorporates by reference the 2018 International Building Code, a copyrighted work published by International Code Council, Inc. ("ICC"), an SDO. *Id.* The text of 2018 International Building Code refers to certain ASTM standards, including ASTM's Copyrighted Works. *See, e.g.*, Wise Decl. ¶ 12, Ex. 24 (International Building Code ("IBC") 1810.3.2.3 ("Structural steel H-piles and structural steel sheet piling shall conform to the material requirements in ASTM A6. Steel pipe piles shall confirm to the material requirements in A252. Fully welded steel piles shall be fabricated from plates that conform to the material requirements in ASTM A36, ASTM A283, ASTM A588 or ASTM A690.")) As relevant here, ASTM has no control over whether Pennsylvania or ICC refers to ASTM's standards and has not licensed any of the Copyrighted Works to Pennsylvania or ICC. *See* O'Brien Decl. ¶ 52.

ASTM does not lobby or otherwise influence local, state, and federal jurisdictions nor other SDOs to reference its standards. *Id.* ¶ 53. Rather, for a variety of reasons, jurisdictions and others see fit to reference ASTM's high-quality standards on their own. *Id.*

8

### B. DEFENDANTS' INFRINGEMENT OF ASTM'S COPYRIGHTED WORKS AND MARK

#### 1. Defendants' Exploitation of ASTM's Copyrighted Standards

UpCodes, a for-profit corporation, was launched in 2016 by co-founders Scott Reynolds and Garrett Reynolds. Wise Decl. ¶ 13, Ex. 25. UpCodes holds itself out as "bring[ing] together the worlds of architecture, engineering, and construction (AEC) with technology" and an "all-in-one compliance and product research platform for AEC professionals." *Id.* ¶¶ 14-15, Exs. 26-27. In 2017, Defendants launched a searchable database of building codes based on the copyrighted works of other SDOs beginning with ICC and later, in or around 2020, various other SDOs such as National Fire Protection Association ("NFPA") and Facility Guidelines Institute ("FGI").[4] *Id.* ¶ 13, Ex. 25. UpCodes now boasts over 750,000 monthly active users and over 6,000,000 sections of code. *Id.* ¶ 16, Ex. 28.

ASTM is the latest victim of UpCodes' serial infringement. At least as early as October 2023, Defendants began posting grayed-out titles of ASTM's Copyrighted Works. Wise Decl. ¶ 17, Ex. 29. At that time, the grayed-out title icons did not link to any underlying content. However, in or about April 2024, UpCodes started to display ASTM's Copyrighted Works. *Id.* ¶ 18, Ex. 30. UpCodes' library of unauthorized ASTM works has grown day-by-day, and now Defendants have posted 10 ASTM standards ("ASTM's Copyrighted Works")[5] with 9 additional greyed-out ASTM standards that UpCodes appears poised to post any day. *Id.* ¶¶ 39-40, Exs. 51-52. In fact, just

---

[4] Both ICC, NFPA and FGI separately filed lawsuits against UpCodes alleging infringement of their copyrighted works. *See International Code Council v. UpCodes, Inc.*, Case No. 1:17-cv-6261 (S.D.N.Y.); *National Fire Protection Association, Inc. v. UpCodes, Inc.,* Case No. 2:21-cv-5262 (C.D. Cal.); *Facility Guidelines Institute, Inc. v. UpCodes, Inc.,* Case No. 4:22-cv-1308 (E.D. Mo.). ICC's and NFPA's lawsuits remain pending, however, FGI ultimately opted to voluntarily dismiss its case.

[5] The infringing copies of ASTM's Copyrighted Works that Defendants have posted on its website are attached to the Wise Declaration. Wise Decl. ¶¶ 19-38, Exs. 30-50.

days prior to the filing of this motion for a preliminary injunction, Defendants posted two additional copyrighted works bringing the total number of infringing works from 8 to the current 10.  *Id.* ¶ 40, Ex. 52.

Since its inception, UpCodes has sought improperly to capitalize on the investment of SDOs through its use of a "freemium" business model.  Wise Decl. ¶ 41, Ex. 53.  A "freemium" model allows "users get to use a basic product or service for free, but [they] must pay for a premium version with additional features."  Xian Gu, P.K. Kannan, & Liye Ma, *How Companies Can Get the Most Out of a Freemium Business Model,* HARVARD BUSINESS REVIEW (Mar. 20, 2019), https://hbr.org/2019/03/how-companies-can-get-the-most-out-of-a-freemium-business-model. Wise Decl. ¶ 42, Ex. 54.  UpCodes provides free access to its "code library" where users can view, copy, and print a significant portion of the 10 ASTM's Copyrighted Works.  *Id.* ¶¶ 43-44, Exs. 55-56.  For a price, or a free trial period, users can access "premium" features to interact with ASTM's Copyrighted Standards, such as searchable standards, bookmarking, and multi-user collaboration. *Id.* ¶ 45, Ex. 57.

Unlike some of the other content available on the UpCodes Website, UpCodes requires users to create an account to access the content of ASTM's Copyrighted Works.  Wise Decl. ¶ 46, Ex. 58.  By creating an UpCodes account, users must agree to UpCodes' Terms of Service and Privacy Policy.  *Id.* ¶ 47, Ex. 59.

UpCodes presents ASTM's Copyrighted Works as standalone codes, *e.g., "*Pennsylvania Carbon Structural Steel Code."  Wise Decl. ¶ 29, Ex. 41.  However, Pennsylvania has not IBR'd ASTM's Copyrighted Works.  O'Brien Decl. ¶ 54.  Instead, UpCodes appears to be relying on Pennsylvania's (and other jurisdictions') IBR of ICC model codes, which in turn refer to ASTM standards in the text.  To the best of ASTM's knowledge, no state or locality has IBR'd ASTM's

10

Copyrighted Works by reference.  *Id.*  Instead, UpCodes apparently relies on the mere reference to the name of ASTM's copyrighted works by third party SDOs to justify the wholesale copying of ASTM's Copyrighted Works. Each of the Copyrighted Works contain portions that are expressly non-mandatory or supplementary, such as explanatory notes, supplementary materials, appendices, and annexes.  *Id.* ¶ 40; *see* Wise Decl. ¶¶ 2-11, Ex. 14-23.  Nevertheless, UpCodes indiscriminately posted the entirety of each of ASTM's Copyrighted Works and does not even limit its copying to the standards' requirements.  Wise Decl. ¶¶ 29-38, Exs. 41-50.

### 2. *Defendants' Removal and/or Alteration of ASTM's Copyright Management Information*

Each of ASTM's Copyrighted Standards includes a copyright notice identifying ASTM as the copyright holder and includes ASTM's address.  O'Brien Decl. ¶ 39; Wise Decl. ¶¶ 2-11, Ex. 14-23.   Apart from providing notice of ASTM's copyright claim in the work, each standard contains contact information for obtaining individual reprints of ASTM's Copyrighted Work as well as where to secure permission rights to copy the standard.  *Id.*  This notice and other copyright management information included in ASTM's Copyrighted Works is not present in Defendants' copies of ASTM's Copyrighted Standards.  *Id*.; *see e.g.,* Wise Decl. ¶¶ 29-38, Exs. 41-50. Defendants know that removal of ASTM's copyright management information makes it far more likely that third parties will be unaware of ASTM's copyrights and the restrictions that ASTM places on the reproduction and use of its standards and is likely to increase the risk of unauthorized copying and other infringement of ASTM's Copyrighted Works.

### 3. *Defendants Infringing Use of ASTM's Mark*

Defendants have created electronic copies of ASTM's Copyrighted Works which bear the ASTM Mark yet have not undergone ASTM's quality control processes nor been approved or otherwise authorized by ASTM.  O'Brien Decl. ¶¶ 55-56.  Defendants identify ASTM as the

11

publisher of the electronic copies of ASTM's Copyrighted Works on the UpCodes Website even though ASTM is neither the publisher nor source of these inferior copies.  *Id.* ¶ 57.



Excerpt from Wise Decl. ¶ 40, Ex. 52. (emphasis and zoom added).

## III.    ARGUMENT

Courts have "the freedom to fashion preliminary equitable relief so long as they do so by 'exercising their sound discretion.'" *Reilly v. City of Harrisburg*, 858 F.3d 173, 176, 179 (3d Cir. 2017) (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008)).  "'One of the goals of the preliminary injunction analysis is to maintain the status quo, defined as the last, peaceable noncontested status of the parties.'" *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990)).

A preliminary injunction is appropriate if a party shows: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief. *Kos Pharms.*, 369 F.3d at 708 (citing *Allegheny Energy, Inc. v.*

12

*DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999)); *see also Reilly*, 858 F.3d at 176. A district court should attempt to "'balance[] these four . . . factors to determine if an injunction should issue.'" *FMC Corp. v. Control Sols., Inc.*, 369 F. Supp. 2d 539, 554 (E.D. Pa. 2005) (citing *Am. Civil Liberties Union of New Jersey v. Black Horse Pike Regional Bd. of Educ.*, 84 F.3d 1471, 1477 n.2 (3d Cir. 1996)).

### A.  ASTM IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS.

#### 1.  ASTM is likely to succeed on the merits of its copyright claim.

ASTM is likely to succeed on the merits of its copyright infringement claim because it owns valid copyrights in ASTM's Copyrighted Works, Defendants violated ASTM's exclusive rights, and Defendants' anticipated affirmative defenses are meritless.

To prove likelihood of success on the merits, "'it is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking [injunctive] relief to make a *prima facie* case showing a reasonable probability that it will prevail on the merits.'" *FMC Corp.*, 369 F. Supp. 2d at 554-55 (citing *Oburn v. Shapp*, 521 F.2d 142, 148 (3d Cir. 1975)).  "'Probability of success implies that the moving party . . . must have a very clear and strong case.'" *Id.* (citation omitted).  Here, ASTM has a very clear and strong case for copyright infringement.

A party establishes a claim for copyright infringement by showing (1) ownership of a valid copyright and (2) unauthorized copying of original elements of its work.  *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting Inc.*, 307 F.3d 197, 206 (3d Cir. 2002) (citing *Whelan Assocs. v. Jaslow Dental Lab, Inc.*, 797 F.2d 1222, 1231 (3d Cir. 1986)); *see also Pyrotechnics Mgmt. v. XFX Pyrotechnics LLC*, 38 F.4th 331, 335 (3d Cir. 2022) ("To succeed, Pyrotechnics must show that (1) it owns a valid copyright and (2) fireTEK copied protected, original elements without authorization.").

13

JA152

### i.    ASTM owns valid copyrights in the works.

ASTM is entitled to a presumption of validity and ownership based on its registered copyrights.  17 U.S.C. § 410(c); *see Maduka v. Tropical Naturals, Ltd.*, 409 F. Supp. 3d 337, 354-55 (E.D. Pa. 2019); *Bieg v. Hovnanian Enters., Inc.*, 157 F. Supp. 2d 475, 479 (E.D. Pa. 2001); O'Brien Decl. ¶¶ 29-38, Exs. 2-11.

### a.    Defendants cannot rebut the presumption that ASTM owns valid copyrights in ASTM Copyrighted Works.

In Defendants' litigation with other SDOs, UpCodes has asserted that privately authored standards lose their copyright protection once they are IBR'd by any governmental authority.  *See Facility Guidelines Inst., Inc. v. UpCodes, Inc.*, 677 F. Supp. 3d 955 (E.D. Mo. 2023); *Nat'l Fire Prot. Ass'n, Inc. v. UpCodes, Inc.,* 2021 WL 4913276 (C.D. Cal. Aug. 9, 2021); *Int'l Code Council, Inc. v. UpCodes, Inc.* ("*ICC*"), 2020 WL 2750636 (S.D.N.Y. May 27, 2020).  In the present case, **<u>no</u>** governmental authority has IBR'd ASTM's Copyrighted Works, O'Brien Decl. ¶ 54, and no court has ever held that a third-party reference to a standard can result in the loss of copyright protection or even suggested it is a close call.

Prior to 2020, there was a significant question on which there is a split of authority as to whether privately authored standards that a governmental authority IBR's lose their copyright protection under what is called the "government edicts doctrine."  *See Am. Soc'y for Testing & Materials et al. v. Public.Resource.Org, Inc.*, 896 F.3d 437, 441 (D.C. Cir. 2018) ("leaving for another day the far thornier question of whether standards retain their copyright after they are incorporated by reference into law"); *see also Veeck v. S. Bldg. Code Cong. Int'l Inc.*, 293 F.3d 791, 804-05 (5th Cir. 2002) (*en banc*) ("The copyrighted works do not 'become law' merely because a statute refers to them" but the text of a model code which "serves no other purpose than to become law" entered the public domain when published as "the building codes of Anna and

14

Savoy, Texas"); *Practice Mgmt. Info. Corp. v. Am. Medical Ass'n*, 121 F.3d 516, 518-19 (9th Cir. 1997) (holding that IBR does not terminate copyright protection because holding otherwise "would expose copyrights on a wide range of privately authored model codes, standards, and reference works to invalidation"); *CCC Info. Servs. v. MacLean Hunter Mkt. Reports, Inc.*, 44 F.3d 61, 74 (2d Cir. 1994) ("We are not prepared to hold that a state's reference to a copyrighted work as a legal standard for valuation results in loss of the copyright."); *Bldg. Officials & Code Adm. v. Code Tech., Inc.*, 628 F.2d 730, 736 (1st Cir. 1980) (reversing grant of preliminary injunction but declining to hold BOCA's copyright invalid because "[g]roups such as BOCA serve an important public function; arguably they do a better job than could the state alone in seeing that complex yet essential regulations are drafted, kept up to date and made available").

The Supreme Court resolved this issue in *Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255 (2020).  In *Georgia*, the Court explained that under the "government edicts doctrine, *officials empowered to speak with the force of law* cannot be the authors of—and therefore cannot copyright—the works they create in the course of their official duties."  *Id.* at 259 (emphasis added).  Thus, "whatever work that [a] judge or legislator produces in the course of his judicial or legislative duties is not copyrightable."  *Id.* at 276.  On the other hand, the Court also made clear that the government edicts doctrine prohibition on copyright protection does not apply "to works created by government officials (or *private parties*) who lack the authority to make or interpret the law[.]"  *Id.* at 265 (emphasis added).  *But see ICC,* 2020 WL 2750636, at *8, 16 ("Because ICC is a private party that lacks the authority to make or interpret the law, the Government Edicts doctrine is clearly not dispositive of this case" but, nevertheless, finding that "the text of model codes that has been adopted enters the public domain" under *Veeck*).

In any event, all of these cases address the question of whether a privately authored work loses its copyright protection once it is IBR'd by a governmental authority. As mentioned above, no governmental authority has IBR'd ASTM's Copyrighted Works, and no court has ever held that a TPR to a standard terminates copyright protection in the TPR'd standard.

### ii. Defendants violate numerous of ASTM's exclusive rights.

Defendants' unauthorized exercise of any one of ASTM's exclusive rights under Section 106 constitutes infringement. *See* 17 U.S.C. § 106. Defendants infringe at least four exclusive rights:

- **Reproduction Right, § 106(1)**: Defendants digitally reproduce large portions of ASTM's Copyrighted Works on the UpCodes Website without a license. *Compare, e.g.,* ¶¶ 29-38, Exs. 41-50 *with id.* ¶¶ 2-11, Exs. 14-23; *see, e.g., Authors Guild, Inc. v. Google Inc.,* 954 F. Supp. 2d 282, 289 (S.D.N.Y. 2013) (digitally reproducing books violates reproduction rights under § 106(1)), *aff'd*, 804 F.3d 202 (2d Cir. 2015)).

- **Derivative Works Right, § 106(2)**: Defendants recast ASTM's Copyrighted Works into different formats, including through compilations of chapters and text with user annotations created on the UpCodes site, infringing ASTM's exclusive right under § 106(2) to create derivative works. *Compare, e.g.,* Wise Decl. ¶ 2, Ex. 14 *with id.* ¶ 29, Ex. 41; *see also* 17 U.S.C. § 101 ("derivative work" includes any form in which a work "may be recast, transformed, or adapted").

- **Distribution Right, § 106(3)**: Defendants distribute ASTM's Copyrighted Works by uploading them to the site where UpCodes' users download, print, and further distribute copies. Wise Decl. ¶¶ 43-44, Exs. 55-56.

16

- **Public Display Right, § 106(5)**: Defendants' online display of the ASTM Copyrighted Works infringes ASTM's exclusive right of public display. [cite screenshot]; *see Healthcare Advocs., Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627, 635 (E.D. Pa. 2007) (under the "expansive definition of public display," the display of copyrighted works on computers constitutes a public display); *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 192 F. Supp. 2d 321, 332 (D.N.J. 2002), *aff'd* 342 F.3d 191 (3d Cir. 2003) (providing clip previews online constitutes a public display).

Defendants' *prima facie* liability for infringement is clear.

### iii. Defendants' anticipated affirmative defenses are meritless.

In response to prior copyright infringement claims by other SDOs, Defendants have alleged the affirmative defenses of fair use and merger. *See, e.g.*, *NFPA v. UpCodes,* Case No. 2:21-cv-05262 at Dkt. No. 21; *Int'l Code Council*, No. 1:17-cv-6261 at Dkt. No. 20. Ultimately, Defendants must prove that their affirmative defenses would undermine ASTM's established likelihood of success on its copyright claims. *See Greater Phila. Chamber of Com. v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020) ("'the burdens at the preliminary injunctions stage track the burdens at trial,'") (quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429, (2006)); *FMC Corp.*, 369 F. Supp. 2d at 553 ("CSI raises many affirmative defenses to FMC's establishment of a *prima facie* case of copyright infringement. On the record established thus far, however, none of these affirmative defenses is so persuasive as to undermine what appears as FMC's likely success with its claim."). While Defendants will ultimately bear the burden on these affirmative defenses, ASTM nevertheless sets forth why they will not be able to meet that burden with respect to fair use and merger.

17

**a. Defendants cannot show their affirmative defense of fair use is likely to succeed.**

Copyright fair use asks Courts to analyze four statutory factors: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191, 198-201 (3d Cir. 2003).

Regarding the first factor, Defendants' use is obviously commercial. "If an original work and a secondary use share the same or highly similar purposes, and the secondary use is of a commercial nature, the first factor is likely to weigh against fair use, absent some other justification for copying." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith,* 598 U.S. 508, 532-33 (2023). The "central question" is whether the defendant's use "supersedes the objects of the original" and thus serves as a substitute—"copyright's bête noire." *Id.* at 528 (cleaned up). UpCodes is a for-profit company that reproduces, displays, distributes, and creates derivative versions of ASTM's Copyrighted Works for its own financial gain and an identical purpose. Both ASTM and UpCodes offer the standards, and tools based on those standards, to AEC professionals. O'Brien Decl. ¶ 50.

Defendants' use also is not transformative. Courts must analyze the defendant's claim of transformation "in the context of the specific use at issue." *Warhol*, 598 U.S. at 545. A transformative use adds "something new, with a further purpose or different character, altering the first [work] with new expression, meaning, or message." *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 579 (1994). Defendants do no such thing. They "'merely repackage[] [and] republish[] the original,'" conduct that "is unlikely to be deemed a fair use." *Fox News Network, LLC v.*

18

*TVEyes, Inc.,* 883 F.3d 169, 177 (2d Cir. 2018) (citation omitted).  Fundamentally, Defendants' use is for the same purpose as ASTM's—providing the information to AEC professionals—which seriously weakens a claimed fair use.  *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 307-08 (3d Cir. 2011) (appropriating an image for the "same purpose" as plaintiff is "far from transformative"); *TD Bank N.A. v. Hill*, 2015 WL 4523570 at *7 (D.N.J. July 27, 2015) (finding "in instances where the use made is for the same purpose that the copyright holder intended his audience to use or enjoy the work, fair use would not be found"); *Worldwide Church of God v. Phila. Church of God, Inc.,* 227 F.3d 1110, 1117 (9th Cir. 2000) (citation omitted) (finding where a use is "for the same intrinsic purpose as [the copyright holder's] . . . such use seriously weakens a claimed fair use.").

Defendants are likely to rely on *ASTM et al. v. Public.Resource.Org, Inc.*, 896 F.3d 437, 450 (D.C. Cir. 2018), to argue that the first factor favors them, but even that outlier decision suggests otherwise on these facts.  In that decision, the D.C. Circuit suggested that, in certain circumstances, "[the first] factor would weigh heavily in favor of permitting a *nonprofit* seeking to inform the public about the law to reproduce in full the relevant portions of that particular standard." *ASTM,* 896 F.3d at 450.  UpCodes, however, is a *for-profit company* that uses ASTM's Copyrighted Works to upsell users to its paid premium service—not in furtherance of a charitable charter.  *See Warhol*, 598 U.S. at 509 ("the degree of difference must be weighed against other considerations, like commercialism.").  And UpCodes copies and distributes ASTM standards that are *not* "essential to complying with any legal duty," *ASTM*, 896 F.3d at 450, because no governmental authority has IBR'd ASTM's Copyrighted Works, and portions of each of the ASTM's Copyrighted Works that Defendants have copied are expressly non-mandatory or

19

supplementary and do not impose any duty under any circumstance.  O'Brien Decl. ¶¶ 40, 54; *see* Wise Decl. ¶¶ 29-38, Exs. 41-50.

The second factor is "the nature of the copyrighted work."  17 U.S.C. § 107.  This factor asks whether the work at issue is "close[] to the core of intended copyright protection[.]" *Campbell*, 510 U.S. at 586.  While this factor also weighs against a finding of fair use, it is of limited relevance.  *Warren Publ'g Co. v. Spurlock*, 645 F. Supp. 2d 402, 428 (E.D. Pa. 2009). Here, because ASTM's Copyrighted Works are original and complex works that take a high degree of resources to produce, and because providing an incentive for ASTM to develop and publish these works is manifestly in the public interest, these works are at the core of copyright law, and so this factor weighs in ASTM's favor.  *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 546 (1985) ("It is evident that the monopoly granted by copyright actively served its intended purpose of inducing the creation of new material of potential historical value.").  Even if Defendants argue that this factor favors fair use when a governmental authority has IBR'd a work—which ASTM disputes—no governmental authority has IBR'd any of the ASTM Copyrighted Works.  O'Brien Decl. ¶ 54.  This factor therefore does not favor fair use. *See Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.,* 597 F. Supp. 3d 213, 420 (D.D.C. 2022), *aff'd*, 82 F.4th 1262 (D.C. Cir. 2023) ("Standards not incorporated into law, though factual works, fall more squarely within the realm of copyright protection.")

The third factor is "the amount and substantiality of the work taken."  17 U.S.C. § 107. "The Supreme Court has explained that 'the extent of permissible copying varies with the purpose and character of the use' and characterized the relevant inquiry as whether 'the amount and substantiality of the portion used['] ... are reasonable in relation to the purpose of the copying.'" *ASTM*, 896 F.3d at 452 (quoting *Campbell*, 510 U.S. at 586–87 (quoting 17 U.S.C. § 107(3))).

"[F]air use generally is not a defense if an entire work is reproduced." *FMC Corp.*, 369 F. Supp. 2d at 580 (citations omitted); *see also Murphy*, 650 F.3d at 309 (holding the third factor weighed against a finding of fair use because the "[d]efendants copied the Image in its entirety"); *Worldwide Church of God*, 227 F.3d at 1118 ("[C]opying an entire work 'militates against a finding of fair use.'").

Here, Defendants' wholesale reproduction of ASTM's Copyrighted Works must be examined in light of its commercial motivation. *Cf. ASTM*, 896 F.3d at 452 ("PRO's copying must be considered standard by standard in light of its purpose of informing the public about the specific incorporation at issue."). This factor weighs in ASTM's favor. Defendants' objective is to attract traffic to the UpCodes Website by providing free access to ASTM's Copyrighted Works and to then upsell premium services to those visitors. Defendants are copying and posting the entirety of ASTM's Copyrighted Works—excepting the copyright notices. O'Brien Decl. ¶ 39; *compare* Wise Decl. ¶¶ 29-38, Exs. 41-50 *with id*. ¶¶ 2-11, Exs. 14-23. "[T]he fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression." *Harper & Row*, 471 U.S. at 565.

Even in the context of determining whether a non-profit organization's posting of IBR'd works in furtherance of its purpose of educating the public about the specifics of the law would be "fair use," the court in *ASTM* made clear that the defendant must "limit[] its copying to only what is required to fairly describe the standard's legal import." 896 F.3d at 452. The *ASTM* court contemplated that "where the incorporation merely makes reference to an external standard, but that standard does not govern any conduct, perhaps the copier's purpose could be achieved with only a paraphrase or a summary." *Id.* Here, not only do Defendants serve a competitive and

21

substitutional purpose rather than an educational one, Defendants also do not limit their copying to material that describes a standard's legal import.  Rather, they reproduce, distribute, and display expressly "Nonmandatory Information" portions of ASTM's Copyrighted Works that impose no binding legal duties as shown in the example below.  O'Brien Decl. ¶ 40; *see e.g.,* Wise Decl. ¶ 30, Ex. 42 (excerpted below with emphasis added).

California Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017

Appendixes

(Nonmandatory Information)

X1 Bending Properties

X1.1
Table X1.1 lists suggested minimum inside radii for cold bending.

Further, ASTM's Copyrighted Works are merely referenced in other privately authored works—they have not been IBR'd by any jurisdiction.  O'Brien Decl. ¶ 54; *see, e.g,* Wise Decl. ¶ 12, Ex. 24.  In light of Defendants' copying and distribution of the entirety of ASTM's Copyrighted Works which "do[] not govern any conduct" by virtue of a TPR and which contain explicitly non-mandatory content, this factor too weighs against fair use. *See ASTM*, 896 F.3d at 452.

Finally, the fourth factor is the effect of the defendant's use on the potential market for or value of the copyrighted work.  17 U.S.C. § 107.  Defendants' use poses significant direct and indirect market harm to ASTM's Copyrighted Works.  Market harm flows, first, from Defendants' usurpation of ASTM's markets for the sale of physical copies and subscriptions to access its standards.  UpCodes' online offerings contain the entirety of the standards' substantive chapters and thus "serve as a market substitute for the original." *Campbell,* 510 U.S. at 587.  Even the district court in the *ICC* case, which sided with UpCodes as to the first three factors, acknowledged that it was "fair to say" that UpCodes' posting was "an effective substitute for" the plaintiff's works. *ICC,* 2020 WL 2750636, at *28.

22

Moreover, under the fourth factor, the Court must consider not only Defendants' appropriation of ASTM's Copyrighted Works, but "'whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market' for the original." *Campbell,* 510 U.S. at 590 (citations omitted). There is no question that if anyone could do what Defendants are doing, the market for ASTM's Copyrighted Works would be destroyed. *See* O'Brien Decl. ¶ 47. This "impedes the purpose of copyright to incentivize new creative works by enabling their creators to profit from them." *Capitol Records, LLC v. ReDigi Inc.,* 910 F.3d 649, 662 (2d Cir. 2018); s*ee also Soc'y of the Holy Transfiguration Monastery, Inc. v. Gregory,* 689 F.3d 29, 65 (1st Cir. 2012) ("If anyone could freely access the Works . . . the Monastery would have no market in which to try and publish, disseminate, or sell its [works]. . . . Thus, the Monastery's [works] (which the Archbishop does not contest were expensive to create) would have been toiled over, with no possible market in which to reap the fruits of its labor.").

In sum, Defendants cannot show a likelihood of prevailing on fair use.

> **b. Defendants cannot show their affirmative defense of merger is likely to succeed.**

Defendants also are likely to raise the affirmative defense of merger, but that defense is also baseless. "[M]erger occurs where there is only one or a limited number of ways of expressing a certain idea, so that copyright protection of the expression would necessarily result in copyright protection of the idea itself." *F.A. Davis Co. v. Wolters Kluwer Health, Inc.*, 413 F. Supp. 2d 507, 512 (E.D. Pa. 2005). Courts only find merger when "'there are no or few other ways of expressing a particular idea.'" *Silvertop Assocs. v. Kangaroo Mfg.*, 931 F.3d 215, 222 (3d Cir. 2019) (citing *Educ. Testing Servs. v. Katzman*, 793 F. 2d 533, 539 (3d Cir. 1986)). "Notably, merger is most applicable where the idea and the expression are of items found in nature, or are found commonly

23

in everyday life.  But if copyright does not foreclose other methods of expressing [an] idea . . . as a practical matter, then there is no merger."  *Id.* (citations omitted).

There are countless ways to express the ideas set forth in ASTM's Copyrighted Works and any other standards, and maintaining ASTM's copyright protection in those works will not prevent any party from developing competing standards.  This is the precise reason why the Ninth Circuit rejected a similar merger defense in *Practice Management*, and any attempt by Defendants to justify their unauthorized copying based on merger should similarly be rejected here.  *Practice Mgmt.,* 121 F.3d at 520 n.8 (because AMA's copyright did not "stifle independent creative expression in the medical coding industry," it did not prevent the plaintiff or AMA's competitors from developing competing coding systems but "simply prevent[ed] wholesale copying of an existing system.").

### 2.   ASTM is likely to succeed on its trademark claims.

To succeed on the merits of its Lanham Act claims, ASTM "must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion."  *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000).  Unfair competition claims under the Lanham Act and common law infringement claims are subject to the same standard.  *Theia Techs. LLC v. Theia Grp., Inc,* 2021 WL 291313, at *21 (E.D. Pa. Jan. 28, 2021) (citing *First Am. Mktg. Corp. v. Canella*, 2004 WL 250537, at *2 (E.D. Pa. Jan. 26, 2004)).

"An incontestable trademark [] satisfies the first two prongs of a trademark infringement claim."  *Theia Techs.,* 2021 WL 291313, at *21.  ASTM owns the incontestable, federally registered ASTM Mark (Reg. No. 2,679,320) for use in connection with goods and services in Classes 16, 35, 41, and 42 and therefore is able to satisfy the first two elements of its trademark claims.  O'Brien Decl. ¶ 48, Ex. 13.

As to the third element, Defendants are offering for sale premium services and access to electronic copies of ASTM's Copyrighted Works bearing the identical ASTM Mark even though Defendants' inferior versions are not authorized, sponsored, or affiliated with ASTM. *See* O'Brien Decl. ¶¶ 55-56, 58. Where, as is here, the parties "are directly competing, and the marks are clearly very similar, a district judge should feel free to consider only the similarity of the marks themselves." *A & H Sportswear,* 237 F.3d at 214. There is no need to assess each of the *Lapp* factors[6] to assess likelihood of confusion as UpCodes competes directly with ASTM by targeting AEC professionals with premium services built on ASTM's Copyrighted Works, O'Brien Decl. 50; Wise Decl. ¶¶ 14-15, Exs. 26-27, and using ASTM's exact trademark. *Darius Int'l, Inc. v. Young,* 2006 WL 1071655, at *26 (E.D. Pa. Apr. 20, 2006); *Richardson v. Cascade Skating Rink*, 2022 WL 833319, at *3 (D.N.J. Mar. 21, 2022) (collecting cases). Given Defendants' use of identical marks for competing services alone, ASTM is likely to succeed on the element of likelihood of confusion and as a result, is likely to succeed on its trademark infringement claims (Counts IV-VII).

---

[6] The Third Circuit "has adopted a nonexhaustive list of factors to consider in evaluating likelihood of confusion, commonly referred to as the '*Lapp* factors.'" *Kos Pharms.*, 369 F.3d at 709. (citing *Interpace Corp. v. Lapp, Inc.,* 721 F.2d 460, 463 (3d Cir.1983)). Those factors are: "'(1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.'" *Id.* (quoting *A & H Sportswear,* 237 F.3d at 215).

25

**B. ASTM WILL SUFFER IRREPARABLE HARM ABSENT A PRELIMINARY INJUNCTION.**

"'[T]o show irreparable harm a plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.'" *Rigby v. Jennings*, 630 F. Supp. 3d 602, 618 (D. Del. 2022) (citing *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994)).

### 1. ASTM will suffer irreparable harm unless Defendants are preliminarily enjoined from infringing ASTM's Copyrighted Works.

"Although a *prima facie* case for copyright infringement, alone, does not create a presumption of irreparable injury, 'irreparable harm may be based on past and future infringement' if a plaintiff can demonstrate a threat of future infringement beyond mere conclusory allegations." *Silvertop Assocs., Inc. v. Kangaroo Mfg., Inc.*, 319 F. Supp. 3d 754, 769 (D.N.J. 2018), *aff'd*, 931 F.3d 215 (3d Cir. 2019) (citations omitted). Not only are there currently 10 infringing works on the UpCodes Website, but Defendants appear poised to imminently post 9 additional ASTM works given the appearance of those titles on the UpCodes Website in a grayed-out form. Wise Decl. ¶ 40, Ex. 52. Prior to their improper posting on the UpCodes Website, the now live infringing copies of ASTM's Copyrighted Works appeared in a similar grayed out form. *Id.* ¶¶ 17-18, Exs. 29-30.

Even without the presumption of irreparable harm…, the jeopardy to ASTM's investment and competitive position caused by UpCodes' wholesale copying of its standards would satisfy the requirement of irreparable harm. *See Apple Comput., Inc. v. Franklin Comput. Corp.*, 714 F.2d 1240, 1254 (3d Cir. 1983) *abrogated on other grounds by TD Bank N.A. v. Hill*, 928 F.3d 259, 278 (3d Cir. 2019); *see also BGSD, Inc. v. SpazeUp, LLC*, 2024 WL 1619279, at *6 (E.D. Pa. Apr. 15, 2024) (post-*TD Bank* finding continuing nature of infringement suggestive of irreparable harm).

Defendants' decision to exploit ASTM's Copyrighted Works without seeking a license upends the status quo.  Defendants know that ASTM owns the copyright in its standards.[7]  They *could have* sought a license or declaratory judgment before wholesale posting ASTM's standards, but they did not.  Defendants should not benefit from their "ask forgiveness rather than permission" strategy.  If not enjoined during the pendency of this litigation, Defendants' conduct threatens ASTM with several recognized forms of irreparable harm as set forth below.

First, Defendants are interfering with and threatening the success of ASTM's market for its subscription service, ASTM Compass.  O'Brien Decl. ¶¶ 45-46, Ex. 12; *id.* ¶ 54; *see Bell Helicopter Textron Inc. v. Airbus Helicopters*, 78 F. Supp. 3d 253, 274-75 (D.D.C. 2015) ("losses to… customer base and reputation defy attempts at valuation[] and are unlikely to be remedied through a simple damages calculation" (citations omitted)).  The AEC industry is a substantial market for ASTM, and ASTM has historically derived a portion of its revenues from licensing and sales to members of the AEC community.  O'Brien Decl. ¶ 50.  UpCodes offers nearly identical content and features as ASTM but competes on unfair terms because it has not had to bear the costs of developing the standards.  UpCodes makes ASTM's content available for printing, download, and re-distribution for *free*, a price with which ASTM cannot compete.  O'Brien Decl. ¶ 47.

If AEC professionals are led to believe that UpCodes is a legitimate alternative to ASTM Compass, ASTM are likely to lose both existing and potential subscribers.  *See* O'Brien Decl. ¶¶ 57-58; *see Warner Bros. Ent. Inc. v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003, 1013 (C.D. Cal. 2011) (defendants' service threatened "to create incorrect but lasting impressions with consumers about

---

[7] UpCodes has been involved in copyright litigation against other SDOs since 2017 and has closely followed litigation involving ASTM and disputes concerning the unfettered wholesale copying of ASTM's standards.  *See Int'l Code Council*, No. 1:17-cv-6261 (S.D.N.Y).

what constitute[d] lawful video on demand exploitation" of copyrighted works); *MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1215 (C.D. Cal. 2007) ("[l]oss of market share in this nascent market" is irreparable (citation omitted) (alteration in original)); *see also Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) ("In the context of copyright infringement cases, the harm to the plaintiff's property interest has often been characterized as irreparable in light of possible market confusion."); *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96-97 (2d Cir. 2002) (sale of competing prayer books to same market of synagogue customers would result in irreparable harm).

Relatedly, Defendants threaten the value of ASTM's licensing market and its goodwill and relationship with licensees.  O'Brien Decl. ¶¶ 58-59.  UpCodes' offerings threaten ASTM's licensees' business and strain ASTM's relationships with its licensees.  *Id*.  Obviously, if Defendants are permitted to reproduce ASTM's standards for commercial purposes without a license, then ASTM's licensees are likely to be reluctant to continue to pay ASTM for a license. Courts have repeatedly held that harm to licensing relationships is irreparable.  *22nd Century Techs., Inc. v. iLabs, Inc.*, 2023 WL 3409063, at *7 (3d Cir. May 12, 2023) (harm to client relationships satisfies the irreparable harm requirement); *Coventry First, LLC v. Ingrassia*, 2005 WL 1625042, at *11 (E.D. Pa. July 11, 2005) ("Pennsylvania courts have indicated that interference with customer relationships satisfies the irreparable harm requirement."); *Laidlaw, Inc. v. Student Transp. of Am.*, 20 F. Supp. 2d 727, 766 (D.N.J. 1998) *abrogated on other grounds by ADP, LLC v. Rafferty*, 923 F.3d 113 (3d Cir. 2019) (interference with customer relationships may be the basis for a finding of irreparable harm); *Fox Television Stations, Inc. v. BarryDriller Content Sys., PLC*, 915 F. Supp. 2d 1138, 1147 (C.D. Cal. 2012) (irreparable harm was clear when revenues from licensing market at issue had "become increasingly important to the . . . industry,

and are used to fund the development and acquisition of [new Works]" and the allegedly infringing service "threaten[ed] to damage Plaintiffs' ability to negotiate favorable [licenses]").

Second, Defendants' infringement threatens ASTM's ability to invest in creating and updating standards and thus its contribution to overall public safety.  O'Brien Decl. ¶¶ 43-47.  This type of incalculable harm merits injunctive relief.  *See Salinger*, 607 F.3d at 81 ("Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer.").

Finally, preliminary injunctive relief is necessary here because everyone who has prints or downloads a copy of ASTM's standards from the UpCodes Website can become an entirely new engine of unrestricted distribution.  *See MGM*, 518 F. Supp. 2d at 1218 ("virtually unstoppable" threat of future copyright infringement for downloaded works (citation omitted)).  When infringement is allowed to continue unchecked, a copyright owner essentially loses control of its intellectual property.  Courts have found that this loss of control due to rampant infringement is irreparable—especially in an online environment where an infringing file can be shared ad nauseam with other users, thus compounding the harm.  *See id.* ("When digital works are distributed via the internet…, every downloader who receives one of the copyrighted works… is in turn capable of also transmitting perfect copies of the works.  Accordingly, the process is potentially exponential rather than linear, threatening virtually unstoppable infringement of the copyright."); *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 204-05 (3d Cir. 2014) ("Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill.") (quoting *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378-79 (3d Cir. 1992)); *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 712 (D. Md.

2012) *aff'd*, 722 F.3d 591 (4th Cir. 2013) (plaintiff "demonstrated that its loss of exclusive control over its copyrighted content is likely to lead to irreparable harm").

### 2.   Defendants cannot rebut the presumption that ASTM will suffer irreparable harm unless Defendants are enjoined from infringing the ASTM Mark.

The Lanham Act creates a presumption of irreparable harm for trademark infringement and unfair competition upon a finding of likelihood of success on the merits.  15 U.S.C. § 1116(a). "'Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will.'"  *Kos Pharms.*, 369 F.3d at 726 (quoting *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998)).  "Lack of control over one's mark 'creates the *potential* for damage to … reputation[, which] constitutes irreparable injury for the purpose of granting a preliminary injunction in a trademark case.'"  *Id.* (quoting *Opticians Ass'n*, 920 F.2d at 196). The risk of irreparable harm is so significant with misuse of a trademark, that the Lanham Act was amended in 2020 to restore the presumption of irreparable harm upon a finding of likelihood of success on the merits.

Defendants' continued use of ASTM's Mark on unauthorized electronic copies jeopardizes ASTM's hard-earned reputation and consumer trust.  O'Brien Decl. ¶¶ 49, 58.  The likelihood of irreparable harm is not merely theoretical. Paramount among these concerns is the threat to public safety caused by the improper association of safety-related codes with ASTM that have not undergone ASTM's quality control processes.  *Id.* ¶¶ 56, 58.  Any mistakes that Defendants introduce in their versions of ASTM's Copyrighted Works could implicate public safety, which in turn would harm ASTM's reputation as it would be wrongfully attributed to ASTM by virtue of Defendants' use of the identical ASTM Mark, claiming ASTM, not Defendants, created the versions published on the UpCodes Website.  *Id*.  Additionally, Defendants' unauthorized use of

30

the ASTM Mark deprives ASTM the ability to control the use of its trademark, including the loss of control over brand identity, goodwill, and reputation. *Id.; Groupe SEB*, 774 F.3d at 204-05.

### 3. ASTM will suffer irreparable harm by virtue of Defendants' repeated intellectual property infringement and inability to satisfy a judgment.

ASTM's right to exclude others from use of its Copyrighted Works and trademark is one of the fundamental tenets of intellectual property law. Repeated infringement threatens that right and justifies an injunction. *Breaking the Chain Found. v. Capitol Educ. Support, Inc.*, 589 F. Supp. 2d 25, 30 (D.D.C. 2008) ("Defendant's continuing disregard for Plaintiff's rights demonstrates that it will continue to infringe on Plaintiff's rights, absent an injunction. This finding further justifies granting Plaintiff's request for a permanent injunction."); *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 504 (2d Cir. 2014) ("'[T]he critical question for a district court in deciding whether to issue a permanent injunction… is whether there is a reasonable likelihood that the wrong will be repeated.'" (citations omitted)); *cf. Int'l Code Council, Inc. v. UpCodes, Inc.*, No. 17 CIV. 6261 (VM), 2020 WL 2750636, at *18 (S.D.N.Y. May 27, 2020) (holding that UpCodes has made "rather surprising oversights, such as erroneously indicating that the landlocked state adopted an appendix focusing on tsunami-generated flood hazards.").

Finally, Defendants are financially unlikely to be able to satisfy a judgment. UpCodes is a startup company that is still actively engaged in fundraising to operate and expand its business. UpCodes owners claimed that as recently as 2020, they "used their savings to start UpCodes," slept on an "airbed," Wise Decl. ¶ 48, Ex. 60 (*Int'l Code Council*, No. 17 CIV. 6261, Dkt. 92-33 ¶¶ 6-7), and "share[d] a studio apartment to cut their expenses and did not pay themselves a salary until over a year after founding UpCodes." *Int'l Code Council*, No. 17 CIV. 6261 (VM), 2020 WL 2750636, at *31 (S.D.N.Y. May 27, 2020). Since then, UpCodes has been embroiled in multiple litigations in multiple district courts concerning their widespread copyright infringement,

31

presumably incurring substantial legal fees. *See, e.g.*, Wise Decl. ¶ 49, Ex. 61 (fee motion from Morrison & Foerster LLP, law firm representing UpCodes, with rates). Defendants' unstable financial position favors finding irreparable harm, because money damages would be inadequate assuming Defendants remain unable to pay a judgment. *See Eli Lilly and Co. v. Premo Pharm. Lab'ys, Inc.*, 630 F.2d 120, 137 (3d Cir. 1980) (affirming district court's finding of irreparable harm where "'damages could very conceivably run beyond [defendant]'s ability to pay them'"); *Symbol Techs., Inc. v. Janam Techs. LLC*, 729 F. Supp. 2d 646, 665 (D. Del. 2010) (evidence that a business was not sufficiently capitalized to be able to pay the predicted damages award weighed in favor of finding irreparable harm); *Novartis Corp. v. Teva Pharms. USA, Inc.*, 2007 WL 1695689, at \*26-28 (D.N.J. June 11, 2007) (ability to pay considered in the irreparable harm analysis).

### C. THE BALANCE OF HARDSHIPS DECISIVELY FAVORS ASTM.

In contrast to the significant and irreparable harm that Defendants' unfettered copying of ASTM's Copyrighted Work and confusing use of the ASTM Mark pose to ASTM and its licensing partners, Defendants bear no cognizable harm. UpCodes only began appropriating ASTM's Copyrighted Works and the ASTM Mark a few weeks ago. *See, e.g.,* Wise Decl. ¶ 18, Ex. 30. Prior to that, it used grayed-out icons to show that the works were "coming soon" since at least October 2023. Wise Decl. ¶ 17, Ex. 29. As a result, there is years of data showing that UpCodes can continue to operate its business without posting ASTM's standards. Even if UpCodes claimed to lose sales as a result of a preliminary injunction, an infringer cannot complain about the loss of ability to sell or distribute its infringing products. *Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.*, 864 F. Supp. 2d 316, 332 (E.D. Pa. 2012) (citing *WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 620-21 (S.D.N.Y. 2011) and *Apple Comput.*, 714 F.2d at 1255)).

### D.  A PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST.

ASTM's standards are devoted to issues of great importance to the public, such as the safety of building materials used in the construction of bridges, buildings, and ships.  The public interest is served by protecting financial incentives for the continued creation of standards and the resulting beneficial public-private system in place in the United States.  *See CCC*, 44 F.3d at 66 (a policy "embodied into [copyright] law is to encourage authors to publish innovations for the common good"); *Apple Comput.*, 714 F.2d at 1255 ("it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." (citing *Klitzner Indus. v. H. K. James & Co.*, 535 F. Supp. 1249, 1259-60 (E.D. Pa. 1983)).

Additionally, "[i]n a trademark case, the public has an interest in not being 'deceived or confused.'"  *Theia Techs. LLC,* 2021 WL 291313, at *33 (quoting *Opticians Ass'n*, 920 F.2d at 197).  "As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff."  *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994).

The public interest favors entry of a preliminary injunction.

## IV.   CONCLUSION

For the foregoing reasons, ASTM is entitled to the injunctive relief it seeks.

Dated: May 3, 2024

Respectfully submitted,

By: */s/ J. Kevin Fee*
**DLA PIPER LLP (US)**
J. Kevin Fee (PA Bar No. 81715)
Jane W. Wise (*pro hac vice* motion forthcoming)
500 Eighth Street, NW
Washington, DC 20004
kevin.fee@dlapiper.com
jane.wise@dlapiper.com

Gabrielle C. Velkes (*pro hac vice* motion forthcoming)
1251 Avenue of the Americas, 27th Fl.
New York, NY 10020
gabrielle.velkes@us.dlapiper.com

*Attorneys for Plaintiff American Society for Testing and Materials d/b/a ASTM International*

34

JA173

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a ASTM INTERNATIONAL,<br><br>Plaintiff,<br><br>v.<br><br>UPCODES, INC.; GARRETT REYNOLDS; and SCOTT REYNOLDS,<br><br>Defendant. | C.A. No. 2:24-cv-01895-AB |

## DEFENDANTS UPCODES, INC., GARRETT REYNOLDS, AND SCOTT REYNOLDS' LEGAL ARGUMENTS IN RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

I.  Responsive Legal Arguments regarding Copyright Claims. ..............................1

    A.  "No one can own the law."..................................................................1

    B.  There is only one way to express the law, so the merger doctrine bars copyright infringement liability. ........................................................3

    C.  Disseminating the law is fair use..........................................................5

        i.  Factor 1: The "purpose and character of the use" is to disseminate the law for free. ........................................................6

        ii.  Factor 2: The "nature of the copyrighted work" is the text of the law. ...................................................................................7

        iii.  Factor 3: The amount and substantiality of the portion used was only that necessary to state the law............................................8

        iv.  Factor 4: Balancing private harm against public benefit............9

II.  Responsive Legal Arguments regarding Trademark Claims............................10

ii

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*
(*ASTM*), 82 F.4th 1262 (D.C. Cir. 2023) ...................................................2, 6, 8, 9

*Bldg. Offs. & Code Adm. v. Code Tech., Inc.*,
628 F.2d 730 (1st Cir. 1980) .........................................................................1

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) .......................................................................................8

*CCC Information Services, Inc. v. Maclean Hunter Market Reports*
(*CCC*), 44 F.3d 61 (2d Cir. 1994) ...............................................................4

*Century 21 Real Est. Corp. v. LendingTree, Inc.*,
425 F.3d 211 (3d Cir. 2005) .........................................................................10

*Ets-Hokin v. Skyy Spirits Inc.*,
323 F.3d 763 (9th Cir. 2003) .........................................................................4

*F.A. Davis Co. v. Wolters Kluwer Health, Inc.*,
413 F. Supp. 2d 507 (E.D. Pa. 2005) ...........................................................3

*Facility Guidelines Inst., Inc. v. UpCodes, Inc.* (*FGI v. UpCodes*),
677 F. Supp. 3d 955 (E.D. Mo. 2023) .......................................................2, 7

*FGI v. UpCodes*,
677 F. Supp. 3d at 972–73 ............................................................................9

*Georgia v. Public.Resource.Org, Inc.*,
140 S. Ct. 1498 (2020) ...............................................................................1, 5

*Google LLC v. Oracle Am., Inc.*,
141 S. Ct. 1183 (2021) ..................................................................................6

*Int'l Code Council, Inc. v. UpCodes, Inc.* (*ICC*),
No. 17 Civ. 6261 (VM), 2020 WL 2750636
(S.D.N.Y. May 27, 2020) .......................................................................*passim*

*Nat'l Fire Protection Ass'n, Inc. v. UpCodes, Inc.* (*NFPA*),
   No. CV 21-5262 DSF (E), 2021 WL 4913276
   (C.D. Cal. Aug. 9, 2021)..............................................................................2, 6, 8

*Practice Management Information Corp. v. American Medical*
   *Association* (*Practice Management*), 121 F.3d 516 (9th Cir. 1997) ...................4

*Veeck v. S. Bldg. Code Cong. Int'l, Inc.*,
   293 F.3d 791 (5th Cir. 2002) (*en banc*).......................................................2, 4, 5

**Statutes**

17 U.S.C. § 107 .............................................................................................*passim*

**Amicus Briefs**

Brief of Sixty-Six Library *Am. Soc'y for Testing Materials v.*
   *Public.Resource.Org, Inc.* (*ASTM 2018*), 896 F.3d 437 (D.C. Cir.
   2018) .......................................................................................................6, 8, 9

Brief for United States as Amicus Curiae, *S. Bldg. Code Cong. Int'l,*
   *Inc. v. Veeck*, No. 02-355 (U.S. May 2003) .........................................................4

## I.     RESPONSIVE LEGAL ARGUMENTS REGARDING COPYRIGHT CLAIMS.

### A.     "No one can own the law."

In 2020, the Supreme Court ruled that "no one can own the law." *Georgia v. Public.Resource.Org, Inc.*, 140 S. Ct. 1498, 1507 (2020), attached hereto as Appendix 1. That principle resolves this case. The facts of *Georgia* presented a difficult question: whether official annotations that do ***not*** carry the force of law can be subject to copyright. That question split the Court five to four, with the majority holding that annotations are in the public domain. But the Court was not split on the answer to an easier question: whether the text of binding legal rules themselves can be subject to copyright. All nine Justices agreed that they cannot. *Id.* ("no one can own the law"); *id.* at 1512 ("statutes and opinions" are not copyrightable); *id.* at 1515 ("statutes and regulations cannot be copyrighted") (Thomas J., dissenting); *id.* at 1522 ("Beyond doubt, state laws are not copyrightable.") (Ginsburg, J., dissenting). And the answer to that easier question resolves this case: the rules at issue are enforceable parts of state (and local) law. No one can own them.

That is why courts have consistently ruled that it is not copyright infringement to disseminate enforceable legal rules about buildings, even when they were written by private parties. *See, e.g.*, *Bldg. Offs. & Code Adm. v. Code Tech., Inc.*, 628 F.2d 730, 733–35 (1st Cir. 1980) (reversing grant of preliminary

1

injunction in copyright infringement case about building codes), attached hereto as Appendix 2; *Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791, 793 (5th Cir. 2002) (en banc) (affirming summary judgment that defendant's internet posting of plaintiff's building codes was not copyright infringement), attached hereto as Appendix 3; *Int'l Code Council, Inc. v. UpCodes, Inc.* (*ICC*), No. 17 Civ. 6261 (VM), 2020 WL 2750636, *16–17 (S.D.N.Y. May 27, 2020) (holding that defendant's internet posting of plaintiff's building codes was not copyright infringement to the extent they stated enforceable legal rules), attached hereto as Appendix 4; *Nat'l Fire Protection Ass'n, Inc. v. UpCodes, Inc.* (*NFPA*), No. CV 21-5262 DSF (E), 2021 WL 4913276, *6–7 (C.D. Cal. Aug. 9, 2021) (denying preliminary injunction in copyright infringement case about building codes), attached hereto as Appendix 5; *Facility Guidelines Inst., Inc. v. UpCodes, Inc.* (*FGI v. UpCodes*), 677 F. Supp. 3d 955, 977 (E.D. Mo. 2023) (same), attached hereto as Appendix 6; *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.* (*ASTM*), 82 F.4th 1262, 1267–68 (D.C. Cir. 2023) (affirming summary judgment in favor of defendant in copyright infringement case about building codes), attached hereto as Appendix 7.

Nothing about this depends on whether the legal rule appears in the text of legislation itself, in a set of rules adopted by that legislation, or in a set of rules adopted, in turn, by that set of rules. What matters is whether the rule in question is

the law: whether failure to adhere to the rule is punishable as a violation of the law, just as though it were set forth in full in legislation. As UpCodes will discuss in greater detail in its opposition, the rules here about what kind of steel and aluminum and the like can be used to build buildings are laws, even though there is more than one step between the legislation itself and the legal rule the legislation enacts.

As a group of government-transparency advocates and library associations wrote in their amicus brief in another case brought by ASTM, "artificial limits on the people's right to access and copy the text of the law are contrary to the essence of government by the people." Brief of Sixty-Six Library Ass'ns at 5, *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, No. 17-7035 (D.C. Cir. Sept. 25, 2017), attached hereto as Appendix 8. Copyright does not stand in the way of everyone's right to speak the law.

### B.     There is only one way to express the law, so the merger doctrine bars copyright infringement liability.

The merger doctrine, which prevents copyright from granting exclusive rights to ideas or facts, provides one basis for rejecting ASTM's claims. "[M]erger occurs where there is only one or a limited number of ways of expressing a certain idea, so that copyright protection of the expression would necessarily result in copyright protection of the idea itself." *F.A. Davis Co. v. Wolters Kluwer Health, Inc.*, 413 F. Supp. 2d 507, 512 (E.D. Pa. 2005).

"Even though the model codes themselves have not become the law, one would need to use those model codes' precise language to express laws that had adopted the codes by reference in their entirety." *ICC*, 2020 WL 2750636, at *21. "An individual wishing to publish the text of a law cannot develop his own, unique version and still publish an authoritative copy." *Veeck*, 293 F.3d at 801 (en banc court quoting with approval dissent to panel opinion). Thus, because the binding text of the law "can be expressed only in one way," *Ets-Hokin v. Skyy Spirits Inc.*, 323 F.3d 763, 765 (9th Cir. 2003) (citation omitted), the merger doctrine bars a claim for copyright infringement.

ASTM argues that *CCC Information Services, Inc. v. Maclean Hunter Market Reports* (*CCC*), 44 F.3d 61 (2d Cir. 1994) and *Practice Management Information Corp. v. American Medical Association* (*Practice Management*), 121 F.3d 516 (9th Cir. 1997) distinguish its standards from the model codes at issue in other cases.  The same argument was advanced in the *Veeck* case, and the best guide to the reasons why *CCC* and *Practice Management* do not aid ASTM is the Solicitor General's brief opposing certiorari in *Veeck*. Brief for United States as Amicus Curiae at 10–12, *S. Bldg. Code Cong. Int'l, Inc. v. Veeck*, No. 02-355 (U.S. May 2003), attached hereto as Appendix 9. UpCodes will discuss the specific ways in which the facts here distinguish *CCC* and *Practice Management* in its opposition.

4

## C.      Disseminating the law is fair use.

This case should be resolved according to the rule announced in *Veeck*: that "as law, the model codes . . . are not subject to the copyright holder's exclusive prerogatives." *Veeck*, 293 F.3d at 793 (emphasis omitted); *see also ICC*, 2020 WL 2750636 at *7 ("At bottom, the controlling authorities make clear that a private party cannot exercise its copyrights to restrict the public's access to the law."). Some courts, however, have instead ruled that posting the law is permissible as fair use under 17 U.S.C. § 107, in order to remove the necessity of analyzing the issues discussed in the preceding sections.

In *Georgia*, the Supreme Court observed that the fair-use defense is "notoriously fact sensitive," and so if the right to speak the law depended on fair use, "[t]he less bold among us would have to think twice before using official legal works that illuminate the law we are all presumed to know and understand." *Georgia*, 140 S. Ct. at 1513. So, while the Court should rule on the basis of the merger doctrine, we now discuss the application of the fair use doctrine to this case, since it provides an independent basis to rule in UpCodes' favor.

The non-exclusive statutory factors to be considered in making that determination are: (1) the purpose and character of the use, (2) the nature of the copyrighted work, (3) the amount and substantiality of the portion used, and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17

U.S.C. § 107. The basic purpose of fair use, the Supreme Court has explained, is "providing a context-based check that can help to keep a copyright monopoly within its lawful bounds." *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1198 (2021).

### i.   Factor 1: The "purpose and character of the use" is to disseminate the law for free.

The first factor looks to "the purpose and character of the use." 17 U.S.C. § 107(1). One type of favored use under the first factor is a "transformative" use. Courts have "used the word 'transformative' to describe a copying use that adds something new and important." *Google LLC*, 141 S. Ct. at 1203 (citation omitted). One way that a use can be transformative is when the use "seeks to create new products," to "expand the use and usefulness" of preexisting materials. *Id.* There are two bases for holding that the use here is transformative.

*First*, the very act of "disseminating enacted laws for public awareness" is a transformative purpose and is "'consistent with illustrative purposes articulated in the Copyright Act, including teaching, scholarship, and research.'" *NFPA*, 2021 WL 4913276, at *4 (quoting *ICC*, 2020 WL 2750636, at *24). The D.C. Circuit held the same in its 2018 *ASTM* opinion. *Am. Soc'y for Testing Materials v. Public.Resource.Org, Inc.* (*ASTM 2018*), 896 F.3d 437, 450 (D.C. Cir. 2018) ("[I]n certain circumstances, distributing copies of the law for purposes of facilitating public access could constitute transformative use."), attached hereto as Appendix

10. "As the other courts that have evaluated this unique factual scenario determined, the posting of enacted laws for the purpose of educating members of the public is a transformative use of the copyrighted work." *FGI v. UpCodes*, 677 F. Supp. 3d at 971. This Court should do the same.

*Second,* every court to have considered the issue has agreed that UpCodes' dissemination of enacted laws serves a transformative purpose in part because, in addition to simply disseminating the text of the law, UpCodes contributes new products that expand the usefulness of the law, which UpCodes will discuss in greater detail in its opposition. *See, e.g.*, *FGI v. UpCodes*, 677 F. Supp. 3d at 971; *ICC*, 2020 WL 2750636, at *24–25.

Within the first factor, in addition to transformativeness, courts consider whether the "use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107. As the *FGI v. UpCodes* court recognized, UpCodes "provides the adopted [standards] entirely for free." *FGI v. UpCodes*, 677 F. Supp. 3d at 971. "While UpCodes may receive a tangential benefit of drawing users to its website and some of those users may elect to pay for premium features, it derives no direct monetary benefit from posting the [standards] as adopted." *Id.*

Accordingly, the first factor weighs heavily in favor of a finding of fair use.

### ii.      Factor 2: The "nature of the copyrighted work" is the text of the law.

The second fair use factor, "the nature of the copyrighted work," 17 U.S.C. §

107(2), "calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994). "[S]tandards incorporated by reference into law are, at best, at the outer edge of 'copyright's protective purposes.'" *ASTM 2018*, 896 F.3d at 451 (quoting Campbell, 510 U.S. at 586). "Where the consequence of the incorporation by reference is virtually indistinguishable from a situation in which the standard had been expressly copied into law, this factor weighs heavily in favor of fair use." *Id.* at 452; *ASTM*, 82 F.4th at 1268 ("because incorporated standards have legal force they too fall, 'at best, at the outer edge of copyright's protective purposes.'") (quoting *ASTM 2018*, 896 F.3d at 451); *id.* at 1269 ("the standards at issue have been incorporated and thus have the force of law.").

Thus, because "the actual text of the law is factual," the second factor "weighs strongly in favor of a finding of fair use." *NFPA* at *6.

### iii.    Factor 3: The amount and substantiality of the portion used was only that necessary to state the law.

The third factor looks to "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," 17 U.S.C. § 107(3), asking whether the portion copied is "reasonable in relation to the purpose of the copying," *Campbell*, 510 U.S. at 586.

Applying that factor to ASTM's codes, the D.C. Circuit held that where a defendant "limits its copying to only what is required to fairly describe the standard's legal import, this factor would weigh strongly in favor of finding fair use here, especially given that precision is ten-tenths of the law." *ASTM 2018*, 896 F.3d at 452. As UpCodes will describe more fully in its opposition brief, that is what UpCodes does with respect to ASTM's codes. Accordingly, the third factor does not weigh against a finding of fair use.

### iv.   Factor 4: Balancing private harm against public benefit.

The fourth factor examines "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). The prior courts to have ruled on UpCodes' fair use arguments have held that any market harm was too remote and speculative to outweigh the other fair use factors and the magnitude of the public benefits from wide availability of the law. *ICC*, 2020 WL 2750636, at *28–29, *FGI v. UpCodes*, 677 F. Supp. 3d at 972–73. And in the *ASTM* case, the court likewise found the record to be equivocal and held that the fourth factor "does not significantly tip the balance one way or the other." *ASTM*, 82 F.4th at 1272. In its opposition, UpCodes will address any evidence of market harm that ASTM is able to adduce.

Because the balance of the fair use factors tilts heavily in favor of a finding of fair use, the motion for preliminary injunction on the copyright claims should be

9

denied.

## II.   RESPONSIVE LEGAL ARGUMENTS REGARDING TRADEMARK CLAIMS.

The key reason why ASTM's trademark claims fail is that UpCodes uses the name "ASTM" solely to identify the material being posted, because that is the only way to identify it accurately as the law. For example, Section R905.10.3 of the Pennsylvania Residential Code states the law in Pennsylvania for what materials may be used on a roof. It says, with respect to aluminum sheeting used on a roof, that such sheeting may lawfully be used only if it conforms to "ASTM B209." UpCodes provides the laws in Pennsylvania for determining whether aluminum sheeting may be used on a roof, and in order to do so, it needs to truthfully identify those rules as being the set of legal rules called "ASTM B209"—because that is what the building code calls them.

This is what is referred to as a "nominative fair use" of a trademark, which does not infringe. *Century 21 Real Est. Corp. v. LendingTree, Inc.*, 425 F.3d 211, 214 (3d Cir. 2005) ("Nominative fair use also occurs if the only practical way to refer to something is to use the trademarked term."). Identifying the rules as "ASTM B209" is the only practical way to refer to those rules, because that is how the text of the building code refers to them. Thus, UpCodes' use is noninfringing nominative use.

Dated: June 12, 2024                    Respectfully submitted,

                                        _/s/ Joseph C. Gratz_
                                  By:   Joseph C. Gratz (*pro hac vice*)
                                        JGratz@mofo.com
                                        Hannah Jiam (*pro hac vice*)
                                        HJiam@mofo.com
                                        MORRISON & FOERSTER LLP
                                        425 Market Street,
                                        San Francisco, California 94105-2482
                                        Telephone: 415.268.7000
                                        Facsimile: 415.268.7522

                                        Allyson R. Bennett (*pro hac vice*)
                                        ABennett@mofo.com
                                        Mark D. Marciszewski (*pro hac vice*)
                                        MMarciszewski@mofo.com
                                        MORRISON & FOERSTER LLP
                                        707 Wilshire Boulevard
                                        Los Angeles, California 90017-3543
                                        Telephone: 213.892-5200
                                        Facsimile: 213.892-5454

                                        Bonnie M. Hoffman (PA ID No.
                                        201140)
                                        bhoffman@hangley.com
                                        Thomas N. Brown (PA ID No.
                                        321008)
                                        tbrown@hangley.com
                                        HANGLEY ARONCHICK SEGAL
                                        PUDLIN & SCHILLER
                                        One Logan Square, 27th Floor
                                        Philadelphia, Pennsylvania 19103
                                        Telephone: 215.568.6200
                                        Facsimile: 215.568.0300

                                        *Attorneys for Defendants*
                                        UPCODES, INC., GARRETT
                                        REYNOLDS, AND SCOTT
                                        REYNOLDS

JA188

**CERTIFICATE OF SERVICE**

I, Joseph C. Gratz, certify that on June 12, 2024, I caused a copy of the foregoing, DEFENDANTS UPCODES, INC., GARRETT REYNOLDS, AND SCOTT REYNOLDS' LEGAL ARGUMENTS IN RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION, to be served via the Court's CM/ECF System upon all counsel of record.

*/s/ Joseph C. Gratz*
Joseph C. Gratz

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS, | . | Case No. 24-CV-1895 |
| | . | |
| Plaintiff, | . | |
| | . | |
| v. | . | |
| | . | |
| UPCODES, INC., *et al.,* | . | |
| | . | |
| Defendants. | . | Wednesday, June 5, 2024 |
| . . . . . . . . . . . . . . . | . | 12:28 P.M. |

TRANSCRIPT OF CONFERENCE (HELD IN CHAMBERS)
BEFORE THE HONORABLE ANITA S. BRODY
UNITED STATES SENIOR DISTRICT COURT JUDGE

APPEARANCES ON NEXT PAGE.

Deputy Clerk:              Joseph B. Walton
                           James A. Byrne U.S. Courthouse
                           601 Market Street
                           Philadelphia, Pennsylvania 19106


Transcription Service:  Liberty Transcripts
                        9107 Topridge Drive
                        Austin, Texas 78750
                        (847) 848-4907
                        DBPATEL1180@GMAIL.COM
                        www.libertytranscripts.com

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

APPEARANCES:

For the Plaintiff:         DLA Piper LLP (US)
                           BY: J. KEVIN FEE, ESQUIRE
                           500 Eighth Street, NW
                           Washington, D.C. 20004
                           (202) 799-4441
                           kevin.fee@us.dlapiper.com

                           Morgan, Lewis & Bockius LLP
                           BY: JANE W. WISE, ESQUIRE
                           1111 Pennsylvania Avenue, N.W.
                           Washington, D.C. 20004
                           (202) 739-5596
                           jane.wise@morganlewis.com

For the Defendants:        Morrison & Foerster LLP
                           BY: JOSEPH C. GRATZ, ESQUIRE
                           425 Market Street
                           San Francisco, California 94105
                           (415) 268-7000
                           JGratz@mofo.com

                           Hangley Aronchick Segal Pudlin &
                             Schiller
                           BY: JASON A. LEVINE, ESQUIRE
                           One Logan Square 27th Floor
                           Philadelphia, Pennsylvania 19103
                           (215) 496-7038
                           jlevine@hangley.com

                              *  *  *  *  *

(Whereupon, at 12:28 p.m., the proceeding was commenced.)

THE COURT:  Plaintiff.

MR. FEE:  Plaintiff.  That's us.

THE COURT:  And you are?

MR. FEE:  I'm Kevin Fee, and this is Jane Wise.

THE COURT:  And Jane Wise.  Okay.  And?

MR. GRATZ:  For defendant, I'm Joe Gratz.

THE COURT:  Okay.

MR. LEVINE:  And also for defendants, Jason Levine.  New to the case.

THE COURT:  Yeah, I see.  No, you're on the record.

MR. LEVINE:  (Indiscernible).  Great.

THE COURT:  I mean -- I just had this.

Okay, all right.  Let's start.  This is a Rule 16 conference.  Would you like to tell me what your case is about?

MR. FEE:  Sure, Your Honor.  We represent American Society for Testing and Materials.

THE COURT:  Okay.  It can go on the record.  Okay.

MR. FEE:  Yes.  We're also called ASTM.  And ASTM is a non-profit organization out in West Conshohocken, Pennsylvania, that develops standards to increase public safety.  It's a non-profit organization that funds its operation primarily through the sale and licensing of those standards.

Those standards are copyright protected.  The U.S. Copyright Office has, for decades, issued copyright registrations for those works.  And sometimes government organizations will adopt those standards or incorporate them by reference into law.  You might have heard a lot about that already.  This case does not involve any standards that were incorporated by reference into law.

THE COURT:  Any what?

MR. FEE:  It does not involve any standards that were incorporated by reference into law.

THE COURT:  Uh-huh.

MR. FEE:  Instead, this involves standards that were referenced in other model codes.

THE COURT:  Well, it depends on what the defendants have to say about that.

MR. FEE:  Yeah.  Well, I don't think they dispute that they were at least not directly incorporated by reference by any governmental authority.

THE COURT:  Okay.

MR. FEE:  Now, what did happen is one standard or model code written by the International Code Council has adopted numerous standards or not even adopted, referenced numerous ASTM standards in their model code.  And that model code, from time to time, is incorporated by reference into law.  But none of the ASTM standards that are issued in this

case have ever been incorporated by reference by any government authority.

THE COURT:  Well, why don't you tell me what they've done?

MR. FEE:  So what they have done is --

THE COURT:  Or I mean what you say they --

MR. FEE:  Yeah, I don't think there's too much dispute, honestly, about what they've done.  Well, we'll see.

So Upcodes and the two individual defendants have started a for-profit organization that is copying standards that were, first, were standards that were incorporated by reference into law and posted on their website for free.  Now they've sort of expanded that into copying other standards, including the ASTM standards issued here.

They post them on their website without authorization even though no governmental authority has at least directly incorporated those by reference.  And, of course, that causes a great problem for ASTM since they primarily fund their operation through the sound licensing of these copyrighted works.  And, of course, if they're available for free online to everybody, it's a lot harder to convince people to pay for them.

And that's why we're here seeking a preliminary injunction.

THE COURT:  And what are you looking for in a

preliminary injunction?

MR. FEE:  Two things, Your Honor.

With respect to the copyright claims, we're just asking them to take down the copyrighted standards that they've posted online recently.

THE COURT:  In other words, the ones that involve what you have been working on.

MR. FEE:  Right, and the ones that --

THE COURT:  What you offer.

MR. FEE:  Yes.  It's just, I think right now, ten standards that they have up that have been incorporated or referenced in ICC standards but never incorporated by any governmental authority that did this directly.

We also do ask for an injunction with respect to a trademark claim that we have.  They -- you know, on their website, they identify their copies of these standards as being published by ASTM, which, of course, they're not. These files that they post on their website are created by Upcodes and the individual defendants.  ASTM has nothing to do with them.  They're not the publisher of what's on their website.

And that's likely to cause consumer confusion as to whether or not those standards are actually affiliated in any way with ASTM.

THE COURT:  Okay.  All right.  And you're here today

as -- we're basically here today on discovery.  Is that not correct?

MR. FEE:  Yeah, so we filed a preliminary injunction motion on, I think, the 3rd of May.  We're now at June 5th, and we still don't have a response to that preliminary injunction motion.

THE COURT:  And I've been on trial since then.

MR. FEE:  Oh, I understand, Your Honor.

THE COURT:  I knew that you --

MR. FEE:  So we're anxious to get this issue resolved, as I'm sure Your Honor has picked up.  We don't think that any discovery is necessary for them to oppose our motion for a preliminary injunction.  As I'm sure you saw, they've opposed, you know, somewhat similar motions for preliminary injunctions in the past without any discovery on a much quicker timeline here.

But for whatever reason, they've decided that they need three months of discovery before they can even oppose our motion for a preliminary injunction.  And Lord knows when the actual trial would be in that case and that sort of --

THE COURT:  Well, I mean I've started looking at the calendar when I could -- when we could have a preliminary injunction hearing.  I mean, that's what you're looking for is the preliminary injunction hearing.

MR. FEE:  Yeah.

THE COURT:  I never quite -- well, I won't.  Let me hear from you, and then I'll comment.

MR. GRATZ:  Good afternoon, Your Honor.

THE COURT:  What are your defenses?

MR. GRATZ:  So our defenses are, this is the law. These rules that are set forth in what they say in the documents they publish are the law.  If you are building a building with steel roofing in Philadelphia, the Philadelphia Building Code says that you have to use a certain kind of steel to -- and if it's not that kind, you're violating the law.

And the way they express the law on what you need to -- what kind of steel you use is by saying you have to use steel meeting the ASTM A653 Rules.  Those are the rules for what the steel has to be if you want to use it on a roof to build a legal building in Philadelphia.  They're saying they have a copyright on what those rules are.  And what we do is we put those rules on our website so everybody can see what the law is.  And we have --

THE COURT:  Just the law.

MR. GRATZ:  Just the -- only the things that are the law.  That's right.

We, I think, have a disagreement about which of the text is the law.  But we want to put on our website only the law.  That is, the legal rules that you need to follow in

9

order to follow the law.  Now --

THE COURT:  Are they published?  I mean, are those readily available to everybody?

MR. GRATZ:  No.  They are -- well, let me answer that this way, Your Honor.  If you want a copy of the rules for what kind of steel you need to use on your roof in Philadelphia, you can't look in the book -- in the local ordinances, because it just says we adopt the International Building Code with the following amendments.

You can't look in the International Building Code because it says as to the steel, we're not going to tell you the rules are what it says in ASTM A653.  Those are the legal rules.  So, we need to look in ASTM A653 as to what the rules are.  Those are the legally binding rules as to what kind of steel you have to use.  And that's why, in order to say what the law is, we need to put those rules on our website.

THE COURT:  And who's -- I mean, are you adopting his rules?  I mean, not his rules.

MR. GRATZ:  So, the answer is yes.  That is, we don't -- I think everyone agrees, you know, these sets of rules are on our website.  There isn't a disagreement about whether these sets of rules are on our website.  They are, and they're on our website.

THE COURT:  Give me one example so I can follow you.

MR. GRATZ:  The ASTM A653, which is one of the works

in suit.  And that's about the steel you have to use on roofing.  I picked it on the train because I thought you'd want a concrete answer.

THE COURT:  How'd you guess that I'm that simplistic?

MR. GRATZ:  And so let's talk, for example, that document, it's the law.  And there are, in our view, parts of it that you don't need to not comply with the law.  And to the extent there are other parts of it that you don't need to comply with the law, we omit those.  I don't remember whether there's a prefatory introduction or whatever, but if there is, we wouldn't have included that if it's not part of the law.  So that's what we do.

And why do we think it's okay?  We think it's okay because we think everyone should be able to speak the law in its entirety.  And we think these rules, all of the rules that make up the law, even the ones about steel on your roof, are part of the law that everyone should be able to speak.  And there's a couple of sort of legal reasons why how that cashes out.  But that's the principle that we're talking about.

THE COURT:  Okay.  And what --

MR. FEE:  Well, I'd say a couple things about that.  First of all, I want to make sure that you're asking about examples.  You understand the distinction that I think is

important here, aside from the fact that these works are not directly incorporated by reference by any governmental authority.  And that is what these standards are.

As you can tell from Joe's example, these standards are very narrow and specific.  They're not model building codes.  Like a lot of cases, the ICC case that they referred to and a couple of other cases, they dealt that model building codes, where it appears clear that at least one of the bases or intents of the author is that they become incorporated by reference into law.  That is not what's going on with these standards.

ASTM writes tens of thousands of standards, and the vast majority of them never are incorporated by reference into any law.  The other thing that I want to make sure is apparent right from the start --

THE COURT:  Well, how about the steel?

MR. FEE:  The steel one was not incorporated by reference by any governmental authority in the United States, to the best of our knowledge.  And they have not identified any governmental authority that they claim made it the law, at least directly.

But that's, I think, going to be one of the big fights here, Your Honor, is if a private party, like International Code Council, refers to one of our standards and that international building code is later adopted by

reference, or incorporated by reference by a governmental authority, does that mean that we lose all copyright protection for our works?

And there's no authority that has ever found that that was the case. There are some cases that have found either fair use or loss of copyright when works are directly incorporated by reference into law. But a lot of the reasoning in those cases are, for example, the Code of Federal Register, when something's incorporated by reference into law, it specifically says, it's as if we typed out all the words and put it right into the statute or the regulation. That won't be the case here. So there's no argument that what we write is really the law of any state or federal organization.

THE COURT: And in what form are they putting it? Are they -- as a plaintiff, you tell me, in what form are they putting it into their advertisements, or whatever you're going to call them?

MR. FEE: So the way it works is the International Building Code does say you should use steel in accordance with ASTM Standard 1234, for example. And then it is the case that some states, and sometimes even federal authorities, will incorporate by reference the International Building Code or other similar model codes.

And the way to do that is, at least with respect to

federal law specifically, it requires you to say expressly that we are incorporating by reference the International Building Code Version 2018. So there's a direct incorporation by reference of the International Building Code, which means, at least with respect to federal law, it's as if the entire code was written into federal law.

There is no incorporation by reference of the ASTM standard, either in the federal law or even in the International Building Code. There's just a reference to the ASTM standard. And that is important because there are some cases that we alluded to, I think, in our preliminary injunction papers from the Second Circuit and the Ninth Circuit that found when there's a reference to what's called an extrinsic standard, that even if it's in the law, that you don't lose copyright protection as a result of that reference to a standard.

And the other thing I just want to point out, sort of big picture for you, Your Honor, if it's true that you can just sort of say, well, Pennsylvania adopted the International Building Code, the International Building Code makes reference to ASTM Standard 1234. Like, where does this end? The ASTM Standard 1234 refers to some other organization's standard. That makes reference to some other organization's standard, and it goes on forever.

I mean, at some point there has to be an end to

this.  The other thing I want to make clear is we're talking now about standards, but the Supreme Court when it talks about what's entitled to copyright protection in the context of governmental authorities makes clear that it applies also to judicial law.

So when Your Honor refers to, you know, Prosser On Torts, is that now the law?  Is that entire volume the law? Does it lose copyright protection as a result of that?  Or the Restatement Second Of Torts, for example.  There's a distinction between what is the law and things that are referenced by legal authorities.  And this definitely has not been incorporated by reference directly by any governmental authority.

And I think even if you accept, which we dispute, these line of cases that say a reference or incorporation by reference results in copyright loss or loss of copyright protection with respect to what was directly incorporated by the governmental authority, that wouldn't extend any further than that.

THE COURT:  The first question I told to my law clerk about how far does that go?  And that's what you think is what's at issue here?

MR. FEE:  Well, look, we don't accept that the basic premise that I think they're sort of taking as an accepted answer at this point that just because a work is incorporated

by reference in the law that it loses all copyright protection.  And some of those cases, I also want to make sure, most of those, at least the recent cases, have found that there's no ability to sue for infringement based on fair use.

And there's an important distinction between those cases, at least some of those cases, the ASTM one in particular, and this case.  And that is that in the ASTM case that went to the D.C. Circuit, that involved a non-profit organization.  This is a for-profit organization.  And whether or not a use is commercial or non-commercial is expressly part of the fair-use analysis and the first factor in particular.

So even if you believe that the D.C. Circuit got the analysis right in the ASTM vs. Public Resource case, which we dispute, that analysis doesn't apply here because this is a commercial use.

MR. GRATZ:  There is a limiting principle, Your Honor, and the limiting principle is which of this stuff is the law?  Which of this stuff is a binding legal rule that if you don't follow it, there is a legal punishment?

This is an easy question as to the building code.  Those are the rules that are the law.  This is also an easy question as to the rules about what steel you can use on the roof because those are rules.  And if you do not follow them,

you are violating the building code.  You are violating the law.

You don't need to worry about what happens ten levels below that when we're talking about whatever, you know, is the text of a novel that some judicial opinion is making a passing reference to now in the public domain because that novel was not identified as stating a binding legal rule that everyone needs access to in order to comply with the law.

THE COURT:  And you're telling me that the items that he is claiming that you are infringing, there are only ten of them?  Is that --

MR. GRATZ:  That's right.

THE COURT:  Is that right?

MR. FEE:  Yeah, there's ten posts, there's -- you know, there was like 9 others that they're I think threatening to post.

MR. GRATZ:  That's right.

THE COURT:  Okay.

MR. FEE:  Yeah.

THE COURT:  All right, okay.

MR. GRATZ:  That's right.  We agree on that.

(Laughter)

THE COURT:  What?

MR. GRATZ:  We agree on that.  So there's ten that

have been posted.  And look, there are others that, likewise, state rules that are illegal rules and we think should be available.  We have not posted them so far.  We have indicated that we're willing to hold off while the motion is decided --

THE COURT:  Okay.

MR. GRATZ:  -- to keep the issues from multiplying while we are trying to resolve the case.

THE COURT:  All right, okay.

Off the record, just one second and then I'll get back to you.

(Whereupon, at 12:24 p.m., the Court went off the record; resuming at 12:46 p.m.)

THE COURT:  There's no chance of that.

Okay.  Now where we go on discovery.  And you have not answered the preliminary injunction, have you?

MR. GRATZ:  Correct.

THE COURT:  Okay.  And you say you need discovery to do that.

MR. GRATZ:  Yes, Your Honor.

THE COURT:  All right.  And tell me what -- I think you asked for five things and I didn't understand them.

MR. GRATZ:  I am happy to talk about them, Your Honor.  And they relate to --

THE COURT:  One at a time.

MR. GRATZ:  Yes, one at a time.

THE COURT:  The first one is -- you wrote -- I have them here, deposition transcripts of ASTM's witnesses in that.  And tell me about that case.

MR. GRATZ:  So in that case, ASTM sued another organization that posted these things online because they are the law.  Some versions of the same standards and a lot of other things, too.  That case was litigated in the D.C. District Court.  It took like years of discovery.  There were a number of other SBOs involved in that case, as well.

And there were depositions where questions were asked that are germane to the issues here.  And we think that rather than having to ask those questions ourselves, it might speed things up if we got the existing transcripts of ASTM's witnesses in those cases as well as anything else that on the plaintiff's side --

THE COURT:  You asked for deposition transcripts.

MR. GRATZ:  Correct.

THE COURT:  That's what you asked for.

MR. GRATZ:  Correct.

THE COURT:  Nothing else.  And that's what I'm assuming that you want.

All right.  And what's your objection to them getting those kind of deposition transcripts?

MR. FEE:  There's a few things, Your Honor.

First of all, they didn't explain why they need that to oppose our motion for preliminary injunction --

THE COURT:  Well --

MR. FEE:  -- which is a requirement that they have. But secondly, we have to deal with protective orders, especially if we're dealing with -- I don't know what they mean by ASTM witnesses.  If that includes our experts, for sure there's going to be third-party confidential information in there that we can't disclose.

THE COURT:  Oh, well, I'm not -- this is all your ASTM witnesses.  That's pretty broad.

MR. GRATZ:  Right.  And so, to be clear, the thing we are aiming at here is party witnesses.  I -- we haven't discussed whether and to what extent expert witness depositions or reports are within this.  And I think that's a subject on which we could meet and confer and narrow that down.

MR. FEE:  There's a couple other things I wanted to mention on this front.  None of the works at issue in this case were an issue in the ASTM vs. Public Resource case.  The discovery in those depositions, I think, were taken ten years ago.  So, even to the extent, like, economics or communications --

THE COURT:  But you have them, don't you?

MR. FEE:  Oh, we absolutely have them, Your Honor.

THE COURT:  So, I mean, it's not a great big burden to give them to them.

MR. FEE:  Well, except for if we have to go through all of them for, you know, dealing with protective order issues.  I mean, that -- you know, and we haven't scoured all these for --

THE COURT:  What happened in that case?

MR. FEE:  That case went up to the D.C. Circuit eventually and the court found that there -- well, the end judgment is trademark infringement was found by the court.  Copyright infringement was not found by the court with respect to most of the works.  Thirty-two and a half of the works were found to be infringing because they were not incorporated by reference.

THE COURT:  Are you sure I have this case?  It didn't belong -- go to somebody else?

(Laughter)

THE COURT:  The court did not enter an injunction in that case, primarily because those works were so old that it found that there wasn't any showing of harm notwithstanding the finding of infringement.  I think that's the short answer to what happened in that case.

When we get to the preliminary injunction hearing, you're, I'm sure, going to have to, you know, parse that case pretty quickly.  It has a tortured history.  It went up to

the D.C. Circuit twice.  And it's actually technically still pending at the moment.

THE COURT:  Okay.  All right.  I don't -- I think you should be able to work this out.  If it's not difficult for him to get the depositions, they could probably go to somebody else.  They could possibly go to Public Resource Org, Inc.  Is that --

MR. GRATZ:  So, yes, except to the extent those transcripts of ASTM witnesses would have ASTM confidential information in them.

THE COURT:  Well, you can't -- you got to --

MR. GRATZ:  We wouldn't be able to get them from them.

THE COURT:  Well, yeah, you --

MR. GRATZ:  We need to be able to get them from them.

THE COURT:  You would obviously delete -- you would obviously lock out anything that was confidential.

MR. GRATZ:  Well, and just to -- we think there may well be things that are confidential about this plaintiff that we would want to learn.

THE COURT:  Well, you may want to learn it, but if this is in the context of other litigation and it was confidential, he's going to be able to redact those things.

MR. GRATZ:  Things about parties other than his

client, to be sure.  Yeah.

MR. FEE:  Well, Your Honor, look, I assume we're going to have a protective order in this case at some point. So I think that will -- somebody has to produce ASTM confidential material.  I'm positive we could work out a protective order with them.

THE COURT:  Okay.

MR. FEE:  I think the bigger issue is just timing-wise is the biggest problem we have.

THE COURT:  Well, I know it's timing-wise, but I find that preliminary injunctions spread out to being permanent injunctions and it doesn't really matter.  So I tend to be generous about this.  You'll have to do it right away.  I mean, this one isn't hard.  I mean, you'll have to go through what was said.  Don't misunderstand me.

MR. FEE:  Right.

THE COURT:  But this is not a hard one.  It's the more amorphous ones that are hard.  Two, three, and four are harder.

MR. FEE: Yeah.

THE COURT:  I mean, that's my view of it.

MR. FEE:  Understood.

THE COURT:  So I'm very prone to let him see number one, but certainly redactions of anything that you see as --

MR. FEE:  Okay.

THE COURT:  -- being confidential.

MR. FEE:  Your Honor, if I might, I think it might be helpful to get your sort of thoughts on timing generally, because this is going to be -- it sounds like maybe you're leaning towards combining a preliminary injunction and a permanent injunction, in which case I think going through these may not be necessary if that's where you're heading.

THE COURT:  I am pretty well heading that way.

MR. FEE:  Okay.  Because, like, then I think it is true that --

THE COURT:  You can get money damages --

MR. FEE:  -- we could work out through objections.

THE COURT:  You can get money damages from him, can you not --

MR. FEE:  Yes, precisely.

THE COURT:  -- over a period of time?

MR. FEE:  Yes,

THE COURT:  So you're not hurt.  You're not --

MR. FEE:  Well, Your Honor, I mean, that's actually one of the things that is the basis for our irreparable harm claim, is that we don't believe that they can satisfy any monetary judgment in any event.  Upcodes is a startup company.  I mean --

THE COURT:  Oh, I thought they were around for about five years.

MR. FEE:  Oh, they are.  They've been around for a long time.  I mean, look, if they want to come forward with some sort of showing that they have millions of dollars sitting around in a bank account, I'd be thrilled to hear that.  I don't think that they're going to do that.

MR. GRATZ:  What would you like me to address, Your Honor?

THE COURT:  Well, address everything he said.

MR. GRATZ:  So, all right, to address everything you said, I will take this in slightly --

THE COURT:  You have -- we're on the record.

MR. GRATZ:  Reverse order, Your Honor.

With respect to irreparable harm, Your Honor is right that money can satisfy this.  And with respect to --

THE COURT:  Oh, that doesn't mean I'm not going to rule on the other.  I'm just talking about the hiatus between --

MR. GRATZ:  I understand, Your Honor.

With respect to the question whether to effectively combine -- whether to combine -- where as a practical matter, the decision on a preliminary injunction may moot, prejudge, or wipe out a lot of other issues in the case, such that relatively little is left to do in terms of discovery --

THE COURT:  That's what --

MR. GRATZ:  -- or otherwise before trial on the

merits or summary judgment.

THE COURT:  Well, but preliminary injunctions end up to be trial on the merits.  I'm not going to issue a preliminary injunction if I don't think I understand the case.  So, you know --

MR. GRATZ:  Understood, Your Honor.

The concern -- so we have a concern that after the preliminary injunction phase, there may be -- there is likely to be more to do here.  And the reason I say that is speaking from the experience from these other cases.  The NFPA case in which Upcodes is a defendant in which we defeated a preliminary injunction and then went on with discovery took 22 months from before summary judgment.

The ICC case in which we were, you know, working together in another case took 21 months of discovery before summary judgment. The Publicresource.org case, the ASTM case that went up to the D.C. Circuit took 27 months of discovery before judgment.  Could that be compressed some?  Sure. Do I think that there is any substantial work to be done after preliminary injunction before sort of summary judgment on the final judgment?  I do.

And there's a number of reasons for that, and one of them is partially there's a lot of expert work that goes into, for example, adjudicating a trademark claim with surveys and so on that I don't think is likely to be

necessary at the preliminary injunction stage, at least on what I expect the record to be coming from plaintiffs.  But I think it will be important at a later stage.

So I don't think, Your Honor, that this is a case where we're going to have a single unified discovery period followed by a PI hearing that is sort of effectively  --

THE COURT:  Well, are you ready to start -- not suspend whatever you do from now until the time that we go to a permanent injunction?  I mean he's saying you don't have the money to compensate then if in fact you know --

MR. GRATZ:  So --

THE COURT:  -- you don't have what you think you need to defeat a permanent injunction.

MR. GRATZ:  And the answer, Your Honor, is we are happy to not post additional ASTM standards and keep this as the current sort of set of issues to be decided.

We don't think that it's appropriate for us to withdraw the law from our website while this is being decided because that's effectively the relief they're looking for on the preliminary injunction.  And so if we think without a showing that we are violating the law and that there will be irreparable harm, which I don't think is the case, that it wouldn't be appropriate for us to withdraw that and have that harm both to us and, in our view, to the public interest from that lack of access to the law.

MR. FEE:  So, Your Honor, I think there's three ways this could get resolved that would make sense.  One is they could respond to the motion of preliminary injunction now.  We could decide it's based on the information that's available.  If they really think they need some testimony we'd be happy to bring a witness for them to cross them live and you decide the motion and we could go on a regular schedule through trial.  Like that's one reasonable alternative in my mind.

Another reasonable alternative is Your Honor could combine the preliminary injunction and the final trial on the merits to a very compressed schedule and have a final trial in the fall.

The third option I think that could make sense but I hear resistance to is if they want to not have a final trial quickly and if they don't want to respond to the preliminary injunction right now, they can have as long as they want.  As long as they take down the stuff that's infringing.

THE COURT:  So that's what I said --

MR. FEE:  Yeah.

THE COURT:  -- but he obviously said no to that.

MR. FEE:  So if that's not the option that they want to take, then I think the only two reasonable options are let's do the preliminary injunction now and get it over with or let's combine the two and have a very quick trial.

THE COURT:  Okay.

MR. GRATZ:  There is a fourth option and that is to have a limited amount of expedited discovery --

THE COURT:  But the question is --

MR. GRATZ:  -- quickly.

THE COURT:  How quickly?

MR. GRATZ:  So I think -- I mean I've got document requests ready to serve today.  You know, we can, if we can --

THE COURT:   What are they?  Is that 1, 2, 3, or 4?

MR. GRATZ:  That's effectively 1, 2, 3, and 4, right.  They're document requests going to 1, 2, 3, and 4.

THE COURT:  Well, what are they?

MR. GRATZ:  I mean they are, you know, for example, with respect to 1, it's give me the deposition transcripts.  With respect to 2, it's I want the communications with other SDOs relating to whether their rules become the rules that those SDOs are promulgating, right?

Because if one of the things they're saying is, well, this case is different because we didn't ask anybody to make this the law.  We don't think that's true.

THE COURT:  Okay.  Why don't you respond?

MR. FEE:  Well, on that one, their burden is to show that they have a need for this preliminary injunction hearing to get some information.  That request he just described was

all communications with all SDOs forever.  This involves one SDO other than ASTM, the International Code Council.  I have no idea why they think they need any communications we had with literally dozens of other standards development organizations that are out there, let alone why they need to go back decades to get that stuff.

But, look, if you want to go down the path of doing a lot of discovery on this stuff, then we should just do discovery and not have fights about whether or not it's needed for the preliminary injunction or whether it's reasonable to ask for it or --

THE COURT:  But you're not ready to do that because they obviously aren't ready to take it off.  I mean --

MR. FEE:  Well no, look, I'm saying if they really want discovery I think they should either take the stuff down or let's have a trial in the fall and we'll give them discovery, we'll do everything else with it.  The whole thing.

THE COURT:  Okay.  I don't see any objection to that.

MR. GRATZ:  Well, so the problem with a trial in the fall is that that would be effectively combining it with the PI and we would need to do all of our discovery now, right.

Now, in some ways, if we do all of our discovery now that's going to take an amount of time.  I think it can go

decently quickly.  It may be able to go more quickly than it did in these other cases, but there's going to be documents, there's going to be depositions both directions, there's going to be experts.

THE COURT:  Well, how much time do you need?

MR. GRATZ:  So, to do the --

THE COURT:  What his suggestion.

MR. GRATZ:  -- the whole thing, I think it's on the order of 12 months, and that takes 6 months off of the shortest one there's ever been in one of these cases.

MR. FEE:  Your Honor, you're a very convincing person.  If you tell us that we have to finish fact discovery in two months we'll finish fact discovery in two months.  He'll figure it out, we'll figure it out.  He works at a giant law firm.  I work at a giant law firm.

THE COURT:  Well, let's see what my schedule looks like.  Of course, Rye (phonetic) is going to the Second Circuit, so that doesn't help.

MR. FEE:  Oh, no.  Well, congrats.

MS. WISE:  Congratulations.

MR. FEE:  But yes.

THE COURT:  So, I'm sure she wants to hear it, but Rye, we may not be able to.

MR. FEE:  She can come back.

THE COURT:  Yeah, I think she'll have more fun in

District Court than -- okay, let me take a look at my calendar.

I'm going to be taking a vacation during the summer, and I think everybody probably is, so  let's see, so we're talking September, October.

MR. FEE:  That's what I thought, Your Honor.

THE COURT:  Yeah, that's what I'm thinking, and you're going to go into the other room and figure out what can be decided, done in discovery in my courtroom by September and October with some dates.

So, let me tell you what I think can be done.  I have a wild July.

(Whereupon, Court and courtroom staff confer briefly.)

THE COURT:  How long do you think the trial will be?

MR. GRATZ:  Your Honor, are we proposing to effectively to not grant a preliminary injunction in advance of trial?  Is that the --

THE COURT:  And then in lieu of that, to get yourself a permanent injunction back then.  You have to give me a month or so to write them up.

MR. FEE:  Sure.  I think probably a week, maybe. Maybe less.  Do you think it could be less?  No.

MR. GRATZ:  So, I mean, the NFPA case had 22 depositions and 5 expert reports.  And it's effectively the same set of legal issues.  And so --

THE COURT:  Has it been decided already?

MR. GRATZ:  It is not.  Summary judgment is pending. All of these cases have been -- have legal issues.

THE COURT:  You can't use the same discovery.

MR. GRATZ:  Well --

MR. FEE:  That's a different set of parties.

THE COURT:  Yeah, I know that.

MR. GRATZ:  It's a different set of parties.

MR. FEE:  And we'll ask for those transcripts eventually, I'm sure, too.

MR. GRATZ:  Right.  And I think there are -- I mean, there are a lot of issues here, Your Honor.  And to pare it down from a full trial on trademark claims and everything else, if we are doing this as a preliminary-injunction hearing that does not need to cover that entire waterfront --

THE COURT:  Well, then --

MR. GRATZ:  -- I think that could be a -- I mean, to be clear, it may be that we do not need live witnesses for such a hearing, depending on what happens at discovery.  We could do that much more quickly.

THE COURT:  Well, suppose that we -- because I am not going to have -- I have a couple of trials during the summer.  And I'm going to enjoy a little bit of time in life. So if, in fact, October is a day for the preliminary -- and we'll give you a date.  Is that too long?

MR. FEE:  Your Honor, that would be five months before our motion for a preliminary injunction is decided.

THE COURT:  All right, let's see if I can do it all in --

MR. FEE:  I mean, I don't know why --

THE COURT:  -- in September.

MR. FEE:  I thought we were going down the path of having a trial, then.  Like that, I could live with.

THE COURT:  Yeah.

MR. FEE:  And I don't know why that isn't doable. Like --

THE COURT:  I think it is doable.  If I put the date on it, guess what?  It will be doable.

MR. FEE:  That's what I'm saying.

MR. GRATZ:  Well --

(Laughter)

MR. GRATZ:  So, Your Honor, let me just address that by saying I am concerned that there will just be too much, particularly over the summer, to get to everything that needs to be addressed to get to a full trial.  And that we could have a slimmer hearing in August that may not --

THE COURT:  I can't make it in August.  So it's September or October.  So let's make -- frankly, it's September or October.  I have much going on between now and until my law clerks leave.  And so it's going to be September

and October.

It seems to me that it makes a lot of -- I think every time I've done it the other way, it's -- not on this particular issue.  I have not had this issue before.  And I can't even remember a copyright case before.  So you'll be educators, too.

I have had Lanham Act cases.  But I think -- I would like to do -- I think that the best thing and you can do what you have to do.  And you've dealt with each other enough so that you should be able -- we should be able to have a trial in October.  I'm talking about a trial trial in October.

And I have to find out what my calendar allows me, and your calendars.  You have to look at your calendars, too. And I don't see any reason why you can't have a trial trial in October.

MR. GRATZ:  Your Honor, we don't think it can be done.  We think there is too much to do, particularly over the summer, to get to a trial trial by October.  And particularly that's because, Your Honor, in many of these cases, the process of summary judgment motions, which obviously wouldn't be able to happen --

THE COURT:  No.

MR. GRATZ:  -- before October, has either eliminated issues or greatly narrowed the issues.  For example, in the ICC case that we had before Judge Marrero, the summary

judgment ruling was 100 pages long.

THE COURT:  And I have to read the whole thing, huh?

MR. GRATZ:  And analyzing these legal issues -- and, right, analyzing these legal issues and narrowing the issues, the disputed issues for trial to something very slim.  And because this is such -- I mean, because this is such a legally focused issue, we think that --

THE COURT:  Well, all right.  Let's see what I can do in September and you'll have -- but that you have to do. October after a preliminary injunction.  That's not -- I can't help that it was a little bit longer than you would have liked.

MR. FEE:  No, but Your Honor, you could tell them if they don't think it can be done by October, they should take the stuff down in the interim.  Like I mean --

THE COURT:  Well, okay.

MR. FEE:  I mean if that's -- if they don't want to do it by the time you suggested, then they should have to take the stuff down in the interim.  That's all.  Like, I mean, you can get it done --

THE COURT:  You need more time than October.  Is that what you're saying?

MR. FEE:  Yeah.  Look, if they take it down, we'll give them until forever.  I don't care when they have the hearing then.  But if they're saying they can't do a trial by

October, even though they have, I don't even know, 1,200, 1,500 lawyers over there, then they should take the stuff down in the interim.

THE COURT:  I don't even know what -- which firm are you with?

MR. GRATZ:  I'm with Morrison & Foerster, Your Honor.

THE COURT:  Oh, okay.

MR. FEE:  Yeah,  So they can get anything done in six months, Your Honor.  I mean, give me a break in some respects.

THE COURT:  Well, you'll have to be involved in that, too.  You have --

MR. FEE:  Of course, and we're ready to do it.  I mean, I will say, Your Honor, I think it's completely unfair for them to try to keep delaying responding to this motion and getting it decided while they leave the stuff up.

I mean, the other alternative is if they don't want to wait or they could just answer to file an opposition to motion a week from Friday.  They proposed filing it on June 14th anyway.  If we do an oral argument, he said he may not need live witnesses, take a half day of your time and decide the preliminary injunction motion.

But the idea that they're just going to keep this stuff up for months and months and months --

THE COURT:  Let me see what else.  Let me see else. It's not -- I don't want to --I understand that and I'm going to -- and we'll just go on a narrow record.  That's all.

MR. FEE:  Yeah, he just told you it was mostly legal issues.  I mean, we don't need fact discovery for those legal issues.

THE COURT:  All right, okay.  Let me see what I can do.  July is just unreasonable.

(Whereupon, Court and courtroom staff confer briefly.)

THE COURT:  So that could give me the week of August 27.  Okay, let's see whether -- what we can do about it. Would you be able to do  it the week of August 27?  And then I'm going to have you go in and give him some of the things he wants.

MR. FEE:  All right.

MS. WISE:  Sorry, I turned my phone off because of the sign so it might make a noise.

THE COURT:  That's okay.

MR. GRATZ:  August 27th is a Tuesday.  Is that right, Your Honor?  I want to make sure I'm looking at the right year.

THE COURT:  26th.

MR. GRATZ:  Great.

THE COURT:  The week of the 26th.

MR. GRATZ:  Great.  We're available that week, Your

38

Honor.

THE COURT:  How about you?

(Whereupon, Plaintiff's counsel confer briefly.)

THE COURT:  Well, maybe we'll make it that week. But I want you to go in the other room and figure out what you're going to allow for discovery.

MR. FEE:  And, Your Honor, we had said if there's going to be some limited discovery, we'd like to be able to take some more discovery.  I assume that's going to be --

THE COURT:  Well, of course, if one side can take it, the other side can take it.

MR. FEE:  Okay.

THE COURT:  I'm sorry.  You're going to be up in Connecticut or something.

Okay, I'm going to miss you.  Listen, I need somebody to tell me the answers.

MR. GRATZ:  And we can work this out, Your Honor, but one of the things we -- I mean, I think what might would make sense is to have them do whatever we're going to do discovery-wise, have them file a brief that takes that into account, have us respond quickly, have them reply quickly, and have a hearing.

MR. FEE:  I think that probably makes sense.

THE COURT:  Okay.  All right, why don't you go into the -- into my courtroom, sit down, and figure out what kind

of order you want and you can come up with.

MR. FEE:  Great.

THE COURT:  Okay, all right, Joe.  Are you going to be around?

THE CLERK:  I'll be here until you leave, Judge.

THE COURT:  No, I'm talking about in August.

THE CLERK:  Oh, in August?  Yes.  In that time in August, I will be here.

THE COURT:  Yeah.  Okay, good.  All right.

MR. FEE:  Okay, great.  Should we just submit a proposed order assuming we worked this all out --

MR. GRATZ:  Or should we come back and talk?

THE COURT:  Well, no, go into the other room, and let me stay here for another hour --

MR. FEE:  And let you know when we have something.

THE COURT:  -- or 45 minutes and --

MR. FEE:  Okay.

THE COURT:  You trust yourself more than I do.

MR. FEE:  We'll figure it out.

MR. GRATZ:  Right, we'll try and figure it out, and we may have issues to --

THE COURT:  Well, yeah.  But I'm going to leave in about -- I guess, about 2:00.

MR. GRATZ:  Great, let's --

THE COURT:  Okay.  And I can always be -- he can get

me on the telephone if you have to.  So why don't you go in -- can they get into the --

THE CLERK:  The courtroom is still open, Judge.

THE COURT:  Oh, it is.  Okay.  Just go into the courtroom, and I promise you I won't sentence you.

(Laughter)

MR. GRATZ:  Thank you, Your Honor.

(Whereupon, at 1:13 p.m., there was a brief recess in the proceedings; resuming at 1:57 p.m.)

THE COURT:  Today's date is the 8th.

MR. FEE:  Fifth.

THE COURT:  No, the 7th -- the 6th?

UNIDENTIFIED SPEAKER:  Sixth.

MR. GRATZ:  It's the 5th.

THE CLERK:  The 5th, Judge.

THE COURT:  The 5th, okay.  Say by the -- what do you say, seven days from now.

UNIDENTIFIED SPEAKER:  The 12th?

THE COURT:  Yeah.  Is that going to be doable for you?

MR. FEE:  Yes.

THE COURT:  All right.  To write something that you've written 25 times before.

MR. FEE:  Please read the following four cases, Your Honor.

THE COURT:  All right and okay.  And why this case is different, or whatever you want to say.

All right.

MR. GRATZ:  The dates -- and then with that, Your Honor, does the briefing schedule that I outlined --

THE COURT:  Repeat it.

MR. GRATZ:  So the briefing schedule is revised motion July 15th, opposition July 29th, reply August 12th, hearing the week of August 26th to be set by Your Honor.

THE COURT:  Okay.

MR. GRATZ:  Those are the briefs.

THE COURT:  Rye, you got that?

LAW CLERK:  Uh-huh.

THE COURT:  All right.  I'll have a new law clerk by then, but that's okay.

You know, I can cry over the loss of a bride who's so marvelous.  Okay.

MR. GRATZ:  So, the other -- and the parties actually were able to, I think, agree on other dates, as well.

THE COURT:  All right.

MR. GRATZ:  And just taking those forward from today.

THE COURT:  All right.

MR. GRATZ:  We're going to serve document requests

by Friday.  Objections --

THE COURT:  What Friday?  And so that's two days from --

MR. GRATZ:  The day after tomorrow.

THE COURT:  No, the 7th.

MR. GRATZ:  Yeah.

THE COURT:  All right.

MR. GRATZ:  Objections the 12th, just like a few days later.  We're going to meet and confer on the 13th and probably have to speak again the following day.  Our proposal is that if there are disputes, and there may be, that we put in simultaneous letters to Your Honor on the 17th, just like the following Monday, and schedule some time that week for Your Honor to hear us.

THE COURT:  Okay.  Well, I may not hear you?  I may rule on it.

MR. GRATZ:  Or otherwise --

THE COURT:  I'll have (indiscernible).

MS. WISE:  Obtain directions.

MR. GRATZ:  -- address the (indiscernible).

And then based on that --

THE COURT:  Do you have that?

LAW CLERK:   Uh-huh.

MR. GRATZ:  -- documents, all document production completed by the 28th.

THE COURT:  Okay.

MR. GRATZ:  And then --

THE COURT:  Of June?

MR. GRATZ:  Of June.  Depositions, if any, the parties to discuss that the week of the 8th, and then that leads up to the revised motion July 15th.

THE COURT:  Okay.  That's fine.

MR. FEE:  Great.

THE COURT:  That's fine.  That sounds right.  Would you like to, one of the two of you get that to me, so there's no question about it?

MR. FEE:  Sure.

MR. GRATZ:  Yeah.

THE COURT:  Why don't you get it to me by --

MR. GRATZ:  We can do a proposed order.

THE COURT:  Yeah, a proposed order by Friday.

MR. FEE:  Okay.  We can do that.

THE COURT:  You could do that.

MR. FEE:  Sure.

THE COURT:  Okay.  Is this a good schedule?  Are you both comfortable with this?

MR. FEE:  Yeah, I mean, I think we did our best to work it out, given the time frame we're talking about.  I think it will work.

THE COURT:  I think this time frame works.

MR. FEE:  Yeah.

THE COURT:  Okay.  I have to get my next Harvard Law clerk who will be -- she's going to be taking Rye's place.  I have a special place for Harvard Law clerks.  Okay.

MR. FEE:  Somebody's going to learn a lot about copyright law.

THE COURT:  Well, you understand that if you haven't done any of that, which I have not.  I mean, I think it looks like an awful lot of fun.

MR. FEE:  These are interesting issues.

MR. GRATZ:  These are -- you know, it is relatively seldom that we have a case, you know, in which there is, you know, recent D.C. Circuit precedent, recent Supreme Court precedent.

THE COURT:  Yeah, well, that's fun.  I mean, I've got to be frank with you.  That is fun.  I have a lot of discrimination cases.

MR. FEE:  Yeah.

THE COURT:  And ADA violations.

MR. FEE:  Well, a breath of fresh air.

THE COURT:  (Indiscernible).  What?

MR. FEE:  I said a breath of fresh air?

THE COURT:  Well, that's it.  Yeah, it's fun. It is fun.  I mean, there's no question about it.  This is fun.

Okay.  I've enjoyed meeting you.  It's so nice to

have two -- I mean, you obviously fight very hard.  Off the record.

(Whereupon, at 2:02 p.m. the hearing was adjourned.)

* * * * *


CERTIFICATION

I, DIPTI PATEL, court-approved transcriber, certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    June 13, 2024

DIPTI PATEL, AAERT CET-997

Expires: December 6, 2026

LIBERTY TRANSCRIPTS

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a ASTM INTERNATIONAL,<br><br>                    Plaintiff,<br><br>          v.<br><br>UPCODES, INC.; GARRETT REYNOLDS; and SCOTT REYNOLDS,<br><br>                    Defendants. | Civil Action No. 2:24-cv-01895-AB |

## DEFENDANTS' ANSWER TO COMPLAINT

Defendants UpCodes, Inc. ("UpCodes"), Garrett Reynolds, and Scott Reynolds (collectively, "Defendants") respond to the complaint filed by Plaintiff American Society for Testing and Materials d/b/a ASTM International ("ASTM") as follows.  Defendants deny all allegations in the complaint except for those specifically admitted below.

## INTRODUCTION[1]

1.     Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

---

[1] Defendants neither admit nor deny the contents of the various headings and subheadings in the complaint, which are reproduced herein solely for convenience.

sf-5982201

2.      Defendants admit that Garrett Reynolds and Scott Reynolds are founders of UpCodes.  Defendants deny any remaining allegations of this paragraph.

3.      Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

## PARTIES

4.      Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

5.      Admitted.

6.      Admitted.

7.      Admitted.

8.      Admitted.

## JURISDICTION AND VENUE

9.      Defendants admit that the complaint purports to state claims for infringement of federally registered copyrights in violation of 17 U.S.C. § 501 and for alteration or removal of copyright management information in violation of 17 U.S.C. § 1202.  Defendants deny that ASTM properly states a claim for copyright infringement or the alteration or removal of copyright management information. Defendants deny any remaining allegations in this paragraph.

2

sf-5982201

10. Defendants admit that the complaint purports to be an action for infringement of a federally registered trademark arising under the trademark and anti-dilution laws of the United States, 15 U.S.C. § 1051, et seq., and under statutory and common law unfair competition. Defendants deny that ASTM properly states a claim for trademark infringement or dilution. Defendants deny any remaining allegations in this paragraph.

11. Admitted.

12. Solely for the purposes of this matter, Defendants admit that venue is proper in this District.

### ASTM'S STANDARDS

13. Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

14. Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

15. Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

16. Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

17. Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

3

sf-5982201

18.     Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

19.     Defendants deny the allegations in the last sentence of this paragraph. Defendants deny that there exists a "Registrar of Copyrights."  *See* 17 U.S.C. § 701(a).  Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in this paragraph, and on that basis deny them.

20.     Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

a.     Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

21.     Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

22.     Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

23.     Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

24.     Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

25.     Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

4

26. Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

27. Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

28. Defendants admit that sometimes, federal, state, and local legislatures incorporate some or all of law publisher-developed standards by reference into statutes or regulations. Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in this paragraph, and on that basis deny them.

29. Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

30. Defendants admit that a standard incorporated by a jurisdiction may itself adopt or incorporate another standard. Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in this paragraph, and on that basis deny them.

31. Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

32. Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

5

33.     Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

## DEFENDANTS AND INFRINGEMENT ALLEGATIONS

34.     Admitted.

35.     Denied.

36.     Defendants admit that UpCodes has developed an internet-based platform that allows customers to view and print a variety of laws.  Defendants deny any remaining allegations of this paragraph.

37.     Denied.

38.     Denied.

39.     Defendants admit that https://up.codes/about states, in part, "We bring together the worlds of architecture, engineering, and construction (AEC) with technology."  Defendants admit the screenshot in paragraph 39 of the complaint appears to depict a portion of the UpCodes Twitter.  Defendants deny any remaining allegations of this paragraph.

40.     Defendants admit that UpCodes purchased hard copies or obtained digital copies of the model codes listed in Exhibit A for the purpose of posting laws adopting those model codes on the UpCodes Website and mobile web platform.  Defendants deny any remaining allegations in this paragraph.

sf-5982201

41.     Defendants admit that Scott and Garrett Reynolds personally participated in the decision to post laws adopting the model codes listed in Exhibit A on the UpCodes website.  Defendants deny any remaining allegations in this paragraph.

42.     Defendants admit that Scott and Garrett Reynolds know and approve of the posting of laws adopting the model codes listed in Exhibit A on the UpCodes Website and mobile applications, and approved the posting of those laws prior to the filing of this lawsuit.  Defendants deny any remaining allegations in this paragraph.

43.     Defendants were aware prior to the filing of this lawsuit that ASTM had filed a copyright lawsuit against another website that posts laws adopting ASTM's model codes, and that the court in that lawsuit had found that posting laws adopting ASTM's codes was fair use.  Defendants deny any remaining allegations in this paragraph.

44.     Defendants admit that ASTM filed an *amici curiae* brief in support of National Fire Protection Association, Inc.'s Opposition to Defendants UpCodes, Inc., Scott Reynolds, and Garrett Reynolds's Motion for Summary Judgment in a litigation currently pending in the United States District Court for the Central District of California.  *National Fire Protection Assoc., Inc. v. UpCodes, Inc., Scott*

7

*Reynolds, and Garrett Reynolds*, Case No. 2:21-cv-05262, Dkt. No. 154 (June 20, 2023).  Defendants deny any remaining allegations of this paragraph.

45.     Denied.

46.     Defendants admit that the screenshot in paragraph 46 of the complaint appears to depict a portion of the UpCodes website.  Defendants deny any remaining allegations of this paragraph.

47.     Defendants admit that the screenshot in paragraph 47 of the complaint appears to depict a portion of the UpCodes website.  Defendants deny any remaining allegations of this paragraph.

48.     Defendants admit that the screenshot in paragraph 48 of the complaint appears to depict a portion of the UpCodes website.  Defendants deny any remaining allegations of this paragraph.

49.     Defendants admit that the screenshot in paragraph 49 of the complaint appears to depict a portion of the UpCodes website.  Defendants deny any remaining allegations of this paragraph.

50.     Defendants admit that UpCodes developed an internet-based platform that allows customers to view and print a variety of laws for free.  Defendants admit that UpCodes also provides premium features.  Defendants admit that by creating a login, users must also agree to UpCodes' Terms of Service and Privacy Policy.  Defendants admit that the screenshots in paragraph 50 of the complaint

sf-5982201

appear to depict a portion of the UpCodes website.  Defendants deny any remaining allegations of this paragraph.

51.     Defendants admit that users, free or premium, can print out sections of certain laws from the UpCodes Website and mobile web platform only after they create an account and agree to UpCodes' terms of service.  Defendants deny any remaining allegations of this paragraph.

52.     Denied.

53.     Defendants admit that users can access and print the law for free via UpCodes' website.  Defendants lack knowledge or information sufficient to admit or deny the second sentence of this paragraph and on that basis deny it.  Defendants deny any remaining allegations of this paragraph.

54.     Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

55.     Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

## ALLEGED REMOVAL OF ASTM'S COPYRIGHT NOTICES

56.     Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

57.     Denied.

58.     Denied.

9

sf-5982201

59. Denied.

## ALLEGED INFRINGEMENT OF ASTM'S TRADEMARKS

60. Denied.

61. Denied.

62. Defendants admit the screenshot in paragraph 62 of the complaint appears to depict a portion of the UpCodes Website. Defendants deny any remaining allegations of this paragraph.

63. Defendants admit the screenshot in paragraph 63 of the complaint appears to depict a portion of the UpCodes Website. Defendants deny any remaining allegations of this paragraph.

64. Denied.

65. Denied.

66. Denied.

## COUNT I
## (AGAINST ALL DEFENDANTS)
## ALLEGED DIRECT COPYRIGHT INFRINGEMENT

67. Defendants incorporate herein by reference each and every response to ASTM's foregoing allegations.

68. Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

69. Denied.

10

sf-5982201

70.     Defendants admit that they had access to the model codes listed in Exhibit A to the complaint.

71.     Denied.

72.     Denied.

73.     Denied.

74.     Denied.

75.     Denied.

76.     Denied.

77.     Denied.

**COUNT II
(AGAINST ALL DEFENDANTS)
ALLEGED VICARIOUS AND/OR CONTRIBUTORY COPYRIGHT
INFRINGEMENT**

78.     Defendants incorporate herein by reference each and every response to ASTM's foregoing allegations.

79.     Denied.

80.     Denied.

81.     Denied.

82.     Denied.

83.     Denied.

84.     Denied.

85.     Denied.

11

sf-5982201

86.     Denied.

87.     Denied.

## COUNT III
## (AGAINST ALL DEFENDANTS)
## ALLEGED ALTERATION OR REMOVAL OF COPYRIGHT
## MANAGEMENT INFORMATION UNDER 17 U.S.C. § 1202

88.     Defendants incorporate herein by reference each and every response to ASTM's foregoing allegations.

89.     Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

90.      The allegations in this paragraph state legal conclusions, which do not require a response.  To the extent a response is required, Defendants deny the allegations in this paragraph.

91.     Denied.

92.     Denied.

93.     Denied.

## COUNT IV
## (AGAINST ALL DEFENDANTS)
## ALLEGED INFRINGEMENT OF REGISTERED TRADEMARKS UNDER
## 15 U.S.C. § 1114

94.     Defendants incorporate herein by reference each and every response to ASTM's foregoing allegations.

sf-5982201

95.   Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

96.   Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

97.   Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

98.   Denied.

99.   Denied.

100.   Denied.

101.   Denied.

102.   Denied.

103.   Denied.

**COUNT V**
**(AGAINST ALL DEFENDANTS)**
**ALLEGED UNFAIR COMPETITION AND FALSE DESIGNATION OF**
**ORIGIN UNDER 15 U.S.C. § 1125(A)(1)**

104.   Defendants incorporate herein by reference each and every response to ASTM's foregoing allegations.

105.   Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

106.   Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

13

sf-5982201

107.   Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

108.   Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

109.   Denied.

110.   Denied.

111.   Denied.

112.   Denied.

113.   Denied.

114.   Denied.

<u>**COUNT VI**</u>
<u>**(AGAINST ALL DEFENDANTS)**</u>
<u>**ALLEGED TRADEMARK INFRINGEMENT UNDER**</u>
<u>**PENNSYLVANIA COMMON LAW**</u>

115.   Defendants incorporate herein by reference each and every response to ASTM's foregoing allegations.

116.   Defendants lack knowledge to admit or deny the allegations of this paragraph, and on that basis deny them.

117.   Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

118.   Denied.

119.   Denied.

sf-5982201

14

120. Denied.

121. Denied.

122. Denied.

123. Denied.

124. Denied.

## COUNT VII
## (AGAINST ALL DEFENDANTS)
## ALLEGED DILUTION OF TRADEMARKS UNDER
## 54 PA. CONS. STAT. § 1124

125. Defendants incorporate herein by reference each and every response to ASTM's foregoing allegations.

126. Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

127. Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

128. Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph, and on that basis deny them.

129. Denied.

130. Denied.

131. Denied.

132. Denied.

133. Denied.

15

sf-5982201

## RESPONSE TO JURY DEMAND

This paragraph is a jury demand to which no response is required.  Further, pursuant to Federal Rule of Civil Procedure 38(b), Defendants hereby demand a trial by jury of ASTM's claims.

## RESPONSE TO PRAYER FOR RELIEF

In response to the Prayer for Relief, Defendants deny that ASTM is entitled to the requested relief or to any relief whatsoever.

## DEFENDANTS' ADDITIONAL DEFENSES

In further answer to the allegations made by ASTM in the complaint, Defendants assert the following additional defenses.  Defendants do not concede that they have the burden of proof on the defenses listed below:

## FIRST ADDITIONAL DEFENSE

Some or all of the material in which ASTM claims copyright is in the public domain as a result of its adoption into law.

## SECOND ADDITIONAL DEFENSE

ASTM's claims of copyright infringement and violation of the DMCA are barred or limited by the doctrine of merger.

## THIRD ADDITIONAL DEFENSE

ASTM's claims of copyright infringement and violation of the DMCA are barred or limited by the idea/expression dichotomy.

//

16

sf-5982201

## FOURTH ADDITIONAL DEFENSE

ASTM's claims of copyright infringement and violation of the DMCA are barred or limited because the material in which ASTM claims copyright constitutes *scènes à faire*.

## FIFTH ADDITIONAL DEFENSE

ASTM does not own copyright in the material in which ASTM claims copyright because that material was authored in whole or in part by third parties.

## SIXTH ADDITIONAL DEFENSE

The claimed copyright infringement and violation of the DMCA is *de minimis*.

## SEVENTH ADDITIONAL DEFENSE

To the extent there is copying of copyrightable expression, that copying constitutes fair use.

## EIGHTH ADDITIONAL DEFENSE

ASTM's claims are barred, in whole or in part, because ASTM has suffered no competitive injury as a result of Defendants' alleged actions.

## NINTH ADDITIONAL DEFENSE

ASTM's claims for damages are barred, in whole or in part, because ASTM failed to mitigate the losses or damages, if any, that ASTM seeks to recover in this action.

sf-5982201

## TENTH ADDITIONAL DEFENSE

ASTM's copyright claims are or will be barred in whole or in part by collateral estoppel.

## ELEVENTH ADDITIONAL DEFENSE

To the extent there is use of ASTM's trademark, that use constitutes fair use.

## COUNTERCLAIMS

Defendants, by and through their undersigned counsel, bring these counterclaims against ASTM and allege as follows:

## PARTIES

1.      Counterclaim-Plaintiff UpCodes, Inc. ("UpCodes") is a corporation organized and existing under the laws of Delaware with its principal place of business at 1606 Headway Circle #9083, Austin, TX 78754.

2.      Counterclaim-Plaintiff Garrett Reynolds is an individual residing in Austin, Texas.

3.      Counterclaim-Plaintiff Scott Reynolds is an individual residing in Mill Valley, California.

4.      Upon information and belief, Counterclaim-Defendant ASTM is a Pennsylvania corporation with its principal place of business at 100 Barr Harbor Drive, West Conshohocken, PA 19428.

sf-5982201

## JURISDICTION AND VENUE

5.    The Court has subject matter jurisdiction over the counterclaims under 28 U.S.C. §§ 1338(a) and 2201.

6.    This Court has personal jurisdiction over ASTM because ASTM submitted to such jurisdiction for purpose of these counterclaims by filing the underlying case against Defendants in this District.

7.    Venue in this District is proper under 28 U.S.C. §§ 1391 and 1400 because a substantial part of the events giving rise to these counterclaims, including the filing of the underlying case against UpCodes, occurred in this District.

## FACTUAL BACKGROUND

8.    UpCodes operates the UpCodes service, located at https://up.codes.

9.    UpCodes was founded to make it easier for both industry professionals and laypeople to understand how to comply with state and local building codes.

10.    UpCodes allows its users to search for relevant building codes and other relevant laws on a per-jurisdiction basis.

11.    UpCodes shows its users an integrated view of the law.  It presents the law as adopted by particular jurisdictions, including amendments or modifications to model codes that jurisdictions have chosen to adopt.

19

12.     UpCodes does not publish model codes.  Some jurisdictions adopt model codes as the law without making any amendments to the text, and so the substance of certain jurisdictions' codes may be identical to the model codes that they adopted.

13.     UpCodes does not charge money for access to any of the available laws.

14.     UpCodes allows all users to copy and paste sections of the law, as well as print the law out.

15.     UpCodes is the only place, online or offline, where someone can access the integrated text, including local amendments and modifications, of many of the laws available on UpCodes.

16.     UpCodes offers a subscription service with additional features and collaboration tools.  These include allowing users to compare codes of different jurisdictions and to search across multiple codes in a particular jurisdiction.

17.     Some materials accessible on UpCodes also appear in one or more ASTM publications.  This material is referred to herein as the "Posted Laws."  All of this material carries the force of law in one or more jurisdictions.

18.     At least one purpose for which the Posted Laws were created was for incorporation into law.

19.     No one can own the law.

20

20.     The authentic exposition of the law, binding on every citizen, is free for publication to all.

21.     A real and substantial controversy exists between the parties regarding the subject matter of these counterclaims because ASTM has brought claims for copyright infringement and trademark infringement against Defendants based, at least in part, on the accessibility of the Posted Laws on the UpCodes service.

**FIRST COUNTERCLAIM**

**(Declaratory Judgment of No Copyright Infringement)**

22.     Defendants incorporate herein by reference the contents of each of the preceding paragraphs.

23.     The inclusion of the Posted Laws on UpCodes does not infringe any copyright of ASTM because it is in the public domain because it is the law.

24.     The inclusion of the Posted Laws on UpCodes does not infringe any copyright of ASTM because the text of every law constitutes a fact that cannot be accurately expressed any other way and thus merges with any expression contained in that text.

25.     The inclusion of the Posted Laws on UpCodes does not infringe any copyright of ASTM because any claim of infringement is barred or limited by the idea/expression dichotomy.

sf-5982201

26.     The inclusion of the Posted Laws on UpCodes does not infringe any copyright of ASTM because the Posted Laws constitute *scènes à faire*.

27.     The inclusion of the Posted Laws on UpCodes does not infringe any copyright of ASTM because any claims of infringement are barred or limited by the government edicts doctrine.

28.     The inclusion of the Posted Laws on UpCodes does not infringe any copyright of ASTM because the Posted Laws were authored in whole or in part by third parties.

29.     The inclusion of the Posted Laws on UpCodes does not infringe any copyright of ASTM because, to the extent there is copying of copyrightable expression, that copying is *de minimis*.

30.     The inclusion of the Posted Laws on UpCodes does not infringe any copyright of ASTM because, to the extent there is copying of copyrightable expression, that copying constitutes fair use.

31.     The controversy between Defendants and ASTM is real and substantial and demands specific relief through a decree of a conclusive character.

32.     Defendants are entitled to a judicial declaration that the inclusion of the Posted Laws on UpCodes does not infringe any copyright of ASTM.

sf-5982201

22

## SECOND COUNTERCLAIM

### (Declaratory Judgment of No Trademark Infringement)

33.     Defendants incorporate herein by reference the contents of each of the preceding paragraphs.

34.     The inclusion of the Posted Laws on UpCodes is not likely to cause confusion, to cause mistake, or to deceive consumers as to the source, sponsorship, or affiliation of UpCodes, the UpCodes website, or the laws available through the UpCodes website.

35.     ASTM has no evidence showing that the public has suffered any substantial mistake, deception, or confusion over whether UpCodes is the source of, the sponsor of, or especially associated with the Posted Laws.

36.     ASTM has no evidence showing that the public has suffered any substantial mistake, deception, or confusion over whether UpCodes is the source of, the sponsor of, or affiliated with ASTM and its goods, services, or commercial activities.

37.     ASTM has no evidence showing that the public has suffered any substantial mistake, deception, or confusion over whether ASTM is the source of, sponsors, or is affiliated with UpCodes' publishing activities.

38.     ASTM has no evidence showing that, as a result of UpCodes' activities, the public has suffered any substantial mistake, deception, or confusion

sf-5982201

over whether any of them is, or is not, the source of a particular code that has been incorporated in the law.

39.     The controversy between Defendants and ASTM is real and substantial and demands specific relief through a decree of a conclusive character.

40.     Defendants are entitled to a judicial declaration that the inclusion of the Posted Laws on UpCodes does not infringe any trademark of ASTM.

## JURY TRIAL DEMANDED

Defendants demand trial by jury of all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Defendants pray that a judgment be entered against ASTM as follows:

a.     That the Court declare that Defendants are not liable for copyright infringement arising out of the inclusion of the Posted Laws on UpCodes;

b.     That the Court declare that ASTM lacks a valid copyright in any portion of the Posted Laws;

c.     That the Court award Defendants costs of suit, including reasonable attorneys' fees under the Copyright Act;

d.     That the Court declare that the inclusion of the Posted Laws on UpCodes does not infringe any trademark of ASTM, and

That the Court grant such further relief it considers just and proper.

24

Dated: June 18, 2024

Respectfully submitted,

*/s/ Thomas N. Brown*

By: Bonnie M. Hoffman (PA ID No. 201140)
bhoffman@hangley.com
Thomas N. Brown (PA ID No. 321008)
tbrown@hangley.com
Jason A. Levine (PA ID No. 306446)
jlevine@hangley.com
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, Pennsylvania 19103
Telephone: 215.568.6200
Facsimile: 215.568.0300

Allyson R. Bennett (*pro hac vice*)
Mark D. Marciszewski (*pro hac vice*)
MMarciszewski@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone: 213.892-5200
Facsimile: 213.892-5454

Joseph C. Gratz (*pro hac vice*)
JGratz@mofo.com
Hannah Jiam (*pro hac vice*)
HJiam@mofo.com
MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

*Attorneys for Defendants UpCodes, Inc., Garrett Reynolds, and Scott Reynolds*

25

**CERTIFICATE OF SERVICE**

I, Thomas N. Brown, certify that on June 18, 2024, I caused a copy of the

foregoing, Defendants' Answer to Complaint, to be served via the Court's

CM/ECF System upon all counsel of record.

*/s/ Thomas N. Brown*
Thomas N. Brown

26

sf-5982201

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a ASTM INTERNATIONAL,<br><br>        Plaintiff,<br><br>  v.<br><br>UPCODES, INC.; GARRETT REYNOLDS; and SCOTT REYNOLDS,<br><br>        Defendants. | Civil Action No.:  2:24-cv-01895-AB |

## PLAINTIFF'S REVISED MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, Plaintiff American Society for Testing and Materials d/b/a ASTM International ("ASTM" or "Plaintiff"), by and through its undersigned counsel, moves the Court for an order against Defendants UpCodes, Inc., Garrett Reynolds, and Scott Reynolds ("Defendants") requiring the following relief:

1. That Defendants UpCodes, Inc., Garrett Reynolds, and Scott Reynolds and their officers, agents, servants, employees, and attorneys, and all those in active concert with or in participation with them, be preliminarily enjoined from:

    a. Further unauthorized reproduction of all or any non-*de minimis* portion of ASTM's Copyrighted Works[1] and any other standards or materials published by ASTM, preparation of derivative works based on ASTM's

---

[1] "ASTM's Copyrighted Works," "Altered Works," "Infringing Materials," and "ASTM's Mark" should be understood as defined in the Complaint (Dkt. No. 1).

1

Copyrighted Works or on any standards or materials published by ASTM, and distribution or display of copies of the Infringing Materials or any standards or materials published by ASTM by any means or method;

b.  Further alteration or removal of ASTM's copyright management information and all further distribution, importation, or public performance of the Altered Works;

c.  Selling, offering for sale, distributing, or advertising any electronic or hard copies of standards under ASTM's Mark, or any marks substantially indistinguishable therefrom, which are likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that any standards that Defendants caused to enter the stream of commerce or any of UpCodes' commercial activities are sponsored or licensed or approved by ASTM, or are connected or affiliated in some with ASTM or ASTM's Mark;

d.  Implying ASTM's approval, endorsement, or sponsorship of, or affiliation or connection with, Defendants' products, services, or commercial activities, passing off Defendants' copies of standards as that of ASTM, or engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with ASTM and from otherwise interfering with or injuring ASTM's Mark or the goodwill associated therewith; or

e.  Representing or implying that Defendant UpCodes is in any way sponsored by, currently affiliated with, or licensed by ASTM.

2.  That the Defendants be directed to file with the Court and serve upon ASTM, within 30 days after entry of this order, a report in writing and under oath

2

setting forth in detail the manner and form by which Defendants have complied with the provisions set forth in Paragraph 1 of this order.

As set forth in greater detail in the accompanying Memorandum of Law and supporting documents, ASTM seeks injunctive relief from the Court to prevent ASTM from incurring irreparable harm that would occur if Defendants are allowed to continue its infringement of ASTM's copyrighted works and ASTM's registered trademark.  Accordingly, to prevent this harm from occurring, ASTM moves this Court for the above-described preliminary injunction.

Dated: July 15, 2024

Respectfully submitted,

By: */s/ J. Kevin Fee*
**DLA PIPER LLP (US)**
J. Kevin Fee (PA Bar No. 81715)
Jane W. Wise (admitted *pro hac vice*)
Jenna R. Rowan (*pro hac vice* motion forthcoming)
500 Eighth Street, NW
Washington, DC 20004
kevin.fee@dlapiper.com
jane.wise@dlapiper.com

Gabrielle C. Velkes (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Fl.
New York, NY 10020
gabrielle.velkes@us.dlapiper.com

*Attorneys for Plaintiff American Society f*
*Testing and Materials d/b/a ASTM Intern*

3

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2024, the foregoing Plaintiff's Revised Motion for Preliminary Injunction and the supporting declarations and exhibits thereto were filed with the clerk of this Court via the CM/ECF system or via e-mail, which will notify all counsel of record.

Dated: July 15, 2024                    _/s/ J. Kevin Fee_
                                         J. Kevin Fee

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a ASTM INTERNATIONAL,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>UPCODES, INC.; GARRETT REYNOLDS; and SCOTT REYNOLDS,<br><br>　　　　　　　　Defendants. | Civil Action No.:  2:24-cv-01895-AB |

**[PROPOSED] PRELIMINARY INJUNCTION ORDER**

Upon consideration of Plaintiff's American Society for Testing and Materials d/b/a ASTM International ("ASTM") Revised Motion for a Preliminary Injunction against Defendants UpCodes, Inc., Garrett Reynolds, and Scott Reynolds, the Court finds that Plaintiff has carried their burden to establish entitlement to preliminary injunctive relief, and accordingly it is hereby **ORDERED** that the motion is **GRANTED,** as follows:

1.　　That Defendants UpCodes, Inc., Garrett Reynolds, and Scott Reynolds and their officers, agents, servants, employees, and attorneys, and all those in active concert with or in participation with them, be preliminarily enjoined from:

　　a.　　Further unauthorized reproduction of all or any non-*de minimis* portion of ASTM's Copyrighted Works and any other standards or materials published by ASTM, preparation of derivative works based on ASTM's

1

Copyrighted Works[1] or on any standards or materials published by ASTM, and distribution or display of copies of the Infringing Materials or any standards or materials published by ASTM by any means or method;

b. Further alteration or removal of ASTM's copyright management information and all further distribution, importation, or public performance of the Altered Works;

c. Selling, offering for sale, distributing, or advertising any electronic or hard copies of standards under ASTM's Mark, or any marks substantially indistinguishable therefrom, which are likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that any standards that Defendants caused to enter the stream of commerce or any of UpCodes' commercial activities are sponsored or licensed or approved by ASTM, or are connected or affiliated in some with ASTM or ASTM's Mark;

d. Implying ASTM's approval, endorsement, or sponsorship of, or affiliation or connection with, Defendants' products, services, or commercial activities, passing off Defendants' copies of standards as that of ASTM, or engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with ASTM and from otherwise interfering with or injuring ASTM's Mark or the goodwill associated therewith; or

e. Representing or implying that Defendant UpCodes is in any way sponsored by, currently affiliated with, or licensed by ASTM.

---

[1] "ASTM's Copyrighted Works," "Altered Works," "Infringing Materials," and "ASTM's Mark" should be understood as defined in the Complaint (Dkt. No. 1).

2

2.      That the Defendants be directed to file with the Court and serve upon ASTM, within 30 days after entry of this order, a report in writing and under oath setting forth in detail the manner and form by which Defendants have complied with the provisions set forth in Paragraph 1 of this order.

**SO ORDERED** this _____ of _____, 2024

_____
United States District Judge

3

JA267

## Appendix A: ASTM's Copyrighted Works

| Title | Edition | Registration No. |
|---|---|---|
| ASTM A36/A36M-14 Standard Specification for Carbon Structural Steel. | 2014 | TX 8-068-653 |
| ASTM A252-10 (Reapproved 2018) Standard Specification for Welded and Seamless Steel Pipe Piles.[1] | 2010 | TX 7-550-513 |
| ASTM A722/A722M-18 Standard Specification for High-Strength Steel Bars for Prestressed Concrete. | 2018 | TX 8-690-736 |
| ASTM A653/A653M-17 Standard Specification for Steel Sheet, Zinc-Coated (Galvanized) or Zinc-Iron Alloy-Coated (Galvannealed) by the Hot-Dip Process.[2] | 2017 | TX 8-217-668 |
| ASTM A706/A706M-16 Standard Specification for Deformed and Plain Low-Alloy Steel Bars for Concrete Reinforcement. | 2016 | TX 8-217-259 |
| ASTM A875/A875M - 13 Standard Specification for Steel Sheet, Zinc-5 % Aluminum Alloy-Coated by the Hot-Dip Process. | 2013 | TX 7-886-878 |
| ASTM A924/A924M-17a Standard Specification for General Requirements for Steel Sheet, Metallic-Coated by the Hot-Dip Process. | 2017 | TX 8-422-153 |
| ASTM B209-14 Standard Specification for Aluminum and Aluminum-Alloy Sheet and Plate. | 2014 | TX 8-062-199 |
| ASTM A615/A615M-15a Standard Specification for Deformed and Plain Carbon-Steel Bars for Concrete Reinforcement. | 2015 | TX 8-142-387 |
| ASTM A690/A690M-13a Standard Specification for High-Strength Low-Alloy Nickel, Copper, Phosphorus Steel H-Piles and Sheet Piling with Atmospheric Corrosion Resistance for Use in Marine Environments. | 2013 | TX 7-935-900 |

---

[1] Copyright registration covers 2012 Annual Book of ASTM Standards-- Steel--Piping, Tubing, Fittings, in which ASTM A252 is published.
[2] Copyright registration covers ASTM A653/A653M-15e1.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS d/b/a ASTM INTERNATIONAL,<br><br>Plaintiff,<br><br>v.<br><br>UPCODES, INC.; GARRETT REYNOLDS; and SCOTT REYNOLDS,<br><br>Defendants. | Civil Action No.:  2:24-cv-01895-AB<br><br>**JURY TRIAL REQUESTED** |

**DECLARATION OF THOMAS B. O'BRIEN, JR.**

I, Thomas B. O'Brien, Jr., hereby declare as follows:

1.   I am over the age of 18 years and am fully competent to testify to the matters stated in this Declaration.

2.   This Declaration is based on my personal knowledge.  If called to do so, I would and could testify to the matters stated herein.

3.   I am Vice President and General Counsel at ASTM International ("ASTM").  I have worked at ASTM since 2003.

4.   My responsibilities include developing legal policies and procedures and addressing all legal matters for ASTM, including ASTM's intellectual property matters.

5.   Standards are publications that contain product specifications, installation methods, methods for manufacturing or testing materials, recommended

1

practices to promote safety or efficiency, or other guidelines or best practices that are developed by private organizations, "standards development organizations" ("SDO"), who have technical expertise in the relevant areas.

6. ASTM is a not-for-profit organization founded in 1898 with the development of standards to support America's burgeoning railroad industry.

7. ASTM is now a globally recognized leader in the development and delivery of voluntary consensus standards and one of the world's largest international standards developing organizations.

8. ASTM is committed to serving global societal needs by positively impacting public health and safety, consumer confidence, and overall quality of life through the development of voluntary consensus standards.

9. To date, ASTM has developed almost 13,000 ASTM standards setting forth specifications and methods of testing for a variety of materials, products, systems and services that bolster safety and performance in a variety of industries.

10. ASTM standards are used in a wide range of fields, including construction, consumer products, iron and steel products, rubber, paints, plastics, textiles, medical services and devices, electronics, construction, energy, water, petroleum products, and more.

11. More than 30,000 ASTM members from over 155 countries create and update ASTM's standards.

12. ASTM is able to create high quality standards due to the deep expertise and diversity of its members who collectively represent industry, governments, academia, trade groups, enterprises of all sizes, consumers, and others.

2

13. To ensure broad stakeholder representation in the standards development process, ASTM minimizes the barriers to membership to the extent possible.

14. Individual ASTM memberships are $115 annually and grant the member full participation in the development process and free access to relevant standards. ASTM often waives the membership fee for interested consumers or participants from developing countries.

15. Attached as **Exhibit 1** is a true and correct copy of an informational pamphlet titled "Why should I join ASTM?" created by ASTM International detailing the benefits of joining ASTM and available on the ASTM website at: https://public-admin-files.s3.us-east-2.amazonaws.com/Membership/Why_Should_I_Join.pdf.

16. ASTM's standard creation process is accredited by the American National Standards Institute ("ANSI"), a not-for-profit organization that coordinates the development of voluntary consensus standards development in the United States and accredits SDOs, like ASTM, whose procedures meet ANSI's requirements for openness, consensus, and due process.

17. ASTM's standards development activities are governed by an ANSI-accredited detailed set of written procedures to ensure compliance with the essential requirements of the voluntary consensus standard development process.

18. ASTM standards are developed and maintained by more than 150 Technical Committees comprised of ASTM members.

19. The voting membership of each ASTM Technical Committee is balanced such that any one interest group cannot dominate. For example, producers

3

or sellers of materials, products, systems or services covered within the scope of a given subcommittee or committee cannot exceed more than 50% of that subcommittee or committee.

20.     ASTM's standards development process begins with an individual who identifies an area of interest ripe for standardization.  The individual then issues a formal request to form a new task group or subcommittee to the appropriate ASTM Technical Committee.  If a Technical Committee does not exist, a formal request is issued to establish a new committee.  Once the subcommittee approves the creation of a new standard, a task group is formed to develop a first draft.

21.     The standard is drafted through an iterative and collaborative process by members of the task group. The draft is edited by an ASTM staff member, who adds certain language and components required by the ASTM form and style guide. Once complete, the draft standard is sent to the Chair of the subcommittee who approves sending the initial draft to ASTM for formal balloting.

22.     The draft standard is then voted on by first the entire subcommittee, then the main committee, and open for comment by the complete Society and the public.  At least 66.7% of the voting subcommittee members and 90% of the voting main committee members must approve all standard actions, with not less than 60% of voting members returning ballots.  During each level of balloting, members (and the public at the Society level) can vote affirmative, negative or abstain.  Negative votes must have a written explanation and are addressed to evaluate their persuasiveness.  ASTM has a voting process for determining whether a negative comment is persuasive or is not persuasive.  Persuasive negative comments cause

4

the ballot to fail.  Finally, the Committee on Standards reviews the handling of objections (negatives) to the draft to ensure all procedures were followed.

23.    Once a standard has successfully passed through the three levels of peer review provided by ASTM (subcommittee, main committee, and Society), it is assigned a fixed designation and receives an official approval rate.  It is only then that the document is considered an ASTM standard.  ASTM has developed its almost 13,000 standards using this rigorous and consensus-based approach.

24.    All ASTM standards are reviewed on a five-year schedule and either reapproved, revised or withdrawn in revision cycles typically lasting between eight and twelve months.

25.    ASTM's standards, including the works at issue in this case, are original works of authorship with content that requires a high degree of creativity to prepare technical information in a concise and understandable standard.

26.    For decades, ASTM has obtained copyright registrations for each of the works in its Annual Book of Standards.

27.    ASTM has obtained Certificates of Copyright Registration from the Register of Copyrights for each of the ASTM Standards.

28.    I understand that Defendants UpCodes, Inc., Garrett Reynolds, and Garrett Reynolds have posted content from several of ASTM's copyrighted standards on the UpCodes website ("ASTM's Copyrighted Works").

29.    Attached hereto as **Exhibit 2** is a true and correct copy of the registration certificate numbered TX 8-068-653 obtained from the Copyright Office for ASTM A36/A36M-14 Standard Specification for Carbon Structural Steel that identifies ASTM as the owner of the copyright.

5

30.     Attached as **Exhibit 3** is a true and correct copy of the registration certification numbered TX 7-550-513 obtained from the Copyright Office the 2012 Annual Book of ASTM Standards – Steel—Piping, Tubing, Fittings that identifies ASTM as the owner of the copyright.  ASTM A252-10 (Reapproved 2018) Standard Specification for Welded and Seamless Steel Pipes is published in the 2012 Annual Book of ASTM Standards – Steel—Piping, Tubing, Fittings and is included in the copyright registration TX 7-550-513.

31.     Attached hereto as **Exhibit 4** is a true and correct copy of the registration certificate numbered TX 8-690-736 obtained from the Copyright Office for ASTM A722/A722M-18 Standard Specification for High-Strength Steel Bars for Prestressed Concrete that identifies ASTM as the owner of the copyright.

32.     Attached hereto as **Exhibit 5** is a true and correct copy of the registration certificate numbered TX 8-217-668 obtained from the Copyright Office for ASTM A653/A653M-17 Standard Specification for Steel Sheet, Zinc-Coated (Galvanized) or Zinc-Iron Alloy-Coated (Galvannealed) by the Hot-Dip Process that identifies ASTM as the owner of the copyright.  The registration for ASTM A653/A653M-17 includes the copyrightable materials in ASTM A653/A653M-15e1.

33.     Attached hereto as **Exhibit 6** is a true and correct copy of the registration certificate numbered TX 8-217-259 obtained from the Copyright Office for ASTM A706/A706M-16 Standard Specification for Deformed and Plain Low-Alloy Steel Bars for Concrete Reinforcement that identifies ASTM as the owner of the copyright.

JA274

34. Attached hereto as **Exhibit 7** is a true and correct copy of the registration certificate numbered TX 7-886-878 obtained from the Copyright Office for ASTM A875/A875M - 13 Standard Specification for Steel Sheet, Zinc-5 % Aluminum Alloy-Coated by the Hot-Dip Process that identifies ASTM as the owner of the copyright.

35. Attached hereto as **Exhibit 8** is a true and correct copy of the registration certificate numbered TX 8-422-153 obtained from the Copyright Office for ASTM A924/A924M-17a Standard Specification for General Requirements for Steel Sheet, Metallic-Coated by the Hot-Dip Process that identifies ASTM as the owner of the copyright.

36. Attached hereto as **Exhibit 9** is a true and correct copy of the registration certificate numbered TX 8-062-199 obtained from the Copyright Office for ASTM B209-14 Standard Specification for Aluminum and Aluminum-Alloy Sheet and Plate that identifies ASTM as the owner of the copyright.

37. Attached hereto as **Exhibit 10** is a true and correct copy of the registration certificate numbered TX 8-142-387 obtained from the Copyright Office for ASTM A615/A615M-15a Standard Specification for Deformed and Plain Carbon-Stell Bars for Concrete Reinforcement that identifies ASTM as the owner of the copyright.

38. Attached hereto as **Exhibit 11** is a true and correct copy of the registration certificate numbered TX 7-935-900 obtained from the Copyright Office for A690/A690M-13a Standard Specification for High-Strength Low-Alloy Nickel, Copper, Phosphorus Steel H-Piles and Sheet Piling with Atmospheric Corrosion

7

Resistance for Use in Marine Environments that identifies ASTM as the owner of the copyright.

39.   Each of ASTM's Copyrighted Works includes a copyright notice identifying ASTM as the copyright holder of the standard and includes ASTM's address.  Apart from providing notice of ASTM's copyright claim in the work, each standard contains contact information for obtaining individual reprints of ASTM's Copyrighted Work as well as where to secure permission rights to copy the standard.  This notice and other copyright management information included in ASTM's Copyrighted Work is not present in the works containing ASTM's Copyrighted Standards on the UpCodes Website.

40.   Each of ASTM's Copyrighted Works contains portions that are expressly non-mandatory or supplementary, such as explanatory notes, supplementary materials, appendices, and annexes.

41.   To create high quality standards using an ANSI-accredited voluntary consensus process, ASTM incurs substantial costs to maintain its standards development infrastructure and delivery platforms, including the resources necessary for collaboration, Technical Committee meetings, balloting, editorial, production, distribution, promotion and protection of the ASTM standards as well as maintaining and achieving its ANSI accreditation.

42.   In addition to the value of the time and expertise of ASTM's members who participate in the standards development process, ASTM must expend substantial resources on administrative, technical, and other necessary support such as salary and benefits for administrative and expert staff, office space, meeting

facilities, outreach and education efforts, information technology, among other things.

43.     To fund the costs incurred for the development of ASTM standards, ASTM uses revenue derived from the sales or licensing of its copyrighted standards to persons and companies who use the standards in their professional work.  The revenue ASTM generates through licensing and sales of its copyrighted works allows ASTM to continue to fund the infrastructure supporting the development of its high-quality standards.

44.     Sales of ASTM's standards account for about 70% of ASTM's total revenue.

45.     ASTM also generates revenue through its offer of standards-related products and services.  For example, ASTM Compass is a subscription platform that provides access to ASTM standards along with productivity tools for sharing, version comparison, and annotation.

46.     Attached as **Exhibit 12** is a true and correct copy of an informational pamphlet titled "Let ASTM Compass® Be Your Guide" created by ASTM International and available on the ASTM website at: https://www.astm.org/media/files/enterprise-solutions/CompassBeYourGuide_FINAL.pdf.

47.     If ASTM was unable to fund its standard development infrastructure through sale of its copyrighted standards, ASTM could not fund its standards development mission.

48.     ASTM owns a U.S. federal trademark registration for the trademark ASTM (U.S. Trademark Reg. No. 2,679,320) (the "ASTM Mark") in connection

JA277

with books featuring information on standardization of specifications and the methods of testing for various materials and products; promoting public awareness of the need for standards; educational services; and providing a website on global computer networks featuring information in the field of specifications and methods of testing for various materials and products.  ASTM has used this trademark since 1962.  ASTM filed a Section 15 declaration in support of the incontestability of this registration.  Attached as **Exhibit 13** are true and correct copies of the Certificate of Registration and the Section 15 declaration.

49.    Through its exclusive, continuous and widespread use, ASTM's Mark has acquired a substantial amount of goodwill, and consumers have come to rely on ASTM's Mark to identify ASTM's high-quality goods and services.

50.    Many of ASTM's standards are used by professionals and specialists – including manufacturers, installers, trades people, engineers, architects, construction and technical experts.

51.    Some federal, state, and local jurisdictions incorporate by reference ("IBR") privately authored standards.  Government entities, who I understand often lack the resources or technical ability to develop standards themselves, will reference a standard developed by SDOs to the benefit of the public by creating a uniform standard across multiple jurisdictions and at little to no cost to the taxpayer.  The reference of SDO-developed standards prevents the duplication of efforts by various jurisdictions to research and write standards from scratch and from industries who would then need to adapt to a patchwork of standards across jurisdictions.  Unlike jurisdictions, SDOs are able to attract expertise and diversity of views in a discrete

10

field and seek broad input ensuring a wide variety of interests are reflected in the resulting standard.

52.     In some instances, a jurisdiction may incorporate by reference the work of another SDO which in turn refers to an ASTM standard, *i.e..,* a "third-party reference" or "TPR."  For example, the 2018 Pennsylvania Uniform Construction Code incorporates by reference the 2018 International Building Code, a copyrighted work published by International Code Council, Inc. ("ICC"), an SDO.  In turn, the 2018 International Building Code refers to ASTM's Copyrighted Works A36/A36M – 14 Specification for Carbon Structural Steel (*see* 2018 International Building Code at 1810.3.2.3) and B209-14 Specification for Aluminum and Alloy Steel and Plate (*see* 2018 International Building Code at Table 1507.2.8.2, Table 1507.4.3(1)).  ASTM has no control over whether Pennsylvania or ICC refers to ASTM's standards and has not licensed any of the Copyrighted Works to Pennsylvania or ICC.

53.     Third parties, including other SDOs, also refer to ASTM's standards in their own standards.  ASTM does not lobby or otherwise attempt to influence local, state, and federal jurisdictions or other SDOs to reference its standards.  Rather, for a variety of reasons, jurisdictions and others see fit to reference ASTM's high-quality standards on their own.

54.     Pennsylvania has not incorporated by reference ASTM's Copyrighted Works.  To the best of ASTM's knowledge, no state or locality has incorporated by reference ASTM's Copyrighted Works.

55.     ASTM engages in quality control procedures to ensure the quality and integrity of the content of the standards.  ASTM staff proofreads the XML versions of standards before posting them on the internet to ensure that the conversion of the

text and diagrams into XML format has not altered the content of the standard.

56.     Defendants have created electronic copies of ASTM's Copyrighted Works appearing on the UpCodes Website which bear the ASTM Mark yet have not undergone ASTM's quality control processes nor been approved or otherwise authorized by ASTM.

57.     Defendants' electronic copies of ASTM's Copyrighted Works on the UpCodes Website compete with ASTM's market for licensed versions of ASTM's Copyrighted Works and ASTM Compass.  ASTM is likely to lose both existing and potential subscribers of ASTM Compass if those subscribers are led to believe that UpCodes is a legitimate alternative to ASTM's offerings.

58.     I have reviewed the UpCodes Website and found that ASTM is identified as the publisher of the electronic copies of ASTM's Copyrighted Works on the UpCodes Website even though ASTM is neither the publisher nor source of these copies.  ASTM has not licensed or authorized Defendants to use the ASTM Mark nor is ASTM affiliated with UpCodes.  Defendants use of ASTM's Mark on unauthorized copies threatens ASTM's reputation and consumer trust including by affiliating ASTM with unauthorized copies that have not undergone ASTM's quality control process, and that may bear mistakes which implicate public safety. Defendants' use of the ASTM Mark also deprives ASTM of control over its brand identity, goodwill, and reputation.

59.     Defendants' offerings of access and premium services based on ASTM's Copyrighted Works threatens the value of ASTM's licensing market and its goodwill and relationship with ASTM's licensees.

12

60.     Engineer Standards Store is not an authorized seller, reseller, or licensee of ASTM standards.

61.     Daneshlink.com is not an authorized seller, reseller, or licensee of ASTM standards.

62.     If Defendants theory is correct, that any ASTM standard referenced in a building code can be freely reproduced and displayed, including as part of a paid subscription service, it will have a devastating impact on ASTM.  Not only will Defendants' infringement directly impact ASTM's financial position and reputation, but it will embolden others, including potentially ASTM's existing licensees to do the same.

63.     Because there are thousands of ASTM standards referenced in building codes, and those standards reference other ASTM standards, the potential for massive loss of copyright protection posed by UpCodes is existential to ASTM's business.

*  *  *

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct pursuant to 28 U.S.C. § 1746.

Dated: July 15, 2024

_____
Thomas O'Brien

13

JA281

# EXHIBIT 1



**ASTM INTERNATIONAL**
Helping our world work better

# Why should I join ASTM?

At ASTM International, producers, users, consumers and others from all over the world join together to develop voluntary consensus standards. We harness the expertise and commitment of 30,000 ASTM members who hail from more than 140 countries. The work of our international members makes products and services better, safer and more cost effective. It brings benefits for manufacturers and corporations, as well as increasing accessibility, reliability, diversity of choice and performance for the products we all buy.

Anyone who feels they can contribute expertise, opinion and experience to influence the standards being set for their industry is welcome to join us.

**Provides networking opportunities**
As a participating ASTM member, you will interact with business competitors, customers and regulators from around the world on a cooperative basis.

**Helps you strategize**
Experts, individuals and organizations representing industry, academia, governments, trade associations, consultants and consumers all have an equal voice in determining a standard's content. As an ASTM member, you will benefit from the cross-section of the marketplace that represents a wide variety of disciplines and organizations and keep abreast of the latest developments in the increasingly important world of standardization. Add value to your career and the work of your organization.

**Opens the door for your ideas**
In a world of growing standardization, our work is increasingly core to the future growth of industries and economies. ASTM members actively develop new standards and revise existing ones. This work is done in a unique professional environment, which draws from the top players in the field throughout the world who work cooperatively in forwarding their own interests. Working directly with other leading scientists and engineers, you will develop intellectual property that leads thinking in new trends and technology.

**Develops leadership skills**
Involvement in ASTM's consensus standards development process offers many opportunities to grow your leadership skills, providing you with a skill set useful throughout your professional life. Active ASTM membership can help you:

- Enhance your communications and presentation skills
- Become a consensus builder and problem solver
- Take on leadership roles
- Hone organizational talents
- Feed your intellectual curiosity
- Serve as an ambassador for your company

**Rewards achievement**
ASTM has a robust awards program that recognizes the accomplishments of individuals that make significant contributions to standardization and the work of our organization.

**Gives you access to standards**
Participating members receive one free volume of the *Annual Book of ASTM Standards* (online or print), a free annual subscription to ASTM's magazine, *Standardization News*, discounts on ASTM publications and reduced symposia registration fees.

Annual participating membership costs $115 USD.

**Empowers you**
To improve the process of setting and reviewing standards, our global members are linked through a standards development process that's flexible, transparent and built on consensus. Powerful tools such as our customized myASTM portal and Web-based collaboration areas give ASTM members the ability to be in immediate contact, seamlessly sharing information and experience with counterparts. They provide around-the-clock access for writing and revising drafts, enabling everyone to register and track draft documents and standards before, during and after balloting.



Anyone, anywhere in the world with an interest in the field covered, is eligible and welcome to join.

Become an ASTM member at www.astm.org/JOIN

JA283

# EXHIBIT 2

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**TX 8-068-653**

**Effective Date of Registration:**
June 29, 2015

## Title

**Title of Work:** ASTM A36/A36M-14 Standard Specification for Carbon Structural Steel

## Completion/Publication

**Year of Completion:** 2014
**Date of 1st Publication:** December 04, 2014
**Nation of 1st Publication:** United States

## Author

- **Author:** ASTM International
  **Author Created:** Entire Text
  **Work made for hire:** Yes
  **Domiciled in:** United States

## Copyright Claimant

**Copyright Claimant:** ASTM International
100 Barr Harbor Drive, West Conshohocken, PA, 19428, United States

## Limitation of copyright claim

**Material excluded from this claim:** text, Previously Registered Text from 2012
**Previous registration and year:** TX-7-838-044, 2012

**New material included in claim:** text, new and revised text

## Rights and Permissions

**Organization Name:** ASTM International
**Name:** Kathleen Hooper
**Email:** khooper@astm.org
**Telephone:** (610)832-9634
**Address:** 100 Barr Harbor Drive
West Conshohocken, PA 19428 United States

## Certification

Page 1 of 2

**Name:** Kathleen Hooper
**Date:** June 29, 2015

JA286

# EXHIBIT 3

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## TX 7-550-513

**Effective date of registration:**

April 3, 2012

## Title

**Title of Work:** 2012 Annual Book of ASTM Standards-- Steel--Piping, Tubing, Fittings

| | | |
|---|---|---|
| **Volume** 01.01 | **Number** 01 | **Date on Copies** January 2012 |
| **Frequency of publication** | Annually | |

## Completion/Publication

**Year of Completion:** 2012

**Date of 1st Publication:** January 2, 2012    **Nation of 1st Publication:** United States

**International Standard Number:** ISBN    9780803186958

## Author

■    **Author:** ASTM International

**Author Created:** text/poetry, Entire Text

**Work made for hire:** Yes

**Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** ASTM International

100 Barr Harbor Drive, West Conshohocken, PA, 19428-2959, United States

## Limitation of copyright claim

**Material excluded from this claim:** text

**Previous registration and year:** 7-401-386    2011

7-160-381    201009.00000000

**New material included in claim:** editing, text

## Rights and Permissions

JA288

**Organization Name:**  ASTM International

**Name:**  Kathe  Hooper

**Email:**  khooper@astm.org     **Telephone:**   610-832-9634

**Address:**  100 Barr Harbor Drive

West Conshohocken, PA 19428-2959  United States

## Certification

**Name:**  Kathe Hooper

**Date:**  March 29, 2012



# EXHIBIT 4

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Kary A. Tingle*

Acting United States Register of Copyrights and Director



**Registration Number**

## TX 8-690-736

**Effective Date of Registration:**
November 13, 2018

## Title

**Title of Work:** ASTM A722/A722M-18 Standard Specification for High-Strength Steel Bars for Prestressed Concrete

## Completion/Publication

**Year of Completion:** 2018
**Date of 1st Publication:** September 06, 2018
**Nation of 1st Publication:** United States

## Author

- **Author:** ASTM International
**Author Created:** Entire Text
**Work made for hire:** Yes
**Domiciled in:** United States

## Copyright Claimant

**Copyright Claimant:** ASTM International
100 Barr Harbor Drive, West Conshohocken, PA, 19428, United States

## Limitation of copyright claim

**Material excluded from this claim:** Some previously published text
**Previous registration and year:** TX-8-105-718, 2015
TX-7-667-334, 2012

**New material included in claim:** new and revised text

## Rights and Permissions

**Organization Name:** ASTM International
**Name:** Kathleen Hooper
**Email:** khooper@astm.org
**Telephone:** (610)832-9634

Page 1 of 2

**Address:**   100 Barr Harbor Drive
West Conshohocken, PA 19428 United States

## Certification

**Name:**   Kathleen Hooper
**Date**:   November 13, 2018

# EXHIBIT 5

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

United States Register of Copyrights and Director

**Registration Number**

**TX 8-217-668**

**Effective Date of Registration:**
June 09, 2016

## Title

**Title of Work:** ASTM A653/A653M-15e1 Standard Specification for Steel Sheet, Zinc-Coated (Galvanized) or Zinc-Iron Alloy-Coated (Galvannealed) by the Hot-Dip Process

## Completion/Publication

**Year of Completion:** 2015
**Date of 1st Publication:** March 17, 2016
**Nation of 1st Publication:** United States

## Author

- **Author:** ASTM International
  **Author Created:** Entire Text
  **Work made for hire:** Yes
  **Domiciled in:** United States

## Copyright Claimant

**Copyright Claimant:** ASTM International
100 Barr Harbor Drive, West Conshohocken, PA, 19428, United States

## Limitation of copyright claim

**Material excluded from this claim:** Some previously published text
**Previous registration and year:** TX-8-134-800, 2015
TX-7-905-461, 2013

**New material included in claim:** new and revised text

## Rights and Permissions

**Organization Name:** ASTM International
**Name:** Kathleen Hooper
**Email:** khooper@astm.org
**Telephone:** (610)832-9634
**Address:** 100 Barr Harbor Drive
West Conshohocken, PA 19428 United States

Page 1 of 2

## Certification

**Name:** Kathleen Hooper
**Date:** June 09, 2016

JA295

# EXHIBIT 6

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

United States Register of Copyrights and Director

**Registration Number**

**TX 8-217-259**

**Effective Date of Registration:**
June 09, 2016

## Title

**Title of Work:**  ASTM A706/A706M-16 Standard Specification for Deformed and Plain Low-Alloy Steel Bars for Concrete Reinforcement

## Completion/Publication

**Year of Completion:**  2016
**Date of 1st Publication:**  March 24, 2016
**Nation of 1st Publication:**  United States

## Author

- **Author:**  ASTM International
  **Author Created:**  Entire Text
  **Work made for hire:**  Yes
  **Domiciled in:**  United States

## Copyright Claimant

**Copyright Claimant:**  ASTM International
100 Barr Harbor Drive, West Conshohocken, PA, 19428, United States

## Limitation of copyright claim

**Material excluded from this claim:**  Some previously published text
**Previous registration and year:**  TX-8-175-048, 2015
TX-7-951-432, 2014

**New material included in claim:**  new and revised text

## Rights and Permissions

**Organization Name:**  ASTM International
**Name:**  Kathleen Hooper
**Email:**  khooper@astm.org
**Telephone:**  (610)832-9634
**Address:**  100 Barr Harbor Drive
West Conshohocken, PA 19428 United States

Page 1 of 2

**Certification**

> **Name:** Kathleen Hooper
> **Date:** June 09, 2016

JA298

# EXHIBIT 7

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## TX 7-886-878

**Effective date of registration:**

July 29, 2013

---

## Title

**Title of Work:** ASTM A875/A875M - 13 Standard Specification for Steel Sheet, Zinc-5 % Aluminum Alloy-Coated by the Hot-Dip Process

## Completion/Publication

**Year of Completion:** 2013

**Date of 1st Publication:** April 11, 2013     **Nation of 1st Publication:** United States

## Author

■     **Author:** ASTM International

**Author Created:** Entire Text

**Work made for hire:** Yes

**Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** ASTM International

100 Barr Harbor Drive, West Conshohocken, PA, 19428, United States

## Limitation of copyright claim

**Material excluded from this claim:** text, Previously Registered Text from 2011

**Previous registration and year:** TX 7-482-214     2011

**New material included in claim:** text, editing

## Rights and Permissions

**Organization Name:** ASTM International

**Name:** Kathleen Hooper

**Email:** khooper@astm.org     **Telephone:** 610-832-9634

**Address:** 100 Barr Harbor Drive

West Conshohocken, PA 19428  United States

## Certification

Page 1 of 2

**Name:**   Kathleen Hooper

**Date:**   July 29, 2013



# EXHIBIT 8

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Karyn Temple Claggett*

Acting United States Register of Copyrights and Director

**Registration Number**

## TX 8-422-153

**Effective Date of Registration:**
September 17, 2017

## Title

**Title of Work:** ASTM A924/A924M-17a Standard Specification for General Requirements for Steel Sheet, Metallic-Coated by the Hot-Dip Process

## Completion/Publication

**Year of Completion:** 2017
**Date of 1st Publication:** September 07, 2017
**Nation of 1st Publication:** United States

## Author

- **Author:** ASTM International
  **Author Created:** Entire Text
  **Work made for hire:** Yes
  **Domiciled in:** United States

## Copyright Claimant

**Copyright Claimant:** ASTM International
100 Barr Harbor Drive, West Conshohocken, PA, 19428, United States

## Limitation of copyright claim

**Material excluded from this claim:** Some previously published text
**Previous registration and year:** Pending, 2017
TX 8-236-207, 2016

**New material included in claim:** new and revised text

## Rights and Permissions

**Organization Name:** ASTM International
**Name:** Kathleen Hooper
**Email:** khooper@astm.org
**Telephone:** (610)832-9634
**Address:** 100 Barr Harbor Drive
West Conshohocken, PA 19428 United States

Page 1 of 2

**Certification**

                **Name:**  Kathleen Hooper
                **Date:**   September 17, 2017



Page 2 of 2

# EXHIBIT 9

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**TX 8-062-199**

**Effective Date of Registration:**
June 25, 2015

---

## Title

**Title of Work:** ASTM B209-14 Standard Specification for Aluminum and Aluminum-Alloy Sheet and Plate

## Completion/Publication

**Year of Completion:** 2014
**Date of 1st Publication:** November 21, 2014
**Nation of 1st Publication:** United States

## Author

- **Author:** ASTM International
  **Author Created:** Entire Text
  **Work made for hire:** Yes
  **Domiciled in:** United States

## Copyright Claimant

**Copyright Claimant:** ASTM International
100 Barr Harbor Drive, West Conshohocken, PA, 19428, United States

## Limitation of copyright claim

**Material excluded from this claim:** text, Previously Registered Text from 2010
**Previous registration and year:** TX-7-460-153, 2010

**New material included in claim:** text, new and revised text

## Rights and Permissions

**Organization Name:** ASTM International
**Name:** Kathleen Hooper
**Email:** khooper@astm.org
**Telephone:** (610)832-9634
**Address:** 100 Barr Harbor Drive
West Conshohocken, PA 19428 United States

## Certification

Page 1 of 2

JA306

**Name:** Kathleen Hooper
**Date:** June 25, 2015



JA307

# EXHIBIT 10

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

Maria A. Pallante

United States Register of Copyrights and Director

**Registration Number**

**TX 8-142-387**

**Effective Date of Registration:**
December 28, 2015

## Title

**Title of Work:** ASTM A615/A615M-15a Standard Specification for Deformed and Plain
Carbon-Steel Bars for Concrete Reinforcement

## Completion/Publication

**Year of Completion:** 2015
**Date of 1st Publication:** August 12, 2015
**Nation of 1st Publication:** United States

## Author

- **Author:** ASTM International
  **Author Created:** Entire Text
  **Work made for hire:** Yes
  **Domiciled in:** United States

## Copyright Claimant

**Copyright Claimant:** ASTM International
100 Barr Harbor Drive, West Conshohocken, PA, 19428, United States

## Limitation of copyright claim

**Material excluded from this claim:** Some previously published text
**Previous registration and year:** TX-8-101-560, 2015
TX-7-927-584, 2014

**New material included in claim:** new and revised text

## Rights and Permissions

**Organization Name:** ASTM International
**Name:** Kathleen Hooper
**Email:** khooper@astm.org
**Telephone:** (610)832-9634
**Address:** 100 Barr Harbor Drive
West Conshohocken, PA 19428 United States

Page 1 of 2

## Certification

**Name:** Kathleen Hooper
**Date:** December 28, 2015



# EXHIBIT 11

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## TX 7-935-900

**Effective date of registration:**

November 9, 2014

---

## Title

**Title of Work:** ASTM A690/A690M-13a Standard Specification for High-Strength Low-Alloy Nickel, Copper, Phosphorus Steel H-Piles  and Sheet Piling with Atmospheric Corrosion Resistance for Use in Marine Environments

## Completion/Publication

**Year of Completion:** 2013

**Date of 1st Publication:** November 11, 2013          **Nation of 1st Publication:** United States

## Author

■          **Author:** ASTM International

**Author Created:** Entire Text

**Work made for hire:** Yes

**Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** ASTM International

100 Barr Harbor Drive, West Conshohocken, PA, 19428, United States

## Limitation of copyright claim

**Material excluded from this claim:**  text, Previously Registered Text from 2012

**Previous registration and year:** TX-7-653-465      2012

**New material included in claim:** text, editing

## Rights and Permissions

**Organization Name:** ASTM International

**Name:** Kathleen  Hooper

**Email:** khooper@astm.org                                    **Telephone:**    610-832-9634

**Address:** 100 Barr Harbor Drive

West Conshohocken, PA 19428  United States

## Certification

---

Page  1 of  2

**Name:**   Kathleen Hooper

**Date:**   October 27, 2014



# EXHIBIT 12

**ASTM INTERNATIONAL**
Helping our world work better

# Let ASTM Compass®
# Be Your Guide

## Your Portal for Standards, Testing, Learning, & More





### Get Complete Access to All Content

View ASTM's 12,800+ standards, 1,500+ books, 47,000+ articles and papers, plus content from AASHTO, AATCC, ACI, API, AWS, ISO, and UOP.



### Navigate in Your Own Language

Search in 14+ languages, including Arabic, Chinese, French, Russian, and Spanish.



### Alerts and Updates Keep You Up to Date

Get the most up-to-date materials and stay on top of crucial industry changes with instant alerts.

### Easily Identify Changes to Standards

Boost productivity and improve how you use standards with change management tools like color-coded highlighting and bookmarking.



### Advance Your Career with Expert Training

Improve and measure performance with live and e-learning courses for metals, petroleum, building construction, the environment, textiles, plastics, and rubber.

### Add Notes, Share with Co-Workers

Enhance communication by adding notes, images, and your own material to create dynamic documents. Share with employees, contractors, and stakeholders.

Get the access you need, when you need it. Contact us to request a demo.

Sales | sales@astm.org | tel +1.877.909.2786

JA315

# EXHIBIT 13

Int. Cls.: 16, 35, 41 and 42

Prior U.S. Cls.: 2, 5, 22, 23, 29, 37, 38, 50, 100, 101, 102 and 107

**United States Patent and Trademark Office**

Reg. No. 2,679,320

Registered Jan. 28, 2003

## TRADEMARK
## SERVICE MARK
### PRINCIPAL REGISTER

## ASTM

AMERICAN SOCIETY FOR TESTING AND MA-
TERIALS (PENNSYLVANIA CORPORATION)
100 BARR HARBOR DRIVE
WEST CONSHOHOCKEN, PA 19428

FOR: BOOKS FEATURING INFORMATION ON STANDARDIZATION OF SPECIFICATIONS AND THE METHODS OF TESTING FOR CEMENT AND CONCRETE MATERIALS, CEMENT, CHEMICAL-RESISTANT NONMETALLIC MATERIALS, LIME, CONCRETE AND CONCRETE AGGREGATES, MORTARS AND GROUTS FOR UNIT MASONRY, CONCRETE PIPE, MANUFACTURED MASONRY UNITS, FIBER-REINFORCED CEMENT PRO-DUCTS, PRECAST CONCRETE PRODUCTS; CERA-MICS MATERIALS, REFRACTORIES, GLASS AND GLASS PRODUCTS, CERAMIC WHITEWARES AND RELATED PRODUCTS, ADVANCED CERA-MICS, COMPOSITE MATERIALS; CHEMICALS, EN-GINE COOLANTS, AROMATIC HYDROCARBONS AND RELATED CHEMICALS, HALOGENATED ORGANIC SOLVENTS AND FIRE EXTINGUISH-ING AGENTS, INDUSTRIAL AND SPECIALTY CHEMICALS; CONSTRUCTION MATERIALS IN-CLUDING BUT NOT LIMITED TO ENGINEERING, VITRIFIED CLAY PIPE, GYPSUM AND RELATED BUILDING MATERIALS AND SYSTEMS, THER-MAL INSULATION, DIMENSION STONE, BUILD-ING SEALS AND SEALANTS, ROAD AND PAVING MATERIALS, WOOD, ROOFING, WATERPROOF-ING, BITUMINOUS MATERIALS, SOIL AND ROCK, GEOSYNTHETICS, VEHICLE-PAVEMENT SYS-TEMS, RESILIENT FLOOR COVERINGS, PLASTIC PIPING SYSTEMS; ELECTRONICS AND ELECTRI-CAL INSULATION, ELECTRICAL AND ELECTRO-NIC INSULATING MATERIALS, ELECTRICAL INSULATING LIQUIDS AND GASES, ELECTRO-NICS; END USE PRODUCTS, SOAPS AND OTHER DETERGENTS, POLISHES, LEATHER, SPORTS EQUIPMENT, VACUUM CLEANERS, FENCES, AMUSEMENT RIDES AND DEVICES, FOOD SER-VICE EQUIPMENT; ENERGY - NUCLEAR FUEL CYCLE, SOLAR, GEOTHERMAL, AND OTHER ALTERNATIVE ENERGY SOURCES; ENVIRON-MENT, WASTE MANAGEMENT, PESTICIDES, HA-ZARDOUS SUBSTANCES; GENERAL PRODUCTS - ADHESIVES, ACTIVATED CARBON; HEALTH CARE, MEDICAL AND SURGICAL MATERIALS AND DEVICES, ANESTHETIC AND RESPIRATORY EQUIPMENT; METAL PRODUCTS, STEEL, STAIN-LESS STEEL AND RELATED ALLOYS, IRON CAST-INGS, METALLIC-COATED IRON AND STEEL PRODUCTS, MAGNETIC PROPERTIES, ELECTRI-CAL CONDUCTORS, NONFERROUS METALS AND ALLOYS, COPPER AND COPPER ALLOYS, LIGHT METALS AND ALLOYS, METAL POWDERS AND METAL POWDER PRODUCTS, REACTIVE AND REFRACTORY METALS AND ALLOYS, FAS-TENERS; PAINTS AND COATINGS, METALLIC AND INORGANIC COATINGS, PAINT AND RELA-TED COATINGS, MATERIALS AND APPLICA-TIONS, PROTECTIVE COATING AND LINING WORK FOR POWER GENERATION FACILITIES; PAPER AND PACKAGING, PAPER AND PAPER PRODUCTS, PACKAGING, FLEXIBLE BARRIER MATERIALS; PETROLEUM PRODUCTS, LUBRI-CANTS, AND FOSSIL FUELS - PETROLEUM PRO-DUCTS AND LUBRICANTS, GASEOUS FUELS, COAL AND COKE, CATALYSTS; PLASTICS, PLAS-TIC PIPING SYSTEMS; RUBBER, CARBON BLACK, GASKETS, TIRES; SAFETY, ELECTRICAL PROTEC-TIVE EQUIPMENT FOR WORKERS, PROTECTIVE CLOTHING, IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FIRST USE 3-15-1962; IN COMMERCE 3-15-1962.

FOR PROMOTING PUBLIC AWARENESS OF THE NEED FOR STANDARDS FOR RELIABLE MATERIALS, PRODUCTS, SYSTEMS AND SERVI-CES TO IMPROVE PUBLIC HEALTH AND SAFETY

AND THE OVERALL QUALITY OF LIFE, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 3-15-1962; IN COMMERCE 3-15-1962.

FOR: EDUCATIONAL SERVICES, NAMELY, CONDUCTING SYMPOSIA AND COMMITTEE MEETINGS IN THE FIELD OF STANDARDIZA- TION OF SPECIFICATIONS AND METHODS OF TESTING FOR CEMENT AND CONCRETE MATE- RIALS, CEMENT, CHEMICAL-RESISTANT NON- METALLIC MATERIALS, LIME, CONCRETE AND CONCRETE AGGREGATES, MORTARS AND GROUTS FOR UNIT MASONRY, CONCRETE PIPE, MANUFACTURED MASONRY UNITS, FIBER-RE- INFORCED CEMENT PRODUCTS, PRECAST CON- CRETE PRODUCTS; CERAMICS MATERIALS - REFRACTORIES, GLASS AND GLASS PRODUCTS, CERAMIC WHITEWARES AND RELATED PRO- DUCTS, ADVANCED CERAMICS, COMPOSITE MA- TERIALS; CHEMICALS, ENGINE COOLANTS, AROMATIC HYDROCARBONS AND RELATED CHEMICALS, HALOGENATED ORGANIC SOL- VENTS AND FIRE EXTINGUISHING AGENTS, IN- DUSTRIAL AND SPECIALTY CHEMICALS; CONSTRUCTION MATERIALS INCLUDING BUT NOT LIMITED TO ENGINEERING, VITRIFIED CLAY PIPE, GYPSUM AND RELATED BUILDING MATERIALS AND SYSTEMS, THERMAL INSULA- TION, DIMENSION STONE, BUILDING SEALS AND SEALANTS, ROAD AND PAVING MATERI- ALS, WOOD, ROOFING, WATERPROOFING, BITU- MINOUS MATERIALS, SOIL AND ROCK, GEOSYNTHETICS, VEHICLE-PAVEMENT SYS- TEMS, RESILIENT FLOOR COVERINGS, PLASTIC PIPING SYSTEMS; ELECTRONICS AND ELECTRI- CAL INSULATION, ELECTRICAL AND ELECTRO- NIC INSULATING MATERIALS, ELECTRICAL INSULATING LIQUIDS AND GASES, ELECTRO- NICS; END USE PRODUCTS, SOAPS AND OTHER DETERGENTS, POLISHES, LEATHER, SPORTS EQUIPMENT, VACUUM CLEANERS, FENCES, AMUSEMENT RIDES AND DEVICES, FOOD SER- VICE EQUIPMENT; ENERGY, NUCLEAR FUEL CYCLE, SOLAR, GEOTHERMAL, AND OTHER ALTERNATIVE ENERGY SOURCES; ENVIRON- MENT, WASTE MANAGEMENT, PESTICIDES, HA- ZARDOUS SUBSTANCES; GENERAL PRODUCTS - ADHESIVES, ACTIVATED CARBON; HEALTH CARE, MEDICAL AND SURGICAL MATERIALS AND DEVICES, ANESTHETIC AND RESPIRATORY EQUIPMENT; METAL PRODUCTS, STEEL, STAIN- LESS STEEL AND RELATED ALLOYS, IRON CAST- INGS, METALLIC-COATED IRON AND STEEL PRODUCTS, MAGNETIC PROPERTIES, ELECTRI- CAL CONDUCTORS, NONFERROUS METALS AND ALLOYS, COPPER AND COPPER ALLOYS, LIGHT METALS AND ALLOYS, METAL POWDERS AND METAL POWDER PRODUCTS, REACTIVE AND REFRACTORY METALS AND ALLOYS, FAS- TENERS; PAINTS AND COATINGS - METALLIC AND INORGANIC COATINGS, PAINT AND RELA- TED COATINGS, MATERIALS AND APPLICA- TIONS, PROTECTIVE COATING AND LINING WORK FOR POWER GENERATION FACILITIES; PAPER AND PACKAGING, PAPER AND PAPER PRODUCTS, PACKAGING, FLEXIBLE BARRIER

MATERIALS; PETROLEUM PRODUCTS, LUBRI- CANTS, AND FOSSIL FUELS, PETROLEUM PRO- DUCTS AND LUBRICANTS, GASEOUS FUELS, COAL AND COKE, CATALYSTS; PLASTICS, PLAS- TIC PIPING SYSTEMS; RUBBER, CARBON BLACK, GASKETS, TIRES; SAFETY, ELECTRICAL PROTEC- TIVE EQUIPMENT FOR WORKERS, PROTECTIVE CLOTHING, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 3-15-1962; IN COMMERCE 3-15-1962.

FOR: PROVIDING A WEBSITE ON GLOBAL COMPUTER NETWORKS FEATURING INFORMA- TION IN THE FIELD OF SPECIFICATIONS AND METHODS OF TESTING FOR CEMENT AND CON- CRETE MATERIALS, CEMENT, CHEMICAL-RESIS- TANT NONMETALLIC MATERIALS, LIME, CONCRETE AND CONCRETE AGGREGATES, MORTARS AND GROUTS FOR UNIT MASONRY, CONCRETE PIPE, MANUFACTURED MASONRY UNITS, FIBER-REINFORCED CEMENT PRO- DUCTS, PRECAST CONCRETE PRODUCTS; CERA- MICS MATERIALS, REFRACTORIES, GLASS AND GLASS PRODUCTS, CERAMIC WHITEWARES AND RELATED PRODUCTS, ADVANCED CERA- MICS, COMPOSITE MATERIALS; CHEMICALS - ENGINE COOLANTS, AROMATIC HYDROCAR- BONS AND RELATED CHEMICALS, HALOGENA- TED ORGANIC SOLVENTS AND FIRE EXTINGUISHING AGENTS, INDUSTRIAL AND SPECIALTY CHEMICALS; CONSTRUCTION MATE- RIALS INCLUDING BUT NOT LIMITED TO ENGI- NEERING - VITRIFIED CLAY PIPE, GYPSUM AND RELATED BUILDING MATERIALS AND SYS- TEMS, THERMAL INSULATION, DIMENSION STONE, BUILDING SEALS AND SEALANTS, ROAD AND PAVING MATERIALS, WOOD, ROOFING, WATERPROOFING, BITUMINOUS MATERIALS, SOIL AND ROCK, GEOSYNTHETICS, VEHICLE- PAVEMENT SYSTEMS, RESILIENT FLOOR COV- ERINGS, PLASTIC PIPING SYSTEMS; ELECTRO- NICS AND ELECTRICAL INSULATION, ELECTRICAL AND ELECTRONIC INSULATING MATERIALS, ELECTRICAL INSULATING LI- QUIDS AND GASES, ELECTRONICS; END USE PRODUCTS, SOAPS AND OTHER DETERGENTS, POLISHES, LEATHER, SPORTS EQUIPMENT, VA- CUUM CLEANERS, FENCES, AMUSEMENT RIDES AND DEVICES, FOOD SERVICE EQUIPMENT; EN- ERGY, NUCLEAR FUEL CYCLE, SOLAR, GEO- THERMAL, AND OTHER ALTERNATIVE ENERGY SOURCES; ENVIRONMENT, WASTE MANAGEMENT, PESTICIDES, HAZARDOUS SUB- STANCES; GENERAL PRODUCTS - ADHESIVES, ACTIVATED CARBON; HEALTH CARE, MEDICAL AND SURGICAL MATERIALS AND DEVICES, AN- ESTHETIC AND RESPIRATORY EQUIPMENT; ME- TAL PRODUCTS, STEEL, STAINLESS STEEL AND RELATED ALLOYS, IRON CASTINGS, METALLIC- COATED IRON AND STEEL PRODUCTS, MAG- NETIC PROPERTIES, ELECTRICAL CONDUC- TORS, NONFERROUS METALS AND ALLOYS, COPPER AND COPPER ALLOYS, LIGHT METALS AND ALLOYS, METAL POWDERS AND METAL POWDER PRODUCTS, REACTIVE AND REFRAC- TORY METALS AND ALLOYS, FASTENERS;

PAINTS AND COATINGS, METALLIC AND INORGANIC COATINGS, PAINT AND RELATED COATINGS, MATERIALS AND APPLICATIONS, PROTECTIVE COATING AND LINING WORK FOR POWER GENERATION FACILITIES; PAPER AND PACKAGING, PAPER AND PAPER PRODUCTS, PACKAGING, FLEXIBLE BARRIER MATERIALS; PETROLEUM PRODUCTS, LUBRICANTS, AND FOSSIL FUELS, PETROLEUM PRODUCTS AND LUBRICANTS, GASEOUS FUELS, COAL AND COKE, CATALYSTS; PLASTICS, PLASTIC PIPING SYSTEMS; RUBBER, CARBON BLACK, GASKETS, TIRES; SAFETY, ELECTRICAL PROTECTIVE EQUIPMENT FOR WORKERS, PROTECTIVE CLOTHING, IN CLASS 42 (U.S. CLS. 100 AND 101).

FIRST USE 3-15-1962; IN COMMERCE 3-15-1962.

OWNER OF U.S. REG. NOS. 901,227 AND 993,094.

SER. NO. 75-638,698, FILED 2-11-1999.

LESLIE RICHARDS, EXAMINING ATTORNEY

PTO Form 1583 (Rev 5/2006)
OMB No. 0651-0055 (Exp 12/31/2011)

# Combined Declaration of Use and Incontestability under Sections 8 & 15

**The table below presents the data as entered.**

| Input Field | Entered |
|---|---|
| **REGISTRATION NUMBER** | 2679320 |
| **REGISTRATION DATE** | 01/28/2003 |
| **SERIAL NUMBER** | 75638698 |
| **MARK SECTION** | |
| **MARK** | ASTM |
| **OWNER SECTION (current)** | |
| **NAME** | American Society for Testing and Materials |
| **STREET** | 100 Barr Harbor Drive |
| **CITY** | West Conshohocken |
| **STATE** | Pennsylvania |
| **ZIP/POSTAL CODE** | 19428 |
| **COUNTRY** | US |
| **ATTORNEY SECTION (current)** | |
| **NAME** | DENISE ADAMUCCI |
| **FIRM NAME** | KLETT ROONEY LIEBER & SCHORLING PC |
| **STREET** | 2 LOGAN SQ 12TH FL |
| **CITY** | PHILADELPHIA |
| **STATE** | Pennsylvania |
| **POSTAL CODE** | 19103-2756 |
| **COUNTRY** | United States |
| **ATTORNEY SECTION (proposed)** | |
| **NAME** | Carole R. Klein |
| **FIRM NAME** | Morgan, Lewis & Bockius LLP |
| **STREET** | 1111 Pennsylvania Avenue, NW |
| **CITY** | Washington |
| **STATE** | District of Columbia |
| **POSTAL CODE** | 20004 |
| **COUNTRY** | United States |
| **PHONE** | 202-739-5517 |
| **FAX** | 202-739-3001 |
| **EMAIL** | trademarks@morganlewis.com |
| | |

JA320

| | |
|---|---|
| **AUTHORIZED TO COMMUNICATE VIA E-MAIL** | Yes |
| **ATTORNEY DOCKET NUMBER** | 035186.0007 |
| **OTHER APPOINTED ATTORNEY** | the firm of Morgan, Lewis & Bockius LLP, MICHAEL F. CLAYTON, JAMES R. SIMS III, RON N. DREBEN, KAREN A. BUTCHER, BRETT I. MILLER, ANITA B. POLOTT, CAROLE R. KLEIN, JOSEPH E. WASHINGTON, KRISTIN H. ALTOFF, GENE K. PARK, MEGAN K. BOWEN, BRIAN P. OÂ'DONNELL, DANA S. GROSS, NATALIE A. WARD, HENRY SHINN, and SETH I. SHAIFER, members of the District of Columbia Bar, MERRY BIGGERSTAFF, member of the New York Bar, and DAN MARKS, member of the California Bar, all located at 1111 Pennsylvania Ave., NW, Washington, D.C. 20004, ROCHELLE D. ALPERT, CARLA B. OAKLEY, SHARON R. SMITH, and LEIGHA E. WILBUR, members of the California Bar, all located at One Market, Spear Street Tower, San Francisco, California 94105, and ANDREW J. GRAY IV, member of the California Bar, located at 2 Palo Alto Square, Suite 700, 3000 El Camino Real, Palo Alto, California 94306, all of whom should receive correspondence and documents related to this application through the offices |

## GOODS AND/OR SERVICES SECTION

| | |
|---|---|
| **INTERNATIONAL CLASS** | 016 |
| **GOODS OR SERVICES** | KEEP ALL LISTED |
| **SPECIMEN FILE NAME(S)** | \\TICRS\EXPORT5\IMAGEOUT5 \756\386\75638698\xml1\81 50002.JPG |
| **SPECIMEN DESCRIPTION** | photograph of manual |
| **INTERNATIONAL CLASS** | 035 |
| **GOODS OR SERVICES** | KEEP ALL LISTED |
| **SPECIMEN FILE NAME(S)** | \\TICRS\EXPORT5\IMAGEOUT5 \756\386\75638698\xml1\81 50003.JPG |
| **SPECIMEN DESCRIPTION** | page from website |
| **INTERNATIONAL CLASS** | 041 |
| **GOODS OR SERVICES** | KEEP ALL LISTED |
| **SPECIMEN FILE NAME(S)** | \\TICRS\EXPORT5\IMAGEOUT5 \756\386\75638698\xml1\81 50004.JPG |
| **SPECIMEN DESCRIPTION** | page from website |
| **INTERNATIONAL CLASS** | 042 |
| **GOODS OR SERVICES** | KEEP ALL LISTED |
| **SPECIMEN FILE NAME(S)** | \\TICRS\EXPORT5\IMAGEOUT5 \756\386\75638698\xml1\81 50005.JPG |
| **SPECIMEN DESCRIPTION** | page from website |

## PAYMENT SECTION

| | |
|---|---|
| **NUMBER OF CLASSES** | 4 |
| **NUMBER OF CLASSES PAID** | 4 |
| **SUBTOTAL AMOUNT** | 1200 |
| **TOTAL FEE PAID** | 1200 |

## SIGNATURE SECTION

| | |
|---|---|
| **SIGNATURE** | /Thomas B. O'Brien, Jr./ |
| **SIGNATORY'S NAME** | Thomas B. O'Brien Jr. |

| SIGNATORY'S POSITION | Vice President & General Counsel |
|---|---|
| DATE SIGNED | 01/26/2009 |
| PAYMENT METHOD | DA |
| **FILING INFORMATION** | |
| SUBMIT DATE | Mon Jan 26 13:26:39 EST 2009 |
| TEAS STAMP | USPTO/S08N15-XX.XXX.XX.XX X-20090126132639117396-26 79320-44042b9939fe160f1de 789964cb9b619f7d-DA-10343 -20090126131432563889 |

PTO Form 1583 (Rev 5/2006)
OMB No. 0651-0055 (Exp 12/31/2011)

## Combined Declaration of Use and Incontestability under Sections 8 & 15
**To the Commissioner for Trademarks:**

**REGISTRATION NUMBER:** 2679320
**REGISTRATION DATE:** 01/28/2003

**MARK:**  ASTM

The owner, American Society for Testing and Materials, having an address of
   100 Barr Harbor Drive
   West Conshohocken, Pennsylvania 19428
   US
is filing a Combined Declaration of Use and Incontestability under Sections 8 & 15.

For International Class 016, the mark is in use in commerce on or in connection with **all** of the goods or services listed in the existing registration for this specific class; **and** the mark has been continuously used in commerce for five (5) consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce on or in connection with **all** goods or services listed in the existing registration for this class. Also, no final decision adverse to the owner's claim of ownership of such mark for those goods or services exists, or to the owner's right to register the same or to keep the same on the register; and, no proceeding involving said rights pending and not disposed of in either the U.S. Patent and Trademark Office or the courts exists.

The owner is submitting one specimen for this class showing the mark as used in commerce on or in connection with any item in this class, consisting of a(n) photograph of manual.
Specimen File1

For International Class 035, the mark is in use in commerce on or in connection with **all** of the goods or services listed in the existing registration for this specific class; **and** the mark has been continuously used in commerce for five (5) consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce on or in connection with **all** goods or services listed in the existing registration for this class. Also, no final decision adverse to the owner's claim of ownership of such mark for those goods or services exists, or to the owner's right to register the same or to keep the same on the register; and, no proceeding involving said rights pending and not disposed of in either the U.S. Patent and Trademark Office or the courts exists.

The owner is submitting one specimen for this class showing the mark as used in commerce on or in connection with any item in this class, consisting of a(n) page from website.
Specimen File1

For International Class 041, the mark is in use in commerce on or in connection with **all** of the goods or services listed in the existing registration for this specific class; **and** the mark has been continuously used in commerce for five (5) consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce on or in connection with **all** goods or services listed in the existing registration for this class. Also, no final decision adverse to the owner's claim of ownership of such mark for those goods or services exists, or to the owner's right to register the same or to keep the same on the register; and, no proceeding involving said rights pending and not disposed of in either the U.S. Patent and Trademark Office or the courts exists.

The owner is submitting one specimen for this class showing the mark as used in commerce on or in connection with any item in this class, consisting of a(n) page from website.
Specimen File1

For International Class 042, the mark is in use in commerce on or in connection with **all** of the goods or services listed in the existing registration for this specific class; **and** the mark has been continuously used in commerce for five (5) consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce on or in connection with **all** goods or services listed in the existing registration for this class. Also, no final decision adverse to the owner's claim of ownership of such mark for those goods or services exists, or to the owner's right to register the same or to keep the same on the register; and, no proceeding involving said rights pending and not disposed of in either the U.S. Patent and Trademark Office or the courts exists.

The owner is submitting one specimen for this class showing the mark as used in commerce on or in connection with any item in this class, consisting of a(n) page from website.

Specimen File1

The registrant hereby appoints Carole R. Klein and the firm of Morgan, Lewis & Bockius LLP, MICHAEL F. CLAYTON, JAMES R. SIMS III, RON N. DREBEN, KAREN A. BUTCHER, BRETT I. MILLER, ANITA B. POLOTT, CAROLE R. KLEIN, JOSEPH E. WASHINGTON, KRISTIN H. ALTOFF, GENE K. PARK, MEGAN K. BOWEN, BRIAN P. OÂ'DONNELL, DANA S. GROSS, NATALIE A. WARD, HENRY SHINN, and SETH I. SHAIFER, members of the District of Columbia Bar, MERRY BIGGERSTAFF, member of the New York Bar, and DAN MARKS, member of the California Bar, all located at 1111 Pennsylvania Ave., NW, Washington, D.C. 20004, ROCHELLE D. ALPERT, CARLA B. OAKLEY, SHARON R. SMITH, and LEIGHA E. WILBUR, members of the California Bar, all located at One Market, Spear Street Tower, San Francisco, California 94105, and ANDREW J. GRAY IV, member of the California Bar, located at 2 Palo Alto Square, Suite 700, 3000 El Camino Real, Palo Alto, California 94306, all of whom should receive correspondence and documents related to this application through the offices of Morgan, Lewis & Bockius LLP

   1111 Pennsylvania Avenue, NW

   Washington, District of Columbia 20004

    United States

to file this Combined Declaration of Use and Incontestability under Sections 8 & 15 on behalf of the registrant. The attorney docket/reference number is 035186.0007.

A fee payment in the amount of $1200 will be submitted with the form, representing payment for 4 class(es), plus any additional grace period fee, if necessary.

**Declaration**

*The mark is in use in commerce on or in connection with the goods and/or services identified above, as evidenced by the attached specimen(s) showing the mark as used in commerce. The mark has been in continuous use in commerce for five (5) consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce. There has been no final decision adverse to the owner's claim of ownership of such mark, or to the owner's right to register the same or to keep the same on the register; and there is no proceeding involving said rights pending and not disposed of either in the U.S. Patent and Trademark Office or in the courts.*

The undersigned being hereby warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements and the like may jeopardize the validity of this document, declares that he/she is properly authorized to execute this document on behalf of the Owner; and all statements made of his/her own knowledge are true and that all statements made on information and belief are believed to be true.

Signature: /Thomas B. O'Brien, Jr./     Date: 01/26/2009
Signatory's Name: Thomas B. O'Brien Jr.
Signatory's Position: Vice President & General Counsel

Mailing Address **(current):**
  KLETT ROONEY LIEBER & SCHORLING PC
  2 LOGAN SQ 12TH FL
  PHILADELPHIA, Pennsylvania 19103-2756

Mailing Address **(proposed):**
  Morgan, Lewis & Bockius LLP
  1111 Pennsylvania Avenue, NW
  Washington, District of Columbia 20004

Serial Number: 75638698
Internet Transmission Date: Mon Jan 26 13:26:39 EST 2009
TEAS Stamp: USPTO/S08N15-XX.XXX.XX.XXX-2009012613263
9117396-2679320-44042b9939fe160f1de78996
4cb9b619f7d-DA-10343-2009012613143256388
9





2008
ANNUAL BOOK OF ASTM STANDARDS

Steel — Piping, Tubing, Fittings

SECTION 1
VOLUME 01.01

JAN

www.astm.org

ISBN 978-0-8031-5698-2
ISSN 0192-2998
ASTM Stock# S010108

# 2008
# ANNUAL BOOK OF ASTM STANDARDS

## SECTION ONE
### IRON AND STEEL PRODUCTS

VOLUME **01.01**
Steel — Piping, Tubing, Fittings

Revision Issued Annually

ASTM INTERNATIONAL
Standards Worldwide







## ROUTING SHEET TO POST REGISTRATION (PRU)

**Registration Number:**   2679320

**Serial Number:**   75638698

**RAM Sale Number:  10343**

**RAM Accounting Date:  20090126**

**Total Fees:**          $1200

Note:  Process in accordance with Post Registration Standard Operating Procedure (SOP)

| Transaction | Fee Code | Transaction Date | Fee per Class | Number of Classes | Number of Classes Paid | Total Fee |
|---|---|---|---|---|---|---|
| §8 affidavit | 7205 | 20090126 | $100 | 4 | 4 | $400 |
| §15 affidavit | 7208 | 20090126 | $200 | 4 | 4 | $800 |

Physical Location: 900  - FILE REPOSITORY (FRANCONIA)

Lost Case Flag: False

In TICRS (AM-FLG-IN-TICRS): True

**Transaction Date:**   20090126



JA329

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMERICAN SOCIETY FOR TESTING
AND MATERIALS d/b/a ASTM
INTERNATIONAL,

                Plaintiff,

   v.

UPCODES, INC.; GARRETT
REYNOLDS; and SCOTT REYNOLDS,

                Defendants.

Civil Action No.:  2:24-cv-01895-AB

**JURY TRIAL REQUESTED**

## DECLARATION OF JANE W. WISE

I, Jane W. Wise, hereby declare as follows:

1.      I am over the age of 18.  I am an associate with the law firm of DLA Piper LLP (US) which represents Plaintiff American Society for Testing and Materials d/b/a ASTM International ("ASTM") in the above captioned matter.  I submit this declaration in connection with ASTM's Motion for a Preliminary Injunction and to place before the Court relevant documents.

2.      Attached as **Exhibit 14** is a true and correct copy of ASTM's Copyrighted Work "ASTM A36/A36M-14 Standard Specification for Carbon Structural Steel" as published by ASTM.

3.      Attached as **Exhibit 15** is a true and correct copy of ASTM's Copyrighted Work "ASTM A252-10 (Reapproved 2018) Standard Specification for Welded and Seamless Steel Pipe Piles" as published by ASTM.

1

4. Attached as **Exhibit 16** is a true and correct copy of ASTM's Copyrighted Work "ASTM A722/A722M-18 Standard Specification for High-Strength Steel Bars for Prestressed Concrete" as published by ASTM.

5. Attached as **Exhibit 17** is a true and correct copy of ASTM's Copyrighted Work "ASTM A653/A653M-17 Standard Specification for Steel Sheet, Zinc-Coated (Galvanized) or Zinc-Iron Alloy-Coated (Galvannealed) by the Hot-Dip Process" as published by ASTM.

6. Attached as **Exhibit 18** is a true and correct copy of ASTM's Copyrighted Work "ASTM A706/A706M-16 Standard Specification for Deformed and Plain Low-Alloy Steel Bars for Concrete Reinforcement" as published by ASTM.

7. Attached as **Exhibit 19** is a true and correct copy of ASTM's Copyrighted Work "ASTM A875/A875M – 13 Standard Specification for Steel Sheet, Zinc-5 % Aluminum Alloy-Coated by the Hot-Dip Process" as published by ASTM.

8. Attached as **Exhibit 20** is a true and correct copy of ASTM's Copyrighted Work "ASTM A924/A924M-17a Standard Specification for General Requirements for Steel Sheet, Metallic-Coated by the Hot-Dip Process" as published by ASTM.

9. Attached as **Exhibit 21** is a true and correct copy of ASTM's Copyrighted Work "ASTM B209-14 Standard Specification for Aluminum and Aluminum-Alloy Sheet and Plate" as published by ASTM.

10.     Attached as **Exhibit 22** is a true and correct copy of ASTM's Copyrighted Work "ASTM A615/A615M-15a Standard Specification for Deformed and Plain Carbon-Steel Bars for Concrete Reinforcement" as published by ASTM.

11.     Attached as **Exhibit 23** is a true and correct copy of ASTM's Copyrighted Work "A690/A690M-13a Standard Specification for High-Strength Low-Alloy Nickel, Copper, Phosphorus Steel H-Piles and Sheet Piling with Atmospheric Corrosion Resistance for Use in Marine Environments" as published by ASTM.

12.     Attached as **Exhibit 24** is a true and correct copy of a screenshot from the iccsafe.org website of Chapter 18, Section 18.3.2.3 of 2018 International Building Code.  The webpage from which this screenshot was taken is available at: https://codes.iccsafe.org/content/IBC2018P6/chapter-18-soils-and-foundations#IBC2018P6_Ch18_Sec1810.3.

13.     Attached as **Exhibit 25** is a true and correct copy of an article titled "Building-code compliance startup UpCodes gets $3.36M in pre-Series A funding" authored by Catherine Shue and published by TechCrunch.com on March 15, 2021. This article is also available at: https://techcrunch.com/2021/03/15/building-code-compliance-startup-upcodes-gets-3-36m-in-pre-series-a-funding/.

14.     Attached as **Exhibit 26** is a true and correct copy of a screenshot taken on May 1, 2024 of the "About" webpage on the up.codes website.  This webpage is also available at: https://up.codes/about.

15.     Attached as **Exhibit 27** is a true and correct copy of a screenshot taken on May 1, 2024 of the X, formerly known as Twitter, profile for UpCodes.  This Twitter profile is also available at: https://twitter.com/upcodes.

3

16.     Attached as **Exhibit 28** is a true and correct copy of a screenshot taken on May 1, 2024 of the homepage of up.codes website.  This webpage is also available at: https://up.codes/.

17.     Attached as **Exhibit 29** is a true and correct copy of a screenshot taken on October 26, 2023 of the "Adoptions by Publisher" webpage on the up.codes website with "ASTM" selected in the "Publisher" filter.  This webpage is also available at: https://up.codes/codes/general.

18.     Attached as **Exhibit 30** is a true and correct copy of a screenshot taken on April 19, 2024 of the "Adoptions by Publisher" webpage on the up.codes website with "ASTM" selected in the "Publisher" filter.  This webpage is also available at: https://up.codes/codes/general.

19.     Attached as **Exhibit 31** is a true and correct copy of a screenshot taken on May 3, 2024 of the  "Carbon Structural Steel Code, 2014 (ASTM A36/A36M, 2014)" webpage on the up.codes website.  This webpage is also available at: https://up.codes/code/astm-a36-a36m-standard-specification-for-carbon-structural-steel-2014

20.     Attached as **Exhibit 32** is a true and correct copy of a screenshot taken on May 3, 2024 of the  " Welded and Seamless Steel Pipe Piles Code, 2010 (R2018) (ASTM A252, 2010 (R2018)" webpage on the up.codes website.  This webpage is also available at: https://up.codes/code/astm-a252-standard-specification-for-welded-and-seamless-steel-pipe-piles-2010-r2018.

21.     Attached as **Exhibit 33** is a true and correct copy of a screenshot taken on May 3, 2024 of the  "Deformed and Plain Carbon-steel Bars for Concrete Reinforcement Code, 2015ae1 (ASTM A615/A615M, 2015ae1)" webpage on the

4

up.codes website.  This webpage is also available at: https://up.codes/code/astm-a615-a615m-standard-specification-for-deformed-and-plain-carbon-steel-bars-for-concrete-reinforcement-2015ae1.

22.     Attached as **Exhibit 34** is a true and correct copy of a screenshot taken on May 3, 2024 of the  "Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017 (ASTM A653/A653M, 2017)" webpage on the up.codes website.  This webpage is also available at: https://up.codes/code/astm-a653-a653m-standard-specification-for-steel-sheet-zinc-coated-galvanized-or-zinc-iron-alloy-coated-galvannealed-by-the-hot-dip-process-2017.

23.     Attached as **Exhibit 35** is a true and correct copy of a screenshot taken on May 3, 2024 of the  "High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018) (ASTM A690/A690M, 2013A 2018)" webpage on the up.codes website.  This webpage is also available at:  https://up.codes/code/astm-a690-a690m-standard-specification-for-high-strength-low-alloy-nickel-copper-phosphorus-steel-h-piles-and-sheet-piling-with-atmospheric-corrosion-resistance-for-use-in-marine-environments-2013a-2018.

24.     Attached as **Exhibit 36** is a true and correct copy of a screenshot taken on May 3, 2024 of the  "Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code, 2016 (ASTM A706/A706M, 2016)" webpage on the up.codes website. This webpage is also available at: https://up.codes/code/astm-a706-a706m-standard-specification-for-deformed-and-plain-low-alloy-steel-bars-for-concrete-reinforcement-2016.

5

25.     Attached as **Exhibit 37** is a true and correct copy of a screenshot taken on May 3, 2024 of the  "High-strength Steel Bars for Prestressed Concrete Code, 2018 (ASTM A722/A722M, 2018)" webpage on the up.codes website.   This webpage is also available at: https://up.codes/code/astm-a722-a722m-standard-specification-for-high-strength-steel-bars-for-prestressed-concrete-2018.

26.     Attached as **Exhibit 38** is a true and correct copy of a screenshot taken on May 3, 2024 of the  " Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code, 2013 (ASTM A875/A875M, 2013)" webpage on the up.codes website.  This webpage is also available at: https://up.codes/code/astm-a875-a875m-standard-specification-for-steel-sheet-zinc-5-percent-aluminum-alloy-coated-by-the-hot-dip-process-2013.

27.     Attached as **Exhibit 39** is a true and correct copy of a screenshot taken on May 3, 2024 of the  " Steel Sheet, Metallic-Coated by the Hot-dip Process Code, 2017A (ASTM A924/A924M, 2017A)" webpage on the up.codes website.   This webpage is also available at: https://up.codes/code/astm-a924-a924m-standard-specification-for-general-requirements-for-steel-sheet-metallic-coated-by-the-hot-dip-process-2017a.

28.     Attached as **Exhibit 40** is a true and correct copy of a screenshot taken on May 3, 2024 of the  "Aluminum and Aluminum-Alloy Steel and Plate Code, 2014 (ASTM B209, 2014)" webpage on the up.codes website.  This webpage is also available at: https://up.codes/code/astm-b209-standard-specification-for-aluminum-and-aluminum-alloy-sheet-and-plate-2014.

29.     Attached as **Exhibit 41** is a true and correct copy of an export of "Pennsylvania Carbon Structural Steel Code, 2014"  from the up.codes website

6

performed on April 18, 2024.  The webpage from which this export was performed is available at: https://up.codes/viewer/pennsylvania/astm-a36-a36m-2014.

30.     Attached as **Exhibit 42** is a true and correct copy of an export performed of " California Welded and Seamless Steel Pipe Piles Code, 2010 (R2018)" from the up.codes website  on April 18, 2024.  The webpage from which this export was performed is available at: https://up.codes/viewer/california/astm-a252-2010-r2018.

31.     Attached as **Exhibit 43** is a true and correct copy of an export of "Colorado Deformed and Plain Carbon-steel Bars for Concrete Reinforcement Code 2015ae1" from the up.codes website performed on April 18, 2024 and May 3, 2024.  The webpage from which this export was performed is available at: https://up.codes/viewer/california/astm-a252-2010-r2018.

32.     Attached as **Exhibit 44** is a true and correct copy of an export of "California Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017" from the up.codes website performed on April, 18, 2024 and May 3, 2024.  The webpage from which this export was performed is available at: https://up.codes/viewer/california/astm-a653-a653m-2017.

33.     Attached as **Exhibit 45** is a true and correct copy of an export of "California High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code, 2013 (2018)" from the up.codes website performed on May 3, 2024.  The webpage from which this export was performed is available at: https://up.codes/viewer/california/astm-a690-a690m-2013a-2018.

7

34.     Attached as **Exhibit 46** is a true and correct copy of an export of "California Low-Alloy Steel Deformed and Plain Bars for Concrete Reinforcement Code 2016" from the up.codes website performed on April 18, 2024.  The webpage from which this export was performed is available at: https://up.codes/viewer/california/astm-a706-a706m-2016.

35.     Attached as **Exhibit 47** is a true and correct copy of an export of "California High-strength Steel Bars for Prestressed Concrete Code 2018" from the up.codes website performed on April 18, 2024.  The webpage from which this export was performed is available at: https://up.codes/viewer/california/astm-a722-a722m-2018.

36.     Attached as **Exhibit 48** is a true and correct copy of an export of "California Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013" from the up.codes website performed on April 19, 2024.  The webpage from which this export was performed is available at: https://up.codes/viewer/california/astm-a875-a875m-2013.

37.     Attached as **Exhibit 49** is a true and correct copy of an export of "California Steel Sheet, Metallic-Coated by the Hot-dip Process Code 2017A" from the up.codes website performed on April 23, 2024.  The webpage from which this export was performed is available at: https://up.codes/viewer/california/astm-a924-a924m-2017a.

38.     Attached as **Exhibit 50** is a true and correct copy of an export of "Pennsylvania Aluminum and Aluminum Alloy Steel and Plate Code 2014" from the up.codes website performed on April 23, 2024.  The webpage from which this

8

export was performed is available at: https://up.codes/viewer/california/astm-a875-a875m-2013.

39.     Attached as **Exhibit 51** is a true and correct copy of a screenshot taken on April 23, 2024 of the "Adoptions by Publisher" webpage on the up.codes website with "ASTM" selected in the "Publisher" filter.  This webpage is also available at: https://up.codes/codes/general.

40.     Attached as **Exhibit 52** is a true and correct copy of a screenshot taken on May 1, 2024 of the "Adoptions by Publisher" webpage on the up.codes website with "ASTM" selected in the "Publisher" filter.  This webpage is also available at: https://up.codes/codes/general.



Excerpt from Wise Decl. ¶ 40, Ex. 52. (emphasis and zoom added).

41.     Attached as **Exhibit 53** is a true and correct copy of excerpts from UpCodes co-founder Garrett Reynolds' deposition, dated May 17, 2018, Dkt. No.

100-12 in *International Code Council, Inc. v. UpCodes, Inc.,* No. 1:17-cv-6261 (S.D.N.Y.).

42.    Attached as **Exhibit 54** is a true and correct copy of an article titled "How Companies Can get the Most Out of a Freemium Business Model" authored by Xian Gu, P.K. Kannan, & Liye Ma, and published by the Harvard Business Review on March 20, 2019.    This article is also available at: https://hbr.org/2019/03/how-companies-can-get-the-most-out-of-a-freemium-business-model.

43.    Attached as **Exhibit 55** is a true and correct copy of a screenshot taken on May 1, 2024 of the " Navigating the codes" webpage on the up.codes website. This webpage is also available at: https://support.up.codes/support/solutions/articles/63000193079-overview.

44.    Attached as **Exhibit 56** is a true and correct copy of a screenshot taken on May 1, 2024 of Chapter 1 of the "Pennsylvania Carbon Structural Steel Code, 2014" posted on the up.codes website.    This webpage is also available at: https://up.codes/viewer/pennsylvania/astm-a36-a36m-2014/chapter/1/scope#1. This example shows that the printing function is available for ASTM's Copyrighted Works.[1]

45.    Attached as **Exhibit 57** is a true and correct copy of a screenshot taken on May 1, 2024 of the "Pricing" webpage on the up.codes website.  This webpage is also available at: https://up.codes/pricing.

---

[1] "ASTM's Copyrighted Works" should be understood to have the same meaning as defined in ASTM's Memorandum of Law in support of its Motion for a Preliminary Injunction.

10

46.     Attached as **Exhibit 58** is a true and correct copy of a screenshot taken on May 1, 2024 of Chapter 4 of the "Pennsylvania Carbon Structural Steel Code, 2014" posted on the up.codes website.   This webpage is also available at: https://up.codes/viewer/pennsylvania/astm-a36-a36m-2014/chapter/4/general-requirements-for-delivery#4.   This example shows that a user must create an UpCodes account to access or view copies of ASTM's Copyrighted Works.

47.     Attached as **Exhibit 59** is a true and correct copy of a screenshot taken on May 1, 2024 of the "Create Account" webpage on the up.codes website.  This webpage is also available at: https://up.codes/sign-up.

48.     Attached as **Exhibit 60** is a true and correct copy of excerpts of from UpCodes co-founder Garrett Reynolds' Declaration in Support of Plaintiff's Motion for Summary Judgment and Permanent Injunctive Relief, dated June 18, 2019, Dkt. No. 92-33 in *International Code Council, Inc. v. UpCodes, Inc.,* No. 1:17-cv-6261 (S.D.N.Y.).

49.     Attached as **Exhibit 61** is a true and correct copy of the April 11, 2023 Order Granting in Part and Denying in Part Defendants' Motions for Attorney's Fees, Dkt. No. 201 in  *Lynwood Investments CY, Ltd. v. Maxim Konovalov, et. al.,* Case No. 3:20-cv-3778.

50.     Attached as **Exhibit 62** is a true and correct copy of a screenshot taken on July 15, 2024 of the "Overview" section of the 2018 International Building Code webpage on the iccsafe.org website.   This webpage is also available at https://codes.iccsafe.org/content/IBC2018P6.

11

51.     Attached as **Exhibit 63** is a true and correct copy of excerpts of the rough transcript of the July 12, 2024 30(b)(6) Deposition of ASTM's corporate designee, Thomas O'Brien, Jr.

52.     Attached as **Exhibit 64** is a true and correct copy of Plaintiff's Exhibit 20 from the July 11, 2024 deposition of UpCodes' 30(b)(6) designee, Garrett Reynolds.

53.     Attached as **Exhibit 65** is a true and correct excerpt of the transcript of the July 11, 2024 deposition of UpCodes' 30(b)(6) designee, Garrett Reynolds.

54.     Attached as **Exhibit 66** is a true and correct copy of Plaintiff's Exhibit 14 from the July 11, 2024 deposition of UpCodes' 30(b)(6) designee, Garrett Reynolds.  Plaintiff's Exhibit 14 is a document produced by UpCodes during the course of discovery with the bates label ASTM_UPCODES00000847-850.

55.     Attached as **Exhibit 67** is a true and correct copy of Plaintiff's Exhibit 21 from the July 11, 2024 deposition of UpCodes' 30(b)(6) designee, Garrett Reynolds.  Plaintiff's Exhibit 21 is a document produced by UpCodes during the course of discovery with the bates label ASTM_UPCODES00079109-133.

56.     Attached as **Exhibit 68** is a true and correct copy of Plaintiff's Exhibit 24 from the July 11, 2024 deposition of UpCodes' 30(b)(6) designee, Garrett Reynolds.  Plaintiff's Exhibit 24 is a document produced by UpCodes during the course of discovery with the bates label ASTM_UPCODES00079134.

57.     Attached hereto as **Exhibit 69** is a true and correct copy of Exhibit 9 to the Rule 30(b)(6) deposition of ASTM.  This document shows a subscription for a collection of ASTM standards that ASTM offers called "ASTM Standards in Building Codes Online.

JA341

58.     Attached as **Exhibit 70** is a true and correct copy of a screenshot taken on April 11, 2024 of the "Alabama Carbon Structural Steel Code, 2014" posted on the up.codes website. This webpage is also available at: https://up.codes/viewer/alabama/astm-a36-a36m-2014/chapter/Title_/standard-specification-for-carbon-structural-steel-1#Title_.  This screenshot was also used as Exhibit 18 in the July 11, 2024 deposition of UpCodes' 30(b)(6) designee, Garrett Reynolds.  However, for clarity and readability, the original screenshot rather than the deposition exhibit has been attached.

59.     Attached as **Exhibit 71** is a true and correct copy of Plaintiff's Exhibit 19 from the July 11, 2024 deposition of UpCodes' 30(b)(6) designee, Garrett Reynolds.

60.     Attached as **Exhibit 72** is a true and correct copy of a chart purporting to identify all of the "[j]urisdictions adopting the ASTM A875/A875M, 2013" standard, also available at https://up.codes/code/astm-a875-a875m-standard-specification-for-steel-sheet-zinc-5-percent-aluminum-alloy-coated-by-the-hot-dip-process-2013.  ASTM A875/A875M-13 includes Appendixes.  Although UpCodes claims that all jurisdictions identified on Exhibit 72 have adopted ASTM A875/A875M-13 with "No Amendments," at least as of the date of this declaration, UpCodes Website does not make the Appendixes available in any of the listed jurisdictions.  *See, e.g.*, **Exhibit 73** true and correct copy of California Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code 2013.

61.     Attached as **Exhibit 74** is a true and correct copy of a chart purporting to identify all of the "[j]urisdictions adopting the ASTM A924/A924M, 2017A" standard, also available at https://up.codes/code/astm-a924-a924m-standard-

13

specification-for-general-requirements-for-steel-sheet-metallic-coated-by-the-hot-dip-process-2017a.  ASTM A924/A924M, 2017A includes Appendixes.  Although UpCodes claims that all jurisdictions identified on Exhibit 72 have adopted ASTM A875/A875M-13 with "No Amendments," at least as of the date of this declaration, UpCodes Website does not make the Appendixes available in any of the listed jurisdictions.  *See, e.g.*, **Exhibit 75** true and correct copy of California Steel Sheet, Metallic-Coated by the Hot-Dip Process Code 2017A.

62.    Attached as **Exhibit 76** is a true and correct copy of Exhibit 3 to the Rule 30(b)(6) deposition of ASTM.  This document was produced by ASTM during the course of discovery as bates label ASTM0000611-722 and is a copy of the April 2023 "Form and Style for ASTM Standards," also available at: https://www.astm.org/form-style-for-astm-stds.html.

63.    Attached as **Exhibit 77** is a true and correct screenshot taken on July 15, 2024 of product description for the 2018 International Building Code on the iccsafe.org website.  This webpage is also available at: https://shop.iccsafe.org/international-codes/2018-international-building-coder.html.

64.    Attached as **Exhibit 78** is a true and correct copy of the Brief of the United States as Amicus Curiae, *Practice Mgmt. Info. Corp. v. Am. Med. Ass'n,* 522 U.S. 933 (1997).

65.    Attached as **Exhibit 79** is a true and correct copy of the Brief of the United States as Amicus Curiae, *Southern Building Code Congress International, Inc. v. Veeck*, 539 U.S. 969 (2003).

14

66.     Attached as **Exhibit 80** is a true and correct copy of the Brief of the United States as Amicus Curiae, *Google LLC v. Oracle America, Inc.*, 135 S. Ct. 2887 (2015).

* * *

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct pursuant to 28 U.S.C. § 1746.

Dated: July 15, 2024

_____
Jane W. Wise

15

# EXHIBIT 24

JA345

# 2018 International Building Code (IBC)

Version: Nov 2021 ▾

**CONTENTS**    **NOTES**    **INSIGHTS**

⌄ Chapter 18 Soils and Foundations

> Section 1801 General

> Section 1802 Design Basis

> Section 1803 Geotechnical Investigations

> Section 1804 Excavation, Grading and Fill

> Section 1805 Dampproofing and Waterproofing

Codes / I-Codes / 2018 International Building Code (IBC) ⌄

## Chapter 18 Soils and Foundations

318, compliance with Equation (25.7.3.3) of ACI 318 shall not be required.

### 1810.3.2.2 Prestressing steel.

Prestressing steel shall conform to ASTM A416.

### 1810.3.2.3 Steel.

Structural steel H-piles and structural steel sheet piling shall conform to the material requirements in ASTM A6. Steel pipe piles shall conform to the material requirements in ASTM A252. Fully welded steel piles shall be fabricated from plates that conform to the material requirements in ASTM A36, ASTM A283, ASTM A572, ASTM A588 or ASTM A690.

# EXHIBIT 25