Case No. 24-2965

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

AMERICAN SOCIETY FOR TESTING AND MATERIALS, D/B/A ASTM INTERNATIONAL

*Plaintiff-Appellant*

v.

UPCODES, INC., GARRETT REYNOLDS, AND SCOTT REYNOLDS

*Defendants-Appellees*

---

Appeal from the United States District Court
for the Eastern District of Pennsylvania
Honorable Anita B. Brody, No. 2:24-cv-01895

---

## JOINT APPENDIX
### (VOLUME 1 OF 10, PAGES JA1 TO JA54)

---

Stanley J. Panikowski
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101
Tel: (619) 699-2700
stanley.panikowski@us.dlapiper.com

Gabrielle C. Velkes
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 335-4500
gabrielle.velkes@us.dlapiper.com

J. Kevin Fee
Jane W. Wise
DLA PIPER LLP (US)
500 8th Street NW
Washington, DC 20004
Tel: (202) 799-4000
kevin.fee@us.dlapiper.com
jane.wise@us.dlapiper.com

*Counsel for Appellant*

*(For Continuation of Appearances See Inside Cover)*

JANUARY 21, 2025

Joseph C. Gratz
MORRISON & FOERSTER
425 Market Street
San Francisco, California 94105
(415) 268-7000
jgratz@mofo.com

Aditya V. Kamdar
MORRISON & FOERSTER
2100 L Street NW, Suite 900
Washington, DC 20037
(202) 887-1500
akamdar@mofo.com

Bonnie M. Hoffman
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, Pennsylvania 19103
(215) 568-6200
bhoffman@hangley.com

Jason A. Levine
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
1415 Route 70 East, Suite 405
Cherry Hill, New Jersey 08034
(856) 616-2100
jlevine@hangley.com

*Counsel for Appellees*

Publicly Available Documents

| | Description | Page Number |
|---|---|---|
| | VOLUME I | |
| 1. | Docket Entry 104 October 2, 2024 Memorandum Denying Preliminary Injunction | JA1 |
| 2. | Docket Entry 105 Order that Plaintiff's Revised Motion for Preliminary Injunction (ECF No. 59) is denied. | JA51 |
| 3. | (b)  Docket Entry 108 Notice of Appeal | JA52 |
| | VOLUME II | |
| 4. | Docket Sheet from E.D. Pa. Civil Action No.: 2:24-cv-01895-AB | JA55 |
| 5. | Docket Entry 1 Complaint Filed May 3, 2024 | JA75 |
| 6. | Docket Entry 1-1 Exhibit A ASTM's Copyrighted Works | JA107 |
| 7. | Docket Entry 1-2 Exhibit B United States Patent and Trademark Office Reg. No. 2,679,320 Trademark Service Mark Principal Register "ASTM" January 28, 2003 | JA109 |
| 8. | Docket Entry 1-3 Exhibit C List of Altered Works | JA113 |
| 9. | Docket Entry 6 Plaintiff's Motion for Preliminary Injunction Filed May 3, 2024 | JA127 |
| 10. | Docket Entry 6-1 Proposed Preliminary Injunction Order | JA130 |
| 11. | Docket Entry 7 Plaintiff's Memorandum of Law in Support Its Motion for Preliminary Injunction Filed May 3, 2024 | JA133 |
| 12. | Docket Entry 47 Defendants Upcodes, Inc., Garrett Reynolds, and Scott Reynolds' Legal Arguments in Response to Motion for Preliminary Injunction | JA174 |
| 13. | Docket Entry 49 Transcript of Conference held June 5, 2024 | JA190 |
| 14. | Docket Entry 53 Defendants' Answer to Complaint Filed June 18, 2024 | JA235 |
| 15. | Docket Entry 59 Plaintiff's Revised Motion for Preliminary Injunction Filed July 15, 2024 | JA261 |

Publicly Available Documents

16.      Docket Entry 59-1 Text of Proposed Order for Preliminary Injunction     JA265

17.      Docket Entry 60-1 Appendix A: ASTM's Copyrighted Works     JA268

18.      Docket Entry 60-2 Declaration of Thomas B. O'Brien, Jr.     JA269

19.      Docket Entry 60-3 O'Brien Declaration Exhibit 1 informational pamphlet titled "Why should I join ASTM     JA283

20.      Docket Entry 60-4 O'Brien Declaration Exhibit 2 registration certificate numbered TX 8-068-653 obtained from the Copyright Office for ASTM A36/A36M-14 Standard Specification for Carbon Structural Steel     JA285

21.      Docket Entry 60-5 O'Brien Declaration Exhibit 3 registration certification numbered TX 7-550-513 obtained from the Copyright Office the 2012 Annual Book of ASTM Standards – Steel—Piping, Tubing, Fittings     JA288

22.      Docket Entry 60-6 O'Brien Declaration Exhibit 4 registration certificate numbered TX 8-690-736 obtained from the Copyright Office for ASTM A722/A722M-18 Standard Specification for High-Strength Steel Bars for Prestressed Concrete     JA292

23.      Docket Entry 60-7 O'Brien Declaration Exhibit 5 registration certificate numbered TX 8-217-668 obtained from the Copyright Office for ASTM A653/A653M-17 Standard Specification for Steel Sheet, Zinc-Coated (Galvanized) or Zinc-Iron Alloy-Coated (Galvannealed) by the Hot-Dip Process     JA294

24.      Docket Entry 60-8 O'Brien Declaration Exhibit 6 registration certificate numbered TX 8-217-259 obtained from the Copyright Office for ASTM A706/A706M-16 Standard Specification for Deformed and Plain Low-Alloy Steel Bars for Concrete Reinforcement     JA297

25.      Docket Entry 60-9 O'Brien Declaration Exhibit 7 registration certificate numbered TX 7-886-878 obtained from the Copyright Office for ASTM A875/A875M - 13 Standard Specification for Steel Sheet, Zinc-5 % Aluminum Alloy-Coated by the Hot-Dip Process     JA300

26.      Docket Entry 60-10 O'Brien Declaration Exhibit 8 the registration certificate numbered TX 8-422-153 obtained from the Copyright Office for ASTM A924/A924M-17a Standard     JA303

Publicly Available Documents
Specification for General Requirements for Steel Sheet, Metallic-
Coated by the Hot-Dip Process

27.     Docket Entry 60-11 O'Brien Declaration Exhibit 9 registration          JA306
        certificate numbered TX 8-062-199 obtained from the Copyright
        Office for ASTM B209-14 Standard Specification for Aluminum
        and Aluminum-Alloy Sheet and Plate

28.     Docket Entry 60-12 O'Brien Declaration Exhibit 10 registration         JA309
        certificate numbered TX 8-142-387 obtained from the Copyright
        Office for ASTM A615/A615M-15a Standard Specification for
        Deformed and Plain Carbon-Stell Bars for Concrete
        Reinforcement

29.     Docket Entry 60-13 O'Brien Declaration Exhibit 11 registration         JA312
        certificate numbered TX 7-935-900 obtained from the Copyright
        Office for A690/A690M-13a Standard Specification for High-
        Strength Low-Alloy Nickel, Copper, Phosphorus Steel H-Piles
        and Sheet Piling with Atmospheric Corrosion Resistance for Use
        in Marine Environments

30.     Docket Entry 60-14 O'Brien Declaration Exhibit 12                      JA315
        informational pamphlet titled "Let ASTM Compass® Be Your
        Guide"

31.     Docket Entry 60-15 O'Brien Declaration Exhibit 13 Certificate         JA317
        of Registration and the Section 15 declaration

32.     Docket Entry 60-16 Declaration of Jane W. Wise dated July 15,         JA330
        2024

33.     Docket Entry 60-27 - Wise Declaration Exhibit 24 a screenshot         JA346
        from the iccsafe.org website of Chapter 18, Section 18.3.2.3 of
        2018 International Building Code.

**VOLUME III**

34.     Docket Entry 60-28 - Wise Declaration Exhibit 25 an article          JA348
        titled "Building-code compliance startup UpCodes gets $3.36M
        in pre-Series A funding" authored by Catherine Shue and
        published by TechCrunch.com on March 15, 2021

35.     Docket Entry 60-29 - Wise Declaration Exhibit 26 a screenshot        JA367
        taken on May 1, 2024 of the "About" webpage on the up.codes
        website.

Publicly Available Documents

36.     Docket Entry 60-30 - Wise Declaration Exhibit 27 a screenshot          JA371
        taken on May 1, 2024 of the X, formerly known as Twitter,
        profile for UpCodes.

37.     Docket Entry 60-31 - Wise Declaration Exhibit 28 f a screenshot        JA377
        taken on May 1, 2024 of the homepage of up.codes website.

38.     Docket Entry 60-32 - Wise Declaration Exhibit 29 a screenshot          JA382
        taken on October 26, 2023 of the "Adoptions by Publisher"
        webpage on the up.codes website with "ASTM" selected in the
        "Publisher" filter.

39.     Docket Entry 60-33 - Wise Declaration Exhibit 30 a screenshot          JA386
        taken on April 19, 2024 of the "Adoptions by Publisher"
        webpage on the up.codes website with "ASTM" selected in the
        "Publisher" filter.

40.     Docket Entry 60-34 - Wise Declaration Exhibit 31 a screenshot          JA388
        taken on May 3, 2024 of the "Carbon Structural Steel Code, 2014
        (ASTM A36/A36M, 2014)" webpage on the up.codes website.

41.     Docket Entry 60-35 - Wise Declaration Exhibit 32 a screenshot          JA393
        taken on May 3, 2024 of the "Welded and Seamless Steel Pipe
        Piles Code, 2010 (R2018) (ASTM A252, 2010 (R2018)"
        webpage on the up.codes website.

42.     Docket Entry 60-36 - Wise Declaration Exhibit 33 a screenshot          JA396
        taken on May 3, 2024 of the "Deformed and Plain Carbon-steel
        Bars for Concrete Reinforcement Code, 2015ae1 (ASTM
        A615/A615M, 2015ae1)" webpage on the up.codes website

43.     Docket Entry 60-37 - Wise Declaration Exhibit 34 a screenshot          JA398
        taken on May 3, 2024 of the "Steel Sheet, Zinc-Coated
        Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-
        Dip Process Code, 2017 (ASTM A653/A653M, 2017)" webpage
        on the up.codes website.

44.     Docket Entry 60-38 - Wise Declaration Exhibit 35 a screenshot          JA402
        taken on May 3, 2024 of the "High-strength Low-alloy Piling
        with Atmospheric Corrosion Resistance for Use in Marine
        Environments Code, 2013 (2018) (ASTM A690/A690M, 2013A
        2018)" webpage on the up.codes website.

45.     Docket Entry 60-39 - Wise Declaration Exhibit 36 a screenshot          JA406
        taken on May 3, 2024 of the "Low-Alloy Steel Deformed and

Publicly Available Documents

Plain Bars for Concrete Reinforcement Code, 2016 (ASTM A706/A706M, 2016)" webpage on the up.codes website.

46.     Docket Entry 60-40 - Wise Declaration Exhibit 37 a screenshot taken on May 3, 2024 of the "High-strength Steel Bars for Prestressed Concrete Code, 2018 (ASTM A722/A722M, 2018)" webpage on the up.codes website.     JA410

47.     Docket Entry 60-41 - Wise Declaration Exhibit 38 a screenshot taken on May 3, 2024 of the "Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code, 2013 (ASTM A875/A875M, 2013)" webpage on the up.codes website.     JA413

48.     Docket Entry 60-42 - Wise Declaration Exhibit 39 a screenshot taken on May 3, 2024 of the "Steel Sheet, Metallic-Coated by the Hot-dip Process Code, 2017A (ASTM A924/A924M, 2017A)" webpage on the up.codes website.     JA417

49.     Docket Entry 60-43 - Wise Declaration Exhibit 40 a screenshot taken on May 3, 2024 of the "Aluminum and Aluminum-Alloy Steel and Plate Code, 2014 (ASTM B209, 2014)" webpage on the up.codes website.     JA421

50.     Docket Entry 60-44 - Wise Declaration Exhibit 41 an export of "Pennsylvania Carbon Structural Steel Code, 2014" from the up.codes website performed on April 18, 2024.     JA426

51.     Docket Entry 60-45 - Wise Declaration Exhibit 42 an export performed of "California Welded and Seamless Steel Pipe Piles Code, 2010 (R2018)" from the up.codes website on April 18, 2024.     JA449

52.     Docket Entry 60-46 - Wise Declaration Exhibit 43 an export of "Colorado Deformed and Plain Carbon-steel Bars for Concrete Reinforcement Code 2015ae1" from the up.codes website performed on April 18, 2024 and May 3, 2024.     JA505

53.     Docket Entry 60-47 - Wise Declaration Exhibit 44 an export of "California Steel Sheet, Zinc-Coated Galvanized or Zinc-Iron Alloy-Coated Galvannealed by the Hot-Dip Process Code, 2017" from the up.codes website performed on April, 18, 2024 and May 3, 2024.     JA554

54.     Docket Entry 60-48 - Wise Declaration Exhibit 45 an export of "California High-strength Low-alloy Piling with Atmospheric Corrosion Resistance for Use in Marine Environments Code,     JA600

Publicly Available Documents
2013 (2018)" from the up.codes website performed on May 3, 2024.

55.     Docket Entry 60-49 - Wise Declaration Exhibit 46 an export of     JA617
        "California Low-Alloy Steel Deformed and Plain Bars for
        Concrete Reinforcement Code 2016" from the up.codes website
        performed on April 18, 2024.

**VOLUME IV**

56.     Docket Entry 60-50 - Wise Declaration Exhibit 47 an export of     JA665
        "California High-strength Steel Bars for Prestressed Concrete
        Code 2018" from the up.codes website performed on April 18,
        2024.

57.     Docket Entry 60-51 - Wise Declaration Exhibit 48 an export of     JA706
        "California Steel Sheet, Zinc-5 Percent, Aluminum Alloy-Coated
        by the Hot-Dip Process Code 2013" from the up.codes website
        performed on April 19, 2024.

58.     Docket Entry 60-52 - Wise Declaration Exhibit 49 an export of     JA738
        "California Steel Sheet, Metallic-Coated by the Hot-dip Process
        Code 2017A" from the up.codes website performed on April 23,
        2024.

59.     Docket Entry 60-53 - Wise Declaration Exhibit 50 an export of     JA791
        "Pennsylvania Aluminum and Aluminum Alloy Steel and Plate
        Code 2014" from the up.codes website performed on April 23,
        2024.

60.     Docket Entry 60-54 - Wise Declaration Exhibit 51 a screenshot     JA883
        taken on April 23, 2024 of the "Adoptions by Publisher"
        webpage on the up.codes website with "ASTM" selected in the
        "Publisher" filter.

61.     Docket Entry 60-55 - Wise Declaration Exhibit 52 a screenshot     JA885
        taken on May 1, 2024 of the "Adoptions by Publisher" webpage
        on the up.codes website with "ASTM" selected in the
        "Publisher" filter.

62.     Docket Entry 60-56 - Wise Declaration Exhibit 53 excerpts from     JA887
        UpCodes co-founder Garrett Reynolds' deposition, dated May
        17, 2018, Dkt. No. 100-12 in *International Code Council, Inc. v.
        UpCodes, Inc.,* No. 1:17-cv-6261 (S.D.N.Y.).

TABLE OF CONTENTS FOR JOINT APPENDIX
American Society for Testing & Materials v. UPCODES Inc, et al Case Number: 24-2965

Publicly Available Documents

63. Docket Entry 60-57 - Wise Declaration Exhibit 54 an article JA894
titled "How Companies Can get the Most Out of a Freemium
Business Model" authored by Xian Gu, P.K. Kannan, & Liye Ma,
and published by the Harvard Business Review on March 20,
2019.

64. Docket Entry 60-58 - Wise Declaration Exhibit 55 a screenshot JA900
taken on May 1, 2024 of the "Navigating the codes" webpage on
the up.codes website.

65. Docket Entry 60-59 - Wise Declaration Exhibit 56 a screenshot JA908
taken on May 1, 2024 of Chapter 1 of the "Pennsylvania Carbon
Structural Steel Code, 2014" posted on the up.codes website.

66. Docket Entry 60-60 - Wise Declaration Exhibit 57 a screenshot JA910
taken on May 1, 2024 of the "Pricing" webpage on the up.codes
website.

67. Docket Entry 60-61 - Wise Declaration Exhibit 58 f a screenshot JA916
taken on May 1, 2024 of Chapter 4 of the "Pennsylvania Carbon
Structural Steel Code, 2014" posted on the up.codes website.

68. Docket Entry 60-62 - Exhibit 59 a screenshot taken on May 1, JA918
2024 of the "Create Account" webpage on the up.codes website.

69. Docket Entry 60-63 - Exhibit 60 excerpts of from UpCodes co- JA921
founder Garrett Reynolds' Declaration in Support of Plaintiff's
Motion for Summary Judgment and Permanent Injunctive Relief,
dated June 18, 2019, Dkt. No. 92-33 in *International Code
Council, Inc. v. UpCodes, Inc.,* No. 1:17-cv-6261 (S.D.N.Y.).

70. Docket Entry 60-64 - Exhibit 61 the April 11, 2023 Order JA925
Granting in Part and Denying in Part Defendants' Motions for
Attorney's Fees, Dkt. No. 201 in *Lynwood Investments CY, Ltd.
v. Maxim Konovalov, et. al.,* Case No. 3:20-cv-3778.

71. Docket Entry 60-65 - Exhibit 62 a screenshot taken on July 15, JA953
2024 of the "Overview" section of the 2018 International
Building Code webpage on the iccsafe.org website.

72. Docket Entry 60-66 - Exhibit 63 excerpts of the rough transcript JA957
of the July 12, 2024 30(b)(6) Deposition of ASTM's corporate
designee, Thomas O'Brien, Jr.

Publicly Available Documents

**VOLUME V**

73.     Docket Entry 60-67 - Exhibit 64 Plaintiff's Exhibit 20 from the     JA971
        July 11, 2024 deposition of UpCodes' 30(b)(6) designee, Garrett
        Reynolds.

74.     Docket Entry 60-70 - Exhibit 67 Plaintiff's Exhibit 21 from the     JA1036
        July 11, 2024 deposition of UpCodes' 30(b)(6) designee, Garrett
        Reynolds. Plaintiff's Exhibit 21 is a document produced by
        UpCodes during the course of discovery with the bates label
        ASTM_UPCODES00079109-133.

75.     Docket Entry 60-72 - Exhibit 69 Exhibit 9 to the Rule 30(b)(6)      JA1062
        deposition of ASTM. This document shows a subscription for a
        collection of ASTM standards that ASTM offers called "ASTM
        Standards in Building Codes Online.

76.     Docket Entry 60-73 - Exhibit 70 a screenshot taken on April 11,     JA1065
        2024 of the "Alabama Carbon Structural Steel Code, 2014"
        posted on the up.codes website.

77.     Docket Entry 60-74 - Exhibit 71 Plaintiff's Exhibit 19 from the     JA1067
        July 11, 2024 deposition of UpCodes' 30(b)(6) designee, Garrett
        Reynolds.

78.     Docket Entry 60-75 - Exhibit 72 a chart purporting to identify all  JA1069
        of the "[j]urisdictions adopting the ASTM A875/A875M, 2013"
        standard

79.     Docket Entry 60-76 - Exhibit 73 California Steel Sheet, Zinc-5      JA1071
        Percent, Aluminum Alloy-Coated by the Hot-Dip Process Code
        2013.

80.     Docket Entry 60-77 - Exhibit 74 a chart purporting to identify all  JA1073
        of the "[j]urisdictions adopting the ASTM A924/A924M,
        2017A" standard

81.     Docket Entry 60-78 - Exhibit 75 California Steel Sheet, Metallic-   JA1075
        Coated by the Hot-Dip Process Code 2017A.

82.     Docket Entry 60-79 - Exhibit 76 Exhibit 3 to the Rule 30(b)(6)      JA1077
        deposition of ASTM. This document was produced by ASTM
        during the course of discovery as bates label ASTM0000611-722
        and is a copy of the April 2023 "Form and Style for ASTM
        Standards

Publicly Available Documents

83.     Docket Entry 60-80 - Exhibit 77 screenshot taken on July 15,     JA1190
        2024 of product description for the 2018 International Building
        Code on the iccsafe.org website.

84.     Docket Entry 60-81 - Exhibit 78 the Brief of the United States as     JA1194
        Amicus Curiae, *Practice Mgmt. Info. Corp. v. Am. Med. Ass'n,*
        522 U.S. 933 (1997).

85.     Docket Entry 60-82 - Exhibit 79 the Brief of the United States as     JA1220
        Amicus Curiae, *Southern Building Code Congress International,*
        *Inc. v. Veeck,* 539 U.S. 969 (2003).

86.     Docket Entry 60-83 - Exhibit 80 the Brief of the United States as     JA1247
        Amicus Curiae, *Google LLC v. Oracle America, Inc.,* 135 S. Ct.
        2887 (2015).

**VOLUME VI**

87.     Docket Entry 64 Defendants' Amended Answer to Complaint     JA1277
        Filed July 23, 2024

88.     Docket Entry 66-3 Gratz Declaration Exhibit 2 screenshots taken     JA1298
        on July 25, 2024 of portions of Chapter 35 ("Referenced
        Standards") of the 2018 International Building Code, showing the
        "User note" and the ASTM Works in Suit

89.     Docket Entry 66-4 Gratz Declaration Exhibit 3 excerpts of Title 4     JA1303
        ("The Philadelphia Building Construction and Occupancy
        Code"), Subcodes "A" and "B," of the Philadelphia Code

90.     Docket Entry 66-5 Gratz Declaration Exhibit 4 Exhibit 3 to the     JA1342
        deposition of Thomas A. O'Brien, taken in the instant action on
        July 12, 2024. It is a document produced by ASTM in the instant
        action, bearing Bates numbers ASTM0000611 – ASTM0000722
        and titled, "Form and Style for ASTM Standards April 2023."

91.     Docket Entry 66-6 Gratz Declaration Exhibit 5 Exhibit 10 to the     JA1455
        deposition of Thomas A. O'Brien, taken in the instant action on
        July 12, 2024. It is a printout from the ASTM website of an
        article dated June 1, 2005, titled "ASTM standards in Building
        Codes, 42nd Edition, is available from ASTM International,

92.     Docket Entry 66-7 Gratz Declaration Exhibit 6 ASTM     JA1458
        International's Standards Catalog 2024

TABLE OF CONTENTS FOR JOINT APPENDIX
American Society for Testing & Materials v. UPCODES Inc, et al Case Number: 24-2965

Publicly Available Documents

93.	Docket Entry 66-8 Gratz Declaration Exhibit 7 screenshots of pricing webpages of the Works in Suit from the ASTM website produced by ASTM in the instant action, bearing Bates numbers ASTM0002288 – ASTM0002317 and ASTM0002322 – ASTM0002323   JA1519

**VOLUME VII**

94.	Docket Entry 66-9 Gratz Declaration Exhibit 8 screenshots of pricing webpages of the Works in Suit from the Accuris website produced by ASTM in the instant action, bearing Bates numbers ASTM0002318 – ASTM0002321 and ASTM0002324 – ASTM0002373.   JA1552

95.	Docket Entry 66-10 Gratz Declaration Exhibit 9 a screenshot of the ASTM membership pricing webpage produced by ASTM in the instant action, bearing Bates numbers ASTM0002322 – ASTM0002323.   JA1607

96.	Docket Entry 66-11 Gratz Declaration Exhibit 10 Exhibit 14 to the deposition of Thomas A. O'Brien, taken in the instant action on July 12, 2024. It is ASTM's 2023 Annual Report.   JA1610

97.	Docket Entry 66-13 Gratz Declaration Exhibit 12 the Reading Room page from ASTM's website that provides free access to ASTM standards referenced in the Code of Federal Regulations,   JA1632

98.	Docket Entry 66-14 Declaration of Garrett Reynolds in Support of Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction   JA1665

99.	Docket Entry 66-15 Reynolds Declaration Exhibit A a July 25, 2024 screenshot of the page listing model codes and standards available on UpCodes on the Adoptions by Publisher page.   JA1677

100.	Docket Entry 66-16 - Reynolds Declaration Exhibit B a July 25, 2024 screenshot of a filter for "ASTM" on the Adoptions by Publisher page   JA1683

101.	Docket Entry 66-17 - Reynolds Declaration Exhibit C a July 25, 2024 screenshot of a list of jurisdictions that have adopted the "ASTM A36/A36M, 2014," standard into law, with or without amendments   JA1685

x

TABLE OF CONTENTS FOR JOINT APPENDIX
American Society for Testing & Materials v. UPCODES Inc, et al Case Number: 24-2965

Publicly Available Documents

102.    Docket Entry 73-1 Declaration of Thomas B. O'Brien, Jr. dated     JA1688
        August 12, 2024

103.    Docket Entry 73-4 O'Brien Reply Declaration Exhibit 83           JA1692
        document that was produced by ASTM bearing the Bates
        Numbers ASTM0002094-145. This document shows the
        standards included in ASTM's offering "ASTM Standards in
        Building Codes Online

104.    Docket Entry 73-6 Declaration of Jane W. Wise dated August 12,   JA1744
        2024

105.    Docket Entry 73-18 Wise Reply Declaration Exhibit 96 a           JA1749
        spreadsheet produced natively by UpCodes during the course of
        discovery associated with the bates label ASTM0002091-092
        depicting a screenshot of a webpage on the ASTM website titled
        "ASTM Standards in Building Codes Online"

**VOLUME VIII**

106.    Docket Entry 73-19 Wise Reply Declaration Exhibit 97 the         JA1752
        Response Brief filed by Public.Resource.Org in *Georgia v. v.*
        *Public.Resource.Org,* 590 U.S. 255 (2020).

107.    Docket Entry 73-20 Wise Reply Declaration Exhibit 98 Appellee    JA1828
        Canadian Standards Association Petitioner for Rehearing En
        Banc, *Canadian Standards Ass'n v. P.S. Knight Co.,* Case No.
        23-50081 (5th Cir. July 30, 2024).

108.    Docket Entry 73-21 Wise Reply Declaration Exhibit 99 an          JA1874
        excerpt from Dkt. 198-48 in *American Society for Testing And*
        *Materials v. Public.Resource.Org, Inc.,* Case No. 1:13-cv-01215
        (D.D.C. Oct. 7, 2019).

109.    Docket Entry 73-23 Wise Reply Declaration Exhibit 101 the        JA1876
        Brief of Amici Curiae American Society for Testing and
        Materials et. al. in support of neither party in *Georgia v.*
        *Public.Resource.Org, Inc.,* No. 18-1150, Dkt. 25 (Aug. 30,
        2019).

110.    Docket Entry 73-24 Wise Reply Declaration Exhibit 102 the        JA1922
        Brief of Amici Curiae International Code Council, Inc. and the

Publicly Available Documents
American Gas Association in support of petitioners in *Georgia v. Public.Resource.Org, Inc.,* No. 18-1150, Dkt. 28 (Aug. 30. 2019).

111.  Docket Entry 85 Defendants' Notice of Supplemental Authority in Support of Their Opposition to Plaintiff's Motion for Preliminary Injunction Filed August 22, 2024    JA1956

112.  Docket Entry 85-1 Denial of Petition for Rehearing En Banc in Canadian Standards Ass'n v. P.S. Knight Co., Ltd., No. 23-50081 (5th Cir. Aug. 14, 2024)    JA1961

113.  Docket Entry 86 Plaintiff American Society for Testing and Materials' Notice of Supplemental Authority in Support of Plaintiff's Motion for Preliminary Injunction Filed August 24, 2024    JA1962

114.  Docket Entry 86-1 Exhibit A Notice of Filing Order re Denying Defendants' Motion for Summary Judgment and Granting Plaintiff's Motion for Summary Adjudication    JA1967

115.  Docket Entry 94 Defendant's Preliminary Injunction Hearing Slides August 26, 2024    JA1974

116.  Docket Entry 96 Transcript of Motion Hearing Before the Honorable Anita S. Brody United States Senior District Court Judge dated 8/26/2024    JA1980

TABLE OF CONTENTS FOR JOINT APPENDIX
American Society for Testing & Materials v. UPCODES Inc, et al Case Number: 24-2965

Sealed Documents

**VOLUME IX**

1.  Docket Entry 60 Plaintiff's Revised Memorandum of Law in Support of Its Motion for Preliminary Injunction Filed July 15, 2024 (UNDER SEAL) — JA2068

2.  Docket Entry 60-17 – Wise Declaration Exhibit 14 ASTM's Copyrighted Work "ASTM A36/A36M-14 Standard Specification for Carbon Structural Steel (UNDER SEAL) — JA2115

3.  Docket Entry 60-18 - Wise Declaration Exhibit 15 ASTM's Copyrighted Work "ASTM A252-10 (Reapproved 2018) Standard Specification for Welded and Seamless Steel Pipe Piles (UNDER SEAL) — JA2119

4.  Docket Entry 60-19 - Wise Declaration Exhibit 16 ASTM's Copyrighted Work "ASTM A722/A722M-18 Standard Specification for High-Strength Steel Bars for Prestressed Concrete (UNDER SEAL) — JA2127

5.  Docket Entry 60-20 - Wise Declaration Exhibit 17 ASTM's Copyrighted Work "ASTM A653/A653M-17 Standard Specification for Steel Sheet, Zinc-Coated (Galvanized) or Zinc-Iron Alloy-Coated (Galvannealed) by the Hot-Dip Process (UNDER SEAL) — JA2133

6.  Docket Entry 60-21 - Wise Declaration Exhibit 18 ASTM's Copyrighted Work "ASTM A706/A706M-16 Standard Specification for Deformed and Plain Low-Alloy Steel Bars for Concrete Reinforcement (UNDER SEAL) — JA2147

7.  Docket Entry 60-22 - Wise Declaration Exhibit 19 ASTM's Copyrighted Work "ASTM A875/A875M – 13 Standard Specification for Steel Sheet, Zinc-5 % Aluminum Alloy-Coated by the Hot-Dip Process (UNDER SEAL) — JA2155

8.  Docket Entry 60-23 - Wise Declaration Exhibit 20 ASTM's Copyrighted Work "ASTM A924/A924M-17a Standard Specification for General Requirements for Steel Sheet, Metallic-Coated by the Hot-Dip Process" (UNDER SEAL) — JA2163

9.  Docket Entry 60-24 - Wise Declaration Exhibit 21 ASTM's Copyrighted Work "ASTM B209-14 Standard Specification for Aluminum and Aluminum-Alloy Sheet and Plate (UNDER SEAL) — JA2177

10. Docket Entry 60-25 - Wise Declaration Exhibit 22 ASTM's Copyrighted Work "ASTM A615/A615M-15a Standard Specification for Deformed and Plain Carbon-Steel Bars for Concrete Reinforcement (UNDER SEAL) — JA2204

11. Docket Entry 60-26 - Wise Declaration Exhibit 23 ASTM's Copyrighted Work "A690/A690M-13a Standard Specification for High-Strength Low-Alloy Nickel, Copper, Phosphorus Steel H-Piles and Sheet Piling with Atmospheric Corrosion Resistance for Use in Marine Environments (UNDER SEAL) — JA2213

Sealed Documents

12. Docket Entry 60-68 - Exhibit 65 the transcript of the July 11, 2024 deposition of UpCodes' 30(b)(6) designee, Garrett Reynolds (UNDER SEAL) — JA2217

13. Docket Entry 60-69 - Exhibit 66 Plaintiff's Exhibit 14 from the July 11, 2024 deposition of UpCodes' 30(b)(6) designee, Garrett Reynolds. Plaintiff's Exhibit 14 is a document produced by UpCodes during the course of discovery with the bates label ASTM_UPCODES00000847-850. (UNDER SEAL) — JA2265

14. Docket Entry 60-71 Exhibit 68 and Plaintiff's Deposition Exhibit 24 from the July 11, 2024 deposition of UpCodes' 30(b)(6) designee, Garrett Reynolds. Plaintiff's Exhibit 24 is a document titled Total Liabilities and Equity produced by UpCodes during the course of discovery with the bates label ASTM_UPCODES00079134. (UNDER SEAL) — JA2270

15. Docket Entry 66 Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Preliminary Injunction Filed July 29, 2024 (UNDER SEAL) — JA2272

16. Docket Entry 66-1 Declaration of Joseph C. Gratz in Support of Defendants' Opposition to Plaintiff's Motion For Preliminary Injunction (UNDER SEAL) — JA2315

17. Docket Entry 66-2 Gratz Declaration Exhibit 1 Deposition Transcript of Thomas A. O'Brien dated July 12, 2024HA — JA2322

18. Docket Entry 66-12 Gratz Declaration Exhibit 11 Exhibit 16 to the deposition of Thomas A. O'Brien, taken in the instant action on July 12, 2024. It is a printout of a spreadsheet produced by ASTM in the instant action, bearing Bates number ASTM0001256 (UNDER SEAL) — JA2355

**VOLUME X**

19. Docket Entry 73 Plaintiff's Reply in Support of Its Motion for Preliminary Injunction- August 12, 2024 (UNDER SEAL) — JA2356

20. Docket Entry 73-2 O'Brien Reply Declaration Exhibit 81 [EXCERPT] ASTM users who are associated to any account which has made a purchase providing access to any ASTM standard in the last 18 months. It does not include accounts or users who have purchased only physical formats of ASTM standard content. (UNDER SEAL) — JA2400

21. Docket Entry 73-3 O'Brien Reply Declaration Exhibit 82 Exhibit 17 to the Rule 30(b)(6) deposition of ASTM and which was produced by ASTM as a native spreadsheet associated with Bates Number ASTM0002093. This document shows the subscription revenue for a bundle of standards that ASTM offers called "ASTM Standards in Building Codes Online. (UNDER SEAL) — JA2411

22. Docket Entry 73-4 O'Brien Reply Declaration Exhibit 84 - Exhibit 18 to the Rule 30(b)(6) deposition of ASTM and which was produced by ASTM in this matter — JA2413

TABLE OF CONTENTS FOR JOINT APPENDIX
American Society for Testing & Materials v. UPCODES Inc, et al Case Number: 24-2965

Sealed Documents

bearing Bates Number ASTM0001256. This document shows the subscription revenue for ASTM's Compass Service. (UNDER SEAL)

23.  Docket Entry 73-7 Wise Reply Declaration Exhibit 85 an email with an attachment produced by UpCodes during the course of discovery with the bates label ASTM_UPCODES00079181-188. (UNDER SEAL)                                    JA2415

24.  Docket Entry 73-8 Wise Reply Declaration Exhibit 86 an email produced by UpCodes during the course of discovery with the bates label ASTM_UPCODES00079163-169 (UNDER SEAL)                                          JA2424

25.  Docket Entry 73-9 Wise Reply Declaration Exhibit 87 an email with an attachment produced by UpCodes during the course of discovery with the bates label ASTM_UPCODES00079170-173. **CORRECTED VERSION** (UNDER SEAL)        JA2432

26.  Docket Entry 73-10 Wise Reply Declaration Exhibit 88 an email produced by UpCodes during the course of discovery with the bates label ASTM_UPCODES00079177.  (UNDER SEAL)                                         JA2438

27.  Docket Entry 73-11 Wise Reply Declaration Exhibit 89 an email produced by UpCodes during the course of discovery with the bates label ASTM_UPCODES00079179. (UNDER SEAL)                                          JA2440

28.  Docket Entry 73-12 Wise Reply Declaration Exhibit 90 excerpts of the transcript of the July 12, 2024 30(b)(6) Deposition of ASTM's Rule 30(b)(6) designee, Thomas O'Brien, Jr. (UNDER SEAL)                                    JA2442

29.  Docket Entry 73-13 Wise Reply Declaration Exhibit 91 excerpts of the transcript of the July 11, 2024 deposition of UpCodes' Rule 30(b)(6) designee, Garrett Reynolds. (UNDER SEAL)                                             JA2456

30.  Docket Entry 73-14 Wise Reply Declaration Exhibit 92 a spreadsheet produced natively by UpCodes during the course of discovery associated with the bates label ASTM_UPCODES00079135 and produced in response to this Court's Order (Dkt. 52). (UNDER SEAL)                                              JA2473

31.  Docket Entry 73-15 Wise Reply Declaration Exhibit 93 Plaintiff's Exhibit 17 from the July 11, 2024 deposition of UpCodes' 30(b)(6) designee, Garrett Reynolds. (UNDER SEAL)                                             JA2477

32.  Docket Entry 73-16 Wise Reply Declaration Exhibit 94 a spreadsheet produced natively by UpCodes during the course of discovery associated with the bates label ASTM_UPCODES00079193. (UNDER SEAL)                             JA2479

33.  Docket Entry 73-17 Wise Reply Declaration Exhibit 95 a spreadsheet produced natively by UpCodes during the course of discovery associated with the bates label ASTM_UPCODES00079194. (UNDER SEAL)                             JA2481

TABLE OF CONTENTS FOR JOINT APPENDIX
American Society for Testing & Materials v. UPCODES Inc, et al Case Number: 24-2965

Sealed Documents

34. Docket Entry 73-22 Wise Reply Declaration Exhibit 100 a spreadsheet produced ASTM_UPCODES00079134. (UNDER SEAL)     JA2483

35. Docket Entry 88 Order Re Denying Defendants' Motion for Summary Judgment and Granting Plaintiff's Motion for Summary Adjudication (UNDER SEAL)     JA2485

36. Docket Entry 92 ASTM Preliminary Injunction Hearing Slides     JA2527

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMERICAN SOCIETY FOR TESTING :
AND MATERIALS, :
   Plaintiff, :
         :  CIVIL ACTION
   v.   :  No. 24-1895
         :
UPCODES, INC., et al., :
   Defendants. :

**October 2, 2024**            **Anita B. Brody, J.**

<u>**MEMORANDUM**</u>

Plaintiff American Society for Testing and Materials d/b/a ASTM International ("ASTM") sues UpCodes, Inc. and its founders Garrett Reynolds and Scott Reynolds (collectively, "UpCodes") for providing free online access to unauthorized copies of ten copyrighted ASTM standards (referred to as the "Copyrighted Standards")—all of which have been identically incorporated by reference into state and local legal codes.  ASTM alleges copyright and trademark infringement and moves for a preliminary injunction.  ECF No. 59.  After considering the parties' filings and the arguments presented at the August 26, 2024, preliminary injunction hearing, I find that ASTM is unlikely to succeed on the merits, and I will deny ASTM's motion.[1]

---

[1] I exercise jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and supplemental jurisdiction over

## I.   BACKGROUND[2]

### A. The Parties

ASTM is a non-profit organization founded in 1898 and a globally recognized leader in the development of technical standards for various industries, products, and materials.  Pl.'s Revised Mem., ECF No. 62, at 13.[3]  Technical standards, sometimes referred to as "voluntary consensus standards," are narrow, highly technical publications containing product specifications and best practices "that bolster safety and performance across industries."  *Id.*  ASTM develops these standards to fulfill its mission of "positively impacting public health and safety, consumer confidence, and overall quality of life."  ECF No. 1 ¶ 1.  As a standard-developing organization, ASTM provides a forum for its 30,000 members to produce high-quality standards through a rigorous, multi-level review process. [4]  Pl.'s Revised Mem., ECF No. 62, at 13-14.  All ASTM standards are reviewed on a five-year schedule and reapproved, revised, or withdrawn accordingly.  Compl., ECF No. 1 ¶ 15.

To fund this process, ASTM relies, in part, on revenue derived from selling

---

the remaining claims under 28 U.S.C. § 1367.

[2] The parties did not send a stipulated agreement of material facts and declined to submit any additional information when asked at oral argument.  *See* Tr. Oral Arg., ECF No. 96, at 84:14-17, 86:17-19.  Therefore, the facts are stated as those most favorable to the side that has the burden of proof.

[3] Page numbers for all citations correspond to the ECF docket pagination.

[4] ASTM's members "represent industry, governments, academia, trade groups, enterprises of all sizes, consumers, and others."  Pl.'s Revised Mem., ECF No. 62, at 13.

and licensing its thousands of copyrighted standards.[5]  Pl.'s Revised Mem., ECF No. 62, at 15.  Over seventy percent of ASTM's revenue comes from the sale of its standards.  Pl.'s Reply, ECF No. 76, at 12.  In addition to individual sales, ASTM sells a publication entitled *ASTM Standards in Building Codes* that contains over 13,000 ASTM standards including the ten Copyrighted Standards at issue.[6]  *See* Pl.'s Reply, ECF No. 76, at 12.

Although local, state, and federal jurisdictions reference ASTM standards in their laws, it is accepted that ASTM does not lobby the government—or other entities—to reference their standards.  Pl.'s Revised Mem., ECF No. 62, at 16-17.  However, ASTM's official form and style manual indicates that certain ASTM standards are "developed for reference in model building codes."  Defs.' Mem. P. & A., ECF No. 68, at 11 (alteration omitted).  Also, ASTM may derive new benefits when other entities reference ASTM standards.  For example, when ASTM standards are adopted into law, ASTM can market its own compliance-focused training materials.  *See* Amicus Br. Electronic Frontier Foundation et al. Supp. Defs.' Opp'n Mot. Prelim. Inj., ECF No. 71-1, at 22-23 (citing *Environmental Training*, ASTM Int'l, http://environment.qa-training.astm.org/#/).

---

[5] In connection with the sale and distribution of its copyrighted standards, ASTM uses a registered trademark.  *See* Pl.'s Revised Mem., ECF No. 62, at 15.

[6] Among other things, ASTM advertises that the standards contained in the 8,700-page publication help users "meet international code requirements . . . ."  Ex. 5, ECF No. 66-6, at 2-3.

3

UpCodes is a for-profit start-up company founded by brothers Garrett and Scott Reynolds in 2016. Defs.' Mem. P. & A., ECF No. 68, at 9. Frustrated by the lack of free electronic access to state and local laws governing architecture projects, the Reynolds brothers created UpCodes with the mission of facilitating public access to laws governing the built environment. *See* Reynolds Decl. ¶¶ 5-9 (available at ECF No. 66-14) ("UpCodes' goal is to offer . . . a free, online, accurate, up-to-date, extensive library of building codes and standards as enacted into law."). UpCodes' stated policy is "to publish only the law" on its website. Defs.' Mem. P. & A., ECF No. 68, at 9. Pursuant to this policy, UpCodes only publishes standards that, in their view, have been adopted into law by specific jurisdictions. *Id.* When searching on the UpCodes website, users can filter their searches by jurisdiction or by the original publisher of the adopted standard. *Id.* at 10.

In general, UpCodes employs a "freemium" business model, offering users basic products for free and premium products for a fee. Pl.'s Revised Mem., ECF No. 62, at 18. Under this model, any user with an UpCodes account can view and copy a supported jurisdiction's laws free of charge on the UpCodes website.[7] Defs.' Mem. P. & A., ECF No. 68, at 9. Users can also purchase a subscription to access UpCodes' premium features, including bookmarking, annotating, and automation

---

[7] To create a free account, users must agree to UpCodes' terms of service. *See* Answer, ECF No. 53 ¶ 51.

tools.  Reynolds Decl. ¶ 12 (available at ECF No. 66-14).  Thus, UpCodes does not derive direct monetary profit when users access private standards on the UpCodes website.  Defs.' Resp. Mem., ECF No. 47, at 11.  However, posting these standards may provide UpCodes with tangential benefits like drawing users to its website, increasing active account numbers, and enabling the collection of user information. *See* Pl.'s Revised Mem., ECF No. 62, at 18; Pl.'s Reply, ECF No. 76, at 10.

In April 2024, UpCodes posted copies of ASTM's Copyrighted Standards to the UpCodes website without ASTM's authorization.[8]  Pl.'s Revised Mem., ECF ECF No. 62, at 17.  After registering for an UpCodes account, free users can view and copy the Copyrighted Standards and premium users can use UpCodes' paid services to search, annotate, and bookmark the Copyrighted Standards.  Pl.'s Reply, ECF No. 76, at 10.  On its website, UpCodes does not display the ASTM logo, but it identifies ASTM as the original publisher of the Copyrighted Standards.  *See* Tr. Oral Arg., ECF No. 96, at 69:13-14; Pl.'s Revised Mem., ECF No. 62, at 17.  Since promulgating the standards, ASTM has published updated versions of nine of the ten Copyrighted Standards that UpCodes displays on its website.  Defs.' Mem. P. & A., ECF No. 68, at 33.

UpCodes obtained ASTM's Copyrighted Standards for the purpose of posting

---

[8] Each unauthorized copy that UpCodes posted includes what ASTM describes as "expressly non-mandatory" material, such as explanatory notes, supplementary materials, appendices, and Annexes.  *See* Pl.'s Revised Mem., ECF No. 62, at 19.

5

them on the UpCodes website, Answer, ECF No. 53 ¶ 40, and UpCodes defends its actions on the ground that "[a]ll of [the posted] material carries the force of law in one or more jurisdictions." *Id.* at 20 ¶ 17. One such jurisdiction is the City of Philadelphia, where the Philadelphia Building Code indirectly incorporates by reference the Copyrighted Standards.[9]

## B. Incorporation By Reference

The Philadelphia Building Code establishes "minimum requirements to provide a reasonable level of safety" in building construction projects. Phila. Code ch. 4-200 § B-101.3. If individuals violate the Philadelphia Building Code or "any regulation adopted under it," they can face fines of up to three hundred dollars a day per offense for each day the violation continues. Phila. Code ch. 1-100 § 1-109(1). When the City of Philadelphia enacted this code, it did not develop the content of the code itself.[10] Instead, Philadelphia engaged in a practice that has become increasingly common among federal, state, and local governments: incorporation by

---

[9] The City of Philadelphia adopted by ordinance provisions of the Pennsylvania Uniform Construction Code Act "for the regulation of construction through the technical codes." Phila. Code ch. 4-200 § A-101.3 (available at ECF No. 66-4, at 2). Pursuant to the Pennsylvania Uniform Construction Code Act, the City of Philadelphia adopted the 2018 International Building Code as the Philadelphia Building Code, subject to local amendments. *Id.* § B-1.1 (available at ECF No. 66-4, at 18). As explained below, the 2018 International Building Code incorporates by reference the Copyrighted Standards. *See infra* Section I.D; *see also* Pl.'s Revised Mem., ECF No. 62, at 16 (describing Pennsylvania's indirect reference to the Copyrighted Standards in the Pennsylvania Uniform Construction Code Act).

[10] Aside from local amendments, the bulk of the substantive content for the Philadelphia Building Code comes from the 2018 International Building Code. *See* Phila. Code ch. 4-200 § B-1.1.

reference.

When a government entity incorporates a standard by reference, it references—but does not reprint—a standard already published elsewhere.[11] As a result, the incorporated standard may be enforced against regulated entities without being included in the text of the law itself. When this happens, a regulated entity will not find the text of the standard that details their legal obligations in the official public code.[12] They must look elsewhere to access the content of the standard. Often, that access comes with a price. The private standard-developing organizations that create these referenced standards typically copyright their work and charge fees for users to access them.[13]

This practice has benefits and drawbacks. On one hand, governments save

---

[11] *See* Emily S. Bremer, *Technical Standards Meet Administrative Law: A Teaching Guide on Incorporation By Reference*, 71 ADMIN. L. REV. 315, 316-17 (2019) (describing incorporation by reference).

[12] The physical and online availability of referenced standards may differ depending on the kind of government entity that incorporates by reference the standard. When federal agencies incorporate by reference privately authored materials, federal law requires copies of incorporated standards to be, at a minimum, available for public inspection at the Office of the Federal Register's reading room in Washington D.C., and in the promulgating agency's public library. *See id.* at 317. ASTM also operates an online read-only reading room (with no print or download options) for ASTM standards that have been incorporated into federal law. *See Reading Room*, ASTM Int'l, https://www.astm.org/products-services/reading-room.html (last accessed Sept. 4, 2024). However, there does not appear to be any corresponding law requiring that state and local governments make copies of incorporated standards available for review, and ASTM's counsel clarified during oral argument that the Copyrighted Standards at issue in this case were not available online for free before UpCodes posted them. *See* Tr. Oral Arg., ECF No. 96, at 75; *see also* Ex. 1, Gratz Decl., ECF No. 68-2, at 20 (stating that the Copyrighted Standards at issue in this case are not included on ASTM's online reading room).

[13] *See* Emily S. Bremer, *On the Cost of Private Standards in Public Law*, 63 U. KANSAS L.R. 279 (2015).

7

substantial resources by incorporating privately authored standards instead of investing to develop standards themselves. [14]  The public may also gain from private sector expertise and creativity, especially given the "vast, predominately private standardization system" that already exists within the United States.[15]

On the other hand, incorporation by reference may create serious notice and accountability problems.[16]  Most obviously, placing legally binding standards behind paywalls undermines the "principle that [government] should provide regulated parties fair warning of the conduct [a regulation] prohibits or requires." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156 (2012) (internal quotation marks omitted).  Additionally, "as with governmental contracting and other outsourcing decisions," incorporation by reference reduces government transparency and may hinder mechanisms of democratic accountability that are important to deter government arbitrariness, to safeguard against industry "capture" or the undue influence of particular subgroups, and to prevent decision-making based on undisclosed data or inadequate or biased information.[17]

---

[14] *See* Bremer, *supra* note 11, at 325.

[15] *Id.*

[16] *See generally* Nina A. Mendelson, *Private Control over Access to Public Law*, 112 MICH. L. REV. 737 (2014).

[17] Mendelson, *supra* note 16, at 772-806 (explaining these accountability problems, and arguing that, "[i]n the context of incorporating privately drafted rules by reference, the central accountability issue is ensuring—even while the government saves resources and utilizes valuable private sector expertise—that the government makes proper use of incorporated material and that adopted standards do, in fact, protect the public interest . . . .").

## C. Indirect Incorporation By Reference

Governments also reference privately authored standards *indirectly*.  At issue in this case is a method of indirect incorporation-by-reference that involves an additional layer of incorporation by a third party.  *See* Pl.'s Revised Mem., ECF No. 62, at 16 (referring to this as a "third-party reference").  This occurs in two steps.  A government incorporates by reference a third party's publication that, in turn, incorporates by reference a *separate* privately authored standard.  In other words, the legislature references—but does not reprint—some third party's publication.  And that third party's publication references—but does not reprint—the governing technical standard.

In a nutshell, direct incorporation consists of only one jump: a jump from the text of the law to the privately authored standard.  By contrast, indirect incorporation consists of two jumps: one jump from the text of the law to a third party's publication, and another jump from the third party's publication to the privately authored standard.  In neither case is the content of the technical standard reprinted in the text of the law itself.  Thus, people are typically unable to view the content of these standards unless they pay a fee.

## D. Philadelphia's Indirect Reference to ASTM's Copyrighted Standards

All ten of ASTM's Copyrighted Standards are incorporated by reference into the Philadelphia Building Code through the same mechanism of indirect

9

incorporation.

ASTM developed, authored, and copyrighted ten technical standards relating to the steel and aluminum used in building construction.  *See* Compl., Ex. A, ECF No. 1-1 (listing the Copyrighted Standards).  A third-party publication, the 2018 International Building Code (referred to as "IBC") directly incorporates by reference all ten of ASTM's Copyrighted Standards.  *See* 2018 Int'l Bldg. Code, ch 35 (available at Ex. 2., ECF No. 66-3).  The IBC is a copyrighted work published by a third party—the International Code Council, Inc. (referred to as "ICC"), another standard-developing organization.[18]  Compl., ECF No. 1 ¶ 30.

The IBC explicitly instructs that any privately authored standards it references should be considered part of the IBC itself.  As the IBC's Chapter on Referenced Standards explains, "[t]he International Building Code® contains numerous references to standards promulgated by other organizations that are used to provide requirements for materials and methods of construction . . . .  *These standards, in essence, are part of this code* to the extent of the reference to the standard."  2018 Int'l Bldg. Code, ch 35 (available at Ex. 2, ECF No. 66-3, at 2) (emphasis added).  Thus, ASTM's Copyrighted Standards "provide requirements for materials and methods of construction" that are considered "part of" the IBC.  *Id.*

---

[18] Because the ICC only references the Copyrighted Standards by name and does not reproduce the language of the standards in its publication, the ICC does not pay any licensing fees to ASTM for referencing the standards.  *See* Tr. Oral Arg., ECF No. 96, at 11:2-5.

The Philadelphia Building Code, in turn, directly incorporates by reference the IBC. *See* Phila. Code ch. 4-200 § B-1.1 ("The '2018 International Building Code' as published by the International Code Council is hereby adopted as the Philadelphia Building Code . . . ."). Like the IBC, the Philadelphia Building Code explicitly instructs that the material it incorporates by reference should be considered part of the Philadelphia Building Code itself. As stated in the Philadelphia Building Code, the IBC "is incorporated *as if fully set forth herein*, subject to [] local amendments." *Id.* § B-1.2 (available at Ex. 3, ECF No. 66-4, at 18) (emphasis added). Thus, the IBC, which makes ASTM's Copyrighted Standards, "in essence, part of" the IBC,[19] is incorporated into the Philadelphia Building Code "as if fully set forth" in the enacted law itself.[20]

Through these two layers of incorporation, the Philadelphia Building Code indirectly references all ten of ASTM's Copyrighted Standards. And UpCodes published copies of the Copyrighted Standards because of this incorporation by reference.

## II.   PROCEDURAL BACKGROUND

ASTM filed this lawsuit alleging seven claims against UpCodes. Count I asserts direct copyright infringement. Count II asserts vicarious and/or contributory

---

[19] 2018 Int'l Bldg. Code, ch 35 (available at Ex. 2, ECF No. 66-3, at 2).
[20] Phila. Code ch. 4-200 § B-1.2 (available at Ex. 3, ECF No. 66-4, at 18).

copyright infringement.  Count III asserts alteration or removal of copyright management information.  Count IV asserts federal trademark infringement.  Count V asserts claims of unfair competition and false designation of origin.  Count VI asserts trademark infringement under Pennsylvania common law.  Count VII asserts dilution of trademarks under Pennsylvania statutory law.  ECF No. 1.

On May 3, 2024, ASTM moved for a preliminary injunction.  ECF No. 6.  In its revised motion, ASTM requests that UpCodes be preliminarily enjoined from:

a. Further unauthorized reproduction of all or any non-de minimis portion of ASTM's Copyrighted Works and any other standards or materials published by ASTM, preparation of derivative works based on ASTM's Copyrighted Works or on any standards or materials published by ASTM, and distribution or display of copies of the Infringing Materials or any standards or materials published by ASTM by any means or method;

b. Further alteration or removal of ASTM's copyright management information and all further distribution, importation, or public performance of the Altered Works;

c. Selling, offering for sale, distributing, or advertising any electronic or hard copies of standards under ASTM's Mark, or any marks substantially indistinguishable therefrom, which are likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that any standards that Defendants caused to enter the stream of commerce or any of UpCodes' commercial activities are sponsored or licensed or approved by ASTM, or are connected or affiliated in some with ASTM or ASTM's Mark;

d. Implying ASTM's approval, endorsement, or sponsorship of, or affiliation or connection with, Defendants' products, services, or commercial activities, passing off Defendants' copies of standards as that of ASTM, or engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with ASTM and from otherwise interfering with or injuring ASTM's Mark or the goodwill associated therewith; or

e. Representing or implying that Defendant UpCodes is in any way sponsored by, currently affiliated with, or licensed by ASTM.

ECF No. 59, at 1-2.  UpCodes agreed to not post additional ASTM standards while

12

JA12

ASTM's preliminary injunction motion is pending.  Pl.'s Revised Mem., ECF No. 62, at 18.  However, if permitted, UpCodes intends to continue posting ASTM standards that jurisdictions incorporate by reference into law.  *See id.*

## III.   LEGAL STANDARD

In deciding whether to grant a preliminary injunction, a district court should balance the following four factors so long as the moving party meets the requisite showing on the first two:  (1) the movant has shown a likelihood of success on the merits; (2) the movant will suffer irreparable harm in the absence of a preliminary injunction; (3) the possibility of harm to other interested persons from a grant or denial of the injunction; and (4) the public interest.  *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017).  Accordingly,

> a movant for preliminary equitable relief must meet the threshold for the first two "most critical" factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief. If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.

*Id.* at 179 (footnotes omitted).

"[B]urdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006).  Thus, once the moving party establishes "a prima facie case showing a

reasonable probability that it will prevail on the merits," *FMC Corp. v. Control Solutions, Inc.*, 369 F. Supp. 2d 539, 555 (E.D. Pa. 2005) (quoting *Oburn v. Shapp*, 521 F.2d 142, 148 (3d Cir. 1975)), the burden shifts to the non-moving party to show a likelihood that any affirmative defense will succeed. *See id.* at 553 (applying this burden-shifting standard to affirmative defenses in a copyright infringement action).

## IV.   DISCUSSION

Because ASTM is not likely to succeed on the merits of its copyright or trademark claims, the Court will deny the motion for preliminary injunction.

### A. Copyright Claims

ASTM alleges that UpCodes infringed on ASTM's federally registered copyrights in violation of 17 U.S.C. § 501.[21]   As discussed below, ASTM has demonstrated a prima facie case of copyright infringement.  Nonetheless, ASTM's copyright claims must fail because UpCodes successfully establishes the affirmative defense of fair use under 17 U.S.C. § 107.[22]

### 1.  ASTM's Prima Facie Case of Copyright Infringement

---

[21] In its Complaint, ASTM also alleges that UpCodes altered or removed copyright management information in violation of 17 U.S.C. § 1202. *See* Compl., ECF No. 1 ¶¶ 88-93 (describing Count III).  However, in ASTM's briefs and oral argument in support of its motion for preliminary injunction, ASTM does not argue why it is likely to succeed on the merits of this claim. *See* ECF Nos. 62, 76, 96.

[22] UpCodes asserts two additional rationales for why ASTM's copyright claims must fail—(i) the principle that "no one can own the law," and (ii) the merger doctrine—but these arguments are not dispositive.  Because ASTM's copyright claims are wholly defeated by UpCodes' fair use defense, I limit my ruling to that analysis and decline to rule on the merits of UpCodes' supplemental arguments.

ASTM successfully establishes a prima facie case of copyright infringement. The Copyright Act confers "a bundle of exclusive rights" to the authors of original works. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 546 (1985) (describing 17 U.S.C. § 106).  To establish a claim of infringement under the Copyright Act, a plaintiff must show (1) the ownership of a valid copyright and (2) defendant's unauthorized copying of original elements of the plaintiff's work.  *See Tanksley v. Daniels*, 902 F.3d 165, 172-73 (3d Cir. 2018).  "Copying" occurs when a defendant infringes on any of a copyright owner's five exclusive rights,[23] including the rights to reproduce and distribute copyrighted material.  *See Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F. 2d 277, 291 (3d Cir. 1991).

ASTM establishes both elements of a copyright infringement claim for all ten of the Copyrighted Standards.

First, ASTM's copyrights are presumed valid because each of the Copyrighted Standards' certificates of registration was "made before or within five years" of the "first publication" of the corresponding standard.  17 U.S.C. § 410(c); *see Silvertop*

---

[23] Under the Copyright Act, copyright owners hold the exclusive rights to do and to authorize any of the following: "(1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission."  17 U.S.C. § 106.

*Associates Inc. v. Kangaroo Manufacturing Inc.*, 931 F.3d 215, 219 n.3 (3d Cir. 2019) ("Registering a work's copyright within five years of the work's first publication entitles the holder to a presumption of validity."); Exs. 2-11, O'Brien Decl., ECF No. 7 (showing that all ten certificates of registration were made before or within five years of the corresponding standard's first publication).

Second, by publishing unauthorized copies of the Copyrighted Standards on the UpCodes website, UpCodes plainly infringed on ASTM's exclusive rights to "reproduce the copyrighted work" and "distribute copies . . . of the copyrighted work to the public . . . ." 17 U.S.C. §§ 106(1), 106(3). Satisfying both elements, ASTM has established a prima facie case of copyright infringement.

### 2. UpCodes' Fair Use Defense

UpCodes contests neither the presumptive validity of ASTM's copyrights under 17 U.S.C. § 410(c) nor the fact that UpCodes copied ASTM's standards without authorization. *See* Pl.'s Reply, ECF No. 76, at 13. Instead, UpCodes argues that its unauthorized copying is permissible because it is fair use under 17 U.S.C. § 107. For the reasons set forth below, I find that UpCodes' copying is fair use and ASTM's copyright claims therefore fail.

Fair use is an affirmative defense to copyright infringement. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994). As codified in the Copyright Act, "the fair use of a copyrighted work . . . for purposes such as criticism, comment,

16

news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. Fair-use analysis is highly fact-intensive and "requires a case-by-case determination" of whether a particular use is fair. *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 549 (1985).

In determining whether the use of a copyrighted work is fair, courts consider the following non-exclusive factors: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107. The factors should not be "treated in isolation" but instead should "all be explored[] and the results weighed together, in light of the purposes of copyright," described below. *Campbell*, 510 U.S. at 577-78.

Copyright exists "[t]o promote the [p]rogress of [s]cience and useful [a]rts," U.S. Const. art. I, § 8, cl. 8, and this "goal of enriching public knowledge" is accomplished by incentivizing private creativity. *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 531 (2023) (quoting *Authors Guild v. Google, Inc.*, 804 F.3d 202, 214 (2d Cir. 2015)). In other words, the Copyright Act confers to authors a "limited monopoly" over copyrighted works "in order to give

17

the public appropriate access to their work product." *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 429 (1984).[24]  Through the copyright regime, "[c]reative work is to be encouraged and rewarded, but private motivation must ultimately serve the cause of promoting broad public availability of literature, music, and the other arts." *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975).  The fair use analysis must be evaluated according to this objective.

Turning to the factors, I find that—read together in light of the purposes of copyright—the factors indicate that UpCodes' copying of ASTM's Copyrighted Standards is fair use.  Because all ten Copyrighted Standards were incorporated-by-reference into law in an identical manner through the IBC,[25] the analysis of each fair use factor applies identically to all ten standards.

### i.      The purpose and character of the use

The first fair use factor is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes."

---

[24] Put another way, "[t]he monopoly created by copyright [] rewards the individual author in order to benefit the public." *Harper & Row Publishers, Inc.*, 471 U.S. at 546 (citation omitted).  As explained by the House Judiciary Committee, "[t]he enactment of copyright legislation by Congress under the terms of the Constitution is not based upon any natural right that the author has in his writings" but instead "upon the ground that the welfare of the public will be served and progress of science and useful arts will be promoted by securing to authors for limited periods the exclusive rights to their writings." *Sony Corp. of America*, 464 U.S. at 429 n.10 (quoting H.R.Rep. No. 2222, 60th Cong., 2d Sess. 7 (1909)).

[25] Each of the ten Copyrighted Standards is listed by name in the "Referenced Standards" chapter of the IBC, which states that "[t]hese standards, in essence, are part of this code . . . ."  2018 Int'l Bldg. Code, ch 35 (available at Ex. 2, ECF No. 66-3, at 2-5).  The IBC does not specify certain provisions of the Copyrighted Standards that are binding.  It simply adopts each Copyrighted Standard wholesale.  *See id.*

17 U.S.C. § 107(1).  This factor "considers the reasons for, and nature of, the copier's use of an original work."  *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 528 (2023).  In assessing this factor, courts conduct an "objective inquiry" into two elements of the copier's use: (i) whether and to what extent copier's use is "transformative," and (ii) whether the copier's use is commercial in nature.  *Id.* at 545, 532.  These two elements must be balanced against each other, as described below.  *Id.* at 532-33.

The first element is transformative use.  Transformative use exists when a use "has a further purpose or different character" from the original.  *Id.* at 529.  Although transformative use is not necessary for finding fair use, it weighs heavily in favor of fair use and "the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994).

Whether and to what extent a use is transformative "relates to the justification for the use."  *Goldsmith*, 598 U.S. at 531.  "[A] use that has a distinct purpose is justified because it furthers the goal of copyright, namely, to promote the progress of science and the arts, without diminishing the incentive to create."  *Id.*  The more the copier uses copied material for transformative purposes, "the more it serves copyright's goal of enriching public knowledge" and the less likely it is that copying will merely "serve as a substitute for the original . . . ."  *Id.* (quoting *Authors Guild*,

19

804 F.3d at 214).

A transformative use may also be justified because "copying is reasonably necessary to achieve the user's new purpose." *Id.* at 532. For example, "[p]arody needs to mimic an original to make its point." *Campbell*, 510 U.S. at 580-81. This kind of "independent justification" is "particularly relevant to assessing fair use where . . . wide dissemination of a secondary work would otherwise run the risk of substitution for the original or licensed derivatives of it." *Goldsmith*, 598 U.S. at 532.

Finally, "in various circumstances, courts have recognized that a secondary work can be transformative in function or purpose without altering or actually adding to the original work." *ASTM, et al. v. Public.Resource.Org, Inc.*, 896 F.3d 437, 450 (D.C. Cir. 2018); *see also A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 639 (4th Cir. 2009) ("The use of a copyrighted work need not alter or augment the work to be transformative in nature. Rather, it can be transformative in function or purpose without altering or actually adding to the original work."). For example, news reporters must "faithfully reproduce an original work without alteration," but "a reporter's message ('this is what they said') is very different from the original message ('this is what you should believe')," so the use is still transformative. *ASTM v. Public.Resource.Org, Inc.*, 82 F.4th 1262, 1268 (D.C. Cir. 2023) (describing *Swatch Group Management Services Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 85 (2d

Cir. 2014)).

The other element of the first factor is commercial use.  "There is no doubt that a finding that copying was not commercial in nature tips the scales in favor of fair use."  *Google LLC v. Oracle America, Inc.*, 593 U.S. 1, 32 (2021).  However, "the inverse is not necessarily true," and the mere fact that a copier's use was commercial does not necessarily weigh against fair use.  *Id.*  Rather, "many common fair uses are indisputably commercial."  *Id.*  For example, § 107 of the Copyright Act includes, as a paradigmatic example of fair use, "news reporting," "which is often done for commercial profit."  *Id.* (quoting 17 U.S.C. § 107).

Ultimately, the two elements of the first factor—commercialism and transformative use—balance against each other.  The commercial nature of a copier's use must be "weighed against the degree to which the use has a further purpose or different character."  *Goldsmith*, 598 U.S. at 531.  *See Campbell*, 510 U.S. at 569 ("[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use.").

Applying these principles, the first factor supports a finding that UpCodes' copying was fair use because UpCodes' use is non-commercial and transformative.

UpCodes is a for-profit company, but its use of the Copyrighted Standards is largely noncommercial.  UpCodes makes the Copyrighted Standards available on its

21

website for free.  And although UpCodes may receive tangential benefits from its copying, it derives no direct monetary profit from publishing the Copyrighted Standards.  *See Facility Guidelines Institute, Inc. v. UpCodes, Inc.*, 677 F. Supp. 3d 955, 971 (E.D. Mo. 2023) (finding that UpCodes' secondary use is "largely of a non-commercial nature" and "[t]he benefit to the public of free access to the law exceeds the monetary benefit UpCodes' may eventually receive").  UpCodes is a commercial actor, but "[a] commercial actor's dissemination of information to the public may be a transformative use."  *International Code Council, Inc. v. UpCodes, Inc.*, No. 17-6261, 2020 WL 2750636, at *25 (S.D.N.Y. May 27, 2020) (citing *Swatch*, 756 F.3d at 84-85).  And UpCodes' transformative use outweighs the significance of the fact that it is a for-profit company—especially given that UpCodes' does not directly profit from its use of the Copyrighted Standards.

UpCodes' use is transformative because it "has a further purpose or different character" than ASTM's Copyrighted Standards.  *Goldsmith*, 598 U.S. at 529.  By posting the Copyrighted Standards, UpCodes achieves the distinct objective of making the law freely accessible and educating the public on the contents of binding laws.  Unlike ASTM, UpCodes seeks neither to publish industry best practices nor to "positively impact[] public health and safety" by developing high-quality technical standards.  Compl., ECF No. 1 ¶ 1.  Rather, UpCodes' use of the Copyrighted Standards serves the purpose of "offer[ing] . . . a free, online . . . library

22

JA22

of building codes and standards as enacted into law."  Reynolds Decl. ¶ 9 (available at ECF No. 66-14).  This use has a different character and further purpose from ASTM's use, and thus, is transformative.  *Cf. International Code Council, Inc.*, 2020 WL 2750636, at *25 (finding UpCodes' disseminating enacted laws for public awareness "clearly serves a transformative purpose"); *Facility Guidelines Institute, Inc.*, 677 F. Supp. 3d at 971 (same).

ASTM contends that UpCodes and ASTM share the same purpose: "providing [] information to [architecture, engineering, and construction] professionals," but this characterization ignores the difference between (i) UpCodes' objective of posting standards that have been enacted into law and (ii) ASTM's objective of publishing standards that "bolster safety and performance across industries."  Pl.'s Revised Mem., ECF No. 62, at 27, 13.  In a case brought by ASTM and other standard-developing organizations against Public Resource, a non-profit organization that shares UpCodes' mission of making the law freely accessible, the D.C. Circuit found this distinction to be "fundamental."  *ASTM v. Public.Resource.Org, Inc.*, 82 F.4th 1262, 1268 (D.C. Cir. 2023).  The D.C. Circuit found that, like UpCodes, "Public Resource's use is transformative because it serves a different purpose than the plaintiffs' works."  *Id.* at 1267.  The plaintiffs in the D.C. case sought "to advance science and industry by producing standards reflecting industry or engineering best practices," but the D.C. Circuit found that, like

23

UpCodes, "Public Resource's mission in republishing the standards is very different—to provide the public with a free and comprehensive repository of the law." *Id.* at 1268. Thus, even though ASTM and UpCodes both provide information to the architecture, engineering, and construction communities, UpCodes' secondary use of the Copyrighted Standards serves a distinct purpose.

One "objective indic[ation]"[26] that UpCodes' use serves a distinct purpose is that ASTM subsequently published updated versions of nine of the ten Copyrighted Standards, and UpCodes does not post updated versions of those standards. *See* Defs.' Mem. P. & A., ECF No. 68, at 33. If UpCodes shared ASTM's objective of "bolster[ing] safety and performance across industries" by publishing standards reflecting best industry practices,[27] then it would be reasonable to assume that UpCodes would publish ASTM's most up-to-date versions of the ten standards. But UpCodes does not post the most up-to-date versions of the standards. Instead, UpCodes only posts the versions of the Copyrighted Standards that the IBC made binding in 2018. This is because UpCodes seeks to provide access to standards that have been enacted into law—not to provide access to standards that reflect the latest industry best practices. Thus, UpCodes' use serves a distinct purpose from ASTM's

---

[26] ASTM argues that "UpCodes' subjective intent is of no moment" because the Supreme Court's holding in *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023) confirmed that fair use is an objective inquiry. Pl.'s Reply, ECF No. 76, at 27. However, this evidence constitutes "objective indicia of the use's purpose and character, including . . . the reasons for copying." *Goldsmith*, 598 U.S. 549-50.

[27] Pl.'s Revised Mem., ECF No. 62, at 13.

24

use, and UpCodes' use is transformative.

UpCodes' transformative use is also justified for two reasons.  *See Goldsmith*, 598 U.S. at 531 ("[T]he first factor also relates to the justification for the use."). First, UpCodes' purpose of providing free access to the law is "justified because it furthers the goal[s] of copyright," including "enriching public knowledge."  *Id.* (citation omitted).  As the Southern District of New York recognized, UpCodes' "purpose of educating the [architecture, engineering, and construction] community and public at large about their legal obligations . . . . seems consistent with illustrative purposes articulated in the Copyright Act, including teaching, scholarship, and research."  *International Code Council, Inc.*, 2020 WL 2750636, at *24.

Additionally, UpCodes' use is "justified because copying is reasonably necessary to achieve [UpCodes'] new purpose."  *Goldsmith*, 598 U.S. at 532.  To disseminate the law and educate the public about their legal obligations, UpCodes must post the actual text of the Copyrighted Standards.  As UpCodes explained, "[i]f [it] attempted to express that law using other words . . . it would not be publishing the law of Philadelphia."  Defs.' Mem. P. & A., ECF No. 68, at 22; *see also ASTM, et al. v. Public.Resource.Org, Inc.*, 896 F.3d 437, 450 (D.C. Cir. 2018) (agreeing that "[p]araphrases, summaries, and descriptions . . . do not capture the precision that is necessary to understand the legal obligations that governments impose and enforce").  On this basis, the D.C. Circuit found that, "[w]here an incorporated

standard provides information essential to comprehending one's legal duties," the first fair use factor "weigh[s] heavily in favor of permitting a nonprofit seeking to inform the public about the law to reproduce in full the relevant portions of that particular standard." *Id.*

ASTM argues that the D.C. Circuit's conclusion is inapplicable here for two reasons, both of which are unconvincing. First, ASTM emphasizes that UpCodes is a for-profit company, not a non-profit. But, as described above, UpCodes' use of the Copyrighted Standards is largely noncommercial. Because UpCodes' use provides *free* access to the Copyrighted Standards, UpCodes—like Public Resource—is permitted to reproduce in full the relevant portions of standards that have been incorporated by reference into law. ASTM also contends that UpCodes posts portions of the Copyrighted Standards that include explanatory notes, supplementary materials, and appendices. And ASTM argues that these materials are not essential to complying with any legal duty. *See* Pl.'s Revised Mem., ECF No. 62, at 28. However, as the D.C. Circuit explained, "because law is interpreted contextually, even explanatory and background material will aid in understanding and interpreting legal duties" and, like legislative history, such materials "may prove [] important for resolving ambiguities in the portions of standards that set forth the directly binding legal obligations." *ASTM v. Public.Resource.Org, Inc.*, 82 F.4th 1262, 1269-70 (D.C. Cir. 2023). Thus, posting the Copyrighted Standards in their

entirety is reasonably necessary to UpCodes' purpose of educating the public about how to satisfy their legal obligations, and therefore, is justified.

Finally, UpCodes' use is "transformative in function or purpose" even "without altering or adding to" the Copyrighted Standards. *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 639 (4th Cir. 2009). As multiple courts have recognized, "[p]osting enacted laws for the purpose of educating members of the public as to their legal obligations may be transformative, even if the enacted laws are identical to other copyrighted works." *International Code Council, Inc.*, 2020 WL 2750636, at *24 (holding the same); *see also Facility Guidelines Institute, Inc.*, 677 F. Supp. 3d at 970 (same); *ASTM*, F.3d at 450 (same). Like a news reporter that must "faithfully reproduce an original work without alteration," UpCodes must faithfully reproduce the Copyrighted Standards without alteration to report what the law is in jurisdictions like Philadelphia. *ASTM*, 82 F.4th at 1268. But, like a news reporter, UpCodes' message "is very different from the original message," and thus serves a transformative purpose. *Id.*

In sum, because UpCodes' use is transformative and largely noncommercial, the first factor weighs in favor of fair use.

### ii.     The nature of the copyrighted work

The second factor is "the nature of the copyrighted work," 17 U.S.C. § 107(2), and courts often reduce this inquiry into the question of whether a work is factual

(weighing in favor of fair use) or fictional (weighing against fair use). *See Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 563 (1985).

The factor recognizes that "some works are closer to the core of intended copyright protection than others," and "fair use is more difficult to establish when the former works are copied." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994). Thus, because "[t]he law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy," the second factor weighs in favor of fair use when a work falls on the factual end of the fact-fiction spectrum. *Harper & Row Publishers, Inc.*, 471 U.S. at 563.

Applying these principles, the second factor strongly supports a finding that UpCodes' copying was fair use. As the D.C. Circuit explained, technical standards generally "fall at the factual end of the fact-fiction spectrum, which counsels in favor of finding fair use." *ASTM, et al. v. Public.Resource.Org, Inc.*, 896 F.3d 437, 451 (D.C. Cir. 2018). And because "the express text of the law falls plainly outside the realm of copyright protection," *id.* (citing *Banks v. Manchester*, 128 U.S. 244, 253 (1888)), "standards incorporated by reference into law are, at best, at the outer edge of 'copyright's protective purposes,'" *id.* (quoting *Campbell*, 510 U.S. at 586). Thus, "[w]here the consequence of the incorporation by reference is virtually indistinguishable from a situation in which the standard had been expressly copied into law, this factor weighs heavily in favor of fair use." *Id.* at 452.

28

The nature of the ASTM's Copyrighted Standards weighs heavily in favor of fair use. Although ASTM invests significant time and resources to develop its technical standards, the Copyrighted Standards are factual—they relate to steel and aluminum used in building construction. Additionally, the ten Copyrighted Standards have been incorporated into law so that the consequence is "virtually indistinguishable" from a situation in which they had been expressly copied into the enacting legislation itself. *Id.* In a jurisdiction like Philadelphia, an individual who fails to conform to the Copyrighted Standards is subject to penalty as if the requirement had been reprinted in the Philadelphia Building Code itself. Thus, ASTM's Copyrighted Standards—having been incorporated by reference into law— fall at the outer edge of copyright's protective purposes, and the second factor weighs in favor of fair use.

### iii.    The amount and substantiality of the portion used

The third factor is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). This factor recognizes that "the extent of permissible copying varies with the purpose and character of the use." *Campbell*, 510 U.S. at 586-87. The test for this factor is largely one of reasonableness—courts ask whether the amount and substantiality of the portion used is "reasonable in relation to the purpose of the copying." *Id.* at 586. Reproducing an entire work normally militates against finding fair use, but the

29

nature of the copyrighted work can justify wholesale copying. *See Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 449-50 (1984). And the Supreme Court has instructed that this factor "will generally weigh in favor of fair use" when "the amount of copying was tethered to a valid, and transformative, purpose." *Google LLC v. Oracle America, Inc.*, 593 U.S. 1, 34 (2021).

Applying these principles, the third factor supports a finding of fair use. UpCodes copied the entirety of ASTM's Copyrighted Standards, but this amount of copying was plainly reasonable in relation to UpCodes' objective. As the analysis of the first factor demonstrates, UpCodes' use serves a valid, transformative purpose: to disseminate the law and educate the public about their legal obligations. And because jurisdictions like Philadelphia incorporated the entirety of the Copyrighted Standards into their law, it is "reasonably necessary" for UpCodes to copy the entirety of Copyrighted Standards "to achieve [its] new purpose" of educating the public about their legal obligations. *Goldsmith*, 598 U.S at 532. Thus, the amount and substantiality of UpCodes' copying is "tethered" to UpCodes' transformative purpose, *Google* LLC, 593 U.S. at 34, and the factor weighs in favor of fair use.

The D.C. Circuit concluded similarly, holding that the third factor "strongly supports fair use because the standards at issue have been incorporated and thus have the force of law." *ASTM v. Public.Resource.Org, Inc.*, 82 F.4th 1262, 1269 (D.C.

Cir. 2023).  As the Court explained, if the government "has given legal effect to an entire standard, then [the standard's] entire reproduction is reasonable in relation to the purpose of the copying, which is to provide the public with a free and comprehensive repository of the law." *Id.*  Like Public Resource, UpCodes provides a free online repository of the law.  Thus, UpCodes' entire reproduction of the Copyrighted Standards is reasonable in relation to this purpose.

For this factor to weigh "strongly" in favor a fair use, a defendant must "limit[] its copying to only what is required to fairly describe the standard's legal import . . . ." *ASTM, et al. v. Public.Resource.Org, Inc.*, 896 F.3d 437, 452 (D.C. Cir. 2018). This qualification was especially important in the D.C. case, where the hundreds of standards at issue varied in their method of incorporation.[28]  When an incorporating law required compliance with only *two specific provisions* of a privately authored code, the D.C. Circuit reasoned that a defendant would have to limit its copying to those two provisions for it to be fair use.  *ASTM, et al.*, 896 F.3d at 452.  By contrast, when an incorporating law required compliance with an entire ASTM standard, the Court concluded that "a greater amount of the standard's text might be fairly reproduced." *Id.* (discussing a labeling requirement for biodiesel that simply "meets ASTM D975 diesel specifications").

---

[28] See the D.C. District Court's opinion, *ASTM v. Public.Resource.Org, Inc.*, 597 F. Supp. 3d 213, 233 (D.D.C. 2022), dividing the 217 standards at issue into groups based on their various kinds of incorporation and their different legal consequences.

Philadelphia requires compliance with entire ASTM standards, so a greater amount of the standards' text may be fairly reproduced.  The IBC (as adopted by jurisdictions like Philadelphia) does not specify which provisions of the Copyrighted Standards are binding.  It simply lists, for example, "A252-10" as one of the many standards that "provide requirements" for the IBC.  *See* 2018 Int'l Bldg. Code, ch 35 (available at Ex. 2, ECF No. 66-3, at 2-3).  The incorporation of the Copyrighted Standards neither "specif[ies] that only certain provisions of the standards are incorporated by reference into law," nor "indicate[s] which specific provisions of the standards relate to regulatory compliance . . . ."  *ASTM v. Public.Resource.Org, Inc.*, 597 F. Supp. 3d 213, 237 (D.D.C. 2022).  Thus, the entirety of the Copyrighted Standards is "required to fairly describe the standard's legal import," *ASTM, et al.*, 896 F.3d at 452, and UpCodes' entire reproduction of the standards is reasonable.

ASTM argues that UpCodes' wholesale copying is unreasonable because UpCodes copied portions of the Copyrighted Standards that ASTM describes as "expressly non-mandatory," such as explanatory notes, supplementary materials, and appendices.  Pl.'s Reply, ECF No. 76, at 29.  However, as explained in the analysis of factor one, these materials "aid in understanding and interpreting legal duties," and "may prove [] important for resolving ambiguities in the portions of standards that set forth the directly binding legal obligations."  *ASTM*, 82 F.4th at 1269-70.  Thus, UpCodes' inclusion of these materials is reasonable.

32

In sum, the amount and substantiality of the Copyrighted Standards used by UpCodes is reasonable in relation to UpCodes' valid and transformative purpose, and the third factor weighs in favor of fair use. *Cf. Facility Guidelines Institute, Inc. v. UpCodes, Inc.*, 677 F. Supp. 3d 955, 972 (E.D. Mo. 2023) ("UpCodes has copied the majority, if not the entirety, of the [copyrighted works], but it has done so only to the extent that governments have enacted such portions of the [copyrighted works] into law.  UpCodes' copying is limited to what is contained in the enacted laws themselves and as such, it is tethered to its transformative purpose.  On this basis, the Court finds that this factor weighs in favor of fair use.").

### iv.   The effect of the use on the potential market for or value of the work

The fourth factor is "the effect of the use upon the potential market for or value of the copyrighted work," 17 U.S.C. § 107(4), and it is considered the "most important element of fair use." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 566 (1985).  This factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590 (cleaned up).  However, the Supreme Court has cautioned that the fourth factor "can prove more complex than at first it may seem" because "a potential loss of revenue is not the whole story."

33

*Google* LLC, 593 U.S. at 35.  Rather, there are two important wrinkles to the fourth factor analysis: the source of the loss and countervailing public benefits of the copying.

First, courts must consider the "source" of the loss.  *Id.*  Not all market effects are cognizable under the Copyright Act, and courts must distinguish between cognizable and non-cognizable effects.[29]  *Id.*  To this end, the factor considers whether enforcing a copyright will allow the copyright holder to gain profits that would "interfere with, not further, copyright's basic creativity objectives."  *Id.* at 39.

Second, courts must balance the actual and potential monetary effects against "the public benefits the copying will likely produce."  *Id.* at 35.  This part of the fourth factor analysis is especially weighty in the context of standards that have been incorporated by reference into law because, as the D.C. Circuit recognized, there are "substantial public benefits of free and easy access to the law."  *ASTM*, 82 F.4th at 1271.

Applying these principles, the fourth factor does not weigh clearly in favor of one side or the other.  It is plain to see how UpCodes' use of ASTM's Copyrighted Standards will affect the market for the standards.  If the Copyrighted Standards can be obtained for free from UpCodes, consumers will be less incentivized to purchase

---

[29] For example, a "lethal parody, like a scathing theatre review, may kill demand for the original," but "this kind of harm, even if directly translated into foregone dollars, is not cognizable under the Copyright Act."  *Id.* (internal quotation marks and alterations omitted).

34

the standards from ASTM for a fee.  After all, UpCodes specifically identifies the Copyrighted Standards as ASTM standards and allows its users to filter their searches on the UpCodes website based on ASTM's authorship.  *See* Defs.' Mem. P. & A., ECF No. 68, at 10.  Therefore, "it is fair to say" that UpCodes' copies are "an effective substitute" for the Copyrighted Standards.  *International Code Council, Inc. v. UpCodes, Inc.*, No. 17-6261, 2020 WL 2750636, at \*28 (S.D.N.Y. May 27, 2020); *see also Facility Guidelines Institute, Inc. v. UpCodes, Inc.*, 677 F. Supp. 3d 955, 973 (E.D. Mo. 2023) (holding the same).

However, there is reason to question whether enforcing ASTM's copyright here would "interfere with, not further, copyright's basic creativity objectives." *Google* LLC, 593 U.S. at 39.  Copyright "should not grant anyone more economic power than is necessary to achieve the incentive to create," *id.* at 21 (quoting Congress' National Commission on New Technological Uses of Copyrighted Works), and *amicus curiae* illustrate that ASTM may have other incentives to continue developing technical standards even if some of its standards lose their copyright protection after being enacted into law.  ASTM may still be incentivized to create by its mission of promoting product quality and public safety, its professional interest in being recognized as a global leader in standard development, and other monetary benefits that it may derive after its standards are incorporated into law, like profits derived from marketing its own compliance-focused training

35

materials.  *See* Amicus Br. Electronic Frontier Foundation et al. Supp. Defs.' Opp'n Mot. Prelim. Inj., ECF No. 71-1, at 22-23.

Finally, the countervailing public benefits of UpCodes' copying are substantial.  As explained *supra* Section I.B., incorporation by reference creates serious notice and accountability problems when the law is only accessible to those who can afford to pay for it.  Unlike in the federal system, where federal law requires—at a minimum—that referenced standards be made available for public inspection at the Office of the Federal Register in Washington D.C., there is no requirement mandating the Copyrighted Standards enacted by state and local jurisdictions be made publicly available in any capacity.[30]  And there is significant evidence of the practical value of providing unfettered access to technical standards that have been incorporated into law.  For example, journalists have explained that this access is essential to inform their news coverage; union members have explained that this access helps them advocate and negotiate for safe working conditions; and the NAACP has explained that this access helps citizens assert their legal rights and advocate for legal reforms.  *See* Amicus Br. Electronic Frontier Foundation et al. Supp. Defs.' Opp'n Mot. Prelim. Inj., ECF No. 71-1, at 11-12.

In sum, different elements of the fourth factor point in different directions. On one hand, it seems fair to assume that free online access to the Copyrighted

---

[30] *See supra* note 12.

36

Standards will lessen customers' incentive to purchase the standards from ASTM. On the other hand, there is reason to believe that ASTM will still be incentivized to create its standards, and there are significant public benefits to allowing free online access to technical standards that have been incorporated by reference into law. Thus, the fourth factor "does not significantly tip the balance one way or the other." *ASTM*, 82 F.4th at 1272.

### v.      Conclusion

Having explored the fair use factors together and weighed them "in light of the purposes of copyright," *Campbell*, 510 U.S. at 578, I conclude that UpCodes' copying of ASTM's Copyrighted Standards is fair use. The first three factors firmly support fair use. And the fourth factor does not point clearly in one direction or the other. While I recognize the potential harm caused to ASTM's markets by UpCodes' copying, this fact "cannot outweigh the benefits and necessity of enabling unfettered access to enacted laws." *International Code Council, Inc. v. UpCodes, Inc.*, No. 17-6261, 2020 WL 2750636, at *28 (S.D.N.Y. May 27, 2020). After all, copyright law is not designed for the primary purpose of providing "a special private benefit" to authors like ASTM. *Sony Corp. of America*, 464 U.S. at 429. Private benefits are only a "secondary consideration" to "the primary object" of copyright law which lies instead "in the general benefits derived by the public from the labors of authors." *United States v. Paramount Pictures*, 334 U.S. 131, 158 (1948) (citation omitted).

37

Here, the public is best served by permitting the free dissemination of technical standards that have been made into binding legal requirements.

Multiple federal courts have analyzed whether the online publication of technical standards that have been incorporated by reference into law constitutes fair use, and all but one have come to the same conclusion—finding a likelihood of success on the merits of the defense of fair use, or ultimately, fair use as a matter of law.[31]  Of course, this trend does not resolve whether UpCodes' publication of the ten Copyrighted Standards constitutes fair use here.  As the Supreme Court has made clear, the fair use analysis "is not to be simplified with bright-line rules," and instead "calls for case-by-case analysis."  *Campbell*, 510 U.S. at 577.  Nonetheless, these precedents offer helpful guidance and affirm my conclusion that UpCodes' copying is fair use.

ASTM contends that other cases involving the incorporation-by-reference of privately authored standards are distinguishable because—unlike the standards at

---

[31] *See Facility Guidelines Institute, Inc. v. UpCodes, Inc.*, 677 F. Supp. 3d 955 (E.D. Mo. 2023) (denying a preliminary injunction because the plaintiff could not show likely success on the merits due to UpCodes' fair use defense); *National Fire Protection Association, Inc. v. UpCodes, Inc.*, No. 21-5262, 2021 WL 4913276 (C.D. Cal. 2021) (same) (but note the district court subsequently changed course and found a genuine dispute of material fact as to fair use in *National Fire Protection Association, Inc. v. UpCodes, Inc.*, No. 21-5262 (Aug. 23, 2024) (sealed) (available at ECF No. 88)); *see also International Code Council, Inc. v. UpCodes, Inc.*, No. 17-6261, 2020 WL 2750636 (S.D.N.Y. May 27, 2020) (finding UpCodes' copying is fair use as a matter of law); *ASTM v. Public.Resource.Org, Inc.*, 82 F.4th 1262 (D.C. Cir. 2023) (upholding the district court's finding of fair use for the copying of ASTM standards that were incorporated by reference into law).

issue in other cases—the Copyrighted Standards are *indirectly* incorporated through "third-party references."  However, in its briefs and in oral argument, ASTM failed to make a persuasive argument for why indirect incorporation mandates a different outcome from direct incorporation.[32]  After reviewing the specific method of incorporation at issue—which identically incorporates by reference all ten of the Copyrighted Standards—there is no justification for ASTM's argument that the

---

[32] In its briefs, ASTM repeatedly contends that direct incorporation by reference and indirect incorporation by reference (via a "third-party reference") are distinct and thus cases involving direct incorporation by reference are inapposite. *See, e.g.*, Pl.'s Revised Mem., ECF No. 62, at 21, 29, 31; Pl.'s Reply, ECF No. 76, at 24, 28, 29, 41.  But these claims are conclusory, and ASTM fails to provide an explanation for why indirect incorporation should be treated differently.  During oral argument, I reminded ASTM's counsel that they must explain the reasons behind their contention that the outcome should be different for standards that have been indirectly incorporated and standards that have been directly incorporated.  The exchange is excerpted below:

> THE COURT: "In other words, there's a middle person [involved in the incorporation of ASTM's Copyrighted Standards] . . . .  [A]s far as I could find, this is the only case that involves a middle person.  Is that correct?"

> MR. FEE: "That's correct . . . .  All of the other cases that either of the parties have cited have addressed the issue of whether or not works that were directly incorporated by reference by a governmental authority lose their protection."

> THE COURT: "And that's your main argument . . .  Is that correct?"

> MR. FEE: "That's certainly one of the main arguments we're making . . . ."

> THE COURT: "All right.  You're going to have to tell me . . . why you're contending that the outcome should be different."

Tr. Oral Arg., ECF No. 96, at 14-15.  Nonetheless, ASTM's arguments merely emphasized that the Copyrighted Standards are not directly incorporated that the other cases involved direct incorporation by reference. *See, e.g.*, *id.* at 21:2-8 ("All the ten works [at] issue in this case have never been incorporated by reference . . . .  [T]here's literally no case that has ever held that a third-party reference to a standard or a model code loses its copyright protection as a result of that third-party reference.").

outcome here should be different.

As explained *supra* Sections I.C. and I.D., jurisdictions like Philadelphia give effect to ASTM's Copyrighted Standards through two layers of incorporation.  The Philadelphia Building Code adopted the International Building Code ("IBC"), incorporating the IBC "as if fully set forth" in the Philadelphia Building Code itself.[33]  And the IBC incorporated the Copyrighted Standards, explaining that the standards are considered, "in essence, part of" the IBC itself.[34]  Although the text of the Copyrighted Standards is not reprinted in the text of the law, the incorporating language makes clear that Philadelphia effectively incorporates the Copyrighted Standards into its Building Code.  And the fact that the incorporation of the Copyrighted Standards occurs *indirectly* does not change its legal effect.  What matters is that "the consequence of the incorporation by reference is virtually indistinguishable from a situation in which the standard had been expressly copied into law" by the jurisdiction.  *ASTM v. Public.Resource.Org, Inc.*, 82 F.4th 1262, 1268 (D.C. Cir. 2023).

Here, the legal consequence of Philadelphia's indirect incorporation is virtually indistinguishable from a situation in which the Copyrighted Standards had been expressly copied into law.  The consequence of violating a requirement of the

---

[33] Phila. Code ch. 4-200 § B-1.2 (available at Ex. 3, ECF No. 66-4, at 18).
[34] 2018 Int'l Bldg. Code, ch 35 (available at Ex. 2, ECF No. 66-3, at 2).

Philadelphia Building Code is a three hundred dollar fine.[35]  And Philadelphia states that all "codes and standards referenced" in the Philadelphia Building Code "shall be considered part of the requirements" of the Building Code.  Phila. Code ch. 4-200 § A-102.3 (available at Ex. 3, ECF No. 66-4, at 3).  Accordingly, if someone constructs a building in Philadelphia and violates the requirements set out in the Copyrighted Standards, that person may be subject to a three hundred dollar fine. The consequence of the indirect incorporation-by-reference is no different from a situation in which the Copyrighted Standards had been reprinted in the text of the law—either way, a person who violates the Copyrighted Standard is subject to punishment.  Thus, cases analyzing directly incorporated standards remain germane to this analysis.

In conclusion, UpCodes' copying satisfies the affirmative defense of fair use. Therefore, ASTM's copyright claims are unlikely to succeed on the merits.

## B. Trademark Claims

ASTM also alleges that UpCodes infringed on ASTM's federally registered trademarks in violation of federal and state laws governing trademark infringement (Counts IV and VI); state laws governing trademark dilution (Count VII); and federal and common law governing unfair competition (Counts V).[36]  In response,

---

[35] *See* Phila. Code ch. 1-100 § 1-109(1).

[36] ASTM's trademark claims consist of infringement of registered trademarks under 15 U.S.C. § 1114 (Count IV); unfair competition and false designation of origin under 15 U.S.C. § 1125(A)(1)

UpCodes asserts the affirmative defense of nominative fair use.  For the reasons set forth below, UpCodes' references to ASTM's mark constitute nominative fair use and ASTM's trademark claims therefore fail.

"The same standards apply to federal trademark infringement, federal unfair competition, and Pennsylvania common law unfair competition claims." *Maduka v. Tropical Naturals, Ltd.*, 409 F. Supp. 3d 337, 354-55 (E.D. Pa. 2019).[37]  To succeed on any of its claims, ASTM "must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000).  The first two requirements—validity and legal protectability—are established when a mark is federally registered and has become incontestable.  *See Fisons Horticulture, Inc. v. Vigoro Industries, Inc.*, 30 F.3d 466, 472 (3d Cir. 1994).[38]  It is undisputed that

---

(Count V); trademark infringement under Pennsylvania common law (Count VI); dilution of trademarks under 54 Pa. Cons. Stat. § 1124 (Count VII).

[37] *See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) ("We measure federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), by identical standards."); *Warren Pub. Co. v. Spurlock*, 645 F. Supp. 2d 402, 431 (E.D. Pa. 2009) ("[I]n light of the many analytically identical cases . . . that use the Lanham Act in coming to a decision, this Court will use the Lanham Act in considering Plaintiffs' common law unfair competition claim against [Defendant]."); *Theia Techs. LLC v. Theia Grp., Inc.*, 2021 WL 291313, at *21 (E.D. Pa. Jan. 28, 2021) ("The same standard applies to unfair competition claims brought pursuant to § 43(a) of the Lanham Act and common law infringement claims.") (citation omitted).

[38] A trademark becomes incontestable "after the owner files affidavits stating that the mark has been registered, that it has been in continuous use for five consecutive years, and that there is no pending proceeding and there has been no adverse decision concerning the registrant's ownership or right to registration." *Id.* at 472 n.7.

ASTM owns the incontestable, federally registered ASTM Mark (Reg. No. 2,679,320), *see* Pl.'s Revised Mem., ECF No. 62, at 37, thus ASTM satisfies these two requirements.

The validity of ASTM's claims hinges on the third requirement—likelihood of confusion—and the affirmative defense of nominative fair use. The parties disagree on the appropriate legal framework governing these issues, and, specifically, how the likelihood of confusion requirement fits into the Third Circuit's approach to nominative fair use. *See* Tr. Oral Arg., ECF No. 96, at 64-66, 76-77, 81-84 (disagreeing on the proper approach). ASTM contends that, because UpCodes cannot establish nominative fair use, the court should analyze likelihood of confusion under the traditional standard. UpCodes disagrees, contending that, where nominative fair use is at issue, the court should apply a modified likelihood of confusion standard that is tailored to the nominative use context. UpCodes is correct, and the modified standard applies.

### 1. UpCodes' Nominative Use

"A likelihood of confusion exists when 'consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark.'" *A & H Sportswear, Inc.*, 237 F.3d at 211 (quoting *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 862 (3d Cir.1992)). The Third Circuit has developed a non-exhaustive list of ten factors

(the "*Lapp* factors") for courts to consider in determining whether there is a likelihood of confusion between marks:

> (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of the similarity of function; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market.

*Id.* District courts are not obligated to use the *Lapp* factors, and not all factors will be relevant or equally weighted in all cases. *Id.* at 214-15. Thus, district courts "should utilize the factors that seem appropriate to a given situation." *Id.* at 215.

"Fair use" is a defense to trademark infringement that "presents a fact pattern different from that of a normal infringement suit." *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 217 (3d Cir. 2005). A typical trademark infringement case "involves the defendant's having passed off another's mark as its own or having used a similar name, confusing the public as to precisely whose goods are being sold." *Id.* In these cases, "[l]ikelihood of confusion is the sole issue." *Id.* By contrast, in fair use cases, the defendant "is not purporting to be selling goods or services that the plaintiff has trademarked . . . ." *Id.* Instead, the defendant "is using

44

plaintiff's mark in order to refer to *defendant's own goods* or to the goods of the trademark owner in a way that might confuse the public as to the relationship between the two." *Id.* (emphasis added).  The legal framework in fair use cases "still involves a showing that [defendant's] reference to [plaintiff's] mark will likely confuse the public, but the analysis does not end there [because] the use may nonetheless be permissible if it is 'fair.'" *Id.*

Nominative fair use is a separate defense that arises when "the only practical way to refer to something is to use the trademarked term." *Id.* at 214 (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 328 F.3d 1061, 1972 (9th Cir. 2003)).  In nominative fair use cases, "the alleged infringer uses the trademark holder's mark to describe the *trademark holder's product*, even if the alleged infringer's ultimate goal is to describe his own product." *KP Permanent Make-Up, Inc.*, 328 F.3d at 1971-72 (cleaned up) (emphasis added).  For example, "[t]he use of the term 'Volkswagen' by a car mechanic in an [advertisement] describing the types of cars he repairs" is nominative fair use. *Lendingtree, Inc.*, 425 F.3d at 214. The mechanic is clearly referring to another's product, but he does so "in order to describe what he does." *Id.*

Like the car mechanic, UpCodes uses ASTM's mark in a nominative manner. UpCodes "uses the trademark holder's mark" (*i.e.*, the term 'ASTM') "to describe the trademark holder's product" (*i.e.*, the Copyrighted Standards), even though

45

UpCodes is describing something on its own website.  *KP Permanent Make-Up, Inc.*, 328 F.3d at 1971-72 (cleaned up).  And "the only practical way" for UpCodes to refer to the Copyrighted Standards "is to use the trademarked term," *Lendingtree, Inc.*, 425 F.3d at 214, because the entities that incorporate the Copyrighted Standards into law also use the trademarked term.  *See* 2018 Int'l Bldg. Code, ch 35 (available at Ex. 2, ECF No. 66-3) (using "ASTM" to describe the Copyrighted Standards); *cf. ASTM v. Public.Resource.Org, Inc.*, 597 F. Supp. 3d 213, 243 (D.C. Cir. 2022) ("[I]t is hard to see how the defendant could fulfill its goal of informing the public about the law without identifying the standard by its name—the very name also used in the incorporating law.") (cleaned up).  Thus, UpCodes' use is nominative.

## 2.  Third Circuit's Approach to Nominative Fair Use

To determine whether a defendant's nominative use is *fair*—and thus satisfies the affirmative defense of nominative fair use—the Third Circuit employs a two-step framework.  *See Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 222-227 (3d Cir. 2005) (setting out the modified framework).

At the first step, courts consider whether the plaintiff has proven that "confusion is likely due to the defendant's use of plaintiff's mark." *Id.* at 222.  To do so, courts use a modified likelihood of confusion test because certain *Lapp* factors would improperly "indicate a likelihood of confusion . . . simply *because* the mark is being employed in a nominative manner." *Id.* at 224 (emphasis in original).  Under

the modified test, the first two *Lapp* factors—(1) degree of similarity between the owner's mark and the alleged infringing mark, and (2) strength of the owner's mark—are ignored. *Id.* at 224-25.

The determination of which remaining *Lapp* factors are relevant and probative "should be made in the first instance by the District Court," but the Third Circuit has recognized that four factors "appear most relevant in assessing likely confusion" in nominative use cases: (1) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (2) the length of time the defendant has used the mark without evidence of actual confusion; (3) the intent of the defendant in adopting the mark; and (4) the evidence of actual confusion. *Id.* at 225-26. "[T]hese four factors are the essence of the inquiry," but "others may prove useful in certain contexts." *Id.* at 226.

It is only after the plaintiff has met its burden of "proving that confusion is likely," that "the burden then shifts to defendant to show that its nominative use of plaintiff's mark is nonetheless fair." *Id.* at 222.

### 3.  Modified Likelihood-of-Confusion Analysis

UpCodes employs ASTM's mark "in a nominative manner," so the Third Circuit's two-step nominative fair use framework applies. *Id.* at 224. Because ASTM does not meet its burden of showing a likelihood of confusion under the modified test, ASTM's trademark claims fail.

47

At step one of the analysis, ASTM must prove that confusion is likely due to UpCodes' use of ASTM's mark, and—because this is a nominative use case—"we must tailor the [likelihood of confusion] test and measure only those factors that are meaningful and probative in the context of nominative fair use." *Id.* The first two Lapp factors are ignored, and the focus is instead on the four factors that the Third Circuit considers "most relevant in assessing likely confusion" in nominative use cases. *Id.* at 225. Because UpCodes has only published the Copyrighted Standards for a relatively short period of time,[39] the factor concerning the length of time that UpCodes has used the mark without evidence of actual confusion is, of course, not very probative. Thus, the most relevant factors are: (1) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (2) the intent of UpCodes in adopting the mark; and (3) the evidence of actual confusion. *See Lendingtree, Inc.*, 425 F.3d at 238-39.

Applying these factors, ASTM is unable to meet its burden of showing likely confusion.

First, consumers of the Copyrighted Standards are likely to use significant care and attention when making a purchase. Generally, "[t]he cheaper the goods or the less sophisticated the consumers, the more likely that a use may confuse." *Id.* at

---

[39] UpCodes began displaying the Copyrighted Standards in April 2024, *see* Pl.'s Revised Mem., ECF No. 62, at 17, and ASTM moved for preliminary injunction on May 5, 2024, *see* ECF No. 6.

48

248 (Fisher, J, concurring).   Here, the relevant consumers are sophisticated. ASTM's copyrighted standards are "targeted at technical people" including "engineers, architects, builders, and suppliers and manufacturers of construction materials."   Defs.' Mem. P. & A., ECF No. 68, at 36 (cleaned up).   These are "sophisticated actors who are looking to follow fairly specific laws" and who are likely to "use care in selecting the source of their laws" when the safety of a building is in question.   Tr. Oral Arg., ECF No. 96, at 66:10-19.   Thus, this factor does not suggest a likelihood of confusion.

Second, UpCodes' intent in using the term "ASTM" is not to "confuse or deceive consumers as to the product's source . . . ."   *Versa Products Co., Inc. v. Bifold Co. (Mfg.) Ltd.*, 50 F.3d 189, 205 (3d Cir. 1995).   As explained above, "the only practical way" for UpCodes to refer to the Copyrighted Standards "is to use the trademarked term."   *Lendingtree*, *Inc.*, 425 F.3d at 214.   UpCodes' intent in using the ASTM mark is to accurately identify which privately authored standard has been incorporated into law.   UpCodes uses the mark to clarify, not to confuse.   Thus, UpCodes' intent does not suggest a likelihood of confusion.

Finally, ASTM concedes that it can show no evidence of actual consumer confusion.   *See* Defs.' Mem. P. & A., ECF No. 68, at 36 (citing deposition available at ECF No. 68-2).

Together, the relevant *Lapp* factors reflect that ASTM has not met its burden

49

of showing a likelihood of confusion.  Thus, my analysis ends here.  I conclude that ASTM is unlikely to succeed on the merits of its trademark claims.

## V.   CONCLUSION

For the reasons discussed, ASTM cannot show a likelihood of success on the merits of its copyright and trademark claims.  Because this "gateway" preliminary injunction factor is not met, the remaining preliminary injunction factors are irrelevant.  *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).  ASTM has failed to show a likelihood of success on the merits.  I will deny ASTM's motion for a preliminary injunction.

____s/ANITA B. BRODY, J._____
ANITA B. BRODY, J.

50

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMERICAN SOCIETY FOR TESTING AND MATERIALS, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 24-1895 |
| | : | |
| UPCODES, INC., *et al.*, | : | |
| Defendants. | : | |

## ORDER

**AND NOW**, this 2nd day of October, 2024, it is **ORDERED** that Plaintiff's

Revised Motion for Preliminary Injunction (ECF No. 59) is **DENIED**.


_s/ANITA B. BRODY, J. _____
ANITA B. BRODY, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMERICAN SOCIETY FOR TESTING
AND MATERIALS d/b/a ASTM
INTERNATIONAL,

          Plaintiff,

   v.

UPCODES, INC.; GARRETT
REYNOLDS; and SCOTT REYNOLDS,

          Defendants.

Civil Action No.: 2:24-cv-01895-AB

## NOTICE OF APPEAL

Pursuant to 28 U.S.C. § 1292(a)(1), Plaintiffs American Society for Testing and Materials d/b/a ASTM International ("ASTM"), hereby gives notice of its appeal to the United States Court of Appeals for the Third Circuit from the Court's October 2, 2024 order, Dkt. 105, denying Plaintiff's Revised Motion for Preliminary Injunction, Dkt. 59, as reflected in the memorandum opinion of the same date, Dkt. 104.

1

Dated: October 21, 2024

Respectfully submitted,

By: */s/ J. Kevin Fee*
J. Kevin Fee (PA Bar No. 81715)
Jane W. Wise (admitted *pro hac vice*)
Jenna N. Rowan (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
kevin.fee@us.dlapiper.com
jane.wise@us.dlapiper.com
jenna.rowan@us.dlapiper.com

Gabrielle C. Velkes (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Fl.
New York, NY 10020
gabrielle.velkes@us.dlapiper.com

*Attorneys for Plaintiff American Society for Testing and Materials d/b/a ASTM International*

2

## CERTIFICATE OF SERVICE

I, J. Kevin Fee, certify that on October 21, 2024, I caused a copy of the foregoing, Plaintiff's Notice of Appeal, to be served via the Court's CM/ECF System upon all counsel of record.

**MORRISON & FOERSTER LLP**
Joseph C. Gratz - JGratz@mofo.com
Hannah Jiam - HJiam@mofo.com
Umeet K. Sajjan - USajjan@mofo.com
Mark D. Marciszewski - MMarciszewski@mofo.com
Aditya V. Kamdar - AKamdar@mofo.com

**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**
Bonnie M. Hoffman - bhoffman@hangley.com
Thomas N. Brown - tbrown@hangley.com
Jason A. Levine - jlevine@hangley.com

*/s/ J. Kevin Fee*
J. Kevin Fee

3

JA54