No. 24-2965

IN THE

UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

AMERICAN SOCIETY FOR TESTING AND MATERIALS,

*Plaintiff – Appellant,*

v.

UPCODES, INC., GARRETT REYNOLDS, and SCOTT REYNOLDS,

*Defendants – Appellees.*

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
Hon. Anita B. Brody
Case No. 24-cv-01895

**BRIEF OF *AMICI CURIAE* AMERICAN MEDICAL ASSOCIATION
AND AMERICAN DENTAL ASSOCIATION
IN SUPPORT OF APPELLANT**

Jack R. Bierig
ArentFox Schiff LLP
233 S. Wacker Drive, Suite 7100
Chicago, IL 60606
(312) 258-5500
jack.bierig@afslaw.com

*Counsel for Amici Curiae*

## United States Court of Appeals for the Third Circuit

### Corporate Disclosure Statement and
### Statement of Financial Interest

No. <u>24-2965</u>

American Society for Testing and Materials

v.

Upcodes, Inc., Garrett Reynolds, and Scott Reynolds

<u>Instructions</u>

Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest. This information need be provided only if a party has something to report under that section of the LAR.

In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings. If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list. LAR 26.1(c).

The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, must be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first. A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed. Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

If additional space is needed, please attach a new page.

(Page 1 of 2)

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, makes the following disclosure:

Amici Curiae American Medical Association and American Dental Association
_____
(Name of Party)

1) For non-governmental corporate parties please list all parent corporations: None

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:
None

3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:
None

4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.
N/A

/s/ Jack R. Bierig
_____
(Signature of Counsel or Party)

Dated: January 28, 2025
_____

# TABLE OF CONTENTS

**Page**

INTEREST OF *AMICI CURIAE* ............................................................1

SUMMARY OF ARGUMENT ............................................................3

ARGUMENT ............................................................................5

I.    The Federal Government Relies On, Benefits From, and Respects Copyrighted Works by Private Entities Like *Amici* ........................................5

II.    The District Court's Overbroad Fair Use Analysis is Fundamentally Flawed.............................................................................8

      A.    UpCodes' Use of ASTM's Standards Was Commercial and Not Transformative ............................................................9

      B.    Creative Expressions of Opinion Do Not Deserve Less Protection Merely Because They Are Based on or Contain Facts.....13

      C.    Wholesale Copying Weighs Against Fair Use..................................16

      D.    Where An Infringing Use Usurps the Potential Market for a Copyrighted Work, Fair Use Cannot Be Found................................17

CONCLUSION ........................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Dental Ass'n v. Delta Dental Plans Ass'n,*
   126 F.3d 977 (7th Cir. 1997) ...............................................2, 6, 14, 19

*Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.,*
   597 F. Supp. 3d 213 (D.D.C. 2022), *aff'd, Am. Soc'y for Testing
   and Materials v. Public.Resource.Org, Inc.*, 896 F.3d 437 (D.C.
   Cir. 2023) ......................................................................................13

*Am. Soc'y for Testing and Materials v. Public.Resource.Org, Inc.,*
   896 F.3d 437 (D.C. Cir. 2018)...................................................14, 15

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith,*
   598 U.S. 508 (2023)...............................................................9, 10, 17

*Banks v. Manchester,*
   128 U.S. 244 (1888)......................................................................14, 15

*Cambridge Univ. Press v. Patton,*
   769 F.3d 1232 (11th Cir. 2014) .........................................................13

*Campbell v. Acuff-Rose Music, Inc.,*
   510 U.S. 569 (1994)................................................................9, 12, 16

*Georgia v. Public.Resource.Org, Inc.,*
   590 U.S. 255 (2020)...........................................................................15

*Google LLC v. Oracle Am., Inc.,*
   593 U.S. 1 (2021)........................................................................17, 18

*Harper & Row Publishers, Inc. v. Nation Enters.,*
   471 U.S. 539 (1985)............................................................11, 13, 17, 18

*Hatchette Book Group, Inc. v. Internet Archive,*
   115 F.4th 163 (2d Cir. 2024) ...........................................................12

*Infinity Broadcast Corp. v. Kirkwood,*
   150 F.3d 104 (2d Cir. 1998) .............................................................16

*Int'l Code Council, Inc. v. UpCodes, Inc.*,
No. 17 Civ. 6261 (VM), 2020 WL 2750636 (S.D.N.Y. May 27,
2020) ...........................................................................................17

*Los Angeles Times v. Free Republic*,
No. CV 98-780 MMM, 2000 WL 565200 (C.D. Cal. Apr. 4, 2000) ................10

*Marcus v. Rowley*,
695 F.2d 1171 (9th Cir. 1983) .......................................................13

*Murphy v. Millennium Radio Group LLC*,
650 F.3d 295 (3d Cir. 2011) .....................................................10, 11

*Neotonus, Inc. v. Am. Med. Ass'n*,
554 F. Supp. 2d 1368 (N.D. Ga. 2007), *aff'd*, 270 Fed. App'x 813
(11th Cir. 2008).................................................................6, 14

*Penguin Group (USA) Inc. v. American Buddha*,
No. CV13-02075-TUC-JGZ, 2015 WL 11170727 (D. Ariz. May
11, 2015) .....................................................................10, 12

*Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*,
121 F.3d 516 (9th Cir. 1997), *amended*, 133 F.3d 1140 (9th Cir.
1998) ........................................................................2, 19

*Princeton Univ. Press v. Mich. Document Servs., Inc.*,
99 F.3d 1381 (6th Cir. 1996) .......................................................10

*Signature Mgmt. Team, LLC v. Doe*,
No. 13-cv-14005, 2016 WL 8114192 (E.D. Mich. May 19, 2016)....................10

*Soc'y of Holy Transfiguration Monastery, Inc., v. Gregory*,
689 F.3d 29 (1st Cir. 2012)........................................................11

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
464 U.S. 417 (1984)...............................................................17

*Veeck v. S. Bldg. Code Cong. Int'l, Inc.*,
293 F.3d 791 (5th Cir. 2002) (*en banc*)........................................8, 15

**Statutes**

Copyright Act, 17 U.S.C. § 107........................................................ passim

Health Insurance Portability and Accountability Act of 1996, 42
   U.S.C. § 1329d-3 ........................................................................................1

**Other Authorities**

42 C.F.R. § 433.112(b)(2)...............................................................................2

48 Fed. Reg. 16750 (April 19, 1983) ..............................................................1

58 Fed. Reg. 57643 (Oct. 26, 1993)................................................................5

65 Fed. Reg. 50312  (Aug. 17, 2000)...........................................................1, 2

78 Fed. Reg. 60784 (Oct. 2, 2013).................................................................16

Aaron B. Caughey, *Prepregnancy Obesity & Severe Maternal
   Morbidity: What Can Be Done?*, 318 JAMA 165 (Nov. 14, 2017) ...................7

Ana Neumann, et al., *Evaluating Quality of Dental Care Among
   Patients with Diabetes* ................................................................................7

Fed. R. App. P. 32 .........................................................................................22

Fed. R. App. P. 29 .........................................................................................22

Nat'l Research Council, *Standards, Conformity Assessment, & Trade:
   Into the 21st Century* (1995).........................................................................5

## INTEREST OF *AMICI CURIAE*[1]

*Amicus* American Medical Association ("AMA") holds the copyright in Current Procedural Terminology ("CPT"), a work of medical nomenclature that is used for reporting physician procedures and services. Since at least 1983, the federal government has required physicians to use CPT to obtain reimbursement under the Medicare and Medicaid programs. 48 Fed. Reg. 16750, 16753 (April 19, 1983). In 2000, the United States Department of Health and Human Services ("HHS") designated CPT as a standard code set under section 1173 of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1329d-3. Use of CPT is required to report physician services for all financial and administrative health care transactions sent electronically. *See* 65 Fed. Reg. 50312, 50323-30 (Aug. 17, 2000).

*Amicus* American Dental Association ("ADA") holds the copyright in the Code on Dental Procedures and Nomenclature ("CDT"), a work of dental nomenclature that is used to report dental services. In 2000, HHS designated CDT as a HIPAA-compliant code set. 65 Fed. Reg. at 50323-30. Under HIPAA, HHS requires use of CDT for all dental services sent electronically. HHS also requires use

---

[1] This brief is submitted with the consent of all parties. Undersigned counsel for *Amici* certifies that this brief was not authored in whole or in part by counsel for any of the parties. No party or its counsel contributed any money for this brief, and no one other than *Amici* contributed any money for this brief.

of CDT in submitting reimbursement claims. *See* Dep't of HHS, Pub. 100-04, Transmittal 43 (Dec. 19, 2003); 42 C.F.R. § 433.112(b)(2).

In addition to being used for submitting claims for reimbursement, CPT and CDT promote the interoperability of record-keeping systems. They assist physicians and dentists in developing clinical guidelines for the treatment of patients, and they enable payors to track utilization of procedures. Moreover, researchers utilize these works in conducting retrospective studies of the efficacy of various procedures in producing desired outcomes for patients.

The Ninth Circuit has upheld the copyright in CPT, concluding that it is not "the law" and that its required use by the federal government does not divest AMA's copyright in that work. *See Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516 (9th Cir. 1997), *amended*, 133 F.3d 1140 (9th Cir. 1998) ("*PMIC*"). Likewise, the Seventh Circuit has enforced the copyright in CDT. *See Am. Dental Ass'n v. Delta Dental Plans Ass'n*, 126 F.3d 977 (7th Cir. 1997). Moreover, in the regulation that designates CPT and CDT as HIPAA-compliant code sets, HHS explicitly stated that "nothing in the final rule, including the Secretary's designation of standards, implementation specifications, or code sets is intended to divest any copyright holders of their copyrights in any work referenced in this final rule." 65 Fed. Reg. at 50324.

Despite the judicial and administrative precedent enforcing the copyrights in

*Amici's* works and despite the ruling that they are not "the law", the District Court's overbroad interpretation of the fair use doctrine under §107 of the Copyright Act, 17 U.S.C. § 107, if affirmed, threatens the enforceability of those copyrights—and thus would, in effect, undo those copyrights. More specifically, those who choose not to honor the copyrights in these works may well invoke the erroneously expansive view of the fair use doctrine adopted by the District Court to claim that they do not need a license to use these works—even though they would be using them for the exact same reasons for which the works were developed and would be totally undermining the market for these works by copying and publishing large portions thereof. Therefore, *Amici* respectfully request that this Court reverse the decision below— or, at the very minimum, reject the District Court's analysis of each of the four fair use criteria set forth in the Copyright Act.

## SUMMARY OF ARGUMENT

Appellees UpCodes, Inc., Garrett Reynolds, and Scott Reynolds (together, "UpCodes") posted on UpCodes' website ten standards copyrighted by appellant American Society for Testing and Materials ("ASTM"). Upcodes did so to enable third parties to copy and use these works without paying any royalties to ASTM. The District Court found that UpCodes' actions constituted fair use under the Copyright Act. In so holding, the court profoundly misapplied each of the four fair use factors.

To begin, wholesale copying and republication of ASTM's copyrighted standards for commercial purposes without any change whatsoever is simply not a transformative use of those works for purposes of the first fair use factor. Moreover, the many economic benefits received by UpCodes from its publication of ASTM's works demonstrates that its actions were undertaken for commercial purposes. With respect to the second factor, those works are not merely factual; rather, they represent creative judgments as to what should, and should not, be adopted as standards.

As for the third factor, UpCodes' complete copying of ASTM's works weighs strongly against a finding of fair use. It is not in the slightest bit altered by the fact that such copying is necessary to satisfy UpCodes' objectives. The question under this factor is whether the infringer copied a substantial portion of the copyrighted work—not whether the copying served the infringer's purposes. Finally, the fact that UpCodes' copying substantially usurps the market for ASTM's works weighs heavily against a finding of fair use—even if ASTM retains an incentive to continue developing new works.

The District Court's decision threatens the enforceability of AMA's copyright in CPT and of ADA's copyright in CDT. Specifically, that decision could embolden those who wish to make substantial copying of *Amici's* works to assert that their copying constitutes fair use even though these works are not the law, thereby undermining the copyrights in those works that have been upheld by two federal

appellate courts and affirmed by the federal government. More generally, the District Court's decision would place in jeopardy numerous privately created works that have been used for the benefit of governments—to the detriment not only of the copyright holders but also of patients and of the governments that rely on those works. For all of these reasons, the decision of the District Court should be reversed.

## ARGUMENT

### I.    The Federal Government Relies On, Benefits From, and Respects Copyrighted Works by Private Entities Like *Amici*.

The federal government has long recognized the benefits of relying on the private sector to satisfy its need for works such as CPT and CDT. Private organizations can often create such works more quickly and efficiently than the government, and practical difficulties may hamper the government's ability to create such works on its own. *See* Nat'l Research Council, *Standards, Conformity Assessment, & Trade: Into the 21st Century*, at 56 (1995).

Federal agencies often lack the time, resources, and/or expertise to create and update these types of works. Reliance on privately authored works "eliminates the costs to the Government of developing its own standards," while furthering the "policy of reliance upon the private sector to supply the Government's needs for goods and services." 58 Fed. Reg. 57643, 57645 (Oct. 26, 1993).

Creating and updating CPT and CDT to reflect ongoing developments in medicine and dentistry requires significant resources and expertise. AMA spends

millions of dollars maintaining more than 10,000 CPT codes and descriptors. Through its CPT Editorial Panel, AMA constantly revises, updates, and modifies CPT to account for medical advances and changes in medical practice. *See Neotonus, Inc. v. Am. Med. Ass'n*, 554 F. Supp. 2d 1368, 1371-72 (N.D. Ga. 2007) (describing the process for adding, deleting, and modifying CPT codes), *aff'd*, 270 Fed. App'x 813 (11th Cir. 2008). The Editorial Panel meets three times a year to consider changes to CPT submitted by a broad range of stakeholders, including medical specialty societies, individual physicians, hospitals, and third-party payors. During those meetings, the Editorial Panel addresses nearly 350 major topics, typically involving more than 3,000 votes on individual items. Facilitating its work requires dozens of dedicated support staff and assistance from over 100 volunteer physicians and health care professionals.

ADA similarly spends tremendous resources to update CDT. *See Delta Dental*, 126 F.3d at 979. ADA's Council on Dental Benefit Programs is responsible for revising the CDT Code to reflect changing dental practice in a way that thoughtfully serves patients, providers, payors, and the government. The Council's Code Maintenance Committee holds public meetings annually to consider and vote on often much-debated changes to CDT. At these meetings, dozens of proposed code changes are discussed, considered, and voted on to ensure that CDT reflects changes in dental knowledge and technology and advances in dental care.

By supplying uniform and creative nomenclatures for medical and dental procedures, CPT and CDT have become important tools for efficiently processing claims submitted to Medicare, Medicaid, and private payors. These works are also beneficial for medical and dental research and for promoting the interoperability of record-keeping systems. CPT and CDT codes assist medical and dental specialty societies to develop clinical guidelines and payors to track utilization of medical procedures and develop alternative payment models. These works also enable researchers and educators to develop new performance measures, identify patients with certain medical or dental conditions, study the incidence of those conditions, and analyze the costs and effectiveness of treatment options.[2] And they are readily available through appropriate licensing.

The efficient administration of our health care system, both public and private, depends heavily on the use of *Amici's* works. Without them, the federal government would have had to commit enormous time and resources to creating its own code sets, and even more resources to update and maintain those sets. Moreover, all of the benefits of these works set forth above would be undermined.

---

[2] *See*, *e.g.*, Aaron B. Caughey, *Prepregnancy Obesity & Severe Maternal Morbidity: What Can Be Done?*, 318 JAMA 165 (Nov. 14, 2017) (using CPT codes to analyze the relationship between pre-pregnancy obesity and maternal morbidity); Ana Neumann, et al., *Evaluating Quality of Dental Care Among Patients with Diabetes*, 148 J. Am. Dental Ass'n 634 (Sept. 2017) (using CDT codes to analyze quality of diabetic patients' dental care).

## II.    The District Court's Overbroad Fair Use Analysis is Fundamentally Flawed.

The District Court apparently believed that the standards developed by ASTM should lose their copyrights by virtue of having been incorporated into the laws of various states and other governmental entities. *See Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791, 802 (5th Cir. 2002) (*en banc*) (holding that when model building codes are enacted into law, they become "the law" and may be reproduced or distributed as such). But the court chose not to adopt that straightforward, and likely erroneous, approach. Rather, it fashioned an unprecedented and overbroad interpretation of the fair use doctrine that, as a practical matter, allowed it to reach the same result, *i.e.* divestiture of copyright as a practical matter. As explained below, the District Court's analysis of each of the four fair use factors was fundamentally incorrect.

Before addressing the four factors set forth in §107 of the Copyright Act, *Amici* note that the basic purpose of the fair use doctrine is to permit and encourage "criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research." 17 U.S.C. § 107. Here, however, UpCodes' wholesale republication of ASTM's copyrighted standards, without the slightest change and without authorization from or payment to ASTM, does not come close to fulfilling these purposes. That fact alone should cause this Court to be highly skeptical of the District Court's analysis.

8

If affirmed, that analysis will threaten the enforceability of the copyrights in CPT and CDT—and all other private works that are utilized by federal, state, or local governments. That result would be a fundamental misapplication of §107.

### A. UpCodes' Use of ASTM's Standards Was Commercial and Not Transformative.

The first fair use factor is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). This factor "considers the reasons for, and nature of, the copier's use of an original work." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 528 (2023). It involves an objective inquiry that balances the commercial or non-commercial nature of the use with the degree to which that use is transformative. *Id.* at 531, 545. "If any original work and a secondary use share the same or highly similar purposes, and the secondary use is for a commercial nature, the first factor is likely to weigh against fair use." *Id.* at 532-33.

The District Court's holding that UpCodes' copying of ASTM's works was transformative (JA21-27) reveals a complete misunderstanding of what uses are considered transformative by the Supreme Court, this Court, and several other appellate courts. To be transformative, a secondary use must "add[] something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). "[T]he degree of transformation required to make 'transformative' use of an

original must go beyond that required to qualify as a derivative." *Goldsmith*, 598 U.S. at 529

Here, as the District Court acknowledged, UpCodes copied ASTM's work in its entirety, without any alteration or commentary. JA30. Whether a secondary use is transformative "is a matter of degree," *Goldsmith*, 598 U.S. at 529, and the degree of difference between ASTM's work and UpCodes' use is nil. Notably, this Court has held that simply taking copyrighted material and posting it does not transform it. *Murphy v. Millennium Radio Group LLC*, 650 F.3d 295, 307 (3d Cir. 2011) (posting copyrighted photograph on website with no commentary was not transformative); *see also Princeton Univ. Press v. Mich. Document Servs., Inc.*, 99 F.3d 1381, 1389 (6th Cir. 1996) ("If you make verbatim copies of 95 pages of a 316-page book, you have not transformed the 95 pages very much—even if you juxtapose them to excerpts from other works and package everything conveniently.").[3]

The District Court further erred in its analysis of the first fair use factor when it held that the use of ASTM's standards by UpCodes was "largely noncommercial."

---

[3] *Accord Los Angeles Times v. Free Republic*, No. CV 98-780 MMM (AJWx), 2000 WL 565200, at *6 (C.D. Cal. Apr. 4, 2000) ("There is little transformative about copying the entirety or large portions of a work verbatim."); *Signature Mgmt. Team, LLC v. Doe*, No. 13-cv-14005, 2016 WL 8114192, at *3 (E.D. Mich. May 19, 2016) ("Verbatim copies are not at all transformative."); *Penguin Group (USA) Inc. v. American Buddha*, No. CV13-02075-TUC-JGZ, 2015 WL 11170727, at *3 (D. Ariz. May 11, 2015) (verbatim copying is not transformative.).

JA21-22. That holding is contradicted by the Court's findings that UpCodes is a for-profit company, users must affirmatively sign up for an UpCodes account to view ASTM's copyrighted material, and UpCodes derives material benefits from its copying, including drawing users to its website, increasing account numbers, promoting its subscription services, and enabling collection of user information. JA4-5, JA21-22.

Thus, the mere fact that UpCodes does not charge users to access ASTM's standards does mean its use is non-commercial. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985) ("The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrights material without paying the customary price."); *see also Soc'y of Holy Transfiguration Monastery, Inc., v. Gregory*, 689 F.3d 29, 61 (1st Cir. 2012) (explaining that "profit" is "not limited simply to dollars and coins; instead, it encompasses other non-monetary calculable benefits or advantages").

The District Court is also wrong as a matter of law in holding that "the mere fact that a copier's use was commercial does not necessarily weigh against fair use." JA21. Binding precedent squarely holds otherwise. *E.g.*, *Harper & Row*, 471 U.S. at 561 ("The fact that a publication was commercial as opposed to nonprofit is a separate factor that tends to weigh against a finding of fair use."); *Murphy*, 650 F.3d

at 307 ("In general, 'commercialism . . . weigh[s] against a finding of fair use.'") (citing *Campbell*, 510 U.S. at 579); *Hatchette Book Group, Inc. v. Internet Archive*, 115 F.4th 163, 184 (2d Cir. 2024) ("The commercial nature of a secondary use generally weighs against a finding of fair use").

UpCodes' infringement was deemed by the District Court to be sufficiently transformative and non-commercial to constitute fair use because the Court credited UpCodes' professed purpose to make the law freely accessible and to educate the public on the contents of the law. JA22-23. This rationale does not extend to CPT and CDT because, as noted above, those works are not "the law." Nevertheless, *Amici* submit that the District Court should not have accepted UpCodes' self-serving rationale. *See Penguin Group*, 2015 WL 11170727, at *4 (rejecting infringer's argument that it transformed works by posting them online with formatting alterations, which supposedly made them accessible to sight-impaired readers, because those formatting changes did not imbue the works with new expression or meaning).

In short, the District Court's discussion of the first fair use factor was incorrect and contrary to binding precedent both insofar as it found UpCodes' wholesale copying to be transformative and insofar as it characterized such copying as non-commercial.

**B.    Creative Expressions of Opinion Do Not Deserve Less Protection Merely Because They Are Based on or Contain Facts.**

The second fair use factor is "the nature of the copyrighted work." 17 U.S.C. § 107(2). "The law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy." *Harper & Row*, 471 U.S. at 563. However, "[e]ven within the field of fact works, there are gradations as to the relative proportion of fact and fancy." *Id.* (internal citation and quotation omitted).

The District Court's characterization of ASTM's works as being purely factual is incorrect. JA29. While those standards may be based on facts, the works themselves (much like a textbook) embody creative opinions and judgments.[4] *See, e.g.*, *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1270 (11th Cir. 2014) (where excerpts of the copyrighted works "contained evaluative, analytical, or subjectively descriptive material that surpasses the bare facts necessary to communicate information … the District Court should have held that the second factor was neutral, or even weighed against fair use"); *Marcus v. Rowley*, 695 F.2d 1171, 1175 (9th Cir. 1983) (second factor was neutral as applied to booklet on cake decorating where the

---

[4] ASTM's process of developing standards "resemble[s] governmental rulemaking, with adoption requiring an elaborate process of development, reaching a monitored consensus among those responsible," and involves "technical committees with representatives from industry, government, consumers, and technical experts." *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 597 F. Supp. 3d 213, 222 (D.D.C. 2022), *aff'd*, *Am. Soc'y for Testing and Materials v. Public.Resource.Org, Inc.*, 896 F.3d 437 (D.C. Cir. 2023).

booklet involved "both informational and creative aspects" and "certainly the manner in which plaintiff assembled her book represented a creative expression").

Similarly to ASTM's standards, *Amici's* works are not purely factual. Quite to the contrary, they are creative works of judgments derived from painstaking deliberative processes. *See Delta Dental*, 126 F.3d at 979 (explaining that "[b]lood is shed in the ADA's committees" when creating and modifying CDT codes and descriptions); *Neotonus*, 554 F. Supp. 2d at 1371 (explaining that the CPT Editorial Panel meets regularly to update the CPT). Indeed, the creativity of the works is precisely what makes them copyrightable in the first place. *See Delta Dental*, 126 F.3d at 980 (explaining that CDT is a taxonomy, which is "a way of *describing* items in a body of knowledge or practice; it is not a collection or compilation *of* bits and pieces of 'reality'") (emphasis in original).

Further, the mere fact that copyrighted material makes its way into the law does not result in invalidation of the copyright. The District Court relied on *Am. Soc'y for Testing and Materials v. Public.Resource.Org, Inc.*, 896 F.3d 437 (D.C. Cir. 2018) ("*ASTM I*") to hold otherwise, but *ASTM I* was wrongly decided. JA28. There, the D.C. Circuit cited to *Banks v. Manchester*, 128 U.S. 244, 253 (1888), to support the holding that because the text of the law is not copyrightable, standards incorporated by reference into law are also at the "outer edge" of copyright protection. *ASTM I*, 896 F.3d at 451-52. *Banks* cannot be read so broadly, however.

14

As the Supreme Court later explained in *Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255, 265-66 (2020), *Banks* and its progeny establish the rule that judges and legislators cannot be "authors" for purposes of the copyright laws because they are government actors vested with the authority to make law. That rule, "does not apply, however, to works created by government officials (or private parties) who lack the authority to make or interpret the law." *Id.* at 265. Further, the Supreme Court's prohibiting lawmakers from becoming "authors" was done in lieu of "attempting to catalog the materials that constitute 'the law.'" *Id.* at 265-66. Thus, *Banks* does not support the proposition that privately created works necessarily lose copyright protection by virtue of their incorporation into law.

*Amici*, like ASTM, are private entities with no power to make law. Private entities do not become lawmakers when the government determines to incorporate part of their copyrighted and privately created materials into law. *See Veeck*, 293 F.3d at 804-05 (explaining that where copyrighted works "were created by private groups for reasons other than incorporation in law," those works "do not 'become law' merely because a statute refers to them" or when the law "requires citizens to consult or use a copyrighted work in the process of fulfilling their obligations.").[5]

---

[5] In the certiorari proceedings in *Veeck*, the Solicitor General reaffirmed that statutory or administrative references to a privately copyrighted work do not mean that the public may freely copy the work. *Brief of the United States as Amicus Curiae* at 11, *S. Bldg. Code Cong. Int'l, Inc. v. Veeck*, No. 02-355 (2002). The Office of the Federal Register also reaffirmed this distinction when it rejected a petition to modify

### C.    Wholesale Copying Weighs Against Fair Use.

The third fair use factor is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). The extent of permissible copying varies with the purpose and character of the use. *Campbell*, 510 U.S. at 586-87. Whether a substantial portion of the copyrighted work is copied verbatim is relevant because it "may reveal a dearth of transformative character or purpose under the first factor, or a greater likelihood of market harm under the fourth." *Id.* at 587; *see also Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104, 109 (2d Cir. 1998) ("[T]he more of a copyrighted work that is taken, the less likely the use is to be fair, and even a less substantial taking may be unfair if it captures the essence of the copyrighted work.").

Once again, the District Court's analysis of this factor was entirely incorrect. Specifically, the Court erred in holding that UpCodes' wholesale copying was "plainly reasonable in relation to UpCodes' objective." JA30. The test is not whether an infringer's copying furthers its stated ends. If that were the case, all copying would satisfy this criterion. Rather, the amount of copying has to be "tethered to a valid, and transformative, purpose." *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 34

---

the regulations governing incorporation by reference. *See* 78 Fed. Reg. 60784, 60792 (Oct. 2, 2013) ("[W]e agree with commenters who said that when the Federal government references copyrighted works, those works should not lose their copyright.").

(2021).

The District Court further erred in reasoning that UpCodes could also copy portions of ASTM's standards such as notes, supplementary materials, and appendices—which are not incorporated into the law—on the grounds that those materials aid in interpreting legal duties. JA32. This logic runs afoul of the Supreme Court's admonition that "an overbroad concept of transformative use, one that includes any further purpose, or any different character, would narrow the copyright owner's exclusive right to create derivative works." *Goldsmith*, 598 U.S. at 529; *see also Int'l Code Council, Inc. v. UpCodes, Inc.*, No. 17 Civ. 6261 (VM), 2020 WL 2750636, at *29 (S.D.N.Y. May 27, 2020) ("[T]he significant copying of unadopted model code text tends to cut against a finding of fair use.").

### D. Where An Infringing Use Usurps the Potential Market for a Copyrighted Work, Fair Use Cannot Be Found.

The fourth and final fair use factor is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). "This last factor is undoubtedly the single most important element of fair use." *Harper & Row*, 471 U.S. at 566. To negate fair use, "one need only show that if the challenged use should become widespread, it would adversely affect the *potential* market for the copyrighted work." *Id.* (internal quotations and citation omitted); *see also Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 450 (1984) ("Actual present harm need not be shown; such a requirement would leave the copyright

holder with no defense against predictable damage."). Further, this inquiry must take account of not only harm to the original but also harm to the market for derivative works. *Harper & Row*, 471 U.S. at 566.

The District Court correctly observed that UpCodes' copying of ASTM's standards dramatically undermines the market for those standards by functioning as an "effective substitute." JA34-35. That observation should have ended the analysis of the fourth factor. However, the court dismissed the consequences of this holding by citing what it regarded as the countervailing public benefits of that copying. JA34-36. That approach reflects a misunderstanding of the fourth factor. The analysis under this factor is traditionally limited to the effect of the copying on the market for the copyrighted work.

To be sure, in considering this factor in *Google,* the Supreme Court pointed out the public benefits of the copying in that case. But it also expressed reservations regarding the propriety of this consideration in any other context. *See Google*, 593 U.S. at 36 ("We do not say that these questions are always relevant to the application of fair use, not even in the world of computer programs."). This said, even assuming those factors apply in this case, the District Court misapplied them.

Enforcing ASTM's copyrights would not interfere with or hinder copyright's basic creativity objectives. As the District Court noted, ASTM has published updated versions of nine of the ten copyrighted standards that were displayed on

UpCodes' website. JA5. Thus, granting ASTM copyright protection would not stifle creativity. Quite to the contrary, ASTM, like AMA and ADA, relies on licensing revenues to fund this continuous development of high-quality works. JA2-3. The District Court's stripping ASTM of its copyright protection through its faulty fair use analysis undercuts this entire creative process.

Like ASTM, *Amici* expend tremendous resources to create, maintain, and update their copyrighted works. *See PMIC*, 121 F.3d at 517 (noting that "AMA revises the CPT each year to reflect new developments in medical procedures"). That would not be possible without the revenue generated by licensing the works. Further, under the District Court's reasoning, *Amici* would lose the ability to prevent alteration of CPT and CDT. That result would undermine the important goal of maintaining uniformity of coding that is essential to the usefulness of the works. *See Delta Dental*, 126 F.3d at 981 (noting that "standardization of language promotes interchange among professionals" and that "variations salted through a convention impede communication").

Finally, the District Court's statement that, even if ASTM is unable to prevent wholesale takings of its works, it will still have an incentive to create those works (JA35-36) is misguided for two reasons. First, even if ASTM has the incentive, it may not have the resources to update its works or create new works to the extent it would otherwise have. Second, and more fundamentally, the court's statement

19

reflects a misunderstanding of the fair use doctrine. The fourth factor looks to whether the copying in question substantially undercuts the value of the copyright. It does not concern whether a holding of fair use arguably removes the incentive to create useful works. But that is precisely what the District Court did.

## CONCLUSION

For the reasons set forth above, the District Court's decision is based on a fundamental misapplication of the fair use doctrine that improperly threatens the ability of private entities that create copyrighted works which are utilized by governments from enforcing the copyrights in those works—to the detriment of the copyright holder, the government, and the public. That decision should, therefore, be reversed. At a minimum, the District Court's overly expansive reading of the fair use doctrine should be rejected.

Dated: January 28, 2025

Respectfully submitted,

*/s/ Jack R. Bierig*
Jack R. Bierig
ArentFox Schiff LLP
233 S. Wacker Drive
Suite 7100
Chicago, IL 60606
T: (312) 258-5500
E: jack.bierig@afslaw.com

*Counsel for Amici Curiae*
*American Medical Association and*
*American Dental Association*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). As measured by Microsoft Word, it contains, 3,789 words, excluding the parts of the brief exempted by Fed. R. App. P. 29(a)(5), 32(f), and L.A.R. 29.1(b).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in Times New Roman 14 point font.

The hard copy and electronic copy of this brief are identical.

The electronic copy of this brief has been scanned for viruses using Microsoft Defender and no virus was detected.

## CERTIFICATE OF BAR ADMISSION

Pursuant to L.A.R. 28.3(d), I certify that I am admitted to the bar of the United States Court of Appeals for the Third Circuit.

## CERTIFICATE OF SERVICE

I certify that on January 28, 2025, a true and correct copy of this brief was filed on the Court's CM/ECF system, which will forward a copy to all counsel of record who are registered with that system.

Dated: January 28, 2025

*/s/ Jack R. Bierig*
Jack R. Bierig