**No. 24-2965**

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

AMERICAN SOCIETY FOR TESTING AND MATERIALS,
D/B/A ASTM INTERNATIONAL,

*Plaintiff-Appellant*,

v.

UPCODES INC., GARRETT REYNOLDS, SCOTT REYNOLDS,

*Defendants-Appellees*.

---

Appeal from the United States District Court
for the Eastern District of Pennsylvania,
No. 2:24-cv-01895, Hon. Anita B. Brody

---

## NON-CONFIDENTIAL APPELLEES' BRIEF

---

JOSEPH C. GRATZ
HANNAH JIAM
JOEL F. WACKS
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105

JOSEPH R. PALMORE
ADITYA V. KAMDAR
MORRISON & FOERSTER LLP
2100 L Street NW, Suite 900
Washington, DC 20037
Tel: (202) 887-6940
JPalmore@mofo.com

*Counsel for Defendants-Appellees*

MARCH 24, 2025

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit LAR 26.1, UpCodes Inc. makes the following disclosure:

1. For non-governmental corporate parties, please list all parent corporations:

None.

2. For non-governmental corporate parties, please list all publicly held companies that hold 10% or more of the party's stock:

None.

3. If there is a publicly held corporation which is not a party to the proceeding before this Court but which has a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

Not applicable.

4. In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and 3) any entity not named in the caption which is an active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

Not applicable.

Dated:  March 24, 2025                          /s/ Joseph R. Palmore

                                        Joseph R. Palmore

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ..................................................................vi

INTRODUCTION ........................................................................1

STATEMENT OF ISSUES ...............................................................4

STATEMENT OF RELATED CASES ................................................4

STATEMENT OF CASE ...............................................................4

    A.    Factual Background.................................................................4

        1.    The Works in Suit are the law in multiple jurisdictions .............4

        2.    ASTM charges for access to model standards ...........................6

        3.    UpCodes provides free access to the law....................................7

    B.    Procedural Background .........................................................10

        1.    ASTM sued for copyright infringement ..................................10

        2.    The district court denied ASTM a preliminary injunction .......11

SUMMARY OF ARGUMENT ....................................................14

STANDARD OF REVIEW ........................................................15

ARGUMENT ..........................................................................16

I.    ASTM IS NOT LIKELY TO SUCCEED BECAUSE NO ONE CAN OWN THE LAW ..............................................................17

    A.    Publishing The Works In Suit As The Law Is Not Infringement .......17

    B.    Publishing The Law Is Fundamentally Different Than Publishing Other Works ......................................................20

1.    Ruling for UpCodes would not affect the Works in Suit as model standards..........................................................................20

2.    *Georgia v. Public.Resource.Org* supports access to the law.............................................................................................20

3.    Other cases addressing materials that do not become the law are inapposite....................................................................22

II.    ASTM IS NOT LIKELY TO SUCCEED BECAUSE THERE IS ONLY ONE WAY TO EXPRESS THE LAW ............................................23

III.    THE DISTRICT COURT CORRECTLY CONCLUDED ASTM IS NOT LIKELY TO SUCCEED BECAUSE UPCODES' PUBLICATION OF THE LAW IS FAIR USE ............................................25

A.    The District Court Correctly Concluded The First Factor Supports Fair Use ..........................................................................26

1.    UpCodes' use is transformative .................................................26

a.    UpCodes uses the Works in Suit for a distinct purpose—providing public access to the law................26

b.    UpCodes' use is justified by the importance of public access to the law ..................................................28

c.    ASTM's contrary arguments fail...................................29

i.    ASTM ignores on-point appellate precedent .......29

ii.    ASTM applies an erroneously narrow view of transformativeness ..........................................30

iii.    ASTM mischaracterizes UpCodes' use ...............31

iv.    ASTM mischaracterizes the decision below........32

2.    UpCodes' use is non-commercial .............................................33

a.    UpCodes provides free public access to the law ...........33

b.    ASTM's contrary arguments fail .................................35

      i.    The first factor analyzes the specific use, not the defendant's for-profit status ..........................35

      ii.    Mere tangential benefits cannot turn a non-commercial use into a commercial one ........36

      iii.    ASTM fails to show the district court's finding of no direct profit was clear error ............37

B.    The District Court Correctly Concluded The Second Factor Strongly Supports Fair Use ..................................................38

    1.    The Works in Suit are not only factual—they are the law .......38

    2.    ASTM's attempts to minimize the second factor fail ..............39

      a.    The second factor is significant in the context of the law .....................................................................39

      b.    A second layer of incorporation does not change that the Works in Suit are the law ..................................40

C.    The District Court Correctly Concluded The Third Factor Supports Fair Use ...............................................................42

    1.    Copying the entire Works in Suit was necessary for UpCodes' transformative purpose of publishing the law .........42

    2.    UpCodes' transformative purpose justified including supplemental materials necessary to understand the law ........43

D.    The District Court Correctly Concluded The Fourth Factor Does Not Weigh Against Fair Use ...............................................45

    1.    ASTM has not suffered any cognizable market harm ..............46

      a.    UpCodes' use affects only the market for the law, not ASTM's market for model standards ......................46

      b.    ASTM's evidence does not establish market harm ........49

   c. Even if publishing the law were widespread, ASTM would not suffer cognizable market harm ......................50

  2. Even if there were market harm, it is offset by significant public benefits ...........................................................51

   a. UpCodes' use benefits the public by providing the only free access to the law .............................................51

   b. The district court's finding of no public detriment to ASTM's incentives to create was not clear error ...........53

 E. The District Court Correctly Balanced The Factors And Concluded They Support Fair Use .....................................................55

CONCLUSION .......................................................................................55

# TABLE OF AUTHORITIES

## Cases

*Am. Geophysical Union v. Texaco, Inc.*,
  60 F.3d 913 (2d Cir. 1994) ...........................................................33, 34

*Andy Warhol Found. for the Visual Arts v. Goldsmith*,
  598 U.S. 508 (2023)............................................ 25, 26, 27, 28, 32, 35

*ASTM v. Public.Resource.Org, Inc.*,
  82 F.4th 1262 (D.C. Cir. 2023)............................................. 3, 11, 16, 28, 30, 33,
  ...................................................... 38, 39, 40, 43, 44, 48, 50, 51, 52, 53

*ASTM v. Public.Resource.Org, Inc.*,
  896 F.3d 437 (D.C. Cir. 2018)..................... 18, 20, 23, 24, 26, 30, 41, 43, 50, 51

*Authors Guild, Inc. v. HathiTrust*,
  755 F.3d 87 (2d Cir. 2014) ...........................................................42, 45

*Banks v. Manchester*,
  128 U.S. 244 (1888)......................................................................17

*Bldg. Offs. & Code Adm'rs Int'l, Inc. v. Code Tech., Inc.*,
  628 F.2d 730 (1st Cir. 1980)............................................3, 17, 19, 22

*Bouchat v. Balt. Ravens Ltd. P'ship*,
  619 F.3d 301 (4th Cir. 2010) .............................................................35

*Campbell v. Acuff-Rose Music*,
  510 U.S. 569 (1994)....................................................25, 36, 38, 39

*Canadian Standards Ass'n v. P.S. Knight Co.*,
  112 F.4th 298 (5th Cir. 2024) ....................................................18, 21

*CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reps., Inc.*,
  44 F.3d 61 (2d Cir. 1994) ...........................................................22, 23

*Del. Strong Fams. v. Att'y Gen. of Del.*,
  793 F.3d 304 (3d Cir. 2015) .......................................16, 32, 37, 54

*Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc.*,
126 F.4th 589 (8th Cir. 2025) ...............................................................53

*English v. Fed. Nat'l Mortgage Ass'n*,
752 F. App'x 148 (3d Cir. 2019) ....................................................40, 43

*Facility Guidelines Inst., Inc. v. UpCodes, Inc.*,
677 F. Supp. 3d 955 (E.D. Mo. 2023) ...................................3, 9, 14, 29

*Fischer v. Fed. Express Corp.*,
42 F.4th 366 (3d Cir. 2022) ...................................................................24

*Georgia v. Public.Resource.Org, Inc.*,
590 U.S. 255 (2020)............................... 1, 14, 17, 19, 20, 21, 22, 26, 46

*Globe Newspaper v. Super. Ct.*,
457 U.S. 596 (1982)................................................................................18

*Google LLC v. Oracle Am., Inc.*,
593 U.S. 1 (2021)...................... 16, 27, 28, 30, 33, 36, 39, 40, 42, 45, 46, 51, 53

*Hachette Book Grp., Inc. v. Internet Archive*,
115 F.4th 163 (2d Cir. 2024) .........................................................36, 52

*Harper & Row Publishers, Inc. v. Nation Enters.*,
471 U.S. 539 (1985)..........................................................................38, 45

*Int'l Code Council, Inc. v. UpCodes, Inc.*,
No. 17 Civ. 6261 (VM),
2020 WL 2750636 (S.D.N.Y. May 27, 2020) .......................3, 14, 21, 24, 29, 31

*Kabakjian v. United States*,
267 F.3d 208 (3d Cir. 2001) .................................................................16

*L.A. News Serv. v. CBS Broad., Inc.*,
305 F.3d 924 (9th Cir. 2002), *amended*, 313 F.3d 1093 (2002).........................40

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
387 F.3d 522 (6th Cir. 2004) .........................................................35, 47

*MCA, Inc. v. Wilson*,
    677 F.2d 180 (2d Cir. 1981) ............................................................... 53

*National Fire Protection Association, Inc. v. UpCodes, Inc.*,
    No. 21-cv-5262, 2021 WL 4913276 (C.D. Cal. Aug. 9, 2021) ............. 14, 29, 37

*Prac. Mgmt. Info. Corp. v. Am. Med. Ass'n*,
    121 F.3d 516 (9th Cir. 1997) .......................................................... 22, 24

*Russo v. Bryn Mawr Tr. Co.*,
    No. 22-3235, 2024 WL 3738643 (3d Cir. Aug. 9, 2024) ............................. 41, 53

*SEC v. Chappell*,
    107 F.4th 114 (3d Cir. 2024) ............................................................... 15

*Sega Enters. Ltd. v. Accolade, Inc.*,
    977 F.2d 1510 (9th Cir. 1992) ................................. 28, 34, 36, 38, 40

*Seltzer v. Green Day, Inc.*,
    725 F.3d 1170 (9th Cir. 2013) ............................................................... 36

*Silvertop Assocs. Inc. v. Kangaroo Mfg. Inc.*,
    931 F.3d 215 (3d Cir. 2019) .......................................................... 15, 23

*Sony Comput. Ent., Inc. v. Connectix Corp.*,
    203 F.3d 596 (9th Cir. 2000) ............................................................... 47

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
    756 F.3d 73 (2d Cir. 2014) .......................................................... 30, 36

*A.V. ex rel. Vanderhye v. iParadigms LLC*,
    562 F.3d 630 (4th Cir. 2009) ............................................................... 30

*Veeck v. S. Bldg. Code Cong. Int'l, Inc.*,
    293 F.3d 791 (5th Cir. 2002) ................. 3, 16, 18, 19, 20, 21, 22, 23, 24, 32, 51

*Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*,
    342 F.3d 191 (3d Cir. 2003) ............................................................... 34

*Whelan Assocs., Inc. v. Jaslow Dental Lab'y, Inc.*,
    797 F.2d 1222 (3d Cir. 1986) ............................................................... 23

**Statutes**

17 U.S.C. §101 ...............................................................................31

17 U.S.C. §102(b) ..........................................................................23

17 U.S.C. §107 ................................................. 11, 25, 26, 30, 38, 42, 45

Ala. Admin. Code r. 355-12-1-.01(1) ........................................5

Haw. Rev. Stat. §107-25(3) ........................................................5

**Regulations**

1 C.F.R. §51.7(a)(3) ......................................................................6

1 C.F.R. §51.9(b)(4) ......................................................................6

79 Fed. Reg. 66267 (Nov. 7, 2014) (to be codified at 1 C.F.R. §51) .......................6

**Other Authorities**

ASTM, Environmental Training, http://environment.qa-training.astm.org/#/ ........55

Goldstein on Copyright §2.49 (3d ed. Supp. 2025)....................................22

Goldstein on Copyright §2.5.2 (3d ed. Supp. 2025)...................................19

Goldstein on Copyright §2.5.2.1(c) (3d ed. Supp. 2025) .........................54

Nina A. Mendelson, *Private Control over Access to the Law: The Perplexing Federal Regulatory Use of Private Standards*, 112 Mich. L. Rev. 737 (2014) ...........................................17

Office of the Federal Register, Incorporation by Reference Handbook (Aug. 28, 2023)...........................................6, 7

U.S. Const., art. I, §8, cl. 8......................................................25

# INTRODUCTION

"[N]o one can own the law." *Georgia v. Public.Resource.Org*, 590 U.S. 255, 265 (2020). That is so because " '[e]very citizen is presumed to know the law,' and 'it needs no argument to show that all should have free access' to its contents." *Id.* (alteration omitted).

Copyright thus cannot prohibit publishing the words of statutes and regulations. That is true whether those words were drafted by legislatures, copied from model standards or lobbyists' proposed legislation, or enacted through citizen-driven ballot initiatives. In all instances, the words are the law. They establish binding rights and obligations, and anyone who fails to follow them can be penalized. Free public access to the law is thus essential for due process, freedom of speech and press, and meaningful engagement in the democratic process. People must know what the law says to comply with it, hold others to it, scrutinize and debate it, or advocate for changes to it.

While legislatures sometimes borrow from model standards by reproducing their words directly, other times they incorporate the standards by reference. Philadelphia law, for example, states that the 2018 International Building Code ("IBC") "is hereby adopted as the Philadelphia Building Code." JA1319 (§B-1.1). The IBC in turn incorporates certain American Society for Testing and Materials ("ASTM") standards, *e.g.*, providing that "[s]teel pipe piles shall conform to the

material requirements in ASTM A252." JA346. The effect is exactly the same as if Philadelphia had copied the text of the IBC and ASTM A252 and pasted it into its ordinances. Either way, anyone building in Philadelphia must comply with ASTM A252 when using steel pipe piles. If they do not, they have violated the law and can be fined. JA1314-1315.

UpCodes' mission is to help laypeople and professionals better understand how to comply with state and local building laws. It provides free online access to a repository of different jurisdictions' laws, including several ASTM standards that have become the law in Philadelphia and other jurisdictions through incorporation. UpCodes does not publish any updates made to a standard after the version adopted into law or any model standards that were not adopted. That is because UpCodes provides only the law, not the latest industry standard. For the incorporated standards at issue here, UpCodes is the only way the general public can access the law for free.

ASTM sued UpCodes for copyright infringement and sought a preliminary injunction. The district court correctly denied the injunction because ASTM was not likely to succeed on the merits. This Court should affirm. Because the principle that "no one can own the law" is so foundational, multiple doctrines lead to this result— ASTM cannot preclude UpCodes from publishing the law.

The district court reached this conclusion because UpCodes' publication of the standards as the law is fair use. That conclusion is correct and follows the D.C. Circuit's recent decision against ASTM in another case involving similar claims. *ASTM v. Public.Resource.Org* (*ASTM IV*), 82 F.4th 1262, 1267-72 (D.C. Cir. 2023); *see Facility Guidelines Inst. v. UpCodes (FGI)*, 677 F. Supp. 3d 955, 963-73 (E.D. Mo. 2023) (denying preliminary injunction against UpCodes because its posting of guidelines incorporated into law likely constitutes fair use); *Int'l Code Council v. UpCodes* (*ICC*), No. 17 Civ. 6261 (VM), 2020 WL 2750636, at \*22-29 (S.D.N.Y. May 27, 2020) (holding that UpCodes accurately posting the IBC as adopted into law was fair use). Tellingly, ASTM makes no attempt to address the directly relevant D.C. Circuit decision. Other courts have reached the same result by holding that publishing the law is not infringement, either because the law is in the public domain or because there is only one way to speak the law. *E.g., Veeck v. S. Bldg. Code Cong. Int'l*, 293 F.3d 791, 795-802 (5th Cir. 2002) (en banc); *Bldg. Offs. & Code Adm'rs Int'l v. Code Tech.* (*BOCA*), 628 F.2d 730, 733-35 (1st Cir. 1980); *ICC*, 2020 WL 2750636, at \*6-22 (ruling for UpCodes on both grounds).

All are correct, and this Court can affirm on any of these grounds.

## STATEMENT OF ISSUES

Whether the district court correctly denied ASTM's request for a preliminary injunction enjoining UpCodes from publishing state and local law when that law includes standards incorporated by reference.

## STATEMENT OF RELATED CASES

UpCodes agrees with ASTM's statement of related cases.

## STATEMENT OF CASE

### A.     Factual Background

### *1.     The Works in Suit are the law in multiple jurisdictions*

ASTM provides a forum for its 30,000 members to create model standards for various industries.  JA270.  ASTM is accredited by the American National Standards Institute, which allows ASTM's standards to be submitted as national standards. JA271.   ASTM recognizes that its members benefit when its standards are incorporated into model codes and the law, and many ASTM standards have been so incorporated by federal, state, and local jurisdictions.    JA2331-2332; JA2338-2339.

This case involves ten ASTM standards covering steel and aluminum used in construction (the "Works in Suit" or "Works"), which have become part of the law in various state and local jurisdictions that have adopted the IBC.  JA2115-2215. For example, Philadelphia adopted the 2018 IBC as the Philadelphia Building Code.

JA1319 (§B-1.1).  The Philadelphia Code states that adoption means the IBC is "incorporated as if fully set forth herein."  JA1319 (§B-1.2); *see* JA1304 (§A-102.3) ("The codes and standards referenced in any of the technical codes shall be considered part of the requirements of such code to the prescribed extent of each such reference.").  Other state and local jurisdictions have done the same.  *E.g.*, Ala. Admin. Code r. 355-12-1-.01(1); Haw. Rev. Stat. §107-25(3); JA1670-1674 (listing jurisdictions for each Work in Suit).

The IBC in turn incorporates by reference the Works in Suit.  JA1298-1301. It states that it uses "references to standards promulgated by other organizations … to provide requirements for materials and methods of construction."  JA1298.  And it makes explicit that "[t]hese standards, in essence, are part of this code to the extent of the reference to the standard."  JA1298.  For example, the IBC states that "[s]teel pipe piles shall conform to the material requirements in ASTM A252," and that "[f]ully welded steel piles shall be fabricated from plates that conform to the material requirements in ASTM A36, ASTM A283, ASTM A572, ASTM A588 or ASTM A690."  JA346.

As ASTM recognized, these IBC provisions "are saying that you have to meet this standard or you should meet this standard in order to meet our code requirement."  JA2332.  Someone who uses steel pipe piles that do not conform to ASTM A252, for example, violates the law in jurisdictions that adopted the IBC and

5

can be sanctioned.  In Philadelphia, violators can be fined $300 per "offense," which accrues each day the violation persists.  JA1314-1315 (§§A-601.1, A-601.4).

## 2.    ASTM charges for access to model standards

Although the Works in Suit are the law in Philadelphia and elsewhere, the general public cannot access them for free through ASTM.  ASTM offers its standards in various formats—PDF, online, print, or subscription—but it charges for every form of access.  ASTM.Br.11-12; JA2316-2318 (*e.g.*, $769 for PDFs of the ten Works in Suit; $1,878 "for single-user online access to the four volumes of standards containing the Works in Suit").

By contrast, federal law requires that federally incorporated standards be "reasonably available to and usable by the class of persons affected."  1 C.F.R. §51.7(a)(3).  Agencies must make "an official showing that the publication is in fact available by stating where and how copies may be examined and readily obtained with maximum convenience to the user."  *Id.* §51.9(b)(4).  This includes "provid[ing] the [Office of the Federal Register ("OFR")] with a copy of the standard and maintain[ing] a copy at the agency for public inspection."  79 Fed. Reg. 66267, 66270 (Nov. 7, 2014) (to be codified at 1 C.F.R. §51).  And while OFR assesses reasonable availability on a case-by-case basis without mandating free online access in every case, it suggests that agencies negotiate for "online, read-only access as an alternative to purchasing copies for publications being incorporated."  OFR,

Incorporation by Reference Handbook 8-9 (Aug. 28, 2023) ("IBR Handbook").  But

these federal laws do not govern state and local incorporations.

ASTM thus operates an online reading room with free read-only access solely

for federally incorporated standards.  JA2340.  *But see* IBR Handbook 9 (read-only

access may be inadequate at the final rule stage because regulated entities "may need

full access to an online version or their own copy of the material").  But ASTM's

reading room does not include standards like the Works in Suit, which are the law

in state and local jurisdictions.  ASTM declines to make even read-only access to

the Works free.  As ASTM's counsel stated below, before UpCodes provided free

access, the Works were "only available otherwise for *purchase* from ASTM if you

want to have your own copy."  JA2055 (emphasis added).[1]

### 3.    *UpCodes provides free access to the law*

Scott and Garrett Reynolds founded UpCodes in 2016 to "help members of

the public access and comply with the laws that govern their built environment."

JA1667.  UpCodes' mission is to provide "a free, online, accurate, up-to-date,

extensive library of building codes and standards as enacted into law."  JA1668.

---

[1] ASTM's general counsel claimed ASTM would provide a free PDF if
someone contacted ASTM because they could not pay, but this appears to be
discretionary.  *See* JA2341 ("It depends.").  ASTM has pointed to no evidence that
it ever informed the public about this hypothetical possibility or actually provided
anyone free access to the Works in Suit.

UpCodes does this by publishing the law on its website, including standards incorporated into the law, like the Works in Suit. JA1668. UpCodes' policy is to post only the law; it does not post unincorporated standards, nor does it post standards as models of industry practice. JA1667. It expends significant effort "tracking adoptions and any amendments for over seventy jurisdictions across the country" and "monitoring legislative and regulatory action so it can take steps to incorporate any further updates, amendments, or errata." JA1667.

UpCodes provides full access to all the laws on its website for free. JA1668. Any user can access the Works in Suit by creating a free UpCodes account, which allows them to view, copy, paste, and print the laws without charge. JA1668. UpCodes also created optional search and automation tools, which users can subscribe to use for a fee. JA1668. These tools enable users to "search through laws, bookmark sections, add and share annotations, engage with an innovative artificial intelligence assistant that helps explain compliance requirements, and use automation tools that identify building requirements and potential errors based on the inputs of a user's specific project." JA1668.

For each available law, UpCodes identifies the publication as the law of a specific jurisdiction, *e.g.*, "Pennsylvania Carbon Structural Steel Code, 2014." JA908. Below that, UpCodes identifies what model standard was adopted and

whether it was with or without amendments, *e.g.*, "Adopts Without Amendments ASTM A36/A36M, 2014." JA908.



JA908. Where a jurisdiction has amended the model standard, UpCodes integrates those amendments directly into the text to accurately reflect that jurisdiction's law. JA2424.[2] All users can search for laws by jurisdiction or by original publisher of the adopted standard. JA1669. If they do the latter, they are shown a list of jurisdictions that have adopted that standard into law and must select the jurisdiction whose law they want to view. JA1669; JA1685-1687.

---

[2] None of the posted Works in Suit contain amendments, but this practice is reflected in posted laws incorporating amendments to other model standards and codes. *E.g., FGI*, 677 F. Supp. 3d at 962.

UpCodes does not publish model standards that were not incorporated into law. JA1667. Even where standards were incorporated and later updated, UpCodes publishes only the earlier, incorporated version that is the law, not the updated version that represents the current industry standard. For example, all but one of the Works in Suit have been superseded by newer model standards, but UpCodes publishes only the older version incorporated into the law, not the latest ASTM standard. JA1519-1548 (identifying older versions as "Historical").

## B.    Procedural Background

### 1.    *ASTM sued for copyright infringement*

ASTM sued UpCodes for copyright infringement and moved for a preliminary injunction enjoining UpCodes from posting the Works in Suit.[3]

UpCodes opposed the injunction on several independent grounds. To start, it argued ASTM was unlikely to succeed on the merits for three reasons. *First*, publishing the Works as the law, not as model standards, is not copyright infringement because no one can own the law. JA2286-2291, JA2294-2296 (noting due process concerns with opposite rule). *Second*, the merger doctrine precludes infringement liability because the words of the incorporated standard are the only

---

[3] ASTM also asserted trademark infringement claims, but it does not appeal the district court's denial of a preliminary injunction on those grounds (JA41-50).

way to express the law.  JA2292-2294.  *Third*, providing a free public repository of the law is fair use.  JA2296-2306.

UpCodes also argued that ASTM could not satisfy the other injunction factors. JA2308-2310 (irreparable harm); JA2310-2311 (public interest, balance of hardships).

### 2.    *The district court denied ASTM a preliminary injunction*

The district court denied ASTM's injunction motion.  It concluded ASTM was not likely to succeed because UpCodes' publication of the Works as the law was fair use.   JA14-41.   The Copyright Act provides four non-exhaustive factors for evaluating fair use:  (1) "the purpose and character of the use," (2) "the nature of the copyrighted work," (3) "the amount and substantiality of the portion used," and (4) "the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. §107.  The district court found that the first three factors "firmly support fair use" and the fourth "does not point clearly in one direction or the other." JA37.  That finding followed the D.C. Circuit's recent decision addressing similar claims by ASTM.  JA23-41 (citing *ASTM IV*, 82 F.4th 1262).

*First*, the district court found UpCodes' use transformative and non-commercial.  JA21.  While ASTM publishes model standards as "industry best practices" to "positively impact public health and safety," UpCodes publishes the Works in Suit for the distinct purpose of "making the law freely accessible and

educating the public on the contents of binding laws." JA22 (alteration omitted). Thus, "UpCodes' message is 'very different from the original message,'" and it serves copyright's goal of "enriching public knowledge." JA27; JA25. The court also found the use non-commercial because UpCodes provides full access to the law for free. JA21-22; JA26.

*Second*, the court concluded the nature of the Works in Suit strongly supports fair use. JA27-29. Not only are technical standards "at the factual end of the fact-fiction spectrum," but when incorporated into law, they are, "at best, at the outer edge of copyright's protective purposes" because "the express text of the law falls plainly outside the realm of copyright protection." JA28 (internal quotation marks omitted).

The court rejected any distinction between standards directly incorporated into law (like the IBC) and those incorporated by two layers of references (like the Works incorporated into the IBC, which is incorporated into law). JA38-41. The court noted ASTM had no explanation why another layer of incorporation mattered. JA39. The court emphasized that the legal consequence is the same—anyone who builds without following the Works violates the IBC and the law. JA40-41.

*Third*, the court concluded the amount copied supports fair use because publishing the entire Works in Suit is necessary to provide access to the law. JA29-33. The court rejected ASTM's attempt to carve out "explanatory notes,

12

supplementary materials, and appendices." JA32. It found they "'aid in understanding and interpreting legal duties,' and 'may prove important for resolving ambiguities in the portions of standards that set forth the directly binding legal obligations.'" JA32 (alteration omitted).

*Fourth*, the court accepted that UpCodes could affect ASTM's market, but it concluded the fourth factor does not disfavor fair use because the source of any harm does not implicate copyright's purposes. JA33-37. It found ASTM would have incentives to create model standards even without copyright revenues because of "its mission of promoting product quality and public safety, its professional interest in being recognized as a global leader in standard development, and other monetary benefits that it may derive after its standards are incorporated into law, like profits derived from marketing its own compliance-focused training materials." JA35-36.

The court also found that any harm to ASTM is outweighed by the public benefits of free online access to standards incorporated into law. JA36-37. It stated "serious notice and accountability problems" would arise if "the law is only accessible to those who can afford to pay for it." JA36.

Balancing the factors, the court concluded UpCodes' use was fair use. JA37-38. Because that "wholly defeated" ASTM's motion, the court found it unnecessary to reach UpCodes' other arguments. JA14.[4]

## SUMMARY OF ARGUMENT

This Court can affirm on any of three independent grounds.

I. Publishing the law is not infringement because "no one can own the law." *Georgia*, 590 U.S. at 265. When the law incorporates standards by reference, those standards become the law and are binding. The public cannot understand, comply with, enforce, or debate the law without accessing the standard. UpCodes published the Works in Suit as law and did not infringe their copyright as model standards.

II. Under the merger doctrine, defendants are not liable for copying a work where "there are no or few other ways of expressing a particular idea," such that

---

[4] Three other district courts have addressed similar copyright claims against UpCodes. In *FGI*, the court likewise denied a preliminary injunction because UpCodes' publication of standards incorporated into law was likely fair use. 677 F. Supp. 3d at 969-73. The plaintiff then voluntarily dismissed the case. In *National Fire Protection Association v. UpCodes* (*NFPA*), the court denied a preliminary injunction because "uncertainties regarding UpCodes' fair use defense" precluded the plaintiff's likelihood of success. No. 21-cv-5262, 2021 WL 4913276, at *3-7 (C.D. Cal. Aug. 9, 2021). The court later denied summary judgment on fair use, and the parties settled on mutually agreeable terms before trial. JA2485-2526; *NFPA*, ECF No. 308. In *ICC*, the court concluded that posting model codes as the law was permissible for three independent reasons: adopted codes are in the public domain; merger applies to expression of the law; and publishing the law is fair use. 2020 WL 2750636, at *6-29. It denied summary judgment to both sides to resolve factual disputes about the particular works at issue there. *Id.*

enforcing copyright "would effectively monopolize an underlying idea." *Silvertop Assocs. v. Kangaroo Mfg.*, 931 F.3d 215, 222-23 (3d Cir. 2019). The only way to express the law in jurisdictions that incorporated the Works is by using the words in those standards. Any paraphrase or other expression is not the law.

III. Even if UpCodes' use were prima facie infringement, it is fair use, as the district court correctly concluded. The first three factors firmly support fair use, and the fourth does not disfavor it. UpCodes' use is transformative, non-commercial, and serves a distinct purpose from ASTM's original use because UpCodes provides free public access to the Works *as the law*, not as model standards of industry practice. UpCodes thus provides significant benefit to the public, which would have no free access to the law otherwise. And public availability of the law, which usually entails older versions of standards, does not interfere with ASTM's market for the Works *as model standards*, which are regularly updated to reflect current industry practice.

## STANDARD OF REVIEW

Preliminary injunctions are "an extraordinary remedy, which should be granted only in limited circumstances." *SEC v. Chappell*, 107 F.4th 114, 126 (3d Cir. 2024). Likelihood of success on the merits is a "gateway" factor the movant must establish before courts can grant injunctive relief. *Id*. This Court applies a "'tripartite standard of review': findings of fact are reviewed for clear error, legal

conclusions are reviewed de novo, and the decision to grant or deny an injunction is reviewed for abuse of discretion." *Del. Strong Fams. v. Att'y Gen. of Del.*, 793 F.3d 304, 308 (3d Cir. 2015).

Fair use is a "mixed question of law and fact." *Google v. Oracle Am.*, 593 U.S. 1, 24 (2021). Courts must "break such a question into its separate factual and legal parts," depending "on whether answering it entails primarily legal or factual work." *Id.* While the ultimate fair use determination is primarily legal, reaching that conclusion may "involve determination of subsidiary factual questions." *Id.*

## ARGUMENT

This case offers multiple paths to the right answer, each already endorsed by another court of appeals. As the en banc Fifth Circuit held, when standards become the law, publishing them as the law is not infringement for two independent reasons: first, because no one can own the law, and second, because there is no other way to express the law. *Veeck*, 293 F.3d at 795-802. And as the D.C. Circuit (and the district court here) concluded, even if such publication were infringement, providing free access to standards incorporated into law is fair use. *ASTM IV*, 82 F.4th at 1267-72. This Court can affirm on any of these grounds. *See Kabakjian v. United States*, 267 F.3d 208, 213 (3d Cir. 2001) (Court "may affirm a judgment on any ground apparent from the record, even if the district court did not reach it").

## I.    ASTM IS NOT LIKELY TO SUCCEED BECAUSE NO ONE CAN OWN THE LAW

### A.    Publishing The Works In Suit As The Law Is Not Infringement

The Supreme Court has long recognized that publishing the law is not copyright infringement.  *Georgia*, 590 U.S. at 264-66; *Banks v. Manchester*, 128 U.S. 244, 252-54 (1888).  As the Court explained, "[t]he animating principle behind this rule is that no one can own the law."  *Georgia*, 590 U.S. at 265.  Because "[e]very citizen is presumed to know the law," "'all should have free access' to its contents."  *Id.*; *see Banks*, 128 U.S. at 253-54 ("The whole work done by the judges constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all ….").

This principle protects democratic governance.  Regulated entities must "have notice of what the law requires of them so that they may obey it and avoid its sanctions"—otherwise, enforcing the law would violate due process.  *BOCA*, 628 F.2d at 734.  Beneficiaries protected by the law also need access to it to enforce their rights against violators.  Nina A. Mendelson, *Private Control over Access to the Law: The Perplexing Federal Regulatory Use of Private Standards*, 112 Mich. L. Rev. 737, 768-69 (2014).  And the general public needs access to the law to keep governments accountable (*id.*) and exercise First Amendment rights to "free discussion of governmental affairs," which is essential for "effective[]

participat[ion] in and contribut[ion] to our republican system of self-government" (*Globe Newspaper v. Super. Ct.*, 457 U.S. 596, 604 (1982)).

This rule applies to the Works in Suit because they are the law in jurisdictions that adopted the IBC. When the law incorporates "standards that define one's legal obligations," the effect is "indistinguishable" from obligations contained within the law itself. *ASTM v. Public.Resource.Org* (*ASTM II*), 896 F.3d 437, 442-43 (D.C. Cir. 2018). As explained above, laws like Philadelphia's incorporate the IBC, and the IBC incorporates the Works in Suit, so builders must comply with the Works to comply with the law. If, *e.g.*, they use steel pipe piles that do not meet ASTM A252's requirements, they violate the law and can be fined. Thus, publishing the Works is not infringement just as publishing the Philadelphia Code would not be.

The Fifth Circuit adopted this holding in *Veeck*. 293 F.3d at 796. There, the defendant published a model code that was incorporated into law in two Texas cities. *Id.* at 794. While the model codes retained their copyright *as model codes*, the court held that, *as law*, they "enter the public domain and are not subject to the copyright holder's exclusive prerogatives." *Id.* at 793. Thus, the defendant was not liable for posting the codes as law rather than as model codes. *Id.* at 796; *see Canadian Standards Ass'n v. P.S. Knight* (*CSA*), 112 F.4th 298, 304-05 (5th Cir. 2024) (same), *cert. denied*, 2025 WL 247484 (Jan. 21, 2025).

The First Circuit refused to enjoin publication of a model code incorporated into Massachusetts law for similar reasons. *BOCA*, 628 F.2d at 735-36. Although the court did not need to "rule finally on the question" to deny a preliminary injunction, it could not see how copyright "can be squared with the right of the public to know the law to which it is subject." *Id.* at 735. Both circuits recognized that "citizens are the authors of the law, and therefore its owners, regardless of who actually drafts the provisions, because the law derives its authority from the consent of the public, expressed through the democratic process." *Id.* at 734; *Veeck*, 293 F.3d at 799.

This Court should hold the same and preclude ASTM from claiming a monopoly over the law in jurisdictions that have adopted the Works in Suit. *See* Goldstein on Copyright §2.5.2 (3d ed. Supp. 2025) ("*Veeck*'s holding that, as enacted into law, privately adopted codes are uncopyrightable is sound both in law and in principle."). The Supreme Court warned that allowing copyright holders to control who can access the law and at what price could separate people into "economy-class" and "first-class readers" of the law. *Georgia*, 590 U.S. at 274-75 (warning against "premium legal works for those who can afford the extra benefit"). And while the copyrightability question does not turn on "a factual calculus concerning the 'adequacy' of public access to the law," *Veeck*, 293 F.3d at 797, access concerns are particularly serious here because ASTM offers *no* free public

access to the Works (*supra* pp.6-7).  In sum, denying injunctive relief here would avoid a "serious constitutional concern with permitting private ownership of standards essential to understanding legal obligations."  *ASTM II*, 896 F.3d at 447.

**B.  Publishing The Law Is Fundamentally Different Than Publishing Other Works**

**1.  *Ruling for UpCodes would not affect the Works in Suit as model standards***

Affirming the district court on this basis would fairly balance the need for public access with ASTM's interests.  *Veeck*, 293 F.3d at 793.  Here, UpCodes publishes the Works only as the law.  Its mission is to educate the public about building laws.  JA1667-1668.  It labels each publication as the law of a particular jurisdiction, requires users to select the jurisdiction whose law they want to view, and posts only the version that is law, not newer, unincorporated versions.  JA908; JA1669; JA1685-1687.  Holding that ASTM cannot prevent UpCodes from publishing the law would not preclude ASTM from enforcing its copyright against others who publish the Works as model standards, *e.g.*, by posting the latest, unincorporated version or using them as recommendations of industry best practices.

**2.  Georgia v. Public.Resource.Org *supports access to the law***

The Supreme Court in *Georgia* addressed a different question not presented here:  whether copyright protects "non-binding" annotations to Georgia statutes containing, *e.g.*, summaries of judicial decisions and lists of secondary sources.  590

U.S. at 259.  The annotations were prepared by LexisNexis under a work-for-hire agreement with the state and did not carry the force of law.  *Id.* at 261-62.  The Court nonetheless denied the annotations copyright protection.  *Id.* at 266-67.  For such works that are not the law, the test is whether they are "(1) created by judges and legislators (2) in the course of their judicial and legislative duties," and the Court held LexisNexis's arrangement sufficed.  *Id.*  This decision supports UpCodes.

*Georgia* broadened public access and limited copyright protections.  Its rule allowing additional access for some works that are not the law was expressly animated by the principle that "no one can own the law."  *Id.* at 265.  As such, *Georgia* builds upon, and certainly does not undermine, the baseline rule that copyright does not apply to the law itself.  It would make no sense for the Court to provide broader prophylactic access to non-binding annotations but allow copyright holders to control access to standards that have become binding law.  Thus, *Georgia*'s authorship rule applies to materials that are not the law, but the law is in the public domain regardless of authorship.  *See CSA*, 112 F.4th at 304-05 (reaffirming *Veeck* after *Georgia*); *ICC*, 2020 WL 2750636, at *6-19 (following *Veeck* after *Georgia*).

Even if *Georgia*'s authorship test applied to the law (and not just non-binding annotations), the result would be the same here.  While ASTM is the author of the Works as model standards, the legislature took the separate, sovereign step of

making them law.  And "whatever work" the legislature "produces in the course of [its] legislative duties is not copyrightable."  *Georgia*, 590 U.S. at 276; *see Veeck*, 293 F.3d at 799; *BOCA*, 628 F.2d at 734 ("citizens are the authors of the law, and therefore its owners, regardless of who actually drafts the provisions").

### 3.    *Other cases addressing materials that do not become the law are inapposite*

Because the law is not like other works, this case (and the Fifth and First Circuit decisions) are fundamentally different from cases involving materials that were merely referenced by the law but not incorporated as part of the law itself.  *See Prac. Mgmt. Info. v. Am. Med. Ass'n* (*PMI*), 121 F.3d 516 (9th Cir. 1997); *CCC Info. Servs. v. Maclean Hunter Mkt. Reps. (CCC)*, 44 F.3d 61 (2d Cir. 1994).  Those cases "involved compilations of data that had received governmental approval, not content that had been enacted into positive law."  *Veeck*, 293 F.3d at 805 (quoting Goldstein on Copyright §2.49 at n.45.2 (3d ed. Supp. 2025)).  The Ninth Circuit addressed the American Medical Association's ("AMA") system for coding medical procedures as unique numbers, which the government contracted to use for Medicaid reimbursements.  *PMI*, 121 F.3d at 517.  As the AMA explains here, its system was "not 'the law.'"  AMA.Br.12; *see Veeck*, 293 F.3d at 805 (*PMI* defendant published AMA's code as coding system, not as law).  Similarly, the Second Circuit addressed a book of used car valuations, which insurance regulations used as one means of calculating loss value.  *CCC*, 44 F.3d at 73-74.  That book was also not the law, as

the Court compared it to books assigned as mandatory school curriculum by education regulations. *Id.* at 74.

As the Fifth Circuit explained, works "do not 'become law' merely because a statute refers to them." *Veeck*, 293 F.3d at 805. Unlike standards incorporated into the law, the compilations of data did not "define one's legal obligations." *ASTM II*, 896 F.3d at 442-43. In contrast, the Works in Suit dictate builders' obligations when using steel and aluminum. Copyright thus cannot prohibit publishing the Works as the law.

## II.    ASTM IS NOT LIKELY TO SUCCEED BECAUSE THERE IS ONLY ONE WAY TO EXPRESS THE LAW

Merger also defeats ASTM's claim. "It is axiomatic that copyright does not protect ideas, but only expressions of ideas." *Whelan Assocs. v. Jaslow Dental Lab'y*, 797 F.2d 1222, 1234 (3d Cir. 1986); *see* 17 U.S.C. §102(b). When "there are no or few other ways of expressing a particular idea," the expression and idea merge, so the expression too can be used without infringement. *Silvertop*, 931 F.3d at 222-23. Merger serves copyright's purpose of encouraging creativity by preventing copyright of an expression from "effectively monopoliz[ing] an underlying idea." *Id.*

The idea UpCodes seeks to communicate is the law of various jurisdictions. *See Whelan*, 77 F.2d at 1236 ("the purpose or function of a utilitarian work would be the work's idea" (emphasis omitted)). There is only one way to express that idea:

using the words of the Works in Suit, which were incorporated into the law through the IBC. Any other expression, even a paraphrase, would not be the law because "[s]tatutory interpretation, as we always say, begins with the text." *Fischer v. Fed. Express*, 42 F.4th 366, 375 (3d Cir. 2022); *see ASTM II*, 896 F.3d at 452 ("precision is ten-tenths of the law"). "An individual wishing to publish the text of a law cannot develop his own, unique version and still publish an authoritative copy." *Veeck*, 293 F.3d at 801. The Fifth Circuit thus held that a model code's expression merges into the idea of the law, precluding liability for publishing codes as the law. *Id.* at 800-02; *accord ICC*, 2020 WL 2750636, at *19-22 (merger requires consideration "whether previously copyrighted language has become essential to the expression of, or integrated with, a legal conception"). Otherwise, copyright holders could monopolize the law by controlling who can use the words that make up the law.

Again, the distinction between publishing the Works as the law and as model standards is important. There are multiple ways of expressing how to make steel and aluminum. If someone merely seeks to express the best way to make those materials or the industry standard for doing so, merger would not apply, and ASTM could enforce its copyright against use of the Works as model standards. *See PMI*, 121 F.3d at 520 n.8. But none of those expressions would be the law.

## III. THE DISTRICT COURT CORRECTLY CONCLUDED ASTM IS NOT LIKELY TO SUCCEED BECAUSE UPCODES' PUBLICATION OF THE LAW IS FAIR USE

Without reaching the above arguments, the district court denied an injunction on the equally correct ground that UpCodes' publication of the law is fair use. Fair use is a flexible, context-specific defense that "permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Andy Warhol Found. for the Visual Arts v. Goldsmith*, 598 U.S. 508, 527 (2023). 17 U.S.C. §107 sets out four non-exhaustive factors (discussed *supra* p.11 and in detail below) to guide courts' fair use analysis. Courts then weigh these factors "in light of the purposes of copyright"—that is, "to promote the Progress of Science and useful Arts." *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 575, 578 (1994) (quoting U.S. Const., art. I, §8, cl. 8). Those purposes require a "balancing act between creativity and availability," but the latter is primary: "Creative work is to be encouraged and rewarded, but private motivation must ultimately serve the cause of promoting broad public availability of literature, music, and the other arts." *Warhol*, 598 U.S. at 526.

The district court correctly found that the first three factors firmly support fair use, and the fourth factor at least does not weigh against it. Balancing those factors,

copyright's purposes and the public interest are better served by permitting UpCodes to publish the Works in Suit as the law.[5]

## A. The District Court Correctly Concluded The First Factor Supports Fair Use

Under the first factor—"the purpose and character of the use" (17 U.S.C. §107(1))—courts consider whether a use is transformative, whether it is commercial, and whether there is "some other justification for copying." *Warhol*, 598 U.S. at 532-33. Here, all three considerations support fair use.

### 1. UpCodes' use is transformative

#### a. UpCodes uses the Works in Suit for a distinct purpose—providing public access to the law

Transformativeness focuses on "'whether and to what extent' the use at issue has a purpose or character different from the original." *Warhol*, 598 U.S. at 529 (emphasis omitted). This "requires an analysis of the specific 'use' of a copyrighted work" because "[t]he same copying may be fair when used for one purpose but not another." *Id.* at 533. For example, when Google copied code developed for

---

[5] Amici erroneously characterize the district court's fair use holding as "the same result, *i.e.* divestiture of copyright as a practical matter," as the two defenses the court did not reach. AMA.Br.8. That misunderstands the nature of fair use. Because it is "notoriously fact sensitive," it permits UpCodes' specific use without divesting ASTM of its copyright. *Georgia*, 590 U.S. at 275; *see ASTM II*, 896 F.3d at 447 (describing fair use as "narrower" because "it limits the economic consequences that might result from the [standards developing organizations] losing copyright").

computers and used it in the "distinct and different computing environment" of smartphones, its distinct purpose was transformative. *Id.* at 532 n.8 (quoting *Google*, 593 U.S. at 31).

Here, the district court correctly found UpCodes' use was transformative because UpCodes uses the Works in Suit for a different purpose than ASTM's original use. ASTM developed the Works as model standards to "bolster safety and performance in a variety of industries" by providing, *e.g.*, "recommended practices to promote safety or efficiency, or other guidelines or best practices." JA269-270. ASTM described its purpose as "serving global societal needs by positively impacting public health and safety, consumer confidence, and overall quality of life through the development of voluntary consensus standards." JA270.

UpCodes, in contrast, does not use the Works as model standards. As explained above (*supra* pp.8-10), UpCodes publishes them only as the law of specific jurisdictions—posting just the versions incorporated into the law and identifying them by the jurisdictions that adopted them. As the law, the Works take on a different character. UpCodes' purpose is not to provide the industry with latest best practices, but to provide "a free, online, accurate, up-to-date, extensive library of building codes and standards as enacted into law." JA1668.

In another case filed by ASTM, the D.C. Circuit held this "distinction between standards as best practices and standards as law" made the use transformative.

27

*ASTM IV*, 82 F.4th at 1268.  There, the defendant posted standards incorporated into law "to provide the public with a free and comprehensive repository of the law."  *Id.*  The court found this transformative because, as here, the defendant "publish[ed] only what the law is, not what industry groups may regard as current best practices."  *Id.*  When standards were updated, the defendant there (like UpCodes here) published only the older versions incorporated into law.  *Id.*  The court explained how this highlighted the different purposes:  "although the standards at issue have been superseded or withdrawn as private standards, they remain important to someone trying to figure out what the law is."  *Id.*

Thus, here too, the first factor "strongly" supports fair use.  *Id.* at 1267.

> **b.**  **UpCodes' use is justified by the importance of public access to the law**

The first factor also considers other "independent justification" for the use.  *Warhol*, 598 U.S. at 531-32.  For example, Google's copying of software code was justified because "shared interfaces are necessary for different programs to speak to each other."  *Id.* at 532 n.8 (quoting *Google*, 593 U.S. at 31); *see Sega Enters. v. Accolade*, 977 F.2d 1510, 1522-23, 1527-28 (9th Cir. 1992) (recognizing "legitimate" justification when use was only way to access ideas embodied in computer code).

UpCodes' use is justified by society's interest in public access to the law.  As explained above (*supra* pp.17-18), free public access to the law is essential for

protecting regulated entities' due process rights, beneficiaries' enforcement rights, and the public's ability to participate in democracy. Those considerations are particularly strong here because, without UpCodes, there would be no way for the general public to access the law for free. *See supra* pp.6-7. UpCodes' use thus provides an important public benefit that ASTM does not offer by selling model standards.

### c.    ASTM's contrary arguments fail

#### i.    *ASTM ignores on-point appellate precedent*

ASTM has no response to the D.C. Circuit's analysis, despite the district court's reliance on this precedent. And ASTM cites no contrary appellate decision. Instead, it relies on an unpublished district court decision denying summary judgment and allowing a trial on fair use. ASTM.Br.34-35 (citing *NFPA*, JA2515-2516). That same district court, however, *denied* a preliminary injunction because fair use was at least considerable enough to defeat the plaintiff's likelihood of success at that stage. *NFPA*, 2021 WL 4913276, at *5-7. And all other district courts considering UpCodes' publication of the law have found it transformative. *FGI*, 677 F. Supp. 3d at 970-71; *ICC*, 2020 WL 2750636, at *24-25.

In any event, this case differs from *NFPA*. While ASTM charges for access to any format of the Works, NFPA made its standards available for free online. JA2489. The *NFPA* court relied on this fact when analyzing the first factor.

JA2518-2519 ("That UpCodes provides access to the text of standards is not new or different because NFPA already provides free access to the same standards."). Here, finding no fair use would leave the public without free access to the law.

### ii.    *ASTM applies an erroneously narrow view of transformativeness*

ASTM approaches transformativeness too narrowly by focusing solely on whether UpCodes added to the Works. ASTM.Br.30-32. But uses "need not alter or augment the work to be transformative." *A.V. ex rel. Vanderhye v. iParadigms*, 562 F.3d 630, 639 (4th Cir. 2009). As explained above, what matters is whether the use has a "different function and purpose than the original work[]." *Id.* (archiving student essays "unaltered and in [their] entirety" to detect plagiarism was transformative); *see ASTM II*, 896 F.3d at 450; *ASTM IV*, 82 F.4th at 1268. For example, "[i]n the context of news reporting and analogous activities, … the need to convey information to the public accurately may in some instances make it desirable and consonant with copyright law for a defendant to faithfully reproduce an original work without alteration." *Swatch Grp. Mgmt. Servs. v. Bloomberg*, 756 F.3d 73, 84-85 (2d Cir. 2014) (publishing "identical" recording of earnings call with "no additional commentary or analysis" for news reporting was transformative).

Nor does the use need to provide criticism or commentary. *Contra* ASTM.Br.32. The fair use examples listed in 17 U.S.C. §107 are not exhaustive and "do not exclude other examples." *Google*, 593 U.S. at 19. Regardless, UpCodes'

use serves other listed purposes because free public access to the law is important for teaching, scholarship, research, and news reporting. *See* Amicus Br. at 6-7, *ASTM v. UpCodes*, No. 2:24-cv-01895-AB (E.D. Pa. Aug. 2, 2024), ECF 71-1; *ICC*, 2020 WL 2750636, at *24.

### iii.   *ASTM mischaracterizes UpCodes' use*

ASTM further errs by misunderstanding the character of UpCodes' use. UpCodes has not merely changed mediums to create derivative works. ASTM's focus on UpCodes' "scanning" (ASTM.Br.32) thus misses the point. UpCodes' use is transformative not because of any change in medium, but because it publishes the Works as the law, not as model standards. The law is different from a "derivative work" because giving the Works binding legal force changes their very character, not just their format. *Cf.* 17 U.S.C. §101 (derivative works include, *e.g.*, "translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgement, condensation, or any other form in which a work may be recast, transformed, or adapted").

ASTM also attempts to blur its purpose and UpCodes' (ASTM.Br.33), but it cannot elide the fundamental difference between publishing model standards and publishing the law. Although they may involve the same words, that is only because the words of the standard are the only way to express the law. *Supra* pp.23-24. ASTM claims to publish the same standards, but it does not publish them *as the law*.

ASTM.Br.33. ASTM points to no ASTM publication that identifies its standards as the law of any specific jurisdiction, and it does not claim to inform users which jurisdictions have incorporated a standard, which version of the standard was incorporated, or whether there were amendments. *Compare* ASTM.Br.33 (citing JA1487-1490; JA270; JA278; JA280), *with Veeck*, 293 F.3d at 793 (defendant published code as law where publication was "identified simply as the building code of a city that enacted the model code as law"). The district court found ASTM's purpose was to publish model standards to improve industry safety and performance (JA22-23), and the record supports no other purpose. *See Del. Strong Fams.*, 793 F.3d at 308 (fact findings reviewed for clear error).

### iv.        *ASTM mischaracterizes the decision below*

Finally, the district court faithfully followed *Warhol*'s instruction that purpose and character is an "objective inquiry." 598 U.S. at 545. ASTM's contrary argument misconstrues the decision below as doing the opposite of what it says. ASTM.Br.33-34. The court expressly stated it was relying on evidence of "objective indicia of the use's purpose and character, including … the reasons for copying," not on UpCodes' "subjective intent." JA24 n.26 (quoting *Warhol*, 598 U.S. at 549-50). For example, it relied on the fact that UpCodes posted only the versions of the Works incorporated into law, even though all but one of the Works had since been updated. JA24. The court correctly found that UpCodes' refusal to post newer versions was

objective evidence of its purpose of publishing the law, not model standards.  JA24. ASTM identifies no record evidence showing this finding was clear error.  *See* ASTM.Br.33-34.

### 2.    *UpCodes' use is non-commercial*

### a.    UpCodes provides free public access to the law

The first factor also supports fair use because UpCodes' use is non-commercial.  "There is no doubt that a finding that copying was not commercial in nature tips the scales in favor of fair use."  *Google*, 593 U.S. at 32.  This factor "concerns the unfairness that arises when a secondary user makes unauthorized use of copyrighted material to capture significant revenues as a *direct consequence* of copying the original work."  *Am. Geophysical Union v. Texaco*, 60 F.3d 913, 922 (2d Cir. 1994) (emphasis added).

Here, the district court correctly found UpCodes' use was non-commercial because UpCodes provides free access to the Works in Suit.  JA21-22.  As explained above, anyone can create a free UpCodes account and view, copy, paste, and print standards incorporated into law without charge.  JA1668.  Nor does UpCodes sell advertising space on its free webpages.  *E.g.*, JA377-885 (showing webpages). UpCodes thus does not "charge[] customers for copies of incorporated standards" or derive other profit from providing free access to the law.  *ASTM IV*, 82 F.4th at 1270.

Instead, UpCodes derives its profit from offering advanced tools and services it created. ASTM mischaracterizes this business model. UpCodes does not sell a subscription service for premium access to the law. *Contra* ASTM.Br.27. Rather, all users have full access to the Works and other standards incorporated into law for free. What the optional subscription sells is "advanced search and collaboration features," created by UpCodes, that subscribers can use on any of the freely accessed laws. JA1668. Thus, unlike in *Video Pipeline v. Buena Vista Home Entertainment*, where users paid to access copyrighted movie clips, UpCodes' subscribers do not pay to access the Works. *Cf.* 342 F.3d 191, 195 (3d Cir. 2003). They pay for tools that enable them to, *e.g.*, bookmark sections, create annotations, engage with UpCodes' AI assistant, and use automation to identify potential errors in their projects. JA1668. That is UpCodes' innovation, not ASTM's copyrighted work.

Moreover, courts must weigh the private commercial gain (if any) against the "broader public benefits." *Texaco*, 60 F.3d at 922; *see Sega*, 977 F.2d at 1523 ("We further note that we are free to consider the public benefit resulting from a particular use notwithstanding the fact that the alleged infringer may gain commercially."). That further reinforces the non-commercial nature of UpCodes' use because free access to the law benefits the public by serving due process, government accountability, and democratic participation. *See supra* pp.17-18.

### b.    ASTM's contrary arguments fail

#### i.    *The first factor analyzes the specific use, not the defendant's for-profit status*

ASTM does not deny that UpCodes provides free access to the Works; instead, it tries to blur this non-commercial use with UpCodes' other activities as a for-profit business. ASTM.Br.27-28. But the Supreme Court emphasized the first factor focuses on the "specific 'use'" that is allegedly infringing. *Warhol*, 598 U.S. at 533. Thus, a use is not commercial merely because the defendant is a for-profit company. *E.g.*, *Lexmark Int'l v. Static Control Components*, 387 F.3d 522, 544 (6th Cir. 2004), *abrogated on other grounds by eBay v. MercExchange*, 547 U.S. 388 (2006); *Bouchat v. Balt. Ravens*, 619 F.3d 301, 314 (4th Cir. 2010).

For example, in *Bouchat*, the Fourth Circuit analyzed an NFL team's two uses of a former logo, which appears on helmets in historical videos and photos. 619 F.3d at 308-11, 314. Emphasizing the need to assess each use's commerciality "on its own terms," the court held the logo's appearance in highlight films played at games was commercial, but its use in photos in the team's headquarters lobby was non-commercial. *Id.* (citation omitted). Although the team was a for-profit entity, the court found significant that "[t]he lobby is open to the public, free of charge." *Id.* at 314. Likewise, while UpCodes is a for-profit entity, it makes the Works available to "the public, free of charge," and that use is non-commercial.

       ***ii.***      ***Mere tangential benefits cannot turn a non-commercial use into a commercial one***

ASTM's reliance on tangential benefits like increased website traffic (ASTM.Br.28-29) fares no better. As the district court found, that does not translate to direct profit. JA22. If such attenuated non-monetary benefits were sufficient to turn free access into commercial use, commerciality would be so expansive as to lose its meaning. *See Hachette Book Grp. v. Internet Archive*, 115 F.4th 163, 185-86 (2d Cir. 2024) (website's links to buy books from for-profit partner and other tangential non-monetary benefits did not make free library commercial).

Even for uses that (unlike UpCodes') are indirectly commercial, the question is one of degree. *Sega*, 977 F.2d at 1522. While non-commercial use supports fair use, "the inverse is not necessarily true, as many common fair uses are indisputably commercial." *Google*, 593 U.S. at 32. Courts have discounted commerciality's significance where "any commercial 'exploitation' was indirect or derivative." *Sega*, 977 F.2d at 1522; *Swatch*, 756 F.3d at 83 ("attenuated"); *Seltzer v. Green Day*, 725 F.3d 1170, 1178 (9th Cir. 2013) ("incidental"). And "the more transformative the new work, the less will be the significance of other factors, like commercialism." *Campbell*, 510 U.S. at 579. Even under ASTM's erroneous characterization of the facts, then, the first factor would not weigh against fair use.

### iii.    *ASTM fails to show the district court's finding of no direct profit was clear error*

The stray facts ASTM cites (ASTM.Br.29-30) fall far short of establishing clear error in the district court's factual finding that UpCodes "derives no direct monetary profit from publishing" the Works.  JA22; *see Del. Strong Fams.*, 793 F.3d at 308.

First, ASTM presents no record evidence substantiating UpCodes' supposed view of large firms as "ideal users" and individuals as "anti-users."  ASTM.Br.29. ASTM cites only the *NFPA* court's characterization of the distinct record before it, which provides no context or even the speaker of the purported statement.  *Id.* (citing JA2490).  The district court here did not clearly err by relying only on evidence in this case, not extra-record evidence before another court.

Second, UpCodes' communications with one customer about posting additional laws does not render the district court's finding clear error.  *Contra* ASTM.Br.29.  That customer noted its positive experience with UpCodes' "various features," which is what the paid subscription sells.  JA2416.  That UpCodes is expanding its library of laws, or that it is attentive to its users, does not change that access to all posted laws is free or that subscribers buy UpCodes' tools, not the law.

Finally, it is irrelevant to fair use whether UpCodes paid ASTM's licensing fee.  *Contra* ASTM.Br.30.  Fair use is a defense permitting some copying that would

otherwise be infringement. 17 U.S.C. §107. In every fair use case, the defendant has not paid for authorization to use the work.

*   *   *

For these reasons, UpCodes' use is transformative and noncommercial, and the first factor strongly favors fair use.

## B.    The District Court Correctly Concluded The Second Factor Strongly Supports Fair Use

The second factor is "the nature of the copyrighted work." 17 U.S.C. §107(2). The district court correctly found this factor strongly supports fair use. JA28.

### 1.    The Works in Suit are not only factual—they are the law

The second factor "calls for recognition that some works are closer to the core of intended copyright protection than others." *Campbell*, 510 U.S. at 586. The D.C. Circuit held that ASTM standards like the Works in Suit were, "at best, at the outer edge of copyright's protective purposes." *ASTM IV*, 82 F.4th at 1268. The same is true here for at least two reasons.

First, "[t]he law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy." *Harper & Row Publishers v. Nation Enters.*, 471 U.S. 539, 563 (1985); *see Sega*, 977 F.2d at 1524 (weak protection for "historical or biographical works" or "accounting textbooks"). The Works are technical standards about steel and aluminum used in construction, such as requirements for making steel pipe piles. JA2115-2215. As the D.C. Circuit held, technical standards

38

"fall at the factual end of the fact-fiction spectrum, which counsels in favor of finding fair use." *ASTM IV*, 82 F.4th at 1268.

Second, whatever protection technical standards may have as model standards, they move even further from "the core of intended copyright protection" (*Campbell*, 510 U.S. at 586) when they become the law. Legal text "falls plainly outside the realm of copyright protection." *ASTM IV*, 82 F.4th at 1268. For reasons explained above (*supra* p.18), standards that become the law through incorporation by reference should too. But if they somehow retain some copyright protection, it should be minimal, as the D.C. Circuit held. *ASTM IV*, 82 F.4th at 1268. In effect, an incorporated standard is "'virtually indistinguishable from a situation in which the standard had been expressly copied into law,' so the second factor thus 'weighs heavily in favor of fair use.'" *Id.*

### 2.     *ASTM's attempts to minimize the second factor fail*

#### a.     **The second factor is significant in the context of the law**

ASTM again has no response to the D.C. Circuit. ASTM.Br.46-48. Instead, it erroneously asks the Court to discount the second factor. The Supreme Court recently rejected a dissenting Justice's similar submission that certain factors (one and four) are more important than the others. *Google*, 593 U.S. at 23. The Court emphasized instead that "fair use depends on the context." *Id.* Which factor carries more weight depends on the particulars of each case, and courts have regularly

considered the second factor important.  *See id.* at 26 (starting analysis with second factor); *Sega*, 977 F.2d at 1522 (second factor "is important to the resolution of cases such as the one before us"); *L.A. News Serv. v. CBS Broad.*, 305 F.3d 924, 940, 942 (9th Cir. 2002) (finding fair use where three factors, "particularly the nature of the copyrighted work," favored fair use), *amended*, 313 F.3d 1093 (2002).

Here, the second factor is particularly significant because the Works' status as the law sets them apart from other works, which do not have binding legal effect. That character implicates due process and democratic concerns in ways ordinary creative works do not.  The D.C. Circuit thus held this factor "strongly" supports fair use (*ASTM IV*, 82 F.4th at 1268), and it would be error to discount it here.

### b.    A second layer of incorporation does not change that the Works in Suit are the law

ASTM erroneously attempts to distinguish the Works from other standards incorporated into law on the ground that the Works were incorporated into the IBC, which was in turn incorporated into law.  ASTM.Br.47.  The district court noted that, despite many opportunities to do so, ASTM never explained why incorporation by reference through the IBC should be treated differently than direct incorporation. JA38-39 & n.32.  On appeal, ASTM repeats the conclusory statement that this case involves two layers of incorporation without explaining why that matters. ASTM.Br.47; *see English v. Fed. Nat'l Mortgage Ass'n*, 752 F. App'x 148, 150 (3d Cir. 2019) ("We do not consider undeveloped arguments ….").

Regardless, the district court was correct that there is no meaningful difference because the legal consequence is the same.  JA40-41.  As explained above, the IBC provides that incorporated standards "are part of this code to the extent of the reference of the standard," and the references in turn state that builders must use steel and aluminum that "conform to the material requirements" of the Works in Suit.  JA1298; JA346.  That language is mandatory, so complying with the Works is as much a requirement of the IBC as other obligations spelled out in the IBC itself.  *See ASTM II*, 896 F.3d at 442-43 (incorporations most like "ordinary, binding law" are those that "mak[e] compliance mandatory," *e.g.*, requiring fuel to "meet[] ASTM D975 diesel specifications").  Failure to obey the Works violates the IBC and thus violates laws, like Philadelphia's, that incorporated the IBC.[6]

---

[6] Amici raise arguments not made by ASTM, but this Court does not consider "arguments raised solely in amicus briefs 'where[, as here,] the parties are competently represented by counsel.'"  *Russo v. Bryn Mawr Tr.*, No. 22-3235, 2024 WL 3738643, at *6 n.4 (3d Cir. Aug. 9, 2024).  Regardless, amici's arguments fail for at least three reasons.  *First*, amici rely on federal regulations limiting how federal incorporations by reference should be interpreted (ANSI.Br.16-17), but those guidelines do not apply to state and local jurisdictions.  *Second*, amici's suggestion that standards incorporated into the IBC are merely recommendations (ANSI.Br.31-32) is refuted by the IBC's express text, which, as explained just above, is mandatory.  *Third*, amici's exaggerated concern about the sweep of potential incorporations (ANSI.Br.23-27) ignores the difference between standards like the Works, which become the law and set binding legal obligations, and materials like *CCC*'s book of car valuations or books listed in school curricula, which are merely referenced but do not themselves impose legal obligations on primary conduct.  *See supra* pp.22-23.

**C.    The District Court Correctly Concluded The Third Factor Supports Fair Use**

The third factor is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. §107(3). The district court correctly concluded this factor supports fair use. JA29-33.

### 1.    *Copying the entire Works in Suit was necessary for UpCodes' transformative purpose of publishing the law*

The third factor "generally weigh[s] in favor of fair use where, as here, the amount of copying was tethered to a valid, and transformative, purpose." *Google*, 593 U.S. at 34-35 (third factor favored fair use where copying declaring code was "key" to Google's purpose of making platform Java-compatible). This factor's analysis "harken[s] back to the first of the statutory factors, for … the extent of permissible copying varies with the purpose and character of the use." *Id.* ASTM thus concedes that its third-factor argument depends on the first factor. ASTM.Br.44-45. Even copying the entire work is permissible where it is "reasonably necessary" for a transformative purpose. *Authors Guild v. HathiTrust*, 755 F.3d 87, 98-99 (2d Cir. 2014).

Consistent with the D.C. Circuit, the district court correctly found reproducing the entire Works in Suit was necessary for UpCodes' transformative purpose of publishing the law. JA30-33. As the D.C. Circuit held, "[i]f an agency has given legal effect to an entire standard, then its entire reproduction is reasonable in relation

to the purpose of the copying, which is to provide the public with a free and comprehensive repository of the law." *ASTM IV*, 82 F.4th at 1269. Because "precision is ten-tenths of the law," providing only part of the law would not suffice. *ASTM II*, 896 F.3d at 452. Here, where the law through the IBC requires, *e.g.*, steel pipe piles to "conform to the material requirements in ASTM A252" (JA346), the whole standard is incorporated, and all of ASTM A252 is needed to know the law.

### 2. *UpCodes' transformative purpose justified including supplemental materials necessary to understand the law*

ASTM makes passing reference to "non-mandatory" portions of the Works, but it does not identify what those supposed portions are or why they are not the law. ASTM.Br.46. As noted earlier, such undeveloped arguments are forfeited. *See English*, 752 F. App'x at 150. Regardless, publishing all parts of the Works is necessary for the public to understand the law.

ASTM erroneously cites the D.C. Circuit's 2018 decision (ASTM.Br.46), which did not decide this question, but ignores that court's 2023 decision, which directly addressed it—and rejected ASTM's argument. *ASTM IV*, 82 F.4th at 1269-70. The D.C. Circuit ultimately held that publishing incorporated standards was fair use and rejected ASTM's attempt to exclude supplemental materials within those standards. *Id*. It explained that "because law is interpreted contextually, even explanatory and background material will aid in understanding and interpreting legal duties." *Id*. Just as "[c]ourts routinely consult congressional findings, statements of

purpose, and other background material enacted by Congress to decipher the meaning of ambiguous statutory provisions," "[t]he introductory and background material in an incorporated standard—along with rules addressing how the standard operates in other contexts besides the one directly at issue—may prove similarly important for resolving ambiguities in the portions of standards that set forth the directly binding legal obligations." *Id.* at 1270.

The Works here illustrate the D.C. Circuit's point.  All of the standard, including notes and appendices, is needed to understand how to comply with the law.  For example, the standard ASTM cites (ASTM.Br.46) requires that the wall thickness of steel pipe piles "shall not be more than 12.5% under the specified nominal wall thickness." JA477.  A note points to an appendix table with minimum permissible wall thicknesses for various nominal wall thicknesses, including the formula for calculating it.  JA477; JA501-503.  While labeled "Nonmandatory Information" (JA501), this information is part of the law in the same way statutory examples or safe harbors are—it illustrates how to comply with the mandatory wall thickness requirement by providing the calculations mandated by that rule.  Other notes and appendices are likewise important for understanding how to interpret the standard.  *E.g.*, JA522 (defining term "lot" as used in requirement 8.3); JA572 (explaining how producer can demonstrate compliance with maximum lead level in

requirement 6.2). Publishing the entire Work is thus "reasonably necessary" for UpCodes' purpose of publishing the law. *See HathiTrust*, 755 F.3d at 98-99.

In any event, if a court or governing body were to indicate that some supplemental material was not part of that jurisdiction's law, such that regulated parties would not be held to that content or interpretation, UpCodes would voluntarily remove that part of the Work. JA2039. But ASTM has not identified any jurisdiction that has carved out part of these Works.

### D. The District Court Correctly Concluded The Fourth Factor Does Not Weigh Against Fair Use

The fourth factor is "the effect of the use on the potential market for or value of the copyrighted work." 17 U.S.C. §107(4). This factor considers not only the asserted private harm to ASTM, but also "the public benefits the copying will likely produce." *Google*, 593 U.S. at 35. While ASTM cites older cases suggesting this factor is the most important (ASTM.Br.36 (citing *Harper*, 471 U.S. at 566)), the Supreme Court has since rejected a categorical rule "prioritiz[ing] certain factors over others." *Google*, 593 U.S. at 23; *see supra* pp.39-40.

Here, there is no evidence of cognizable harm to ASTM's market for model standards, and even if there were some minimal harm, it would be outweighed by the significant public benefits of free access to the law. The fourth factor thus favors fair use or at the very least, as the district court concluded, does not weigh against it.

### 1.    *ASTM has not suffered any cognizable market harm*

> **a.    UpCodes' use affects only the market for the law, not ASTM's market for model standards**

When assessing market harm, courts must identify and separate "those harms that are 'cognizable under the Copyright Act'" from those that are not.  *Google*, 593 U.S. at 39.  A "potential loss of revenue is not the whole story" because courts "must consider not just the amount but also the source of the loss."  *Id.* at 35.  For example, in *Google*, the Court held the fourth factor favored fair use even though Google's copying caused Oracle to lose "significant" money.  *Id.* at 38.  The Court explained that it mattered "why and how Oracle might have become entitled to this money":  Google used copyrighted Java code because third-party programmers had already learned Java, not because of the code's creative qualities.  *Id.* at 38-39.  The Court held copyright does not "protect third parties' investment in learning how to operate a created work."  *Id.* at 39.

ASTM's market harm argument conflates two distinct markets:  the market for model standards (which is cognizable) and the market for the law (which is not).  As explained above (*supra* pp.17-19), while copyright can convey a monopoly over a model standard, it cannot convey a monopoly over the law because "no one can own the law."  *Georgia*, 590 U.S. at 265.  To the extent ASTM claims loss because people who would otherwise pay for the law can now access it for free through UpCodes, that harm is not cognizable because ASTM was never entitled to exclusive

profits from the law. *See Sony Comput. Ent. v. Connectix*, 203 F.3d 596, 607 (9th Cir. 2000) (while "Sony understandably seeks control over the market for devices that play games Sony produces or licenses," copyright "does not confer such a monopoly"); *Lexmark*, 387 F.3d at 544-45 (district court "focused on the wrong market" where market for toner cartridges, which "may well be diminished," was "not the sort of market or value that copyright law protects").

Here, the distinct markets are not merely theoretical; they are embodied by the standards' different versions. If someone wants to understand the law, they need the version of the standard incorporated by the law. But if someone wants the model standard to understand industry best practices, they need the newest version to keep current with the latest developments. For all but one of the Works in Suit, ASTM has updated the standard since it was incorporated by the IBC (*supra* p.10), so these two people would seek different versions. As explained above, UpCodes publishes only the older incorporated version, not the newer version reflecting current industry standards. It thus participates only in the market for the law, which is not cognizable under copyright, and does not affect ASTM's market for model standards.

ASTM's data illustrates this. It sells PDFs of each version of a standard, which allows it to track yearly sales of older versions.[7] To start, the Works were a

---

[7] ASTM did not provide comparable data for subscription revenue, which it could not attribute to particular Works, let alone specific versions. JA2344.

miniscule part of ASTM's revenue. In 2023, ASTM generated $113 million in revenue, an increase from $106 million in 2022. JA1628. Of those millions, only ██████ in 2023 and ██████ in 2022 were attributable to PDF sales of the Works. JA2355. And, as one would expect of a market for model standards, the Works' sales decreased significantly when a newer version of the standard was released. When ASTM updated A36 in 2019, sales of the 2014 version that UpCodes posts as the law plummeted ██████ from ██████ in 2019 to just ██ in 2020. JA2355. The same was true of the update to B209 in 2021 (dropping from ██████ in 2021 to ██ in 2022) and A706 in 2022 (from ██████ in 2021 to ██████ in 2022). JA2355. And once a Work was superseded, sales remained miniscule. For Works updated by or before 2019, two had ██████████ since 2019, and four each earned ASTM ██████ total over the last five years. JA2355.

Thus, at most, UpCodes competes only with these minimal revenues ASTM makes from the market for the law, and that small amount is not cognizable under copyright. UpCodes' publication of the law does not substitute for ASTM's latest model standards, which generate most of its revenue. As the D.C. Circuit explained, ASTM "regularly update[s] [its] standards," but "regulators apparently are much less nimble in updating the incorporations," "[s]o many of the builders, engineers and other regular consumers of the plaintiffs' standards may simply purchase up-to-date versions as a matter of course." *ASTM IV*, 82 F.4th at 1271. The district court

mistakenly assumed UpCodes would cause ASTM market harm only because it failed to recognize the difference between these markets.  JA34-35.

### b.    ASTM's evidence does not establish market harm

None of the evidence ASTM cites establishes harm to its market for model standards.  Its claim that UpCodes "share[s] the 'same target market' and 'compete[s] for the same customers and sales'" (ASTM.Br.39 (citing JA2525)) is false because it fails to distinguish between the markets for model standards and for the law.  The language ASTM quotes is not evidence, but merely another district court's statement, which is neither binding nor persuasive.  JA2525.

ASTM's claim that standard sales and licensing provide 70% of its revenue (ASTM.Br.39) is irrelevant for the same reason.  ASTM fails to identify how much of that is attributed to versions of standards incorporated into law and how much to updated versions or standards that were never incorporated and that UpCodes does not post.  The above data suggests that the latter dwarfs the former.  *Supra* p.48.

ASTM also overstates the overlap between UpCodes' and ASTM's users. ASTM states 15% of individuals who accessed the Works in Suit via UpCodes were ASTM subscribers (ASTM.Br.39), but it fails to mention this is a grand total of four people.  JA2474; JA2401-2409.  ASTM assumes another 20% of UpCodes users (five people) work at companies that subscribe to ASTM, but this is mere speculation from the fact that an ASTM subscriber's email shares the same domain as an

UpCodes user.  JA2474; JA2401-2409.  Those five UpCodes users are not ASTM subscribers themselves, and a common domain name does not necessarily mean the company is an ASTM subscriber, let alone for all its employees.

Regardless, even if nine people used UpCodes to access the law while subscribing to ASTM for model standards, that does not establish market harm.  ASTM presents no evidence that any of these nine people stopped subscribing to ASTM because they accessed the law on UpCodes.  And in the emails ASTM cited between UpCodes and other potential users (ASTM.Br.40), UpCodes made clear that it posted only "the adopted codes of jurisdictions"—that is, the law.  JA2424.

### c.    Even if publishing the law were widespread, ASTM would not suffer cognizable market harm

Unable to show harm to the Works in Suit, ASTM speculates it could be harmed if UpCodes' practice were widespread.  ASTM.Br.40-41.  But speculation is unnecessary because other cases involving publication of many more incorporated standards show what would happen to ASTM's market—nothing.

While UpCodes posted the Works only since April 2024 (JA1670-1674), Public.Resource.Org has posted hundreds of incorporated standards for over fifteen years.  *ASTM IV*, 82 F.4th at 1271; *ASTM II*, 896 F.3d at 444 (nearly 300 standards from ASTM and two other organizations).  The D.C. Circuit found it "telling" that, despite that widespread longstanding practice, the plaintiffs were still "unable to produce any economic analysis showing that Public Resource's activity has harmed

any relevant market for their standards." *ASTM IV*, 82 F.4th at 1271. In fact, "ASTM's sales have increased over that time." *Id.*; *see* JA1628 (showing recent increase also). The D.C. Circuit was thus skeptical of market harm that the plaintiffs claimed was a "common-sense inference" but could defend only with "conclusory allegations and speculation." *ASTM IV*, 82 F.4th at 1271.

Likewise, when the Fifth Circuit held in 2002 that publishing model codes incorporated into law "as *law*" was not infringement (*Veeck*, 293 F.3d at 795-803), that holding did not produce the market effects one would expect if ASTM were right. Instead, as the D.C. Circuit recognized, the *Veeck* plaintiff's successor organization "remain[ed] profitable both through sales of codes and of 'program services, including consulting, certification, and training.'" *ASTM II*, 896 F.3d at 453. These examples show that uses like UpCodes' are already widespread—and have produced none of ASTM's predicted harms.

### 2.     *Even if there were market harm, it is offset by significant public benefits*

#### a.     UpCodes' use benefits the public by providing the only free access to the law

Even if ASTM would suffer market harm, it would be outweighed by "the public benefits the copying will likely produce." *Google*, 593 U.S. at 35; *see id.* at 39-40 (considering public benefits as part of fourth factor analysis and concluding that using coding language programmers already knew benefited public by

facilitating creation of new applications). As explained above, free public access to the law is essential for due process, enforcement of rights, governmental accountability, and democratic participation. It benefits those who must comply with the law, those who are protected by the law, those who must enforce the law, and those who wish to study, debate, or change the law. *Supra* pp.17-18. The D.C. Circuit thus weighed the "substantial public benefits of free and easy access to the law" in favor of fair use under the fourth factor. *ASTM IV*, 82 F.4th at 1271.

ASTM's attempts to diminish these benefits fail. *First*, its comparison to *Hachette* (ASTM.Br.42) is inapt because the works there were not law. *Hachette*, 115 F.4th at 175 (defendant scanned books to create free online library). Public access to fiction and non-fiction books does not provide the same due process and democratic benefits that free public access to the law does.

*Second*, ASTM's claimed unawareness of anyone who was unable to access the Works due to cost (ASTM.Br.42) misses the point. As a practical matter, it is unlikely that ASTM or UpCodes would have knowledge or records of those people. Regardless, free access to the law benefits members of the public even if they are not indigent. People should not have to pay to understand binding legal rights and obligations. And some who are not bound but who want to learn or write about the law may be discouraged by cost even if they could afford it.

*Third*, ASTM's claim that it would provide a free PDF if someone contacted it and said they could not pay (JA2341) is no substitute for free public access. As noted above (*supra* p.7 n.1), there is no evidence that this possibility was made known to the public or actually used to provide anyone access to the Works in Suit. And ASTM's supposed largesse appears merely discretionary, as ASTM does not claim to have any internal guidelines or policies about providing standards for free. UpCodes thus remains the only way for the general public to access the law for free.[8]

### b. The district court's finding of no public detriment to ASTM's incentives to create was not clear error

ASTM's attempt to counter the public benefit with purported detriment from its inability to develop standards (ASTM.Br.43-44) is illusory. There is no evidence ASTM and other standards organizations will be unable or unwilling to continue what they do. As explained above (*supra* pp.47-48), ASTM's revenue from

---

[8] Amici—but not ASTM—argue that public benefits are not part of the fourth factor analysis. AAP.Br.13-17. As explained above, the Court should not consider such arguments. *Russo*, 2024 WL 3738643, at *6 n.4. Regardless, the argument fails because it contradicts binding Supreme Court precedent considering public benefit under the fourth factor. *Google*, 593 U.S. at 35-36. While the Court recognized that not all questions would be relevant in every fair use case (*id.*), public benefits are particularly relevant here where the Works are the law. The Court did not confine public benefit to computer programs, and courts of appeals have followed *Google* in other contexts, including this one. *Id.* (citing *MCA v. Wilson*, 677 F.2d 180 (2d Cir. 1981), which was not about computers); *e.g.*, *Designworks Homes v. Columbia House of Brokers Realty*, 126 F.4th 589, 599 (8th Cir. 2025) ("Additionally, we consider … benefits to the public."); *ASTM IV*, 82 F.4th at 1272. And even if public benefit were not considered under the fourth factor, it would be considered when balancing the factors anyway.

standards derives primarily from the market for model standards, not the market for the law, so ASTM's claim that it risks losing 70% of its revenue is unsupported. *Contra* ASTM.Br.39.

Moreover, the district court found ASTM would have incentives to develop standards even without copyright revenues (JA35-36), and that factual finding was not clear error. *Del. Strong Fams.*, 793 F.3d at 308. ASTM faults the court for relying on amici (ASTM.Br.38-39), but other record evidence supports the court's finding and conveys effectively the same thing as amici. ASTM's general counsel testified its mission is to provide members with a process for developing technical standards, which "do many different things and are created for many different reasons," including improving safety. JA2329; JA270 ("ASTM is committed to serving global societal needs by positively impacting public health and safety, consumer confidence, and overall quality of life through the development of voluntary consensus standards."); *see* Goldstein on Copyright §2.5.2.1(c) (3d ed. Supp. 2025) ("Trade organizations have powerful reasons stemming from industry standardization, quality control and self-regulation to produce these codes; it is unlikely that without copyright they will cease producing them."). And the record confirms amici were correct that ASTM has other ways to profit from incorporated standards, such as by selling compliance-focused training programs. JA1480-1481;

JA3 (citing *Environmental Training*, ASTM, http://environment.qa-training. astm.org/#/).

Tellingly, as discussed above (*supra* pp.50-51), standards organizations have continued to develop standards and increase revenues even after the Fifth Circuit's and D.C. Circuit's decisions diminished their copyright protections.

### E.    The District Court Correctly Balanced The Factors And Concluded They Support Fair Use

For all these reasons, the first three factors strongly support fair use, and the fourth factor does not weigh against it.  The district court correctly concluded the balance of the factors supports fair use.  JA37-38.  The purposes of copyright and the public interest are best served by permitting UpCodes to publish the law.

## CONCLUSION

This Court should affirm the denial of a preliminary injunction.

Dated:  March 24, 2025

Joseph C. Gratz
Hannah Jiam
Joel F. Wacks
Morrison & Foerster llp
425 Market Street
San Francisco, CA 94105

Respectfully submitted,

/s/ Joseph R. Palmore
Joseph R. Palmore
Aditya V. Kamdar
Morrison & Foerster llp
2100 L Street NW, Suite 900
Washington, DC 20037
Tel:  (202) 887-6940
JPalmore@mofo.com

*Counsel for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE, BAR MEMBERSHIP,
## AND ELECTRONIC VIRUS CHECK

The foregoing filing complies with the relevant type-volume, typeface, and type style requirements of the Federal Rules of Appellate Procedure because it has been prepared using a proportionally spaced typeface, including serifs, in 14-point Times New Roman font using Microsoft Word and includes 12,925 words, excluding the parts exempted by the Rules.

Pursuant to Local Appellate Rules 28.3(d) and 46.1(e), I hereby certify that I am an active member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

Pursuant to Local Appellate Rule 31.1(c), I hereby certify that the text of the electronic brief is identical to the text of the paper copies, that the virus detection program Windows Defender was run on the electronic file containing this filing, and that no virus was detected.

Dated:  March 24, 2025                    /s/ Joseph R. Palmore
                                          Joseph R. Palmore

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the CM/ECF system on March 24, 2025.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify that I caused a true and correct copy of the sealed version of this filing to be served on plaintiff-appellant's counsel via email.

Dated:  March 24, 2025                              /s/ Joseph R. Palmore
                                                  Joseph R. Palmore