No. 24-2965

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

AMERICAN SOCIETY FOR TESTING & MATERIALS, D/B/A ASTM
INTERNATIONAL,
*Plaintiff-Appellant,*
v.
UPCODES, INC., GARRETT REYNOLDS, and SCOTT REYNOLDS,
*Defendants-Appellees.*

Appeal from the United States District Court for the Eastern District of
Pennsylvania, Honorable Anita B. Brody, No. 2:24-cv-01895

**BRIEF AMICUS CURIAE OF ADMINISTRATIVE LAW PROFESSORS
MARGARET KWOKA, NINA MENDELSON, ALAN MORRISON,
ANNE JOSEPH O'CONNELL, PETER SHANE, SIDNEY SHAPIRO,
PETER STRAUSS, AND DANIEL WALTERS
IN SUPPORT OF APPELLEES AND AFFIRMANCE**

Nina A. Mendelson
625 S. State Street
Ann Arbor, MI 48109
(734) 936-5071

Adina H. Rosenbaum
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Amici Curiae*

March 31, 2025

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTEREST OF AMICI CURIAE .......................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................3

ARGUMENT ...................................................................................................5

I.      Incorporation by reference of privately drafted standards into law is pervasive. ...................................................................................5

II.     The public often faces substantial obstacles in accessing standards that have been incorporated by reference into the law. ...........................................8

III.    Unfettered access to the text of the law is critical for both regulated entities and the public. ..............................................15

IV.    As the Supreme Court has stated, no one can own the law. ..........................19

CONCLUSION ...........................................................................................20

CERTIFICATE OF COMPLIANCE, BAR MEMBERSHIP, IDENTICAL COMPLIANCE OF BRIEFS, AND VIRUS CHECK

CERTIFICATE OF SERVICE

**TABLE OF AUTHORITIES**

**Cases**                                                          **Pages**

*American Society for Testing and Materials v. Public.Resource.Org*,
896 F.3d 437 (D.C. Cir. 2018) ......................20

*Banks v. Manchester*,
128 U.S. 244 (1988).....................20

*Christopher v. SmithKline Beecham Corp.*,
567 U.S. 142 (2012) ......................15

*Georgia v. Public.Resource.Org*,
590 U.S. 255 (2020) ......................19

*Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*,
463 U.S. 29 (1983) ......................18

*Nash v. Lathrop*,
142 Mass. 29, 6 N.E. 559 (1886).....................19

**Statutes, Regulations, and Federal Register Notices**

5 U.S.C. § 553(e) ......................18

5 U.S.C. § 702.....................18

5 U.S.C. § 706(2)(A).....................18

10 C.F.R. § 50.34(f)(3)(v)(A)(2) ......................10

10 C.F.R. § 50.55a(a), (h)(2), (h)(3) ......................7

16 C.F.R. § 1120.3(a).....................9

16 C.F.R. § 1120.4 ......................9

16 C.F.R. § 1216.2 ......................7

16 C.F.R. § 1250.2 ............................................................................................8

21 C.F.R. § 165.110(a)(2)(iv) ........................................................................11

24 C.F.R. § 3280.4 ............................................................................................7

24 C.F.R. § 3280.703 ........................................................................................7

42 C.F.R. § 482.41(b)(1)(i), (e)(1).................................................................7

49 C.F.R. § 192.7(b)(7), (c)(5).......................................................................7

49 C.F.R. § 192.112(b)(1)(ii)..........................................................................7

Department of Transportation,
  Notice of Proposed Rulemaking, *Pipeline Safety: Regulatory Reform for
  Hazardous Liquid Pipelines*, 85 Fed. Reg. 21140 (Apr. 16, 2020)....................12

Phila. Code ch. 4-200 § B-1.1 ..........................................................................6

Phila. Code ch. 4-200 § B-1.2 ..........................................................................6

Phila. Code ch. 4-200 § F-1.2  .........................................................................5

Nuclear Regulatory Commission,
  Final Rule, *Incorporation by Reference of American Society of Mechanical
  Engineers Codes and Code Cases*, 82 Fed. Reg. 32934 (July 18, 2017)...........10

**Miscellaneous**

American Foundry Society, Comments (June 1, 2012),
  https://www.regulations.gov/document?D=NARA-12-0002-0147 ...................16

American National Standards Institute, End User License Agreement,
  https://ibr.ansi.org/Checkout/EULA.aspx .......................................................14

American National Standards Institute Webstore, ANSI Z21.69-2009/CSA 6.16-
  2009, https://webstore.ansi.org/standards/csa/ansiz21692009csa16...................8

American Petroleum Institute, Acceptance of Terms,
https://publications.api.org/GocCited_Disclaimer.aspx ...............................12, 13

American Society of Civil Engineers, Flood Resistant Design and Construction
(24-14), https://sp360.asce.org/personifyebusiness/Merchandise/Product-
Details/productId/233129242 .................................................................................9

American Society of Mechanical Engineers, BPVC Section III-Rules for
Construction of Nuclear Facility Components-Subsection NCA-General
Requirements for Division 1 and 2, https://www.asme.org/codes-standards/find-
codes-standards/bpvc-iii-nca-bpvc-section-iii-rules-constructions-nuclear-
facility-components-subsection-nca-general-requirements-division-1-division-
2?productKey=70003R:70003R .............................................................................11

American Society for Testing and Materials, https://www.astm.org/ .....................12

American Society for Testing and Materials, ASTM F2200-14,
https://store.astm.org/f2200-14.html .....................................................................9

American Society for Testing and Materials, License Agreement,
*accessible after registering at* https://www.astm.org/READINGLIBRARY/
VIEW/license.html ................................................................................................13

Emily Schleicher Bremer, *Incorporation by Reference in Federal Regulations*,
Report to the Administrative Conference of the United States (Oct. 19, 2011),
https://www.acus.gov/report/incorporation-reference-report..............................7

Consumer Federation of America, Comments (June 1, 2012),
https://www.regulations.gov/document?D=NARA-12-0002-0131 ...................19

Consumers Union, Comments (June 1, 2012),
https://www.regulations.gov/document?D=NARA-12-0002-0140 ...................18

Consumers Union & Consumer Federation of America, Comments (May 12,
2014), https://www.regulations.gov/document?D=OMB-2014-0001-0040 ......19

International Code Council, 2018 International Building Code,
Effective Use of the International Building Code, https://codes.iccsafe.org/
content/IBC2018P6/effective-use-of-the-international-building-code.................6

International Code Council, 2018 International Fire Code, Ch. 80,
 https://codes.iccsafe.org/content/IFC2018P6/chapter-80-referenced-standards..6

Nina A. Mendelson, *Private Control over Access to Public Law:
 The Perplexing Federal Regulatory Use of Private Standards*,
 112 Mich. L. Rev. 737 (2014) ...................................................................14

Modification and Replacement Parts Ass'n, Comments (June 1, 2012),
 https://www.regulations.gov/document?D=NARA-12-0002-0158 ...................16

National Propane Gas Ass'n, Comments (Dec. 30, 2013),
 https://www.regulations.gov/document?D=OFR-2013-0001-0019 ...................16

National Tank Truck Carriers, Comments (May 30, 2012),
 https://www.regulations.gov/document?D=NARA-12-0002-0145 ...................16

New York City Department of Environmental Protection, Comments (May 25,
 2012), https://www.regulations.gov/document?D=NARA-12-0002-0119 ........16

Senior Citizens Law Project of Vermont Legal Aid, Comments (June 1, 2012),
 https://www.regulations.gov/document?D=NARA-12-0002-0154 ...................17

Peter L. Strauss, *Private Standards Organizations and Public Law*,
 22 Wm. & Mary Bill of Rts. J. 497 (2013)........................................................20

Underwriter Laboratories Standards and Engagement, UL 859,
 Household Electric Personal Grooming Appliances,
 https://shopulstandards.com/ProductDetail.aspx?UniqueKey=24456 .................9

Underwriter Laboratories Standards and Engagement, UL 1727,
 Commercial Electric Personal Grooming Appliances, https://shopulstandards.
 com/ProductDetail.aspx?productId=UL1727_5_S_ 20120521 ...........................9

United States Pharmacopeial Convention,
 https://store.usp.org/archive/category/USP-3160................................................11

UpCodes, Building Code, 2018 (IBC 2018),
 https://up.codes/code/international-building-code-ibc-2018..............................5

UpCodes, Philadelphia Building Codes, https://up.codes/codes/philadelphia..........5

# INTEREST OF AMICI CURIAE[1]

Amici are professors of administrative law with particular expertise in government transparency, including the issue of incorporation by reference of private standards into government regulations. Amici have a strong interest in the development of administrative and copyright law in a manner that enables simple, universal, free access to the law.

Margaret Kwoka is the Lawrence Herman Professor in Law at Ohio State University Moritz College of Law. She is an administrative law scholar with a focus on government transparency and public access to government records.

Nina A. Mendelson is the Joseph L. Sax Collegiate Professor of Law at the University of Michigan Law School. She is an administrative law scholar and has written extensively on administrative law issues, including multiple articles on the incorporation by reference of private standards into public law.

Alan Morrison is the Lerner Family Associate Dean for Public Interest and Public Service Law and Professorial Lecturer in Law at George Washington University Law School and an expert in administrative law issues.

---

[1] All parties have consented to the filing of this brief. No party's counsel authored this brief in whole or in part, and no party or party's counsel made a monetary contribution to fund the preparation or submission of this brief. No person or entity other than counsel for amici made a monetary contribution to the preparation or submission of this brief.

Anne Joseph O'Connell is the Adelbert H. Sweet Professor of Law at Stanford Law School and a Senior Fellow at the Stanford Institute for Economic and Policy Research who specializes in administrative law and constitutional law. She is a co-editor of a leading administrative law casebook, for which she is in charge of the transparency chapter.

Peter M. Shane is a Distinguished Scholar in Residence and Adjunct Professor at the New York University School of Law and the Jacob E. Davis and Jacob E. Davis II Chair in Law Emeritus at the Moritz College of Law at Ohio State University. He has written widely on issues of administrative law.

Sidney A. Shapiro is the Frank U. Fletcher Chair in Law, Wake Forest University, and an expert in administrative law. He is the coauthor of Administrative Competence: Reimagining Administrative Law (2020) and the author or co-author of ten other books and over fifty-five articles.

Peter Strauss is the Betts Professor of Law Emeritus at Columbia Law School. He has written widely on administrative law issues and published multiple articles on public access, privately drafted standards, both domestic and international, and incorporation by reference issues.

Daniel E. Walters is an Associate Professor of Law at the Texas A&M University School of Law. He has published extensively on general administrative

law issues, as well as on public participation and the democratic legitimacy of administrative processes.

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case concerns the public's right to read the words of the law. Federal, state, and local laws and regulations contain thousands of standards that "incorporate by reference" standards drafted by nongovernmental organizations, such as the American Society for Testing and Materials (ASTM) standards at issue in this case. Those standards were incorporated by reference in the 2018 International Building Code, which, in turn, was incorporated by reference in the building codes of Philadelphia and other jurisdictions. Incorporated-by-reference standards set forth binding rules in important areas, such as health, safety, and the environment—including requirements for building construction and safety embodied in state and local building codes, and federal rules addressing food additives, safeguards for oil wells and pipelines, and child and infant product safety, among numerous other rules. Although incorporated-by-reference standards have the same force of law as the laws and regulations that incorporate them, their contents are not made available with the rest of those laws. Standards incorporated by reference in federal regulations, for example, are not published in the Federal Register or the Code of Federal Regulations.

Members of the public must be able to access incorporated-by-reference standards to understand rules that affect their lives, hold those who violate the rules accountable, participate in rulemaking proceedings, and advocate for revised rules. And regulated entities must be able to access incorporated-by-reference standards to comply with the laws that incorporate them. Yet the public and regulated entities alike face substantial challenges in accessing this law. Incorporated-by-reference standards are often difficult to find and expensive to read. Although they state binding law, the standards are scattered across private, difficult-to-navigate websites managed by the organizations that develop them. Even if a member of the public locates an incorporated-by-reference standard online, she can access the text only on the private organization's terms. The organization may set any price for access, insist on onerous conditions, or restrict usability by precluding copying. These barriers substantially impede regulated entities and the public at large from knowing the law, with destructive consequences for fair notice and for the public's ability to participate in core governmental processes.

To improve public access to the law, some private entities, including appellee UpCodes, Inc., have made incorporated-by-reference standards available for free on their websites, including ten standards drafted by appellant ASTM. The district court held that ASTM was unlikely to succeed on its argument that UpCodes' posting of the incorporated-by-reference standards violated ASTM's copyright and denied

4

ASTM's motion for a preliminary injunction against UpCodes' reproduction of any of its standards or materials. This Court should affirm the district court's decision and the public's right to access the law.

**ARGUMENT**

**I.    Incorporation by reference of privately drafted standards into law is pervasive.**

Incorporation by reference of privately drafted standards into law is widespread in federal, state, and local law. This case concerns ASTM standards that are incorporated by reference in the 2018 International Building Code, a model code copyrighted by the International Code Council, Inc. (ICC). The 2018 International Building Code is incorporated by reference in the codes of numerous states and localities, including Philadelphia. *See* UpCodes, Building Code, 2018 (IBC 2018), https://up.codes/code/international-building-code-ibc-2018 (listing 48 states and cities that have adopted the code). In addition to the International Building Code, Philadelphia has incorporated by reference numerous other codes, including the 2018 International Fire Code, the 2018 International Plumbing Code, and the 2018 International Fuel Gas Code. *See*, *e.g.*, Phila. Code ch. 4-200 § F-1.2 ("The 2018 International Fire Code, copies of which are on file with the Fire Department, is incorporated as if fully set forth herein, subject to the following additions, deletions and amendments[.]"); UpCodes, Philadelphia Building Codes, https://up.codes/codes/philadelphia. These codes in turn incorporate numerous

standards written by other standards development organizations. *See*, *e.g.*, ICC, 2018 International Fire Code, Ch. 80, https://codes.iccsafe.org/content/IFC2018P6/chapter-80-referenced-standards (listing hundreds of referenced standards).

That the ASTM standards at issue are not directly referenced in the Philadelphia Code, but, rather, are incorporated through the 2018 International Building Code, makes them no less a part of Philadelphia law than directly referenced standards—or than the rest of the city's code. The 2018 International Building Code provides that referenced standards are "part of the code to the extent of the reference to the standard." ICC, 2018 International Building Code, Effective Use of the International Building Code, https://codes.iccsafe.org/content/IBC2018 P6/effective-use-of-the-international-building-code. Thus, "[c]ompliance with the reference standard is necessary for compliance with the code." *Id*. Philadelphia's Building Code provides, in turn, that the 2018 International Building Code "is incorporated as if fully set forth herein." Phila. Code ch. 4-200 § B-1.2; *see also id*. § B-1.1 ("The '2018 International Building Code' as published by the International Code Council is hereby adopted as the Philadelphia Building Code[.]"). Because the ASTM standards are part of the 2018 International Building Code, and the 2018 Building Code is part of the Philadelphia Code, the ASTM standards are part of the Philadelphia Code and establish binding legal obligations.

At the federal level, the Code of Federal Regulations contains thousands of regulations that have incorporated outside standards by reference. *See* Emily Schleicher Bremer, *Incorporation by Reference in Federal Regulations*, Report to the Administrative Conference of the United States, at 9 (Oct. 19, 2011), https://www.acus.gov/report/incorporation-reference-report. Accordingly, private standards define the substance of federal legal obligations to protect public health, safety, and the environment in a wide variety of contexts. *See*, *e.g.*, 10 C.F.R. § 50.55a(a), (h)(2), (h)(3) (nuclear power reactor protection systems requirements, incorporating by reference Institute of Electrical and Electronics Engineers (IEEE) Standard 603-1991 and "the correction sheet dated January 30, 1995"); 16 C.F.R. § 1216.2 (Consumer Product Safety Commission regulation, incorporating by reference ASTM F977-22e1 standard for infant walkers); 24 C.F.R. §§ 3280.4, 3280.703 (HUD regulations, requiring household cooking gas appliances in manufactured homes to comply with American National Standards Institute (ANSI) Z21.1–2000); 42 C.F.R. § 482.41(b)(1)(i), (e)(1) (Centers for Medicare & Medicaid Services regulation setting forth condition for participation by hospitals, incorporating by reference the National Fire Protection Association's Life Safety Code, "NFPA 101 and Tentative Interim Amendments TIA 12–1, TIA 12–2, TIA 12–3, and TIA 12–4"); 49 C.F.R. §§ 192.7(b)(7), (c)(5), 192.112(b)(1)(ii) (regulation on pipeline fracture control, requiring compliance with American

7

Petroleum Institute (API) Specification 5L, Line Pipe, 46th edition, April 2018, including Errata 1 (May 2018), or American Society for Mechanical Engineers (ASME) standard B31.8-2018).

**II. The public often faces substantial obstacles in accessing standards that have been incorporated by reference into the law.**

**A.** When a law incorporates a standard by reference, members of the public often face substantial obstacles to reading the law's text. First, the person must find the relevant standard on a website managed by the private organization—often a daunting task. The task can be especially difficult when a standard incorporates additional privately drafted standards. In addition to the 2018 International Building Code, another example is ASTM F963-23, which is incorporated by reference into the Consumer Product Safety Commission's toy safety standards, 16 C.F.R. § 1250.2. That standard in turn incorporates by reference more than fifteen additional ASTM standards, one of which is noted as withdrawn.

Second, once a reader locates the desired legal text, the private entity controls the price charged for access. For example, ANSI charges $432 for ANSI Z21.69-2009/CSA 6.16-2009, Connectors for Moveable Gas Appliances;[2] ASTM charges $73 for ASTM F2200-14, Standard Specification for Automated Vehicular Gate

---

[2] ANSI Webstore, ANSI Z21.69-2009/CSA 6.16-2009, https://webstore.ansi. org/standards/csa/ansiz21692009csa16.

Construction;[3] and the American Society of Civil Engineers charges $121 for ASCE/SEI 24-14, Flood Resistant Design and Construction.[4] All three standards, along with numerous others, are incorporated by reference in the 2018 International Fire Code.

The Consumer Product Safety Commission requires certain classes of products to comply with private standards in order to avoid being deemed substantial product hazards under the Consumer Product Safety Act. For example, to avoid the substantial product hazard designation, hand-supported hair dryers must comply with the requirements of section 5 of Underwriter Laboratories (UL) 859 or section 6 of UL 1727, incorporated by reference at 16 C.F.R. §§ 1120.3(a) & 1120.4. UL 859 and 1727 each cost $798 for a read-only pdf.[5]

The cost of incorporated-by-reference standards can add up. In 2017, for example, the Nuclear Regulatory Commission (NRC) amended its regulations to incorporate by reference certain ASME codes and other materials that "provide rules for safety governing the design, fabrication, and inspection of nuclear power plant

---

[3] ASTM, ASTM F2200-14, https://store.astm.org/f2200-14.html.

[4] ASCE, Flood Resistant Design and Construction (24-14), https://sp360.asce.org/personifyebusiness/Merchandise/Product-Details/productId/233129242.

[5] UL Standards and Engagement, UL 859, Household Electric Personal Grooming Appliances, https://shopulstandards.com/ProductDetail.aspx?UniqueKey=24456; UL Standards and Engagement, UL 1727, Commercial Electric Personal Grooming Appliances, https://shopulstandards.com/ProductDetail.aspx?productId=UL1727_5_S_ 20120521.

9

components." NRC, Final Rule, *Incorporation by Reference of American Society of Mechanical Engineers Codes and Code Cases*, 82 Fed. Reg. 32934, 32975 (July 18, 2017). The agency stated that the materials were "available for inspection to all interested parties, by appointment, at the NRC Technical Library" in Rockville, Maryland, and that "[i]nterested parties may purchase a copy of the materials from ASME … [or] through third-party subscription services." *Id*. The agency acknowledged, however, that the cost to purchase all of the documents was approximately $9,000. *Id*.[6]

Under this regime of private control, standards with the force of law have also disappeared, although agencies have not repealed them. For example, current NRC safety requirements for nuclear power plant steel and concrete containment systems incorporate by reference portions of the 1980 edition of ASME Boiler and Pressure Vessel Code Section III. *See* 10 C.F.R. § 50.34(f)(3)(v)(A)(2). But ASME does not

---

[6] Recognizing that, "[f]or the class of interested parties constituting members of the general public who wish to gain access to the materials to be incorporated by reference in order to participate in the rulemaking, … the $9,000 cost may be so high that the materials could be regarded as not reasonably available for purposes of commenting on this rulemaking," the NRC sent a letter to ASME asking it to "consider enhancing public access to these materials during the public comment period." *Id*. Accordingly, "[d]uring the public comment period … ASME made the materials publicly-available in read-only format at the ASME Web site http://go.asme.org/NRC." *Id*. After the comment period ended, however, that link redirected to ASME's main page, www.asme.org, rather than to the standards.

list the 1980 edition for sale,[7] and it appears to be out of print. The 2025 edition of that section of the standard is for sale at $790.[8]

Likewise, the Food and Drug Administration standard for bottled water that can permissibly be called "purified water" incorporates by reference the 1995 edition of the United States Pharmacopeia. *See* 21 C.F.R. § 165.110(a)(2)(iv). While some former editions of the United States Pharmacopeia-National Formulary are available for $135 each, the edition incorporated by reference into the agency's regulation appears to be unavailable from the drafting organization.[9]

**B.** Some private standards organizations, including ASTM, have online "reading rooms" to provide access without charge to standards that have been incorporated by reference into federal regulations. The standards at issue in this case were not posted in ASTM's reading room. *See* JA 7. Even if they were, however, onerous conditions would impede any potential reader.

To start, online "reading rooms" can be difficult to find. On the ASTM website, a reader cannot locate the "Reading Room" by entering the number of the

---

[7] *See* ASME, BPVC Section III-Rules for Construction of Nuclear Facility Components-Subsection NCA-General Requirements for Division 1 and 2, https://www.asme.org/codes-standards/find-codes-standards/bpvc-iii-nca-bpvc-section-iii-rules-constructions-nuclear-facility-components-subsection-nca-general-requirements-division-1-division-2?productKey=70003R:70003R.

[8] *Id*.

[9] *See* U.S. Pharmacopeial Convention, https://store.usp.org/archive/category/USP-3160.

standard of interest or by entering "reading room" into the website's search bar. Instead, a reader must know to select "Standards and Solutions Overview" and then identify "Reading Room," which appears between "Research Reports" and "COVID 19."[10]

Then, access through the ASTM reading room is "read-only." The webpage both bars downloading standards and blocks the text of often-lengthy standards from being printed, saved, or cut and pasted in whole or in part. The ASTM website thus uses technological means to impede all the ordinary ways in which a reader might engage legal text, including quoting it in comments that can be shared with attorneys, regulating agencies, members of Congress, or other concerned individuals.[11] These obstacles are typical of private organization "reading rooms."[12]

Moreover, a person who wishes to access legally binding text without charge through ASTM's reading room is required to agree to oppressive terms. Before reading any ASTM-drafted text, one must first provide personal information and then click "AGREE" to a license. Under the terms of the license, the licensee must

---

[10] *See* ASTM, https://www.astm.org/.

[11] *Cf.* Dep't of Transp., Notice of Proposed Rulemaking, *Pipeline Safety: Regulatory Reform for Hazardous Liquid Pipelines*, 85 Fed. Reg. 21140, 21141–42 (Apr. 16, 2020) (explaining hindrance to agency operations presented by regulated entities submitting documents in "read-only" format and discussing need for full technological functionality, including downloadability and searchability).

[12] *See, e.g.*, API, Acceptance of Terms, https://publications.api.org/GocCited_ Disclaimer.aspx.

concede that ASTM owns a copyright in the material and promise not to "copy or download, publish … transmit … in any form … or in any way exploit any of the material … in whole or in part … without the express authorization of ASTM."[13] The licensee must also agree to indemnify ASTM for certain disputes and agree that all disputes will be litigated in Pennsylvania.[14] These requirements to see the text of the law are unacceptable in a democracy that prides itself on the rule of law and on the value of citizens' access to that law.

Other private standards organizations condition unpaid access to text on similar requirements. API requires any individual who wishes to read its standards that have been incorporated by reference into federal regulations to click on a license that warns that use of the standard is subject to limitations similar to ASTM's and provides that "API may pursue any remedy legally available to it if you fail to comply."[15] API also requires the individual to agree to a District of Columbia forum selection clause. Further, the individual must agree that API may "suspend or discontinue providing" access to the standards "with or without cause and without notice."[16] The American National Standards Institute, whose website hosts a reading

---

[13] ASTM, License Agreement, *accessible after registering at* https://www.astm.org/READINGLIBRARY/VIEW/license.html.

[14] *Id.*

[15] API, Acceptance of Terms, https://publications.api.org/GocCited_Disclaimer.aspx.

[16] *Id.*

room for eleven standards organizations, similarly requires the reader to agree not to "copy, use, … further distribute … republish, modify, condense, or abbreviate" the text, and warns that ANSI "may terminate … access … at any time and for any reason."[17] *See also* Nina A. Mendelson, *Private Control over Access to Public Law: The Perplexing Federal Regulatory Use of Private Standards*, 112 Mich. L. Rev. 737, 743 n.30, 753 nn.83–84 (2014) (discussing variety of licensing restrictions).

An individual, business entity, or journalist seeking to learn the content of regulatory law to comply with it, write about it, discuss it with others, or participate in federal agency proceedings to amend a regulation would understandably be chilled from doing so by such license agreements. Indeed, any such activity could arguably violate agreements not to "transmit" or "in any way exploit" the material. But if the reader does not agree to the license—or, as with this case, the private organization provides no reading room access to the relevant standards at all—the only option is to purchase the standard at whatever price the private organization chooses to set. Members of the public are thus deprived of full access to the contents of the law that binds them.

---

[17] ANSI, End User License Agreement, https://ibr.ansi.org/Check out/EULA.aspx. To view the click-through license, register and then click "Next."

**III.  Unfettered access to the text of the law is critical for both regulated entities and the public.**

The public must be able to see statutory and regulatory text, including building codes, to comply with the law, participate in governance, challenge illegal rules, advocate for change, and hold those who violate their rights accountable. And regulated entities need to know the contents of relevant laws to be able to comply with them. *See Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156 (2012) (discussing "the principle that agencies should provide regulated parties fair warning of the conduct a regulation prohibits or requires" (internal quotation marks, citation, and alteration omitted)). The difficulty of locating and the cost and conditions of reading privately controlled legal standards, however, places roadblocks in front of people seeking to understand what the law is and what it requires.

For example, small businesses have reported that access difficulties impede their ability to know their legal obligations. As the Modification and Replacement Parts Association, an association of suppliers of aircraft parts, stated in publicly filed comments in an Office of the Federal Register proceeding, "The burden of paying high costs simply to know the requirements of regulations may … driv[e] small businesses and competitors out of the market, or worse endanger the safety of the

flying public by making adherence to regulations more difficult."[18] Numerous other industry groups have made similar points.[19]

Likewise, the obstacles impede access for local governments with obligations under federal law. As the New York City Department of Environmental Protection, which is responsible for delivering high-quality drinking water and wastewater services, has noted: "The high costs of many of the standards and the extensive licensing requirements preclude easy access."[20]

---

[18] Modification and Replacement Parts Ass'n, Comments, at 4 (June 1, 2012), https://www.regulations.gov/document?D=NARA-12-0002-0158.

[19] *See* National Propane Gas Ass'n, Comments, at 1 (Dec. 30, 2013), https://www.regulations.gov/document?D=OFR-2013-0001-0019 (on behalf of organization with 90% small business membership, stating access costs "can be significant for small businesses in a highly regulated environment, such as the propane industry"); American Foundry Society, Comments, at 1–2 (June 1, 2012), https://www.regulations.gov/document?D=NARA-12-0002-0147 ("Obtaining IBR material can add several thousands of dollars of expenses per year to a small business, particularly manufacturers. ... [T]he ASTM foundry safety standard alone cross references 35 other consensus standards and that is just the tip of the iceberg on safety standards."); National Tank Truck Carriers, Comments, at 1–2 (May 30, 2012), https://www.regulations.gov/document?D=NARA-12-0002-0145 (stating that regulated entities "have no option but to purchase the material at whatever price is set by the body which develops and copyrights the information. ... [W]e cite the need for many years for the tank truck industry to purchase a full publication from the Compressed Gas Association just to find out what the definition of a 'dent' was. ... HM-241 could impact up to 41,366 parties and ... there is no limit on how much the bodies could charge").

[20] N.Y. City Dep't of Environmental Protection, Comments, at 1 (May 25, 2012), https://www.regulations.gov/document?D=NARA-12-0002-0119.

Lack of access to incorporated-by-reference standards also affects the people whom the law is intended to benefit, who need meaningful access to the law to determine whether the people and entities affecting them are complying with the law and to hold those people and entities accountable when they are not. The Senior Citizens Law Project of Vermont Legal Aid, for example, has described the situation of a tenant who needed to know whether her building complied with state fire codes. Although the woman had been granted in forma pauperis status in court, she needed to pay a large sum to determine whether her fire extinguisher met the code's requirements.[21]

Additionally, the barriers to seeing legal text frustrate the ability of citizens to make informed choices on issues that arise in daily life, such as whether to drink tap or bottled water or whether to buy certain toys or products sold for children. Moreover, access to the content of standards can help members of the public ensure that legal regulations are being followed. The advocacy and public policy arm of Consumer Reports noted in comments to the Office of the Federal Register, for example, that "Consumer Reports has, on several occasions, notified the Consumer Product Safety Commission and warned consumers about products that do not

---

[21] Senior Citizens Law Project of Vermont Legal Aid, Comments, at 2 (June 1, 2012), https://www.regulations.gov/document?D=NARA-12-0002-0154; *see id*. ("Many Vermont seniors cannot afford to pay for the privilege of reading documents incorporated into state and federal regulations.").

comply with existing standards, thus creating a public safety hazard."[22] "In order for non-profit consumer groups like ours to play this crucial role," it continued, "they need easy and free access to relevant standards."[23]

Furthermore, limitations on access to incorporated-by-reference standards affect the public's ability to participate in rulemaking and other democratic processes. After a federal regulation is promulgated, for example, a person adversely affected is entitled to seek judicial review and ask to have the regulation set aside as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. §§ 702, 706(2)(A). To do so, the person needs effective access to both the regulatory text and the regulatory preamble accompanying the final rule to determine if the agency "articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks and citation omitted). Likewise, an "interested person" cannot exercise "the right to petition for the … amendment[] or repeal of a rule" guaranteed by 5 U.S.C. § 553(e) without access to the full text of the rule. And the obstacles to access to incorporated-by-reference standards impede public discussion of those

---

[22] Consumers Union, Comments, at 2 (June 1, 2012), https://www.regulations.gov/document?D=NARA-12-0002-0140.

[23] *Id.*

standards and their incorporation, which is critical to holding the government accountable for its decisions to adopt the contents of those standards as law.

In short, the expense and difficulty of obtaining incorporated-by-reference standards hinder members of the public from fully understanding and discussing the rules that govern them, making appropriately informed choices, petitioning agencies for the amendment of rules, lobbying for increased oversight or for changes in the law, or holding their officials accountable. "Without unfettered access to these standards, our democratic system will be severely limited."[24]

## IV.     As the Supreme Court has stated, no one can own the law.

As the Supreme Court has stated, in this country, "no one can own the law." *Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255, 265 (2020). "'Every citizen is presumed to know the law,' and 'it needs no argument to show ... that all should have free access' to its contents." *Id*. (quoting *Nash v. Lathrop*, 142 Mass. 29, 35, 6 N.E. 559, 560 (1886)). Thus, the Court has explained that, under what it has called the government edicts doctrine, officials who are "responsible for creating the law" are barred "from being considered the authors of whatever work they perform in their capacity as lawmakers" and cannot copyright that work. *Id.* at 266 (cleaned up);

---

[24] Consumer Federation of America, Comments, at 1 (June 1, 2012), https://www.regulations.gov/document?D=NARA-12-0002-0131;     *see     also* Consumers Union & Consumer Federation of America, Comments, at 2 (May 12, 2014), https://www.regulations.gov/document?D=OMB-2014-0001-0040.

*see Banks v. Manchester*, 128 U.S. 244, 253 (1888) ("[T]here has always been a judicial *consensus*, … that no copyright [can] … be secured in the products of the labor done by judicial officers in the discharge of their judicial duties."). The "whole work done by the judges constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all." *Banks*, 128 U.S. at 253.

That same principle—that no one owns the law—applies when a government selects and adopts text developed by a nongovernmental organization into the law. The public's interest in knowing its obligations and rights under the law, as well as in fully participating in the country's governing processes, is no different because a private individual had a hand in the drafting. The government's incorporation of the standard "converts [its] terms into the very stuff of legal obligation." Peter L. Strauss, *Private Standards Organizations and Public Law*, 22 Wm. & Mary Bill of Rts. J. 497, 513 (2013). The standard becomes the law. And "access to the law cannot be conditioned on the consent of a private party." *ASTM v. Public.Resource.Org,* 896 F.3d 437, 458 (D.C. Cir. 2018) (Katsas, J. concurring).

## CONCLUSION

This Court should affirm the district court's decision.

Respectfully submitted,

Nina A. Mendelson
625 S. State Street
Ann Arbor, MI 48109
(734) 936-5071

Adina H. Rosenbaum
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

Counsel for Amici Curiae

March 31, 2025

**CERTIFICATE OF COMPLIANCE, BAR MEMBERSHIP, IDENTICAL COMPLIANCE OF BRIEFS, AND VIRUS CHECK**

1.      I certify that this brief complies with the type-volume limitations set forth in Fed. R. App. P. 29(a)(5) and 32(a)(7)(B), the typeface requirements of Fed. R. App. P. 32(a)(5), and the type-style requirements of Fed. R. App. P. 32(a)(6), because it was prepared in Times New Roman, 14-point font, and, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), it contains 4,474 words.

2.      I certify that I am a member of the bar of this Court.

3.      I certify that the text in the electronic version is identical to the text in the paper copies.

4.      I certify that a virus detection program (Sophos Endpoint) has been run on the electronic file and that no virus was detected.

/s/ Adina H. Rosenbaum
Adina H. Rosenbaum

**CERTIFICATE OF SERVICE**

I hereby certify that this brief has been served through the Court's ECF system

on counsel for all parties required to be served on March 31, 2025.

/s/ Adina H. Rosenbaum
Adina H. Rosenbaum