Case No. 24-2965

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

AMERICAN SOCIETY FOR TESTING AND MATERIALS, d/b/a ASTM INTERNATIONAL
*Plaintiff-Appellant*

v.

UPCODES, INC., GARRETT REYNOLDS, AND SCOTT REYNOLDS
*Defendants-Appellees*

---

Appeal from the United States District Court
for the Eastern District of Pennsylvania
Honorable Anita B. Brody, No. 2:24-cv-01895

---

## APPELLANT'S REPLY BRIEF
## REDACTED PUBLIC VERSION

---

Stanley J. Panikowski
DLA PIPER LLP (US)
4356 Executive Drive, Suite 1100
San Diego, CA 92201
Tel: (858) 677-1400
stanley.panikowski@us.dlapiper.com

Gabrielle C. Velkes
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 335-4500
gabrielle.velkes@us.dlapiper.com

J. Kevin Fee
Jane W. Wise
DLA PIPER LLP (US)
500 8th Street NW
Washington, DC 20004
Tel: (202) 799-4000
kevin.fee@us.dlapiper.com
jane.wise@us.dlapiper.com

*Counsel for Appellant*

MAY 14, 2025

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..........................................................................1

II.   UPCODES FAILED TO MEET ITS BURDEN TO SHOW THAT ITS
      FAIR USE DEFENSE WAS LIKELY TO SUCCEED ..................................2

      A.    Factor 1: The District Court Erred in Holding That the First Factor
            Supports Fair Use. ..........................................................4

            1.    UpCodes' Use is Not Transformative. .......................................5

            2.    UpCodes' Use is Commercial. ..............................................10

            3.    UpCodes' Free Public Access Argument Does Not Justify Its
                  Use. .................................................................13

      B.    Factor 4: The District Court Erred in Ruling that the Fourth Factor
            Does Not Weigh Against Fair Use. ............................................14

            1.    Harm From a Substitutional Use Is Cognizable Market Harm. 15

            2.    The Market for the Law Is Not Distinct from the Market for the
                  Works as Standards. ...................................................16

            3.    UpCodes' Public Benefit Argument Does Not Outweigh the
                  Market Harm. ..........................................................19

      C.    Factor 3: The District Court Erred in Ruling That Factor Three
            Weighs in Favor of Fair Use. ...............................................19

      D.    Factor 2: The District Court's Fair Use Decision Should be Reversed
            Even if Factor Two Weighs in Favor of Fair Use. ............................20

III.  THE GOVERNMENT EDICTS DOCTRINE IS INAPPLICABLE ...........22

IV.   UPCODES' MERGER DEFENSE FAILS .................................................26

V.    CONCLUSION ............................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andy Warhol Foundation for the Visual Arts v. Goldsmtih*,
    598 U.S. 508 (2023) ...................................................................*passim*

*Apple Computer, Inc. v. Franklin Computer Corp.*,
    714 F.2d 1240 (3d Cir. 1983) ...............................................27

*ASTM v. Public.Resource.Org, Inc.*,
    82 F.4th 1262 (D.C. Cir. 2023) ............................................*passim*

*ASTM v. Public.Resource.org, Inc.*,
    No. 13-cv-1215 (TSC), 2017 WL 473822 (D.D.C. Feb. 2, 2017) ...................26

*A.V. ex rel. Vanderhye v. iParadigms*,
    562 F.3d 630 (4th Cir. 2009) ...............................................9

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994)...............................................14, 15, 20, 21

*F.A. Davis Co. v. Wolters Kluwer Health, Inc.*,
    413 F. Supp. 2d 507 (E.D. Pa. 2005) ..................................27

*Facility Guidelines Inst., Inc. v. UpCodes, Inc.*,
    No. 4:22-CV-01308-AGF, 2023 WL 4026185 (E.D. Mo. June 15, 2023) ................................................................25

*Georgia v. Public.Resource.Org, Inc*,
    590 U.S. 255 (2020)...............................................22, 23, 24, 25

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
    546 U.S. 418 (2006)...............................................3

*Google LLC v. Oracle Am., Inc.*,
    593 U.S. 1 (2021)...............................................9, 15, 21

*Hachette Book Grp., Inc. v. Internet Archive*,
115 F.4th 163 (2d Cir. 2024) ................................................6

*Harper & Row Publishers, Inc. v. National Enters.*,
471 U.S. 539 (1985)...................................................*passim*

*ICC Evaluation Serv., LLC v. Int'l Ass'n of Plumbing & Mech. Offs., Inc.*,
No. 16-CV-54-EGS-ZMF, 2022 WL 3025241 (D.D.C. Apr. 27, 2022) ............................................................................17

*John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*,
322 F.3d 26 (1st Cir. 2003)....................................................27

*Lexmark International v. Static Control Components*,
387 F.3d 522 (6th Cir. 2004) ................................................16

*Los Angeles News Serv. v. CBS Broad., Inc.*,
305 F.3d 924 (9th Cir. 2002) ................................................21

*Nat'l Fire Protection Assn., Inc. v. UpCodes, Inc.*,
No. 2:21-cv-05262-SPG-E, Dkt. 230-1 (C.D. Cal. August 23, 2024) ...........................................................................*passim*

*Oracle Am., Inc. v. Google Inc.*,
750 F.3d 1339 (Fed. Cir. 2014) ............................................27

*Sega Enters. Ltd. v. Accolade, Inc.*,
977 F.2d 1510 (9th Cir. 1992) ..........................................9, 21

*Silvertop Assocs. v. Kangaroo Mfg.*,
931 F.3d 215 (3d Cir. 2019) ................................................26

*Sony Computer Entertainment Inc. v. Connectix Corp.*,
203 F.3d 596 (9th Cir. 2000) ................................................16

*Swatch Grp. Mgmt. Servs. v. Bloomberg*,
756 F.3d 73 (2d Cir. 2014) ....................................................9

iv

*TD Bank N.A. v. Hill,*
   928 F.3d 259 (3d Cir. 2019) ..................................................................27

*Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc.,*
   No. 1:20-CV-613-SB, 2025 WL 458520 (D. Del. Feb. 11, 2025) .............*passim*

*Veeck v. S. Bldg. Code Cong. Int'l, Inc.,*
   293 F.3d 791 (5th Cir. 2002) ...........................................14, 15, 25, 26

*Video Pipeline, Inc. v. Buena Vista Home Ent.,*
   342 F.3d 191 (3d Cir. 2003) ..................................................................2

**Statutes**

17 U.S.C. § 101 *et seq.*................................................................................23

17 U.S.C. § 107 ...........................................................................................20

17 U.S.C. § 201(a) .......................................................................................23

**Other Authorities**

H.R. Rep. No. 94-1476 (1976)......................................................................25

Brief of the United States as Amicus Curiae, *Google LLC v. Oracle
   America, Inc.*, No. 18-956, 2020 WL 1028353 (2020) ......................................27

## I.    INTRODUCTION

UpCodes' response brief merely amplifies, and does not cure, the district court's legal and clear factual errors in denying a preliminary injunction. UpCodes' commercial, substitutional use of the entirety of ASTM's Works is not transformative under Supreme Court precedent and persuasive case law applying that precedent. Rather, UpCodes' use supersedes the original and thus bears the watermark of a use that, as a matter of law, is *not* fair. UpCodes' attempt to create meaningful daylight between its and ASTM's use of the Works fails, and the district court erred by weighing the first factor in UpCodes' favor. The district court also erred by weighing the third factor (the amount and substantiality of the use) in UpCodes' favor based on its erroneous ruling on the first factor.

On the fourth factor, UpCodes fails to show it met its burden of proving the absence of market harm. UpCodes had the burden to show that if its uses were to become widespread, they would not harm the market for the original and potential derivative markets. UpCodes' burden was made even heavier by the Supreme Court's presumption that wholesale copying aimed at creating a market substitute is unfair. UpCodes' response brief unsuccessfully tries to shed this burden. And UpCodes offers no evidence that it met this burden. The district court therefore committed reversible error when it failed to weigh the fourth factor against fair use.

1

UpCodes' alternative "government edicts" argument also fails as a matter of law. As UpCodes admits, ASTM is the author of the Works. And ASTM is a private party, not a government entity. These undisputed facts refute UpCodes' government edicts argument, and UpCodes' attempt to circumvent these dispositive facts.

Finally, UpCodes' alternative "merger" argument fails too. UpCodes' argument cannot be squared with this Court's rejection of the notion that facts that post-date the creation of the work can be considered in the merger analysis. Nor can it be squared with UpCodes' concession that ASTM could have written the ASTM Works in a different way—thus negating the predicate required to invoke the merger doctrine in the first place.

## II.    UPCODES FAILED TO MEET ITS BURDEN TO SHOW THAT ITS FAIR USE DEFENSE WAS LIKELY TO SUCCEED

The district court's ruling that UpCodes' substitutional use of the entirety of ASTM's Works is fair use contravenes the bedrock principle that "the fair use doctrine has always precluded a use that 'supersede[s] the use of the original.'" *Harper & Row Publishers, Inc. v. National Enters.*, 471 U.S. 539, 550 (1985). When the law is properly applied here, UpCodes did not meet its burden to show that its fair use defense is likely to succeed. *See Video Pipeline, Inc. v. Buena Vista Home Ent.*, 342 F.3d 191, 197 (3d Cir. 2003) (holding defendant bears burden of proof for

fair use); *see also Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,* 546 U.S. 418, 429 (2006) ("the burdens at the preliminary injunction stage track the burdens at trial"). Nothing in UpCodes' response brief changes this fact.

A for-profit competitor does not have carte blanche to make copyrighted works available for unfettered reproduction, distribution, and display simply because they have been referenced in a third-party work that later is IBR'd. UpCodes could easily direct the public to ASTM's website where anyone can purchase copies of the Works. *See* ASTM Br. 11; *Nat'l Fire Protection Assn., Inc. v. UpCodes, Inc.*, No. 2:21-cv-05262-SPG-E, Dkt. 230-1 at 35 (C.D. Cal. August 23, 2024) ("*NFPA*") (JA2519) (weighing first factor against fair use and concluding that UpCodes "could have simply linked its users to" the copyright owner's website). Instead, UpCodes freerides off of ASTM's Works in its commercial offerings by selling subscriptions and otherwise driving traffic to its own for-profit website. In doing so, UpCodes usurps ASTM's market to provide the Works in a manner that balances the public's need for access with a sustainable model to develop future works that benefit the public.

If permitted, UpCodes' use of the Works would disrupt a crucial public-private partnership that promotes the creation of beneficial standards. ASTM Br. 10-18. This result would undermine copyright law's "ultimate aim" to stimulate the

3

creation of useful works "for the general public good" by "secur[ing] a fair return for an 'author's' creative labor." *Harper & Row*, 471 U.S. at 558-59 (citation omitted).

This Court should reverse the district court's ruling on likelihood of success and remand the case for consideration of the remaining preliminary injunction factors.

**A.    Factor 1: The District Court Erred in Holding That the First Factor Supports Fair Use.**

The most recent Supreme Court case on fair use makes clear that: "[i]f an original work and a secondary use share the same or highly similar purposes, and the secondary use is of a commercial nature, the first factor is likely to weigh against fair use, absent some other justification for copying" because such use "undermines the goal of copyright." *Andy Warhol Foundation for the Visual Arts v. Goldsmtih,* 598 U.S. 508, 532-33 (2023) ("*Warhol*").  UpCodes' uses of the Works are not transformative because they serve the same purpose as ASTM's (or at least a highly similar purpose).  Plus, UpCodes' uses are commercial.  And UpCodes' "public access" argument does not justify making available verbatim copies of the Works when they are already reasonably available from ASTM and others.  UpCodes' uses

4

of the Works thus undermine the goal of copyright, and it was legal error for the district court to weigh the first factor in UpCodes' favor.

### 1. UpCodes' Use is Not Transformative.

The parties agree that determining whether a use is transformative "requires an analysis of the specific 'use' of a copyrighted work" because "[t]he same copying may be fair when used for one purpose but not another." Opp. at 26 (quoting *Warhol*). The parties also agree that for a secondary use to be transformative, it must have a different purpose from the original work. *Id.* at 26, 30. Here, the purpose is the same.

UpCodes, a for-profit company, engages in at least two unauthorized uses of the Works. UpCodes sells access to its paid tier, which enables "users to 'search through [verbatim copies of the Works], bookmark sections, add and share annotations, [and] engage with an innovative artificial intelligence assistant that helps explain compliance requirements'" ("Paid Tier"). Opp. at 8, 31, 34; JA30 ("UpCodes copied the entirety of ASTM's Copyrighted Standards"); JA2259-62 at 344:4-347:4. UpCodes also has a free tier, where its users can "view, copy, paste, and print the [verbatim copies of the Works] without charge" ("Free Tier"). Opp. at 8, 31 (admitting UpCodes' publications of the Works use "the same words"); JA30. The district court never addressed the question of whether UpCodes' use in the Paid

Tier was commercial, *see* JA21, and held that "although UpCodes may receive tangential benefits" from the Free Tier, "it derives no monetary profit" from it, and therefore its use in the Free Tier is "largely noncommerical." JA21-22. But, as explained below, neither use is transformative.

*First*, republication of copyrighted works "solely to convey the original text to the reader without adding any comment or criticism" is not transformative. *Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th 163, 181 (2d Cir. 2024). In both its Paid and Free Tiers, UpCodes does just that.

*Second*, UpCodes unconvincingly tries to distinguish "publish[ing] the Works as the law" from publishing them "as model standards." Opp. at 15, 24, 31. Like in *Warhol*, these two uses are "substantially the same . . . even if the two [are] not perfect substitutes" and thus UpCodes' use is not transformative. 598 U.S. at 535-36; *see Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc.*, No. 1:20-CV-613-SB, 2025 WL 458520, at *7-8 (D. Del. Feb. 11, 2025) (Bibas, J.) (applying *Warhol* and finding AI-based legal research platform's unauthorized use of Westlaw headnotes and key numbering system "not transformative" because the use "resembles how Westlaw uses headnotes and key numbers" to provide similar legal search tool even where the copyrighted works were not displayed to the secondary user's customers).

Here, the district court correctly concluded that "UpCodes' copies are 'an effective substitute' for [the Works]," JA35 (citation omitted), such that "consumers will be less incentivized to purchase the standards from ASTM for a fee[,]" particularly because "UpCodes specifically identifies the [Works] as ASTM standards and allows its users to filter their searches on the UpCodes website based on ASTM's authorship," JA34-35.   Substitutional uses of a work, which "undermine[] the goal of copyright," "share[] the purpose of [the] copyrighted work," *Warhol*, 598 U.S. at 531-32, and as such are not transformative. *Id.* at 528-29 ("A use that has a further purpose or different character is said to be 'transformative.'").   On this record, the only logical conclusion is that UpCodes' uses of the Works are substitutional—and thus not transformative.

Specifically, ASTM makes the Works available to the public, including architecture, engineering, and construction ("AEC") professionals, for purchase so that they can read the text of the Works to, among other things, comply with the specifications for making safer steel and aluminum products.   ASTM Br. 33-35; JA2533-35 (showing use of the test method in ASTM A36 to perform a tensile strength test); JA1480 (discussing training and eLearning courses).   Similarly, UpCodes asserts that it provides access to the Works in connection with its mission "to help laypeople and professionals better understand how to comply with state and

local building laws." Opp. at 2, *id.* at 44-45 (describing use of Works to comply with the wall thickness specification for steel pipe piles); JA371 (UpCodes describing itself as "all-in-one compliance and product research platform for #AEC professionals"); JA24 ("ASTM and UpCodes both provide information to the architecture, engineering, and construction communities"); *see NFPA*, JA2515 ("UpCodes' use shares the same overriding purpose as NFPA's—namely, to provide access to the text of NFPA's standards for AEC companies and professionals who use those standards for various reasons in their jobs."). Looking at these uses of the Works objectively, as required under *Warhol*, 598 U.S. at 545, UpCodes and ASTM use the Works for the same (or at least a highly similar) purpose: to give users access to the Works to comply with specifications for making safer steel and aluminum products. *Accord NFPA*, JA2515 ("there is no daylight between UpCodes' commercial use of the standards and NFPA's use"). This substitutional use is not transformative.

*Third*, it is undisputed that ASTM already makes the Works available to the public in various formats. Opp. at 47-48; ASTM Br. at 11-12. Among these formats, ASTM makes the Works available in a paid subscription platform along with productivity tools for sharing, version comparison, and annotation (ASTM Compass), as well as "ASTM Standards in Building Codes," a subscription targeted

at the building construction industry, that offers standards referenced in various building codes.  ASTM Br. at 12.  Thus, there is nothing transformative about UpCodes' Paid Tier, and its justification for providing free public access does not excuse its directly competitive use of the Works.  *See* Opp. at 28-29.

UpCodes identifies no precedent for the proposition that a for-profit company making a copyrighted work available for free to attract users to its service is, in itself, transformative.  *See* Opp. at 27-29 (relying on the *ASTM v. Public.Resource.Org, Inc.,* 82 F.4th 1262 (D.C. Cir. 2023) ("*ASTM IV*"), which concerned a non-profit that did not sell services based on the copyrighted works or use them in a freemium business model).[1]  In the context of UpCodes' use of standards, the *NFPA* decision persuasively applies *Warhol* to find UpCodes' uses of standards in its Paid and Free

---

[1] The other appellate cases UpCodes and the district court rely upon to support finding UpCodes' uses transformative are inapt.  Opp. at 26-33.  With respect to *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1 (2021), *Sega Enters. Ltd. v. Accolade, Inc.,* 977 F.2d 1510 (9th Cir. 1992), *A.V. ex rel. Vanderhye v. iParadigms*, 562 F.3d 630 (4th Cir. 2009), and *Swatch Grp. Mgmt. Servs. v. Bloomberg*, 756 F.3d 73 (2d Cir. 2014), none of these cases concerned IBR'd works—let alone third-party referenced works—and none concerned verbatim reproduction, distribution and display of the entire copyrighted work to end users except for *Swatch*.  There, the copyright owner conceded that it did not seek to profit from the work (an earnings report call) and the court expressly distinguished the analysis from cases where, as here, "production [of the work] critically depend[s] upon copyright protection." 756 F.3d at 86; JA20, JA22-27.

Tiers not transformative.  ASTM Br. 34-35 (citing *NFPA,* JA2515-2516); *see also* Opp. at 25 (acknowledging fair use is a "context-specific defense").

Thus, the district court erred as a matter of law in ruling that UpCodes' use is transformative.

### 2.    UpCodes' Use is Commercial.

UpCodes' use of the Works is also commercial—for both its Paid and Free Tiers.

*First*, it is undisputed that "UpCodes is a for-profit entity." Opp. at 35. UpCodes argues that the "first factor analyzes the specific use, not the defendant's for-profit status," *id.*, but that is wrong.  A bedrock fair use case UpCodes cites, *American Geophysical Union v. Texaco Inc*. weighed the first factor against fair use based partly on its determination "not [to] ignore the for-profit nature of Texaco's enterprise, especially since we can confidently conclude that Texaco reaps at least some *indirect* economic advantage from its photocopying."  60 F.3d 913, 921-22 (2d Cir. 1994) (concluding that it was "not obvious why it is fair for Texaco to avoid having to pay at least some price to copyright holders for the right to photocopy the original articles" for internal research use).  Accordingly, UpCodes' for-profit status is relevant, including because it is undisputed that UpCodes derives at least indirect economic benefits from its use of the Works.  JA5 (finding UpCodes' posting of the

Works may provide "benefits like drawing users to its website, increasing active account numbers, and enabling the collection of user information."); Opp. at 36; *NFPA*, JA2517-18. Moreover, the Supreme Court in *Warhol* did not say the for-profit nature of the secondary user should be ignored.

*Second*, UpCodes' specific uses are commercial. UpCodes sells access to its Paid Tier, which enables users to view, search, annotate, and bookmark each of the Works in this case. JA910. And UpCodes admits that subscription (Paid Tier) users "pay for [the bookmarking and annotation] tools" used in connection with the Works, Opp. at 34, and that "UpCodes derives its profit from offering [these] advanced tools and services." *Id.* As such, the Paid Tier is clearly commercial, and the district court's finding that UpCodes "derives no direct monetary profit" from its use of the Works is clear error. JA21-22. At a minimum, the district court erred by ignoring the substantial indirect monetary benefit that UpCodes derives from its wholesale reproduction of the Works. *See Texaco*, 60 F.3d at 922.

Further, as the district court in *NFPA* persuasively explained, UpCodes' Free Tier is also commercial because the purpose of "posting of the standards for free is to serve its 'freemium' business strategy." *NFPA*, JA2517. UpCodes' founder summarized this strategy by stating: "We currently provide the codes online for free to drive SEO and work to convert the visitors onto a premium tier.'" *NFPA*, JA2517

11

n.19 (citations omitted) (concluding that "[t]he commercial character of UpCodes' use thus weighs strongly against the fair use defense").  UpCodes' reliance on *ASTM v. Public.Resource.Org* in support of its non-commercial use argument is misplaced because the non-profit defendant in *ASTM IV* had no freemium business model or *any* paid services.  *Contra* Opp. at 33-34.

*Third*, UpCodes wrongly argues that "it is irrelevant to fair use whether UpCodes paid ASTM's licensing fee." *Id.* at 37.  UpCodes cites no authority for this argument and binding Supreme Court precedent directly contradicts it.  "The crux of the profit/nonprofit distinction," for the first factor, "is not whether the sole motive of the use is monetary gain[,] but *whether the user stands to profit from exploitation of the copyrighted material without paying the customary price*," *Harper & Row,* 471 U.S. at 562 (emphasis added).  UpCodes gives itself a competitive commercial advantage over ASTM and ASTM's licensees by not paying ASTM's licensing fee for its uses of the Works.  ASTM Br. at 30 (discussing licensing market for ASTM standards in commercial databases); *NFPA,* JA2524 (finding that standards developer "would be at an unsustainable competitive disadvantage" where the developer "shoulders all of the costs to develop the standards and UpCodes (and copycats) pay nothing" to use them).

Accordingly, the district court erred in concluding that UpCodes' use is non-commercial.

### 3. UpCodes' Free Public Access Argument Does Not Justify Its Use.

As in *Warhol*, "[t]aken together, these two elements—that [UpCodes' verbatim offerings of the Works] and [ASTM's offerings of the Works] share substantially the same purpose, and that [UpCodes'] use of [the Works] was of a commercial nature—counsel against fair use, absent some other justification for copying." 598 U.S. at 537-38. UpCodes' sole additional justification for its use is that it "is justified by society's interest in public access to the law." Opp. at 28. However, the public already has access to the Works. *Id.* at 47-48. The only difference is that UpCodes makes the Works available for free—if users sign up for an account and consent to UpCodes selling their data—to support its "freemium" business model. ASTM Br. at 21; Association of American Publishers Amicus Br. at 21-23. UpCodes' for-profit free-riding does not justify its substitutional use. Indeed, the federal government has consistently concluded that free access should not be required for IBR'd works because it would undermine copyright and the longstanding public-private partnership to foster and implement standards that improve public safety. ASTM Br. 10-18, 42-43.

Factor one weighs against fair use because UpCodes' commercial, non-transformative uses of the Works act as a substitute for ASTM's offerings. The district court's ruling to contrary should be reversed.

## B. Factor 4: The District Court Erred in Ruling that the Fourth Factor Does Not Weigh Against Fair Use.

On factor four, it is not ASTM's burden to show market harm. *Contra* Opp. at 49. Rather, it is UpCodes' burden to show that if each of its free and paid uses were to become widespread, each such use would not harm the market for the Works' original and potential derivative markets. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590-91 (1994). UpCodes did not do so. Factor four therefore weighs against fair use. *Id.* at 590 (stating that a silent record on the fourth factor "disentitled the proponent of the defense" to summary judgment); *see Thomson Reuters*, 2025 WL 458520, at *10 (weighing fourth factor against fair use where defendant did "not put forward enough facts to show that . . . markets [at issue] would not be affected").

UpCodes cites *ASTM IV* and *Veeck v. Southern Building Code Congress International, Inc.* (*"Veeck"*), to incorrectly argue that its uses, even if widespread, will not cause market harm. Opp. at 50-51. These cases are not evidence, but merely non-binding statements from courts evaluating different works and distinguishable

uses by third parties. *ASTM IV* concerned a non-profit with no paid tier, AI, annotation, or collaboration features. *Veeck* concerned a non-commercial website operator that published a model code—not standards—which the *Veeck* court expressly excluded from its analysis. *Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791, 793, 803-04 (5th Cir. 2002).

### 1. Harm From a Substitutional Use Is Cognizable Market Harm.

Refusing to accept its burden, UpCodes incorrectly asserts that "there is no evidence of cognizable harm to ASTM's market for model standards." Opp. at 45. The Supreme Court has repeatedly made clear that "wholesale copying aimed at creating a market substitute is presumptively unfair." *Google*, 593 U.S. at 1199 (citing *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984)). The Supreme Court in *Campbell* reaffirmed that presumption with respect to the type of use made by UpCodes:

> what *Sony* said simply makes common sense: when a commercial use amounts to mere duplication of the entirety of an original, it clearly "supersede[s] the objects," [] of the original and serves as a market replacement for it, making it likely that *cognizable market harm* to the original will occur.

510 U.S. 591 (citation omitted) (emphasis added).

Here, there is no dispute that UpCodes makes the entirety of the Works available on its platform, JA30; Opp. at 34, and that UpCodes is a for-profit business.

Opp. at 35.  The record also shows that UpCodes uses the Works for its commercial benefit.  *See supra* Section II(A).  And the district court found that "UpCodes' copies are 'an effective substitute' for [the Works]," JA35 (citation omitted), such that "consumers will be less incentivized to purchase the standards from ASTM for a fee," particularly because "UpCodes specifically identifies the [Works] as ASTM standards and allows its users to filter their searches on the UpCodes website based on ASTM's authorship."  JA34-35.  Based on these facts, decades of Supreme Court precedent, and the absence of contrary evidence, UpCodes' uses of the Works cause cognizable market harm.  The district court thus erred as a matter of law by not weighing the fourth factor against fair use.

### 2. The Market for the Law Is Not Distinct from the Market for the Works as Standards.

UpCodes tries to sidestep market harm by asserting that "the market for model standards (which is cognizable) and the market for the law (which is not)" are "two distinct markets."  Opp. at 46.[2]  This argument is a rebranding of UpCodes'

---

[2] UpCodes' reliance on *Google, Sony Computer Entertainment Inc. v. Connectix Corp.*, 203 F.3d 596 (9th Cir. 2000), and *Lexmark International v. Static Control Components*, 387 F.3d 522 (6th Cir. 2004), to support such market distinction is misplaced given that these cases have nothing to do with standards or IBR and UpCodes makes the entire verbatim text of the Works available to its users so that they can read such text to implement the steel and aluminum specifications at the core of the Works.  Opp. at 46-47.

misguided government edicts doctrine argument. *See infra* Section III. To the extent it is anything more, the record contradicts UpCodes' argument.

The evidence shows that (1) there is overlap in ASTM's and UpCodes' users of the Works, Opp. at 49-50, ASTM Br. 21-22, 39-40, (2) the Works are used for the same or highly similar purpose by ASTM's and UpCodes' target audience; *see supra* Section II(A); and (3) there remains a market for the Works from ASTM even after a newer version is released by ASTM, JA2413 (showing sales of the Works, including after revision); JA1692-743, JA2411 (subscription sales including the Works), *i.e.*, the market for the Works "as standards" is not limited to the newest versions. *Contra* Opp. at 47; *see ICC Evaluation Serv., LLC v. Int'l Ass'n of Plumbing & Mech. Offs., Inc.*, No. 16-CV-54-EGS-ZMF, 2022 WL 3025241, at *19 (D.D.C. Apr. 27, 2022) ("Plaintiffs' [works] require periodic amendment and republication.... Thus, Plaintiffs have a commercial interest not only in a Work's first public appearance but also in its republication.").

Even UpCodes admits that it competes with ASTM with respect to versions of the Works referenced by the IBC. Opp. at 48 ("UpCodes competes only with … revenues ASTM makes from the market for the law"). UpCodes' AI and other compliance tools in its Paid Tier also compete with ASTM's derivative market for "selling compliance-focused training programs" for incorporated standards. Opp. at

17

54; *see id.* at 8 ("for a fee ...  users [can] ... engage with an innovative artificial intelligence assistant that helps explain compliance requirements, and use automation tools that identify building requirements and potential errors based on the inputs of a user's specific project"); *Thomson Reuters*, 2025 WL 458520, at *10 (weighing fourth factor against fair use, in part, because of "the effect on a *potential* market for AI training data" regardless of whether the copyright owner had "used the data to train its own legal search tools").

UpCodes tries to minimize this clear market overlap by incorrectly asserting that it competes only with ASTM's sales of PDFs of the Works, Opp. at 48, while acknowledging that ASTM's revenue from subscriptions that include the Works was not taken into account, *Id.* at 47 n.7, 48 (asserting, without authority, that the "small amount [of revenue from PDF sales of the Works] is not cognizable under copyright").  UpCodes' argument disregards the undisputed facts that ASTM generated over $▮▮▮▮▮ in subscription revenues from "ASTM Standards in Building Codes," JA2413, JA386, a collection of over 2,300 standards from ASTM (including the Works) and other SDOs referenced in various building codes, ASTM Br. 12 (citing JA1465; JA1692-743), and that UpCodes intends to post many, and potentially all, such additional standards.  JA2238-39 at 256:16-257:14.

The district court was required to consider not only current markets but also potential ones that may be harmed if UpCodes' uses become widespread, *e.g.*, expanding to all standards in IBR'd building codes. When these circumstances are taken into account, the likely result is significant market harm.

### 3.    UpCodes' Public Benefit Argument Does Not Outweigh the Market Harm.

For the reasons set forth in factor one, UpCodes' public benefit argument also does not outweigh the market harm because: (1) the Works are already available to the public, ASTM Br. 11-12; (2) due process does not require the Works to be free, ASTM Br. 10-18; and (3) UpCodes' free and paid uses undermine the goal of copyright and the public-private partnership of standards implementation that has made invaluable contributions to public safety for over a century. *See supra* Section II(A).

Accordingly, the district court erred by not weighing factor four against UpCodes after finding UpCodes' copies were substitutional and likely to adversely impact the market for the Works.

### C.    Factor 3: The District Court Erred in Ruling That Factor Three Weighs in Favor of Fair Use.

There is no dispute that the test for factor three is whether "the amount and substantiality of the portion [of the copyrighted work] used is 'reasonable in relation

19

to the purpose of the copying,'" *i.e.,* the first factor.  JA29 (quoting *Campbell,* 510 U.S. at 586-87); Opp. at 42.  UpCodes' and the district court's *only* basis for weighing the third factor in favor of fair use is that copying the entirety of the Works "was necessary for UpCodes' transformative purpose of publishing the law" under the first factor.  *Id.* at 42; JA29.  As explained above, however, UpCodes' paid and free uses of the entirety of the Works are substitutional—not transformative.  JA35 ("UpCodes' copies are 'an effective substitute' for the Copyrighted Standards.").  Courts routinely conclude that the third factor weighs against fair use when, as here, an infringer copies the entire work and the copy substitutes for the original.  ASTM Br. at 45 (collecting cases).  Accordingly, factor three properly weighs against fair use.

### D.    Factor 2: The District Court's Fair Use Decision Should be Reversed Even if Factor Two Weighs in Favor of Fair Use.

Unlike the other three fair use factors, which focus on the defendant's particular "use" of the copyrighted work, the second fair use factor calls for considering: "the nature of the copyrighted work."  17 U.S.C. § 107; *see Thomson Reuters*, 2025 WL 458520, at *9 (factor two "focus[es] on the degree of creativity inherent to the work") (quoting 4 Melville Nimmer & David Nimmer, *Nimmer on Copyright* § 13F.06 (2025)).

20

A proper assessment, therefore, considers the nature of the Works themselves—not the nature of *the use of* the Works by non-parties to the litigation. *See Google*, 593 U.S. at 26-29 (examining, under factor two, the creativity of the copyright owner's computer code, not defendant's use of it); *Campbell*, 510 U.S. at 586 (assessing the inherent creativity of the original song); *Harper & Row*, 471 U.S. at 563 (considering factual nature of the copyrighted work).[3] IBR has nothing to do with the inherent creativity of a work under the second factor. The *ASTM IV* decision, relied upon by UpCodes and the district court, thus misapplied the second factor by considering non-party reference to the works when assessing the inherent creativity of the works. The district court perpetuated this misapplication of the second factor in ruling that "ASTM's Copyrighted Standards [the Works]—having been incorporated by reference into law—fall at the outer edge of copyright's protective purposes, and the second factor weighs in favor of fair use." JA29. This analysis, applied to the Works, which have not been IBR'd and indisputably benefit public safety, contravenes the Supreme Court's direction that:

---

[3] The cases UpCodes cites likewise focus on the nature of the copyrighted work. *See Sega*, 977 F.2d at 1524-26 (distinguishing object code from traditional factual literary works because the unprotected aspects were "not readily accessible to the human eye"); *Los Angeles News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 940 (9th Cir. 2002), *amended*, 313 F.3d 1093 (9th Cir. 2002) (considering only the work's factual nature).

It is fundamentally at odds with the scheme of copyright to accord lesser rights in those works that are of greatest importance to the public. Such a notion ignores the major premise of copyright and injures author and public alike. "[T]o propose that fair use be imposed whenever the 'social value [of dissemination] ... outweighs any detriment to the artist,' would be to propose depriving copyright owners of their right in the property precisely when they encounter those users who could afford to pay for it."

*Harper & Row*, 471 U.S. at 558-59 (citation omitted).

But even assuming factor two favors fair use, it cannot overcome the other three factors, all of which weigh against fair use here. The district court thus erred as a matter of law in concluding that UpCodes' copying is fair use, and its ruling should be reversed.

## III.   THE GOVERNMENT EDICTS DOCTRINE IS INAPPLICABLE

UpCodes' alternative "government edicts"—or "no one can own the law"—defense also does not excuse its unauthorized uses of the Works.

In *Georgia v. Public.Resource.Org, Inc.*, the Supreme Court held that the government edicts doctrine was a "straightforward rule based on the identity of the author," 590 U.S. 255, 263 (2020), holding that "*officials empowered to speak with the force of law cannot be the authors* of—and therefore cannot copyright—the works they create in the course of their official duties." *Id.* at 259 (explaining that the "limitation on copyright protection for certain government work product [is]

22

rooted in the Copyright Act's 'authorship' requirement"); *id.* at 263, 270, 276. This "*rule applies regardless of whether a given material carries the force of law.*" *Id.* at 263. But the Supreme Court explained that this limitation on copyright "does not apply … to works created by government officials (or *private parties*) who lack the authority to make or interpret the law[.]" *Id.* at 265 (emphasis added).

Here, UpCodes admits that "ASTM is the author of the Works." Opp. at 21; *see also* JA16 (UpCodes does not "contest[] . . . the presumptive validity of ASTM's copyrights under 17 U.S.C. § 410(c)"). This admission is fatal to UpCodes' argument that *Georgia* and other cases applying the government edicts doctrine render ASTM's standards uncopyrightable or unenforceable. Opp. at 21-22.

ASTM is a "private party" not empowered to "speak with the force of law." *See Georgia,* 590 U.S. at 259. And, as the author, ASTM's "copyright protection [in its works] is both instant and automatic." *Id.* at 275; 17 U.S.C. § 201(a). No provision of the Copyright Act permits the stripping of a valid copyright if a legislature later incorporates a model code that references the work. *See Georgia,* 590 U.S. at 274-76; *see generally* 17 U.S.C. § 101 *et seq*.

The Supreme Court's straightforward rule based on authorship also forecloses UpCodes' argument that legislative action after ASTM's copyright had vested removed copyright protection for the Works because the Works now have the force

23

of law.[4]  Opp. at 21-22.  Specifically, Public.Resource.Org asked the Supreme Court

to hold that "[w]orks that represent an 'authentic' exercise of state legal authority—

*including legal works adopted by or 'published under the authority of' the State*—

are uncopyrightable edicts of government and 'not the proper subject of private

copyright.'"  JA1752-1826, Resp. Br. at JA1777 in *Georgia*, No. 18-1150 (U.S. Oct.

9, 2019) (emphasis added).  The Supreme Court rejected this argument and found

"no basis" under the Copyright Act to divide the concept of authorship "between

different categories of content with different effects."[5]  *Id.* at 274; *see also* H.R. Rep.

---

[4] UpCodes conflates the work done by legislatures with the text of ASTM's Works. In this case, a governmental entity by regulation or statute adopted a third-party document, such as the International Building Code ("IBC").  Opp. at 18, 22.  The IBC in turn refers to a number of ASTM's copyrighted standards.  *Id.* at 18.  In such circumstances, the government edict doctrine applies to the text of the statute or regulation adopting the IBC, which is uncopyrightable because it is created by government officials acting in their capacity as legislators.  *Georgia*, 590 U.S. at 266.  The government edicts doctrine does *not* extend to privately authored works IBR'd by the legislation (*e.g.*, the IBC) and certainly does not trickle down to any work referenced in such IBR'd works, like ASTM's standards.  *Id.* at 265.

[5] The Supreme Court was aware of the misguided nature of such a holding because ASTM and others filed amicus briefs addressing those issues.  *See generally* JA1876-1955, International Code Council & ASTM Brs. in *Georgia*, No. 18-1150 (U.S. Aug. 30, 2019).  The Court refused to destroy privately-owned copyrights upon IBR and instead found the doctrine "does not apply … to works created by … private parties[] who lack the authority to make or interpret the law," 590 U.S. at 265.

No. 94-1476, at 60 (1976) (stating that under 17 U.S.C. § 105 "use by the Government of a private work would not affect its copyright protection in any way").

Following *Georgia*, multiple district courts have correctly rejected UpCodes' attempt to read a broader "prophylactic rule that 'no one can own the law'" into *Georgia's* holding.  JA2499-2500.  These courts instead have observed that *Georgia* expressly rejected a rule that would "require[] federal courts to pick out the subset of judicial and legislative materials that independently carry the force of law." *NFPA*, JA2500 (quoting *Georgia*, 590 U.S. at 274 n.4); *Facility Guidelines Inst., Inc. v. UpCodes, Inc.,* No. 4:22-CV-01308-AGF, 2023 WL 4026185, at *3 (E.D. Mo. June 15, 2023) ("Because FGI is a private entity that lacks the authority to make or interpret the law, the government edicts doctrine does not apply.").

In sum, because ASTM is the undisputed author of the Works, it does not matter whether the Works have the force of law.  *Georgia,* 590 U.S. at 276 ("Instead of examining whether given material carries 'the force of law,' we ask only whether the author of the work is a judge or a legislator.").  Therefore, UpCodes' government edicts doctrine defense fails.

Further, *Veeck*, an out-of-circuit case that predates *Georgia*, does not support UpCodes' position that copyrights cannot be enforced for standards referenced in legislation or regulations.  Instead, in a section entitled "*The Caselaw; Model Codes*

*Versus Standard*," after the Fifth Circuit panel majority had held "against the copyrightability of model codes to the extent they have been adopted as law," it made clear:

> [T]he limits of this holding must be explained. Several national standards-writing organizations joined SBCCI as amici out of fear that their copyrights may be vitiated simply by the common practice of governmental entities' incorporating their standards in laws and regulations. This case does not involve references to extrinsic standards. Instead, it concerns the wholesale adoption of a model code promoted by its author, SBCCI, precisely for use as legislation. Caselaw that derives from official incorporation of extrinsic standards is distinguishable in reasoning and result.

*Id.* at 803-04. Thus, even *Veeck* expressly recognizes that standards like the Works are distinguishable from model codes and retain their copyright protection when they are IBR'd by a governmental authority.

## IV.    UPCODES' MERGER DEFENSE FAILS

This Court has held that merger is a "rare occurrence" and should only be found when "'there are no or few other ways of expressing a particular idea.'" *Silvertop Assocs. v. Kangaroo Mfg.*, 931 F.3d 215, 222 (3d Cir. 2019) (citation omitted). UpCodes concedes that ASTM "could have written the ASTM [Works] in a different way." JA2244-46, Tr. 298:21-299:6, 299:21-300:3; *see also ASTM v. Public.Resource.org, Inc.*, No. 13-cv-1215 (TSC), 2017 WL 473822, at *14 (D.D.C. Feb. 2, 2017) ("At the time they were authored, there were certainly myriad ways to

write and organize the text of the standards"), *rev'd in part on other grounds*, 896 F.3d 437 (D.C. Cir. 2018). This concession defeats UpCodes' merger defense because this Court follows the weight of authority holding that merger is assessed at the time the work is created. *TD Bank N.A. v. Hill*, 928 F.3d 259, 277–78 (3d Cir. 2019) (finding no merger where idea in copyrighted work could be expressed in multiple ways); *id.* at 284 n.12 ("The merger doctrine, as a narrow defense to liability, considers *ex ante* whether an idea could have been expressed in numerous ways.") (internal citation omitted); *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1252-53 (3d Cir. 1983) (rejecting argument that facts that post-date the creation of the work can be considered in the merger analysis); *accord Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1361 (Fed. Cir. 2014); *F.A. Davis Co. v. Wolters Kluwer Health, Inc.*, 413 F. Supp. 2d 507, 511 (E.D. Pa. 2005); *John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*, 322 F.3d 26, 42-43 (1st Cir. 2003); *see also* Brief of the United States as Amicus Curiae, *Google LLC v. Oracle America*, Inc., No. 18-956, 2020 WL 1028353, at *22 (2020) ("To make a work's copyrightability turn on events that occurred years after its creation would be contrary to the basic design of the Copyright Act, under which copyright protection 'subsists from [the] creation' of a work through the prescribed statutory term.").

Accordingly, the fact that ASTM's copyrighted Works were subsequently referenced in an IBR'd model code does not result in merger.

## V.     CONCLUSION

The district court's denial of a preliminary injunction should be vacated, its ruling on the likelihood of success should be reversed, and the case should be remanded for consideration of the other preliminary injunction factors.

Dated: May 14, 2025

*/s/ J. Kevin Fee*

J. Kevin Fee
Jane W. Wise
DLA PIPER LLP (US)
500 8th Street NW
Washington, DC 20004
Tel: (202) 799-4000
kevin.fee@us.dlapiper.com
jane.wise@us.dlapiper.com

Stanley J. Panikowski
DLA PIPER LLP (US)
4356 Executive Drive, Suite 1100
San Diego, CA 92201
Tel: (858) 677-1400
stanley.panikowski@us.dlapiper.com

Gabrielle C. Velkes
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 335-4500
gabrielle.velkes@us.dlapiper.com

# CERTIFICATE OF BAR MEMBERSHIP

Pursuant to Local Rule 28.3(d) and Local Rule 46.1(e), I hereby certify that

I, J. Kevin Fee, am admitted as an attorney and member in good standing of the bar

of the United States Court of Appeals for the Third Circuit.

Dated: May 14, 2025

*/s/ J. Kevin Fee*

J. Kevin Fee
DLA PIPER LLP (US)
500 8th Street NW
Washington, DC 20004
Tel: (202) 799-4000
kevin.fee@us.dlapiper.com

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g) and Local Rule 31.1, I certify the following:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,392 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in Times New Roman 14-point font using Microsoft Word for Microsoft 365.

3.      This brief complies with the electronic filing requirements of Local R. 31.1(c) because the text of the electronic brief is identical to the text in the paper copies and because Windows Defender Antivirus Version 1.1.19600.3 was run on the file containing the electronic version of this brief and no viruses were detected.

Dated: May 14, 2025                          */s/ J. Kevin Fee*
                                             J. Kevin Fee
                                             DLA PIPER LLP (US)
                                             500 8th Street NW
                                             Washington, DC 20004
                                             Tel: (202) 799-4000
                                             kevin.fee@us.dlapiper.com

## CERTIFICATE OF SERVICE

I certify that, on May 14, 2025, I caused this brief to be served on all counsel of record listed on the CM/ECF Service List.

Dated: May 14, 2025

*/s/ J. Kevin Fee*
J. Kevin Fee
DLA PIPER LLP (US)
500 8th Street NW
Washington, DC 20004
Tel: (202) 799-4000
kevin.fee@us.dlapiper.com